```
 1              IN THE UNITED STATES DISTRICT COURT

 2                 FOR THE DISTRICT OF HAWAII

 3
     UNITED STATES OF AMERICA,      ) CR 20-00068 LEK
 4                                  )
              Plaintiff,            ) Honolulu, Hawaii
 5                                  ) August 31, 2020
        vs.                         )
 6                                  ) VIDEOCONFERENCE INITIAL
     (1) NICKIE MALI LUM DAVIS,     ) APPEARANCE, WAIVER OF
 7                                  ) INDICTMENT, ARRAIGNMENT, AND
              Defendant.            ) PLEA OF GUILTY TO THE FELONY
 8   _____) INFORMATION

 9
                     TRANSCRIPT OF PROCEEDINGS
10           BEFORE THE HONORABLE LESLIE E. KOBAYASHI
                  UNITED STATES DISTRICT JUDGE
11

12   APPEARANCES:

13   For the Government:        KENNETH M. SORENSON, AUSA
                                Office of the United States Attorney
14                              PJKK Federal Building
                                300 Ala Moana Boulevard, Suite 6100
15                              Honolulu, Hawaii 96850

16                              JOHN D. KELLER, AUSA
                                United States Department of Justice
17                              Criminal Division
                                Public Integrity Section
18                              1331 F Street NW, Suite 300
                                Washington, DC 20004
19
     For the Defendant:         ABBE DAVID LOWELL, ESQ.
20                              Winston & Strawn LLP
                                1901 L Street NW
21                              Washington, DC 20036
                                Pro Hac Vice
22

23

24

25
```

```
 1   APPEARANCES CONTINUED:

 2   For the Defendant:      DAVID J. MINKIN, ESQ.
                             WILLIAM C. MCCORRISTON, ESQ.
 3                           McCorriston Miller Mukai MacKinnon
                             Five Waterfront Plaza 4th floor
 4                           500 Ala Moana Boulevard
                             Honolulu, Hawaii 96813
 5
     Also Present:           DIANE ARIMA-LINSCOTT
 6                           Pretrial Services Officer

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21
     Official Court Reporter:  Debra Read, RDR
22                             United States District Court
                               300 Ala Moana Boulevard
23                             Honolulu, Hawaii 96850
                               readit3949@gmail.com
24
     Proceedings recorded by machine shorthand, transcript produced
25   with computer-aided transcription (CAT).
```

UNITED STATES DISTRICT COURT

1  MONDAY, AUGUST 31, 2020                              11:00 A.M.

2            THE COURTROOM MANAGER:  Criminal No. 20-00681 LEK,

3  United States of America versus Nickie Mali Lum Davis.

4        This case has been called for an Initial Appearance,

5  Waiver of Indictment, Arraignment and Plea to the Felony

6  Information.

7        Counsel, please make your appearances for the record,

8  starting with the government, and please introduce Pretrial

9  Services.

10           MR. KELLER:  Good morning, Your Honor.

11       John Keller on behalf of the government.

12           THE COURT:  Good morning, Mr. Keller.

13       Mr. Sorenson?

14           MR. SORENSON:  Yes, Your Honor.  Kenneth Sorenson

15  here on behalf of the United States.  I think we have Diane

16  Arima-Linscott on the hearing as well.

17           THE COURT:  All right.  Good morning to both of you.

18       For the defense?

19           MR. MCCORRISTON:  May it please the Court, William

20  McCorriston and David Minkin with *pro hac* counsel, Mr. Lowell,

21  for Defendant Davis who is present on the videoconference.

22           THE COURT:  All right.  Good morning to all of you.

23       Ms. Davis, can you hear us?

24           THE COURTROOM MANAGER:  You're muted.

25           THE DEFENDANT:  I had a little trouble hearing

UNITED STATES DISTRICT COURT

 1    Mr. McCorriston speaking.  If he could repeat what he said?

 2                THE COURT:  All right.  Mr. McCorriston?

 3                MR. MCCORRISTON:  Yes.  William McCorriston and

 4    David Minkin appearing on behalf of Ms. Davis.  With us is *pro*

 5    *hac* counsel, co-counsel, Mr. Lowell.  And may the record also

 6    reflect the appearance of Ms. Davis on the videoconference.

 7                THE COURT:  All right.  Good morning to all of you.

 8          Ms. Davis, are you consenting to have your change of plea

 9    hearing by videoconference rather than by in person in court?

10                THE DEFENDANT:  Yes, I do.

11                THE COURT:  Then the court makes the following

12    findings:  That on March 27, 2020, Congress passed the

13    Coronavirus Aid Relief and Economic Security Act known as

14    CARES.  Under 15002(b) of the CARES Act, it finds that if the

15    Judicial Conference of the United States finds emergency

16    conditions due to the national emergency declared by the

17    President will materially affect functioning of the federal

18    courts, and the Chief Judge of the district court finds that

19    felony pleas under Rule 11 of the Federal Rules of Civil

20    Procedure cannot be conducted in person without seriously

21    jeopardizing public health and safety, and the district court

22    in the particular case finds specific reasons that the plea

23    cannot be further delayed without serious harm to the interest

24    of justice, then the plea may be conducted by videoconference.

25                The court further finds that on August 13, 2020, the

1   Chief Judge of this district made the appropriate findings as

2   required under the CARES Act with regard to felony pleas under

3   Rule 11 of the Federal Rules of Civil Procedure.

4          Therefore, the court finds that the sentencing -- excuse

5   me -- this change of plea hearing cannot be further delayed

6   without serious harm to the interest of justice.  And my

7   specific reasons are that on August 13, 2020, the Chief

8   Judge of this court issued a Temporary General Order limiting

9   in-court hearings and delaying jury trials until October 13,

10  2020, and on August 18, 2020, Mayor Caldwell for the City and

11  County of Honolulu issued Emergency Order 2020-24 ordering

12  residents to stay at home.

13         Based on all of this, the court concludes that the change

14  of plea hearing in this case cannot be further delayed without

15  serious harm to the interest of justice, and if the court were

16  to delay this hearing until it was held in person, it would add

17  to the backlog of this court.

18         In addition, as to this specific case, the change of plea

19  hearing cannot be further delayed without serious harm to the

20  interests of justice.

21         In addition, the defendant, Ms. Davis, consents to

22  proceed by video teleconference.

23         All right.  So we'll proceed then by videoconference for

24  the change of plea.  And at any time if anyone, but

25  particularly Ms. Davis, cannot hear the court, please let me

1   know.

2             MR. KELLER:  Your Honor, if I may?

3             THE COURT:  Yes.

4             MR. KELLER:  Just to add a couple of facts to the

5   record on the Court's specific factual findings.

6             THE COURT:  Yes?

7             MR. KELLER:  According to the interests of justice

8   relating to this matter specifically, there is a defendant in a

9   related case who is cooperating with the government who pled

10  guilty nearly two years ago at this point, and his sentencing

11  remains delayed in part on resolution of Ms. Davis in this

12  matter.

13       There are also additional subjects whose -- against whom

14  charges may be filed and those charges are delayed again in

15  part pending formal resolution of Ms. Davis's status in this

16  matter.  Just add those to the record to the Court's findings.

17            THE COURT:  All right.  Thank you very much.

18       The court adopts the representations -- Mr. McCorriston?

19            MR. MCCORRISTON:  Yes, Your Honor, one

20  clarification.  This is the initial arraignment and plea on

21  this matter.

22            THE COURT:  Thank you.  Right.  So she's going to

23  waive indictment -- her right to indictment and enter a plea to

24  the felony information, correct?

25            MR. MCCORRISTON:  Correct.  Hopefully the Court has

1     these documents indicating that.

2            THE COURT:  I do.  Thank you.

3         So, Ms. Davis, is it your intention today to plead guilty

4     with agreement with the United States?  You're on mute.

5            THE DEFENDANT:  Yes, Your Honor.

6            THE COURT:  All right.  Before I can accept your

7     guilty plea, I must know that you understand what you are

8     doing, that you are pleading guilty freely and voluntarily,

9     that there is a factual basis for your change of plea, and that

10    the ends of justice will be met by permitting you to change

11    your plea to guilty.  To make these determinations, I do need

12    to ask you questions, and if at any time you do not hear or

13    understand the questions I ask of you, please say so.

14        Do you understand this?

15           THE DEFENDANT:  Yes.

16           THE COURT:  All right.  Ms. Elkington, if you would

17    please administer the oath to Ms. Davis.

18           THE COURTROOM MANAGER:  Thank you, Your Honor.

19        If you would please raise your right hand, Ms. Davis?

20           (The defendant was sworn.)

21           THE DEFENDANT:  Yes.

22           THE COURTROOM MANAGER:  Thank you.

23           THE COURT:  What is your full name?

24           THE DEFENDANT:  Nickie Mali Lum Davis.

25           THE COURT:  All right.  And how old are you?

1                    THE DEFENDANT:  45.

2                    THE COURT:  And how far have you gone in school?

3                    THE DEFENDANT:  I graduated with my BA.

4                    THE COURT:  All right.  And you're able to read and

5      write in English, correct?

6                    THE DEFENDANT:  Yes.

7                    THE COURT:  All right.  Do you feel well and alert

8      today and able to understand what's going on?

9                    THE DEFENDANT:  Yes.

10                   THE COURT:  Have you taken any alcohol or medication

11     today?

12                   THE DEFENDANT:  Just a malaria -- my malaria

13     medicine.

14                   THE COURT:  And that's prophylactic; that's to

15     prevent you from contracting malaria if you travel to countries

16     that have it; is that correct?

17                   THE DEFENDANT:  Yeah.  My last --

18                   THE COURT:  Does it -- does it affect your ability

19     to concentrate or make decisions?

20                   THE DEFENDANT:  No.

21                   THE COURT:  Have you been treated recently for any

22     type of mental illness or addiction to narcotic drugs of any

23     kind?

24                   THE DEFENDANT:  No.

25                   THE COURT:  Counsel, to the best of your knowledge,

1   is your client fully competent to enter a valid plea here

2   today?

3          MR. MCCORRISTON:  Yes, Your Honor.

4          THE COURT:  The court finds that Ms. Davis is fully

5   competent and capable of entering a valid plea.

6       Now, have you received a copy of the Information, that

7   is, the written charges pending against you in this case,

8   Ms. Davis?

9          THE DEFENDANT:  Yes, I have.

10          THE COURT:  And have you fully discussed those

11   charges and all the facts surrounding those charges with your

12   lawyers?

13          THE DEFENDANT:  Yes, I have.

14          THE COURT:  And are you fully satisfied with the

15   legal representation that you have received from your attorneys

16   in this case?

17          THE DEFENDANT:  Yes, Your Honor.

18          THE COURT:  And, Mr. McCorriston, are you and your

19   co-counsel in agreement with your client's decision to plead

20   guilty today?

21          MR. MCCORRISTON:  That's correct, Your Honor, we

22   are.

23          THE COURT:  All right.  Ms. Davis, you have a

24   constitutional right to require a group of citizens called a

25   grand jury review your case and determine whether or not the

1   United States has presented sufficient evidence to bring

2   criminal charges against you.  If the grand jury finds that the

3   evidence is sufficient, then it will return criminal charges

4   against you in the form of what's called an Indictment.  If,

5   however, the grand jury finds that the evidence is not

6   sufficient because there's no probable cause to believe that

7   you committed the offenses set forth in the information, then

8   you would not be indicted.

9       If you waive or give up your right to grand jury review

10  of your case, the case will proceed against you as a criminal

11  proceeding on the United States Attorney's information just as

12  though you had been indicted by the grand jury.

13      Do you understand your right to grand jury review of your

14  case?

15          THE DEFENDANT:  Yes, I do, Your Honor.

16          THE COURT:  Did you have an opportunity to sign and

17  go over the Waiver of Indictment form and go over the rights

18  contained therein with your lawyers?

19          THE DEFENDANT:  Yes, I did, Your Honor.

20          THE COURT:  And did you sign the Waiver of

21  Indictment form after consulting with your lawyers?

22          THE DEFENDANT:  Yes, I did.

23          THE COURT:  All right.  And, Mr. McCorriston, did

24  you go over this form with your client and are you fully

25  assured she understands it?

1          MR. MCCORRISTON:  Mr. Lowell and I both went over

2     the form with the client, and we believe that she does

3     understand that it's voluntary.

4          THE COURT:  All right.  The court notes that there's

5     a Waiver of Indictment form that's been executed by

6     Mr. McCorriston and Ms. Davis.  It's dated August 27, 2020.

7          The court is affixing its signature to the Waiver of

8     Indictment form and finds that Ms. Davis has knowingly agreed

9     to waive or give up her right to indictment and to proceed in

10    this matter based on the U.S. Attorney's information.

11         The court's also been provided with a Memorandum of Plea

12    Agreement.  It's a written document and it has several pages.

13    The pages are numbered, and the last page is numbered 45.  On

14    that page there are five signatures.

15         Have you had an opportunity to review this document with

16    your lawyers before you signed it, Ms. Davis?

17         THE DEFENDANT:  Yes, I have.

18         THE COURT:  And is that your signature on the last

19    page?

20         THE DEFENDANT:  Yes.

21         THE COURT:  You understand the terms of the plea

22    agreement?

23         THE DEFENDANT:  Yes, I do.

24         THE COURT:  All right.  So in the plea agreement,

25    you're agreeing to waive indictment and enter a voluntary plea

1  of guilty to an Information which charges you with aiding and

2  abetting violations of the Foreign Agents Registration Act,

3  Title 22, United States Code, Sections 612 and 618(a), for your

4  work on behalf of a foreign national and a foreign minister for

5  the purpose of lobbying the administration of the President of

6  the United States and the United States Department of Justice

7  to drop an investigation into the foreign national and arrange

8  for the removal and return of a separate foreign national to a

9  foreign nation.

10       Is that your understanding?

11            THE DEFENDANT:  Yes.

12            THE COURT:  And in return, the government agrees not

13  to prosecute you for additional violations of federal law based

14  on conduct now known to the government that's directly related

15  to the offense conduct set forth in your plea agreement; is

16  that correct?

17            THE DEFENDANT:  Yes.

18            THE COURT:  Is this plea agreement the only and

19  entire understanding that you have with the government?

20            THE DEFENDANT:  Yes.

21            THE COURT:  Has anyone made any other or different

22  promises or assurances of any kind to you in order to get you

23  to plead guilty?

24            THE DEFENDANT:  No.

25            THE COURT:  Has anyone attempted to threaten you or

1    pressure you in any way in order to force you to plead guilty?

2            THE DEFENDANT:  No.

3            THE COURT:  So is it Mr. Keller or Mr. Sorenson

4    who'd like to go over the major terms of the plea agreement,

5    including any portion in which there's any appellate waivers?

6            MR. KELLER:  Your Honor, I can handle that for the

7    government.

8            As Your Honor already noted, the critical provision is

9    Ms. Davis's Waiver of Indictment and agreement to plead guilty

10   to Count 1 of the Information in exchange for the government's

11   agreement not to bring any additional charges to her based on

12   conduct now known to the government directly related to the

13   facts contained in the factual basis which is at paragraph 8 of

14   the plea agreement.

15           Factual basis is a fairly lengthy recitation of

16   underlying facts in this matter and the affair offense and

17   Ms. Lum Davis's role aiding and abetting it.

18           In addition to admitting the facts of the offense,

19   Ms. Davis does agree to waive her trial rights as is the

20   standard waiver under Rule 11, also does agree to waive

21   appellate rights, all appeal except the right to collaterally

22   attack her sentence on the grounds of ineffective assistance of

23   counsel.  But other than that sole basis, Ms. Davis agrees to

24   waive her appellate rights as part of this agreement

25           With respect to sentencing, the parties do agree that

1    there is no sentencing guideline that directly applies to the

2    offensive conviction.  Ms. Davis understands that that is the

3    parties' agreement and recommendation, but that that

4    recommendation is not binding upon the Court, and agrees that

5    she will not have the right to -- to appeal her sentence unless

6    the Court were to find that the -- that the guidelines did

7    apply to the offense and was to sentence Ms. Lum Davis above

8    any guideline range that the Court were to calculate

9         Ms. Davis also agrees to forfeiture in the amount of

10   $3 million reflecting the minimum proceeds of the offense.

11        And I believe those are the key provisions of the plea

12   agreement, Your Honor

13             THE COURT:  All right.  Thank you very much.

14        Ms. Davis, what Mr. Keller has just explained to the

15   court, is that what you understand to be your agreement with

16   the government?

17             THE DEFENDANT:  Yes, Your Honor.

18             THE COURT:  Do you understand that the possible

19   penalties that apply to your case are as follows:

20        a term of imprisonment of zero to 5 years;

21        a fine from zero to $10,000;

22        plus a term of supervised release from zero to 3 years;

23        in addition, there's a mandatory $100 special assessment

24   fee, and this could also include the -- the penalties would

25   also include forfeitures of any proceeds that you received as a

1    result of the offense conduct?

2         Do you understand these are the possible penalties that

3    would face you if you enter a guilty plea to the charges in the

4    Information?

5              THE DEFENDANT:  Yes.

6              THE COURT:  All right.  During a period of

7    supervised release, you must comply with a set of conditions.

8    These will be explained to you by a probation officer.  These

9    conditions include that you obey the law, that you report to

10   the probation officer as required, and additional conditions.

11        If the court finds that you violated any of these

12   conditions during your supervised release, you could be ordered

13   to serve additional prison time.

14        Do you understand this?

15             THE DEFENDANT:  Yes.

16             THE COURT:  Are you presently on probation, parole,

17   or supervised release from any other case?

18             THE DEFENDANT:  No.

19             THE COURT:  Mr. Keller, does the United States

20   contend today that any felony offense to which she is today

21   pleading guilty occurred while she was out on bond in relation

22   to some other federal criminal charge?

23             MR. KELLER:  No, Your Honor.

24             THE COURT:  Ms. Davis, are you a citizen of the

25   United States?

1            THE DEFENDANT:  Yes, I am.

2            THE COURT:  If convicted of the charges in this

3   case, you may lose valuable civil rights, including the right

4   to vote, the right to serve on a jury, the right to hold public

5   office, and the right to possess any kind of firearm.

6        Do you understand this?

7            THE DEFENDANT:  Yes.

8            THE COURT:  And if you plead guilty, the court will

9   likely require you to forfeit property to the United States.

10       Do you understand this?

11           THE DEFENDANT:  Yes.

12           THE COURT:  The United States Sentencing Commission

13  has issued guidelines for judges to consider in determining

14  sentences in cases such as yours.  Have you and your lawyers

15  discussed these guidelines and how they may apply to your case?

16           THE DEFENDANT:  Yes.

17           THE COURT:  Before I can determine your guideline

18  sentence range, if any of the guidelines apply in your

19  particular offense, the presentence report has to be completed.

20  You and your lawyer and the government lawyers will have an

21  opportunity to read that draft report.  In the report it'll

22  contain information about you, your background, information

23  about the offense, and also a recommendation by the probation

24  officer as to how the guidelines or some of the applications in

25  the guidelines should be used in determining an appropriate

1    sentence for you.

2         And an appropriate sentence under the law is one that is

3    sufficient, but not greater than necessary, to meet the goals

4    of sentencing, and these include just punishment for the

5    offense to which you're today pleading guilty, and an

6    opportunity for rehabilitation.

7         Once this report is completed and finalized, we'll have

8    the sentencing hearing, and it's only at that time that I'll be

9    able to determine -- make determinations with regard to any

10   guideline applications.

11        Do you understand this?

12             THE DEFENDANT:  Yes, I do, Your Honor.

13             THE COURT:  Do you understand that any sentence I

14   impose may be different from any estimates you and your lawyers

15   may have discussed?

16             THE DEFENDANT:  Yes, Your Honor.

17             THE COURT:  Also, after your guideline range has

18   been determined, I do have the authority to depart from that

19   guideline range, if guidelines apply to your -- calculation of

20   your sentence in this case, and I can depart from the

21   guidelines and impose a sentence that might be more severe or

22   less severe than what's set forth in the guidelines.

23        Do you understand this?

24             THE DEFENDANT:  Yes, Your Honor.

25             THE COURT:  I'm also going to make decisions with

1   regard to an appropriate sentence based on the admissions of

2   fact that you make at today's hearing.  So while you don't have

3   to admit to anything you don't agree with the government on, if

4   you do admit to certain facts, I can rely on those admissions

5   and as a result your sentence might be increased.

6          Do you understand this?

7              THE DEFENDANT:  Yes.

8              THE COURT:  If your sentence is more severe than you

9   expected, you're still going to be bound by your plea.  Even if

10  you don't like the sentence I imposed, you won't be able to

11  take it back at that time.  So the time to make that decision

12  whether to plead guilty or not is now.

13         You understand this?

14             THE DEFENDANT:  Yes, Your Honor.

15             THE COURT:  Parole has been abolished in the federal

16  system.  If you are sentenced to prison, you're not going to be

17  released on parole.

18         Do you understand this?

19             THE DEFENDANT:  Yes.

20             THE COURT:  You have certain constitutional rights

21  that you give up by pleading guilty, and I have to go over

22  those rights with you now.

23         You have the right to plead not guilty and to continue or

24  persist in that plea

25         You would then have the right to trial by jury.

UNITED STATES DISTRICT COURT

1          At trial, you'd have the right to have a lawyer represent

2    you and defend you, a right to see and hear all witnesses, a

3    right to testify or remain silent and not testify, a right to

4    have your lawyers cross-examine any witnesses, and the right to

5    have subpoenas issued for any witnesses you wish to call in

6    your defense.

7          At trial, you'd be presumed to be innocent and the United

8    States would have the burden of proving you guilty beyond a

9    reasonable doubt.

10         Before you can be convicted, all 12 jurors must be

11   convinced that the United States met that burden.

12         And if you are found guilty after a trial, you'd be able

13   to appeal your conviction to a higher court.  And if you could

14   not afford to pay the cost of such an appeal, the government

15   would pay those costs for you.

16         Do you understand that you have all of these rights,

17   including the right to trial?

18              THE DEFENDANT:  Yes.

19              THE COURT:  If you plead guilty, however, and if I

20   accept your guilty plea, there'll be no trial and you'll be

21   waiving or giving up all the rights, including the right to

22   trial that I just described.

23         Do you understand this?

24              THE DEFENDANT:  Yes, Your Honor.

25              THE COURT:  As long as you plead not guilty, you

UNITED STATES DISTRICT COURT

1   also have the right to remain silent.  But should you choose to

2   plead guilty today, I will ask you to tell me in a little bit

3   what it is that you did that makes you guilty of the offense in

4   the Information, and you have to answer truthfully even if your

5   answers establish that you committed a crime.

6        Do you understand this?

7             THE DEFENDANT:  Yes, I do, Your Honor.

8             THE COURT:  Mr. Keller, at this time, if you would

9   summarize for the court and Ms. Davis the elements that the

10  government would have to prove if this matter went to trial,

11  including any for sentencing purposes.

12            MR. KELLER:  Yes, Your Honor.

13       First, the government would have to prove that the

14  defendant acted in the United States as an agent of a foreign

15  principal;

16       Second, that the defendant failed to file a registration

17  statement with the FARA Unit of the Department of Justice;

18       And third, that the defendant acted willfully.

19            THE COURT:  All right.  Mr. McCorriston, do you

20  disagree in any respect as to that summary?

21            MR. MCCORRISTON:  Your Honor, I do not, but I'll ask

22  Mr. Lowell if he will confirm that.

23            MR. LOWELL:  Your Honor, just to be as accurate as

24  we can be, Ms. Davis is charged with 18 United States Code,

25  Section 2, with a violation of 22 United States Code, 612 and

1   618, as you have indicated, and so the element that Mr. Keller

2   would have to prove is that Ms. Davis aided and abetted the

3   violations of the three elements that he just said, and in that

4   way we agree.

5           THE COURT:  Thank you for that clarification.

6       Do you disagree in any respect, Mr. Keller?

7           MR. KELLER:  No, Your Honor.

8           THE COURT:  All right.  Ms. Davis, do you fully

9   understand if there were a trial on the charge, the United

10  States would be required to present witnesses and physical

11  evidence necessary to prove each of those essential elements

12  beyond a reasonable doubt before you can be convicted?

13          THE DEFENDANT:  Yes, I do, Your Honor.

14          THE COURT:  All right.  Turning to the plea

15  agreement, at paragraph 8 of the plea agreement, there is quite

16  a lengthy summary of the facts upon which the plea is based.

17  Factual stipulations start at page 4 under paragraph 8.

18      Have you read carefully through this section of the plea

19  agreement?  I'm sorry; you're on mute.

20          THE DEFENDANT:  Yes, I have, Your Honor.

21          THE COURT:  Are those facts true in every respect?

22          THE DEFENDANT:  Yes, Your Honor.

23          THE COURT:  Tell me what it is that you did that

24  makes you guilty of aiding/abetting in the offense that you've

25  been charged with.

1          THE DEFENDANT:  Your Honor, in 2017 and 2018, I

2     started working with the others who are described in

3     paragraph 8 of the plea agreement to aid and assist their

4     efforts to work for the foreign nationals also described in the

5     agreement.

6          I knew that work would include the others contacting

7     officials in the U.S. government.  I also knew that the Foreign

8     Agent Registration Act required disclosure of such contact

9     unless there were exceptions that applied.

10         As the work continued on, I realized that the contacts

11    being made required registration under FARA, but I deliberately

12    avoided taking the steps necessary that might confirm what I

13    had suspected, that registration was required.  I then

14    willfully failed to register

15         THE COURT:  All right.  And when you took these

16    actions, were you in the United States?

17         THE DEFENDANT:  Yes.

18         THE COURT:  Okay.  Is there anything else,

19    Mr. Keller, that you'd like me to go over with Ms. Davis?

20         MR. KELLER:  No, Your Honor.  I believe -- I believe

21    that provides a sufficient factual basis for the offense.

22         THE COURT:  Mr. McCorriston, are you aware of any

23    reason why the court should not accept your client's plea of

24    guilty to the one count in the Information?

25         MR. MCCORRISTON:  I have none.

1          THE COURT:  I'm going to ask you now, Ms. Davis,

2    with regard to the charge against you which charges you -- the

3    Information, which charges you with aiding and abetting

4    violations of the Foreign Agents Registration Act, Title 22,

5    United States Code, Sections 612 and 618(a), for your work on

6    behalf of a foreign national and a foreign minister for the

7    purpose of lobbying the administration of the President of the

8    United States and the United States Department of Justice to

9    drop an investigation into the foreign national and arrange for

10   the removal and return of a separate foreign national to a

11   foreign nation, how do you plead to this charge?  Guilty or not

12   guilty?

13          THE DEFENDANT:  Guilty, Your Honor.

14          THE COURT:  The court finds that Ms. Davis is fully

15   competent and capable of entering an informed plea, that her

16   plea of guilty is knowing and voluntary and contains admissions

17   of fact containing each of the essential elements of the

18   offense charged against her in the Information.

19          I therefore accept her plea of guilty to the Information.

20          I reserve acceptance of the plea agreement until after

21   the Presentence Investigation and Report is received and

22   reviewed by the court.

23          Further, any acceptance of the plea agreement will not

24   include any waiver of prosecutorial misconduct or judge-created

25   error not known by Ms. Davis at the time of pleading guilty.

UNITED STATES DISTRICT COURT

24

1          So, Ms. Davis, I'm ordering our probation to prepare the

2     Presentence Investigation Report.  This is the document about

3     you and your case.  They -- it will assist me in determining

4     your sentence.

5          The probation officer will need to interview you.  If you

6     wish, your attorneys can be present during that interview.

7     Once that report's completed, you'll be able to review a draft

8     or file any comments or objections to the contents of that

9     report.

10          And before I decide your sentence, your attorney and the

11     attorneys for the government will be able to speak with regard

12     to what is an appropriate sentence for you.  You yourself will

13     be given an opportunity to speak on your behalf, if you wish.

14     If you choose not to, it certainly won't be held against you.

15          And then I'll take all of that information and use it to

16     fashion a sentence that is sufficient, but not greater than

17     necessary, to meet the goals of sentencing

18          All right.  So I do have the Pretrial Services' report in

19     this matter.  We need to address her presentence status.  Any

20     corrections or objections to anything in the report?

21          MR. MCCORRISTON:  No, Your Honor.

22          MR. LOWELL:  I'm sorry.  Mr. McCorriston, you want

23     to start and give it to me or how do you want to proceed?

24          THE COURT:  Well, first of all, where's Ms. Davis's

25     primary residence?  Is it here in Hawaii or is it in Beverly

1    Hills?

2              MR. MCCORRISTON:  Currently her primary residence is

3    in Los Angeles, although she does have a home in Hawaii as

4    well.

5              THE COURT:  Okay.  My concern is if she's spending

6    the majority -- so what's the split of her time between L.A.

7    and Honolulu?  It makes no sense for our people to be

8    supervising her if the majority of time is going to be in

9    Central District.

10             MR. MCCORRISTON:  I -- her daughter, who's in first

11   grade, is at home and school at California.  So at least for

12   the school year her primary residence is going to be in

13   California.

14             THE COURT:  All right.  Well, is she an in-person or

15   is she doing it distance?  'Cause she can be in Hawaii if she's

16   doing it distance.

17             THE DEFENDANT:  It's half and half.

18             THE COURT:  It's half and half?  Okay.  So she is

19   partly in person.

20             THE DEFENDANT:  Uh-huh.

21             THE COURT:  All right.  And today, Ms. Davis, are

22   you in Honolulu or are you in Los Angeles?

23             THE DEFENDANT:  I'm in Los Angeles, Your Honor.

24             THE COURT:  All right.  So -- and why that's

25   relevant is that for her to be able to execute the bond and the

1    conditions of release, you know, normally we would send her to

2    the marshals here in the District of Hawaii, but if she's not

3    here, then, you know, Pretrial Services is going to have to

4    make arrangements with, you know, the Central District of

5    California and their Marshals Services.

6              MR. LOWELL:  Your Honor, may I jump in and -- for

7    clarification on that?

8              THE COURT:  Yes.

9              MR. LOWELL:  Thank you.  Yes, Your Honor's exactly

10   correct.  We have talked to the government about all these

11   matters because as you can see from the plea agreement,

12   Ms. Davis has been and is in a cooperation mode with the

13   government.  And given her location, depending on what Your

14   Honor wants, given the issues of what will be the release

15   conditions, she can certainly keep in touch with the Pretrial

16   Services office in Hawaii no matter where she is, as something

17   that might make sense given that that's where you are.

18              And then in terms of processing, we understood that we

19   need to make arrangements with the individual marshal and/or

20   other officials in Los Angeles, which we would do subsequent to

21   our hearing today, figuring we'll work with government,

22   Mr. Keller and Mr. Sorenson and their colleagues in Los Angeles

23   as to how to get that done.

24              THE COURT:  Well, the problem that I have is how are

25   my Hawaii people supposed to do a home inspection in Beverly

UNITED STATES DISTRICT COURT

1    Hills?

2         MR. LOWELL:  Understand that.  That certainly would

3    need to be done at the location that she's going to be -- at

4    least the L.A. part, with whatever they need to do in L.A., and

5    we'll make arrangements for that given that there will be over

6    the course of time locations both.

7         In terms of, for example, sentencing, et cetera, Your

8    Honor, as you will imagine -- Mr. Keller will be able to speak

9    to this better than I -- there is going to be work to be done

10   before that day occurs, and if there's supposed to be

11   inspections, then I suspect Hawaii will look at the Hawaii

12   residence and will figure out with you or Pretrial Services who

13   in Los Angeles should be involved.

14        On the other hand, because the conditions are going to,

15   we hope, be recommended by the government and Pretrial Services

16   are of the kind there won't be as much work necessary as there

17   might be in other cases.

18        THE COURT:  Right.  I mean, it's not like she's

19   going to have to go through drug testing.  That certainly

20   hasn't been recommended.

21        But my concern with regard to that is if we have to ask

22   for courtesy supervision through the Central District, you

23   know, they don't have to accept it.  If so, then she's going to

24   be ordered to stay within the District of Hawaii and she'll

25   have to primarily be here.  That's what the problem is with

UNITED STATES DISTRICT COURT

1  regard to that.

2      All right.  So what I propose is that we go forward

3  today, we set the conditions of release, and then our Pretrial

4  Services then will discuss with Ms. Davis and determine whether

5  or not they're going to have to seek courtesy supervision

6  through the District of -- Central District of California.

7      So between now and the end of the school year, I mean

8  until the holidays for sure, it's going to be a hundred percent

9  then in the District of -- of the Central District?

10     MR. MCCORRISTON:  Well, that brings up with regard

11  to Ms. Davis's business and her passport, she has a company

12  that does work in foreign countries.  We've talked to the

13  government about Ms. Davis keeping her passport --

14     THE COURT:  Absolutely not.  Absolutely not.

15  Absolutely not.  No foreign travel.  And if you guys are going

16  to ask for foreign travel, the passport's going to stay with

17  Pretrial Services.  If you want foreign travel, you have to

18  file a motion and you have to have a specific reason where

19  she's going to be, why she's traveling there, every place she's

20  going to stay, when she's going to get there, and when she's

21  going to come back -- all right? -- every time.

22     MR. LOWELL:  Judge, I hear you, but can I just --

23     THE COURT:  You know, you got to pick one of you to

24  address this.  I'm not going to address like five different

25  people talking on her behalf.  All right.  So it's either

1   Mr. Lowell or Mr. McCorriston.  Who's it going to be with

2   regard to the Pretrial Services?

3           MR. MCCORRISTON:  Okay.  Mr. Lowell.

4           MR. LOWELL:  I'm sorry, Judge.  I was waiting to

5   understand how you wanted to proceed on this.

6       I just -- before Your Honor puts any pen to paper at

7   least, the government and we addressed the issue.  And then

8   whatever the judge -- whatever you rule, you rule.

9       Even as recently as last week, in the mode of Ms. Davis

10  working with the government, she was out of the United States

11  doing her business.  Her business is international in nature,

12  and --

13          THE COURT:  I'm sorry, Mr. Lowell, let me just

14  interrupt there.  Last week she was not under Pretrial Services

15  conditions because I hadn't imposed any.  So I don't care what

16  you and the government have agreed to.  This is my obligation

17  to secure the safety of the community as well as the risk of

18  nonappearance.

19          MR. LOWELL:  Right.

20          THE COURT:  So whatever deals you have with the

21  government, the government wants her to travel all over the

22  world because she's cooperating, that's their kuleana.  Okay?

23      But my kuleana is to look at safety of the community and

24  the risk of nonappearance.  So what I'm telling you is I don't

25  care that Mr. Keller wants her or has no problem with her

1   running around the world; she's not going to do it while she's

2   on pretrial release in this case.  This is a serious offense

3   and, you know, why should she be treated because she has money

4   and position better than the other defendants that we have who

5   have other kinds of offenses?  We don't let them travel, even

6   domestically, without prior approval of the court.  They don't

7   keep their passports.  So that's not going to happen.

8            MR. LOWELL:  Then I -- I know that you've already

9   made your statements, but I'd still like the Court to have the

10  benefit of a few more sentences, if you'll let me.

11           THE COURT:  I will.  But I just want to let you know

12  that I'm not going to approve any foreign travel without having

13  the specifics of the travel, and she's not going to keep her

14  passport.  It's going to be kept in the District of Hawaii.

15           MR. LOWELL:  I understand.  And of course --

16           THE COURT:  If you want to make your record and you

17  want to take an appeal later on after, you know, she's been

18  sentenced, you can.

19           MR. LOWELL:  Mostly I just want the Court to have

20  all the facts, and that's what I'm seeking today.  And it won't

21  take me very long just to lay some of those facts on you.

22       I couldn't agree more with the Court's decision as to

23  what basis release is supposed to be determined on, which are

24  two factors:  danger to the community and risk of flight.  And

25  it is not that I have any deal with Mr. Keller or Mr. Sorenson,

1    but they could address the issue of whether she is a risk of

2    flight or whether she's a danger to the community.

3         We're not asking that she be treated differently or

4    specially based on either her education or her income.  We're

5    basically asking that she be treated the same based on the

6    factors of whether she's a flight risk and whether she's a

7    danger to the community.  And the government and we agree about

8    that.

9         As to your restrictions, we had said to the government

10   and Pretrial Services she certainly would need to seek for

11   international travel notice and approval.  We thought it was of

12   Pretrial Services.  We didn't know it would be of the Court.

13   We were going to notice the government and Pretrial Services,

14   and that seemed perfectly reasonable.

15        In terms of passports, I have in my possession now, as

16   counsel, the passports of other people that I am advising, with

17   the approval of the government and Pretrial Services for any

18   international travel that's noticed and approved; that's where

19   they can get it just as a matter of convenience.  As an

20   example, she's going to be in Los Angeles for the betterment of

21   this period of time, then her passport could be either in the

22   possession, I guess, of Pretrial Services there, or we, as

23   custodians, as I've done in so many other cases, Judge, counsel

24   would hold it pending the approval of that travel by Pretrial

25   Services and the government.

1    But I wanted to address the issue of flight risk and

2   danger because at least there, the government, who has known of

3   Ms. Davis and known what she has been doing, can address that,

4   if Your Honor wants.

5    But those are the two issues.  And I didn't want to be

6   misunderstood that I was seeking anything special.  I just

7   wanted to address those issues because those are the factors as

8   you pointed out.

9    THE COURT:  Thank you.  I do think you're asking for

10   special conditions because we don't have that for almost any

11   other defendant that's in the District of Hawaii.  They don't

12   get to travel without prior court approval.

13    And I need to correct you too if you're under the

14   impression that she can travel other than between Hawaii and

15   California 'cause she can't.  She can't go to Nevada.  She

16   can't go to, you know, DC or any other place

17    MR. LOWELL:  Well, Judge, could I address that in

18   terms of counsel?  My offices are in Washington and New York,

19   and she and I -- and Mr. Keller is in Washington where she will

20   likely want to have meetings.  We understood that those travels

21   should be included.  We also thought that to the extent that,

22   for example, she's got ill relatives in Kansas and a sister in

23   Connecticut, again as long as it's listed and as long as it's

24   with notice, and again given that she's no risk of flight, why

25   would it not be possible to enumerate those places, especially

1   those where counsel are, the government are, and where the two

2   family members are, in addition to Hawaii and California?

3   Again, it would be with notice and I don't know that anybody

4   would object.

5           THE COURT:  Well, it will be with notice and it will

6   be with approval of Pretrial Services.  So you can't do it

7   without approval of Pretrial Services, domestically.

8           MR. LOWELL:  Okay.  I understand what you're saying.

9   I just wanted to put on the record --

10          THE COURT:  I'm sorry.  I'm sorry.  You can't have

11  it without my approval, domestically and foreign travel.  So if

12  she wants to go to Kansas, then you guys got to file a motion,

13  got to give me exactly where she's going to be, who she's going

14  to be with, what are the dates of travel, when is she going to

15  return, and then I'll look at it and I'll approve it.

16          MR. LOWELL:  And with respect to meetings with

17  counsel --

18          THE COURT:  Same thing.

19          MR. LOWELL:  -- and with the government?

20          THE COURT:  Same thing.

21          MR. LOWELL:  We need your approval for that?

22          THE COURT:  Yes.  If she wants to go outside of the

23  states of California and Hawaii, then you need to get court

24  approval from me, and then Pretrial Services will be directed

25  to permit it.

1          I think flights go both ways, so if you guys want to fly

2     to her and for some reason I don't approve it or you can't get

3     the request to me, I think that's something that you might be

4     able to do.

5          MR. LOWELL:  Well, I understand your point.  I hope

6     you'd be -- consider when we have those needs and the

7     government has those needs, you'll hear us out as to the best

8     way to accomplish those.

9          THE COURT:  Absolutely.  I don't think -- obviously

10    that's a perfectly legitimate purpose, and as long as those

11    dates are enumerated and, you know, I'll consult whether there

12    needs to be an ankle bracelet or whatever other recommendations

13    that might be made, we'll take a look at that, like we do in

14    every other case, whether it's a drug, you know, trafficking

15    charge or a tax fraud or what have you.  We do this in almost

16    every case that I've had.

17         MR. LOWELL:  Of course.  And again, you set it out

18    and I tried to be responsive to Your Honor that the factors

19    that look into consideration of these conditions, like the

20    unsecured bond, whatever travel restrictions, reporting to

21    Pretrial Services, are really just based on your two factors:

22    Is she a risk of flight?  Is she in any way a danger to

23    community?

24         I guess the government, as I said, could respond to both

25    as well.  But I appreciate your -- what you've said to us.  I

UNITED STATES DISTRICT COURT

1    just needed to make sure that I, as counsel, explain some of

2    the things I've explained, including how she has behaved over

3    the last months while she knows that this was happening, how I

4    am located, where Mr. Keller is located, in addition to Hawaii

5    and California, and where family members that are located.  And

6    if in all those Your Honor seeks us to put you on notice and

7    seek your approval, of course that's what we'll do.  I just

8    wanted to put on the record the states and the two factors and

9    to assure you, as I've assured Pretrial and as Ms. Davis has

10   and as the government would, our view on those two critical

11   factors.

12        THE COURT:  Thank you.  And my view on the critical

13   factors is she is a high risk of nonappearance.  She has

14   foreign travel.  She has access to, you know, finances that

15   could finance and she could disappear.  That's not often what

16   we see on the charges in the defendants that are brought in

17   this district.

18        I agree on the danger to the community in terms of

19   violence, that's on the low end, but the reasons for requiring

20   the travel restrictions is because the court's determination is

21   that she has a high risk of nonappearance

22        MR. LOWELL:  Again, Judge, I appreciate your -- I'm

23   sorry.  Are you still there?

24        THE COURT:  Yes.

25        MR. LOWELL:  I'm sorry.  I appreciate your view, but

1   you'll understand, with deep respect, given her lack of a

2   criminal record, cooperation with the government, her

3   performance over the last months, her having a 6-year-old

4   daughter extent in the United States, her relatives including

5   those who are ill, her ties both in terms of job, education,

6   property, when you say she's a "high risk," I just have to,

7   because I would be faulty in my job if I didn't say, that I

8   think that the record would not support that conclusion.

9        However, having said that, if you understand that what

10  we're seeking is the ability for her to perform under the plea

11  agreement and have the need to contact Pretrial Services and

12  you, that's what we'll do.  I hope you'll then be able to see

13  that she is not anything close to what you said, and we'll go

14  from there.

15       THE COURT:  Well, with all due respect, Mr. Lowell,

16  I disagree with you completely, and it's my determination that

17  she is a high risk of nonappearance.  She has access, again I

18  said, to great finances.  This is a serious charge that most

19  likely will involve some prison time.  So I'm sure she's not

20  going to be -- you know, and she has access to foreign travel

21  very easily.

22       There are many defendants in our district who've never

23  traveled from this island, much less to a neighbor island.  So

24  I don't worry about them, you know, going to some country that

25  we don't have some kind of treaty with, whether they'll bring

1   them back to stand trial.

2        So, you know, this is the court's determination.  You're

3   not in front of a magistrate judge where you're going to be

4   able to appeal this to a district judge.  So with Mr. Lowell,

5   I'm sorry; that's the determination and I'm going to impose

6   that.  And I don't know what you're going to tell me -- that

7   she's going to perform really well on these conditions?  Yeah,

8   she's going to perform well because she's going to have to run

9   by all of her outside travel between other than the State of

10   Hawaii and California, and that's why she's not going to

11   disappear, hopefully.

12        Now, if there are more restrictive conditions that have

13   to be imposed, I'll be open to that.

14            MR. LOWELL:  Can the government be heard on this as

15   well, Judge?

16            THE COURT:  I don't know what they're going to add,

17   but if they feel that they need to add something on it, I'm

18   happy to hear about it.

19            MR. KELLER:  Your Honor, I'm happy just to clarify a

20   couple points.  One is government is not requesting any

21   international travel as part of Ms. Lum Davis's cooperation.  I

22   just wanted to make sure the record was clear on that.

23        The government's understanding is that Ms. Lum Davis does

24   have certain business ventures that involve international

25   travel, and primarily because of the government's understanding

1   that she was going to be based out of L.A., the government was

2   open to the potential for her passport not to be so difficult

3   for her to obtain practically if the Court were to approve any

4   international travel in terms of her business interests.  So

5   that was the basis for the government's nonopposition to her

6   maintaining control of her passport, not that she'd be able to

7   travel without permission of the Court.  But if the Court were

8   to grant her permission, that it might be difficult for her to

9   actually retrieve her passport if she's in L.A. and the

10  passport is in Hawaii.

11       That's -- that's all the government has to add, Your

12  Honor

13          THE COURT:  Well, I'm willing to have it, if we're

14  going to get courtesy supervision through the Central District,

15  with her passport being held at the Central District Pretrial

16  Services; otherwise, it'll be with Pretrial Services at the

17  District of Hawaii.

18       But again, I don't know that she's going to -- they're

19  going to accept courtesy supervision.  So it really depends on

20  the Central District of California Pretrial Services.  If they

21  do, then I don't have a problem with them holding the passport

22  rather than the District of Hawaii Pretrial Services.

23          MR. KELLER:  Understood.

24          THE COURT:  All right.  So these are the conditions

25  of your release.

1   The court has considered your individualized risk factors

2 and totality of the circumstances and finds there's a special

3 need for the restrictive conditions in order to reasonably

4 assure your appearance as required and the safety of any other

5 person or the community.

6   Further, the court finds these restrictive conditions are

7 consistent with 18 U.S.C., Section 3142(c)(1)(B).

8   There'll be an unsecured bond that you'll execute in the

9 amount of $100,000.

10   You are to comply with Pretrial Services supervision and

11 abide by all conditions of release as directed by Pretrial

12 Services.

13   You are required to inform Pretrial Services within

14 24 hours of any contact with law enforcement, including, but

15 not limited to, any arrests, questioning; excludes incident

16 offense or traffic stop.

17   You're to surrender any passport and all travel documents

18 to the United States Pretrial Services office.  If courtesy

19 supervision is approved by the Central District of California,

20 then that will be their U.S. Probation and Pretrial Services

21 office.  If not, then that'll be surrendered to U.S. Pretrial

22 Services Honolulu for the District of Hawaii.

23   Do not apply for or obtain a passport.  If not convicted,

24 the passport will be returned to you, unless there's need for

25 evidentiary purposes.

40

1          If convicted, Pretrial Services will transfer the

2    passport to the probation office upon disposition of this case,

3    unless otherwise directed by the court.

4          Surrender no later than September 11, 2020.  Travel is

5    restricted to the states of Hawaii and California.  You must

6    notify Pretrial Services in advance of any travel between

7    Hawaii and California.

8          All other domestic and foreign travel requires advance

9    approval of the court by motion.

10          Contact is prohibited directly or indirectly through

11    third parties with co-defendants, co-conspirators, or witnesses

12    in this or any related case.  U.S. Attorney's office will

13    provide Pretrial Services with initial and updated lists of

14    names of persons with whom contact is prohibited.

15          You are prohibited from owning, possessing, or

16    controlling any firearm or ammunition.  Immediately surrender

17    all firearms and ammunition to an agent approved by Pretrial

18    Services.

19          Provide Pretrial Services with any and all requested

20    financial information regarding your financial status,

21    including, but not limited to, employment and all sources of

22    income, bank accounts, assets and liabilities, and investments.

23    You are required to sign and execute an authorization to

24    release financial information as requested by Pretrial

25    Services.

UNITED STATES DISTRICT COURT

1    Pretrial Services is authorized to run credit checks on a

2    random and as-needed basis during the course of supervision to

3    ensure compliance with pretrial release conditions.  You're

4    required to sign and execute any necessary release forms,

5    including, but not limited to, an authorization to release

6    financial information as requested by Pretrial Services.

7    In conjunction with the Ho'okele program, the court

8    authorizes the defendant to participate in voluntary stress and

9    anxiety counseling as arranged by Pretrial Services.

10    You are to comply with the condition -- or the provisions

11    of the Foreign Agents Registration Act.

12    You must abide by all current and future national, state,

13    and county orders relating to COVID-19, to include

14    self-quarantine requirements when traveling to Hawaii.

15    In addition to the special conditions of release as

16    specified -- as I've already specified, you are subject to the

17    following conditions:

18    You must not commit any offense in violation of federal,

19    state, or local law while on release in this case.

20    You shall appear at all proceedings as required and shall

21    surrender for the service of any sentence imposed as directed.

22    You must cooperate with the collection of DNA sample, if

23    authorized, by 42 U.S.C., Section 14135(a).

24    Ms. Davis, do you understand all of these conditions of

25    release?

1                   THE DEFENDANT:  I do.

2                   THE COURT:  Once you sign the bond and the release

3       conditions, all the conditions will be written out.  Once you

4       sign them, you are indicating to the court you understand the

5       conditions of release, and you understand if you violate any of

6       those conditions of release, your pretrial release can be

7       revoked and you will be held detained at the Federal Detention

8       Center Honolulu.

9            Do you understand this?

10                  THE DEFENDANT:  Yes.

11                  THE COURT:  All right.  Mr. Keller, is there

12      anything else we need to address at this time?

13                  THE COURTROOM MANAGER:  You're on mute.

14                  MR. KELLER:  Your Honor, I would just note, without,

15      of course, getting into the details because of the substance,

16      that the parties did also file a signed sealed addendum to the

17      plea agreement.  I just wanted that to be -- to be on the

18      record, and that it's the government's understanding that

19      Ms. Lum Davis has consulted with counsel and third-party

20      counsel with respect to the issues addressed from the sealed

21      addendum.

22                  THE COURT:  So I have a problem with this sealed

23      addendum.  Why is it sealed?

24                  MR. KELLER:  Your Honor, because the

25      references -- the description in the sealed addendum would

UNITED STATES DISTRICT COURT

 1    potentially make it possible for individuals that are -- that

 2    are referenced there, although they are not referenced by name,

 3    to figure out that they are potential subjects of the

 4    government's investigation given -- given the lengths that are

 5    set forth in the sealed addendum, Your Honor.

 6            THE COURT:  Well, I don't see any names that are

 7    listed, so I don't understand that aspect of it.  But I won't

 8    address it.  You didn't seek court approval to file it under

 9    seal.  So if there are any requests to unseal it, I got to tell

10    you at this point I would be inclined to grant it, but I'll

11    leave that for another day.

12            MR. KELLER:  Understood, Your Honor.  I just wanted

13    to ensure that the sealed addendum was on the record as part of

14    the plea agreement.  Thank you, Your Honor.

15            THE COURT:  It's part of the plea agreement?  Okay.

16    I mean, you say it's an addendum, but I'll accept your

17    representation with regard to that.  I just want to point out

18    that that's a concern with regard to the fact that it's filed

19    under seal.  But that may be another thing for us to address at

20    another day.

21            MR. KELLER:  Understood, Your Honor.

22            THE COURT:  All right.  So we'll set the sentencing

23    date and time, Ms. Elkington.

24            THE COURTROOM MANAGER:  Thank you, Your Honor.

25            Sentencing will be set for Wednesday, January 20th, 2021,

UNITED STATES DISTRICT COURT

1    at 11:00 A.M.

2             THE COURT:  All right.  That's the sentencing date

3    and time.  Any questions or clarifications needed, Mr. Keller?

4             MR. KELLER:  No, Your Honor.

5             THE COURT:  Mr. Lowell?

6             MR. LOWELL:  No, Your Honor.

7             THE COURT:  Mr. Minkin -- I mean, Mr. McCorriston?

8             MR. MCCORRISTON:  Neither of us.

9             THE COURT:  All right.  Very good.  All right.  So

10   you folks need then to contact Ms. Arima-Linscott and find out

11   how the bond and the papers are going to get -- that is, the

12   pretrial release conditions are going to be processed.  And

13   then it sounds like you want her to seek courtesy supervision

14   by the Central District of California, so you need to contact

15   her and work with her with regard to those things.

16           And once that's determined, then, Ms. Davis, you need to

17   report to the marshals office most likely at the Central

18   District of California, execute the bond and the release

19   condition papers, and to turn over your passport with regard to

20   that.

21           All right.  If nothing further, then we are in recess.

22   Good day, everyone.

23             THE COURTROOM MANAGER:  Court is adjourned.

24             (Proceedings concluded at 11:55 A.M.)

25

UNITED STATES DISTRICT COURT

```
 1                 COURT REPORTER'S CERTIFICATE

 2

 3            I, DEBRA READ, Official Court Reporter, United

 4   States District Court, District of Hawaii, do hereby certify

 5   that pursuant to 28 U.S.C. §753 the foregoing is a complete,

 6   true, and correct transcript of the stenographically reported

 7   proceedings held in the above-entitled matter and that the

 8   transcript page format is in conformance with the regulations

 9   of the Judicial Conference of the United States.

10            DATED at Honolulu, Hawaii, October 14, 2020.

11

12

13                      /s/ Debra Read

14                 DEBRA READ, CSR CRR RMR RDR

15

16

17

18

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT