# EXHIBIT 1

AO 110  (Rev. 06/09; DC 4/10) Subpoena to Testify Before a Grand Jury

# UNITED STATES DISTRICT COURT

for the

District of Columbia

## SUBPOENA TO TESTIFY BEFORE A GRAND JURY

To:   Nickie Lum Davis

**YOU ARE COMMANDED** to appear in this United States district court at the time, date, and place shown below to testify before the court's grand jury.  When you arrive, you must remain at the court until the judge or a court officer allows you to leave.

| Place: | United States District Court<br>333 Constitution Avenue N.W.<br>Washington, DC 20001<br>GJ # 18-2 | Date and Time:<br><br>07/24/2018 9:00 am |
|---|---|---|

You must also bring with you the following documents, electronically stored information, or objects *(blank if not applicable)*:

Please see Attachment A.

In lieu of personal appearance, you may provide the documents specified in the attachment to Federal Bureau of Investigation Special Agent Justin McNair.  You may contact SA McNair at ▆▆▆▆▆▆▆ or at ▆▆▆▆▆▆▆▆ to arrange production.

Date:   07/09/2018

ANGELA D. CAESAR, CLERK OF COURT

*Evette Saunders*

Signature of Clerk or Deputy Clerk

The name, address, e-mail, and telephone number of the United States attorney, or assistant United States attorney, who requests this subpoena, are:
Ryan Ellersick, Trial Attorney
Public Integrity Section, Criminal Division
United States Department of Justice
1400 New York Ave NW, Washington, DC 20005
▆▆▆▆▆▆▆▆

AO 110  (Rev. 06/09; DC 4/10)  Subpoena to Testify Before Grand Jury (Page 2)

**PROOF OF SERVICE**

This subpoena for *(name of individual or organization)* _____

was received by me on *(date)* _____ .

❒   I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❒   I returned the subpoena unexecuted because: _____

_____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

## <u>ATTACHMENT A</u>

Nickie Lum Davis

**<u>Records to be Produced</u>**

A.  For the period of October 1, 2016, through the present, all records relating in any way
     to the following individuals and/or entities (including any predecessor entities):



|     |     |
| --- | --- |
| 1.  | Elliott Broidy |
| 2.  | Prakazrel "Pras" Michel |
| 3.  | Low Taek Jho (aka "Jho Low") |
| 4.  | |
| 5.  | |
| 6.  | |
| 7.  | |
| 8.  | |
| 9.  | George Higginbotham |
| 10. | |
| 11. | |
| 12. | |
| 13. | |
| 14. | |
| 15. | |
| 16. | |
| 17. | |
| 18. | |
| 19. | |
| 20. | Anicorn, LLC |
| 21. | Artemus, LLC |
| 22. | |
| 23. | |
| 24. | |
| 25. | |
| 26. | |
| 27. | |
| 28. | 1 Malaysia Development Berhad ("1MDB") |
| 29. | Malaysia |
| 30. | |
| 31. | |
| 32. | |
| 33. | |
| 34. | |
| 35. | |
| 36. | |
| 37. | |

38.    █████

B. Transfers of funds to/from any and all accounts owned or controlled by █████ between May and August 2017.

C. For the period of October 1, 2016, through the present, all records relating in any way to the following:  Contacts and/or communications with or attempted contacts and/or communications with current and/or former U.S. government officials (or their agents or intermediaries) and/or Chinese government officials (or their agents or intermediaries) regarding any of the individuals and entities listed in Paragraph A.

D. Any and all records related to or referencing registration, non-registration, and/or registration requirements under the Foreign Agents Registration Act of 1938, including but not limited to agreements, correspondence, and memoranda.

**Definitions**

1. The term "records" refers to any record in your possession, custody, or control, and it includes all drafts or unfinished versions of documents.

2. The term "records" includes writings or records of every kind or character conveying information by mechanical, electronic, photographic, or other means, whether encarded, encrypted, taped, stored, or coded electrostatically, electromagnetically, or otherwise.

3. The term "records" includes, but is not limited to:  emails; text messages; instant messages; correspondence; memoranda; calendar entries; notes; accounting, billing, or time management records; bank statements; wire confirmations; documentation of cash payments; invoices; other financial records; books of account; working papers; check requests; telephone records; telephone messages; telephone message logs or slips; date books; interoffice communications; office notes; any electronic media and papers similar to any of the foregoing.

**Privileges**

If a record demanded by this subpoena is withheld under a claim of privilege, or is otherwise withheld, provide the following information regarding the record: (1) its date; (2) the name and title of its author(s); (3) the name and title of each person to whom it was addressed, distributed, and disclosed; (4) the number of pages; (5) an identification of any attachments or appendices; (6) a general description of its subject matter; (7) its present location and the name of its present custodian; (8) the paragraph of this subpoena to which it is responsive; and (9) the nature of the claimed privilege or other reason the document is withheld.

**RECORD FORMAT: Records are requested to be provided in electronic format via email attachment files or on compact disks (CDs) if the information listed above is stored electronically.**

All documents produced and any questions can be directed to:

Special Agent Justin McNair (C44)
Federal Bureau of Investigation
26 Federal Plaza, 23rd Floor
New York, NY  10278
Email: ███████████████
Phone: ███████████

## __Advice of Rights__

You have been subpoenaed to appear before a federal grand jury.  This notice is provided to you in order to provide helpful background information about the grand jury.  The grand jury consists of from sixteen to twenty-three persons from the District of Columbia.  It is their responsibility to inquire into federal crimes which may have been committed in this District.   The grand jury is conducting an investigation of possible violations of federal criminal laws involving, but not necessarily limited to, 18 U.S.C. §§ 371 and 1956, and 22 U.S.C. § 611, *et seq.*, for conspiracy to interfere or obstruct lawful government functions through dishonest means, conspiracy to act as an unregistered foreign agent, conspiracy to commit international promotion money laundering by funneling proceeds from overseas into the U.S. to promote violations of the Foreign Agents Registration Act (FARA), and substantive violations of the foregoing statutes.  Your conduct is being investigated for possible violations of these laws.

You have been asked to produce records and documents.  You are advised that the destruction or alteration of any document required to be produced before the grand jury constitutes a serious violation of federal laws, including but not limited to obstruction of justice.

Anything that you produce may be used against you in a subsequent legal proceeding.

EXHIBIT 2



**U.S. Department of Justice**

Criminal Division

*Public Integrity Section*                                   *Washington, D.C. 20530*

## PROFFER AGREEMENT

The United States of America, represented by its undersigned attorneys, and Nickie Lum Davis enter into this proffer agreement with respect to a proffer to be made by Davis to agents and attorneys of the United States concerning Davis's knowledge about matters that are the subject of the instant criminal investigation.

1.  Davis will answer honestly, truthfully and completely all questions posed to her by agents and attorneys of the United States.

2.  By discussing these matters and by accepting Davis's proffer, the United States does not at this time intend in any way to agree to, or represent that it will, confer immunity upon Davis for any possible federal criminal acts committed by her, or enter into a cooperation agreement with Davis, or make a motion on Davis' behalf, nor has the United States made any representation or agreement about the disposition of any federal criminal charges which might be filed against her.

3.  Should any prosecution be brought against Davis by the United States, the United States will not offer in evidence in its case-in-chief against Davis, or at sentencing of Davis, any statements made by Davis pursuant to this proffer agreement, except: (A) in a prosecution for false statements, obstruction of justice, or perjury, premised on statements or actions in any meeting pursuant to this proffer agreement; or (B) as noted in paragraph 5.

4.  The United States can use information derived from statements by Davis under the proffer agreement directly or indirectly for the purpose of obtaining leads to other evidence, which evidence may be used by the United States against Davis in any prosecution of her.

5.  Should any prosecution of Davis be undertaken, the United States may use Davis's statements as substantive evidence for the purpose of cross-examination of her should Davis testify at any phase of trial or sentencing.  The United States may also use Davis's statements as substantive evidence to rebut any evidence, factual assertions, or arguments offered by or on behalf of Davis at any phase of trial or sentencing.

6.  The provisions of Rule 410 of the Federal Rules of Evidence and Rule 11(f) of the Federal Rules of Criminal Procedure do not apply to any statements made by Davis or any evidence derived from those statements, and Davis waives any right to challenge the admissibility of such evidence under either of these rules.

Dated:  6-18-19

FOR THE UNITED STATES

John D. Keller
Deputy Chief
Public Integrity Section
Criminal Division
U.S. Department of Justice

Ken Sorenson
Assistant United States Attorney
United States Attorney's Office
District of Hawaii

Nikhila Raj
Trial Attorney
Fraud Section
Criminal Division
U.S. Department of Justice

FOR THE WITNESS

Abbe David Lowell
Counsel for Nickie Lum Davis

# EXHIBIT 3

- 1 of 2 -

FD-302 (Rev. 5-8-10)

**FEDERAL BUREAU OF INVESTIGATION**

Date of entry _08/27/2019_

On August 26, 2019, at approximately 9:30a HST, Attorneys John Keller, Nicole Lockhart, and James Mann with the Department of Justice (DOJ) Public Integrity Section, Assistant United States Attorney (AUSA) Ian Richardson with the Eastern District of New York, and Special Agents Megan Crawley and Mary Craver with the Federal Bureau of Investigation (FBI) (collectively referred to as "the Government") spoke telephonically with Abbe Lowell (Lowell), Ross Kramer, and Jennifer Porter from Winston & Strawn LLP, 1700 K Street N.W., Washington, D.C. 20006-3817. Lowell currently represents Nickie Lum Davis (LUM DAVIS) for the matters relating to the captioned investigation.

The Government is aware that Abbe Lowell represents, or has represented ████ (██) and has concerns of a conflict of interest between that representation and that of LUM DAVIS. The Government expressed that such conflict, if not addressed preemptively, could lead to issues surrounding any potential judicial outcome for LUM DAVIS.

Lowell informed the Government that ██ is not currently in the United States and is not planning to return as far as Lowell knows, and therefore Lowell believes no conflict exists. Lowell has "not had any contact with ██ to be able to represent him." As far as Lowell understands, LUM DAVIS' contact with ██ was minimal anyway.

Lowell did represent ██ "x years ago" regarding a currency violation when ██ was being "tailed in Manhattan." When asked if he currently represents ██, Lowell was unclear what the Government meant by "represent" and therefore would not answer. The Government explained that some attorneys draft termination letters to officially document the termination of an attorney-client relationship, but Lowell stated there was no such letter and "nothing like that" was ever issued to ██.

Lowell was not aware LUM DAVIS had any contact with ██ until the

Investigation on _08/26/2019_ at _Kapolei, Hawaii, United States (Phone)_

File # _58J-HN-2088847, 200D-HN-2095633_   Date drafted _08/26/2019_

by _Megan Crawley, Mary C Craver_

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

FD-302a (Rev. 5-8-10)

58J-HN-2088847

Continuation of FD-302 of (U) Conference call with Abbe Lowell                              , On 08/26/2019 , Page   2 of 2

Government asked her about it in her proffer interviews.

Lowell is not ██'s general counsel. He represented ██ when ██ was in the United States. The matter Lowell counseled ██ on was not directly related to ██. Lowell does not understand what conflict might exist since he does not have a duty to report anything to someone he represented three (3) years ago.

When asked if Lowell currently represents ██████ (██), Lowell responded that he cannot answer whether he has ever given legal advice to ██, but that hypothetically, if he was retained by ██ to offer legal advice on his business and whether his daughter should take over the business, that has no bearing on LUM DAVIS' case and therefore would not generate a conflict. According to Lowell, he has no obligation to tell ██ or ██ what LUM DAVIS is reporting to the Government in her proffer interviews, even when the information directly relates to them. Lowell stated he did not engage in "traditional legal representation" with ██ and/or ██.

At another point in the conversation, Lowell indicated his representation of ██ and/or ██ was in existence at the time of ██'s arrest [the Government knows this to be the time period surrounding September 2015]. Lowell discussed visiting ██ but did not elaborate further.

Before the conclusion of the phone call, the Government asked Lowell if he was currently representing ██ or ██ to which Lowell replied, "I can't answer that question. I won't tell you what my client relationships are or what legal advice I have given to whom."

# EXHIBIT 4

FD-302 (Rev. 5-8-10)

- 1 of 2 -

**FEDERAL BUREAU OF INVESTIGATION**

Date of entry    09/23/2019

On August 28, 2019, at approximately 08:00a HST, Attorneys John Keller and Nicole Lockhart with the Department of Justice (DOJ) Public Integrity Section, Assistant United States Attorney (AUSA) Ian Richardson with the Eastern District of New York (EDNY), and Special Agents Megan Crawley and Mary Craver with the Federal Bureau of Investigation (FBI) (collectively referred to as "the Government") spoke telephonically with Abbe Lowell (Lowell) and Ross Kramer from Winston & Strawn LLP, 1700 K Street N.W., Washington, D.C. 20006-3817. Lowell currently represents Nickie Lum Davis (LUM DAVIS) for the matters relating to the captioned investigation.

Lowell requested this conference call to follow up on the previous discussion between Lowell and the Government which took place on August 26, 2019. Lowell felt the call initiated by the Government on August 26, 2019, was "an ambush". Lowell felt the Government had interrogated him during the previous call with questions Lowell could not answer ethically, and he believed the Government should have disclosed the topic of the call ahead of time. The Government assured Lowell it was not intended as an ambush. The Government did not believe the topic would surprise Lowell, considering certain names which were on the attendee list for the call, including EDNY AUSA Ian Richardson, whom Lowell knew to be involved in matters relating to ▮ and ▮. Lowell agreed perhaps he should have intuited that, but he did not, and was caught off guard. Lowell stated he now had a chance to think about it, and wished to make "unequivocal statements" as documented herein.

Lowell acknowledged the Government has a legitimate concern [regarding Lowell's current and/or previous representation of ▮▮▮▮▮ (▮) and/or ▮▮▮▮ (▮), and those relationships may present a conflict of interest in Lowell's representation of LUM DAVIS]. Lowell stated he has no relationship with ▮ or ▮ that would interfere with his representation of LUM DAVIS. Lowell has no relationship that would require him to tell ▮ or ▮ anything

---

Investigation on  08/28/2019  at  Kapolei, Hawaii, United States (Phone)

File #  58J-HN-2088847, 200D-HN-2095633                    Date drafted  09/05/2019

by  Mary C Craver, Megan Crawley

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

FD-302a (Rev. 5-8-10)

58J-HN-2088847

Continuation of FD-302 of   (U) Follow-up conference call with Abbe
Lowell on August 28, 2019 , On 08/28/2019 , Page 2 of 2


LUM DAVIS says about the topics the Government has discussed or will discuss
with LUM DAVIS.  Lowell believed that in any event, whatever LUM DAVIS has
to say about ▮ and ▮ would be benign.  Furthermore, Lowell assured the
Government that LUM DAVIS is already aware of Lowell's relationship with
▮ and ▮.

   Lowell added this may be a purely academic exercise, as he was under the
impression the parties were at an impasse after the last LUM DAVIS proffer
session (held on July 30, 2019) and the subsequent discussions Lowell had
with the DOJ Public Integrity Section.

   Lowell recalled he spoke with EDNY AUSA Ian Richardson about ▮ and/or
▮ approximately four years prior on an "unrelated" matter.  The Government
stated it was still unclear as to what relationship Lowell has or had with
▮ and ▮; the Government believed it was more recent than what Lowell's
statements indicated.  Lowell responded, "By making the unequivocal
statements I've made, that should address your concerns."  Lowell stated he
could not tell the Government about people Lowell has spoken to in the
course of the representation, as it would be violating his attorney-client
work product.

   Lowell has known LUM DAVIS "for a while".  When this latest
representation emerged, Lowell made sure LUM DAVIS knew about other people
who might be in the same realm.  Lowell had no idea ▮ was one of those
people, and had no idea of any connections between LUM DAVIS, ▮, and ▮
until the Government asked LUM DAVIS about them.  Lowell addressed it with
LUM DAVIS once ▮ came up.  Lowell encouraged LUM DAVIS to consult a third
party regarding this specific issue, and LUM DAVIS did conduct such a
consultation.  Lowell had another conversation with LUM DAVIS on August 26,
2019, following the first conference call in which the Government raised
concern over an apparent conflict; LUM DAVIS is comfortable with Lowell's
prior relationship.

   Lowell reiterated that unequivocally, there is no conflict.  Lowell
suggested the parties take "a timeout for a measurement", as things have
gone "sideways".

# EXHIBIT 5

| | |
|---|---|
| **From:** | Claffee, Scott (NSD) |
| **Sent:** | Monday, April 6, 2020 1:45 PM |
| **To:** | adlowell@█████████ |
| **Cc:** | Van Grack, Brandon (NSD); Hunt, Heather H. (NSD) |
| **Subject:** | Letter from DOJ FARA Unit |
| **Attachments:** | AL FARA LOI 04.06.20.pdf |

Dear Mr. Lowell,

Please see the attached correspondence on behalf of the FARA Unit of DOJ's National Security Division.

Best regards,

**Scott A. Claffee**
Trial Attorney
Counterintelligence & Export Control Section
U.S. Dept. of Justice, National Security Division
*Currently assigned to the New York metropolitan area*
NY: █████████
DC: █████████
Mobile: █████████

# EXHIBIT 6

| | |
|---|---|
| **From:** | Keller, John (CRM) |
| **To:** | Richardson, Ian (USANYE) 1; Van Grack, Brandon (NSD) |
| **Subject:** | Abbe Lowell |
| **Date:** | Thursday, June 18, 2020 3:22:00 PM |

Ian and Brandon,

I hope you are both well.  Could we set a time in the near future to discuss Abbe Lowell?

-John

John D. Keller
Principal Deputy Chief
Public Integrity Section
United States Department of Justice
1331 F St. NW | Washington, D.C. 20004
████████ (Desk) | ████████ (Cell)

# EXHIBIT 7

| | |
|---|---|
| **From:** | Lowell, Abbe <ADLowell@ ████████ |
| **Sent:** | Wednesday, July 1, 2020 9:00 PM |
| **To:** | Keller, John (CRM) |
| **Cc:** | Mulryne, Sean (CRM); Porter, Jennie; Mann, James (CRM); Lockhart, Nicole (CRM) |
| **Subject:** | RE: Lum Davis Call |

John,

Let's set up a call for next Tuesday or Wednesday.  Either morning is fine starting at 10.

Abbe

BTW - Ross has left Winston.


Abbe David Lowell
Partner
Winston & Strawn LLP
1901 L Street, N.W.
Washington, DC 20036
D: +1 ████████
F: +1 ████████

200 Park Avenue
New York, NY 10166-4193

D: +1 ████████

F: +1 ████████

VCard | Email | winston.com


-----Original Message-----
From: Keller, John (CRM) <John.Keller2@usdoj.gov>
Sent: Wednesday, July 1, 2020 9:56 AM
To: Lowell, Abbe <ADLowell@ ████████
Cc: Mulryne, Sean (CRM) < ████████   Porter, Jennie < ████████   Kramer, Ross M.
████████    Mann, James (CRM) ████████ >; Lockhart, Nicole (CRM)
Subject: RE: Lum Davis Call

Abbe,

We'd like to discuss Ms. Lum Davis again with you. I realize that we are on the eve of a summer holiday, so next week is fine.

Maybe sometime the morning of Tuesday, July 7?

I hope that you, your family, colleagues, and clients are all healthy despite the pandemic.

-John


John D. Keller
Principal Deputy Chief
Public Integrity Section
United States Department of Justice
1331 F St. NW | Washington, D.C. 20004
████████ (Desk) | ██████████ (Cell)



-----Original Message-----
From: Lowell, Abbe David <ADLowell@██████████
Sent: Friday, August 23, 2019 10:17 AM
To: Keller, John (CRM) <█████████████████
Cc: Richardson, Ian (USANYE) 1 ████████████████>; Crawley, Megan L. (HN) (FBI) ██████████████;
Porter, Jennie ███████████████>; Kramer, Ross M. █████████████████>
Subject: Re: Lum Davis Call

I am back and 3 PM Monday works fine.

Abbe David Lowell

Partner

Winston & Strawn LLP
1700 K Street, N.W.<x-apple-data-detectors://0/1>
Washington, DC 20006-3817<x-apple-data-detectors://0/1>



D: +1 ████████ <tel:+1%20████████>

F: +1 ████████ <tel:+1%202████████>


200 Park Avenue<x-apple-data-detectors://1/0>
New York, NY 10166-4193<x-apple-data-detectors://1/0>



D: +1 2████████ <tel:+1████████>

F: +1 ████████ <tel:+1%20████████>


VCard<https://protect2.fireeye.com/v1/url?k=47d00ddf-1ba7b1e7-47d7293a-ac1f6b01770e-
6bb3aff45d0370bf&q=1&e=17e7713a-7e6e-4a89-bc28-
4cb0afd041fa&u=http%3A%2F%2Fcontent.winston.com%2Fsitefiles%2Fwsvcards%2F19389.vcf> |

Email<mailto:adlowell@████████████ winston.com<https://protect2.fireeye.com/v1/url?k=14032668-48749a50-1404028d-ac1f6b01770e-0b464d759cd637aa&q=1&e=17e7713a-7e6e-4a89-bc28-4cb0afd041fa&u=http%3A%2F%2Fwww.winston.com%2F>
[Winston & Strawn LLP]

On Aug 23, 2019, at 10:08 AM, Keller, John (CRM) ████████████████████████████wrote:

Abbe,

If you are back next week could we talk  Monday afternoon—say 3:00 p.m. ET?

-John

John D. Keller
Deputy Chief | Public Integrity Section
Criminal Division | United States Department of Justice
1331 F St. NW | Washington, D.C. 20005
██████████ (T) | ██████████ (F)

The contents of this message may be privileged and confidential. If this message has been received in error, please delete it without reading it. Your receipt of this message is not intended to waive any applicable privilege. Please do not disseminate this message without the permission of the author. Any tax advice contained in this email was not intended to be used, and cannot be used, by you (or any other taxpayer) to avoid penalties under applicable tax laws and regulations.

# EXHIBIT 8

| From: | Lowell, Abbe <ADLowell@███████████> |
|---|---|
| **Sent:** | Friday, July 17, 2020 6:23 PM |
| **To:** | Keller, John (CRM) |
| **Cc:** | Porter, Jennie; Sorenson, Ken (USAHI); Mann, James (CRM); Mulryne, Sean (CRM); Lockhart, Nicole (CRM); Man, Christopher |
| **Subject:** | FRE 408, 410 Communication |

All –

I have had the chance to review the fairly detailed materials you sent and have discussions with our client. I thought the first step is to address the issues a little generally before getting into a paragraph by paragraph review.

First, Ms. Davis wants to continue the effort to cooperate and accept appropriate responsibility as she was doing a year ago before our conversations ended. She is eager to help with the overall matter. As our meetings indicated, the DOJ can benefit greatly from her assistance in terms of connecting and explaining events, and reading through the recent materials, it's certain that there are still many more areas where she can assist to connect the dots. As we explained then, she is uniquely positioned to connect things and explain documents, meetings and their context.

Having said that, we have a number of questions about the approach reflected in the drafts. When we talked, you asked if Ms. Davis would be amenable to a conspiracy count and we said a better course would be to consider a substantive FARA violation. However, the statement of facts is written as a conspiracy case in any event and seems to have been copied from such a document whether it was for her or others you may charge. One result is that the recitation portrays her as much more than the least involved person you all stated she was last year. Indeed, it makes her appear to be the mastermind. Whether and when she crossed a line, we discussed that she was always an intermediary because, for example, Pras Michel insisted that only he would talk to Jho Low and ██████ (and the people he knew) and he would not speak directly to Broidy. Second, there are a number of things stated in the drafts that Ms. Davis would not know and would not be able to adopt because of that.

Similarly, as to any charge for Ms. Davis to consider, it would be better for everyone if it was shorter and focused on her conduct and not that of others. The level of detail in this draft is much more than I am used to seeing in such documents. Even if a more detailed recitation is in an information, that each and every one of those lines is in a plea agreement is unnecessary. In addition, my experience tells me that we would all benefit as cases continue not to be locked into this much detail now.

Also as to the way the documents are drafted, we have to focus on when and how Ms. Davis would have crossed any line. As drafted, a great deal of what is presented can be said to have been around efforts in legal proceedings which would not be covered by FARA. We should review everyone's conduct looking to those events for which such a claim could not be made.

As to a plea agreement, once we agree on what line was crossed, we did not discuss that you would include conduct with respect to Malaysia issues and the ████ issue, which is a lot different. Ms. Davis' conduct with respect to the Guo issue was entirely as in intermediary who made no independent contact with anyone, and believed she was working as a U.S. patriot, without financial expectation or interest. She believed she was working in the best interest of the U.S. and to her credit, was a key part in successfully having China release a pregnant U.S. prisoner at the direct request of then Attorney General Jeff Sessions. The text messages show that she wanted the additional prisoners to be released by July 4th - in honor of the United States Independence Day. Also, for perspective, a well-known and very successful businessman you said is not being charged was directly and deeply involved in connecting a foreign minister to officials in the White House, setting up meetings, etc. In addition, as to the plea, we never discussed that your view is that every dollar she received from Pras Michel or ████ is to be forfeited. We did not discuss forfeiture at all. To begin with, Ms. Davis explained the wider business she had with Pras and ████. She believed the funds from Pras came from ████ as part of that plan and was part of a lot more money that was going to be put towards entertainment projects. Money she received from Colfax she understood was using her to work on legal issues. She understood that Broidy was working to also get his own business

1

abroad in various other ways, but that contract she had or saw with him had to do with the legal effort to prevent a case, charge or forfeiture.  So this seems a much greater penalty than warranted from the facts or to seek as aggressive a position from a person trying to cooperate.  As a penalty for a FARA violation, this seems way too much.

I know you said you want to go over the case next week and we happy to do so.  However, the total effort may take longer than the week you suggested.  Between the density of the documents, the logistics of where Ms. Davis is and we are, hearings I have over the next days, there is a lot to do and it will take a little time.  Given that a year went by, for whatever reasons and since Ms. Davis wants to pursue the course she stated last summer, we hope we can find the time to do it.  If your new timetable prevents that, it would be unfortunate given our goals.

I know you said you want to go over the case next week and we can do so for sure.  However, the total effort may take longer than the week you suggested.  Between the density of the documents, the logistics of where Ms. Davis is and we are, hearings I have over the next days, there is a lot to do and it will take a little time.  Given that a year went by, for whatever reasons and since Ms. Davis wants to pursue the course she stated last summer, we hope we can find the time to do it.  If your new timetable prevents that, it would be unfortunate given our goals.

We appreciate your consideration.

Abbe

**Abbe David Lowell**
**Partner**

Winston & Strawn LLP
1901 L Street, N.W.
Washington, DC 20036

D: +1 ██████████
F: +1 ██████████

200 Park Avenue
New York, NY 10166-4193

D: +1 ██████████
F: +1 ██████████

VCard | Email | winston.com

WINSTON
& STRAWN
LLP

---

**From:** Keller, John (CRM) <████████████████████
**Sent:** Wednesday, July 15, 2020 12:36 AM
**To:** Lowell, Abbe <ADLowell@████████
**Cc:** Porter, Jennie <██████████████ Sorenson, Ken (USAHI) ██████████████ Mann, James (CRM) ██████████ Mulryne, Sean (CRM) ██████████████; Lockhart, Nicole (CRM) ██████████

**Subject:** Draft Plea Documents

Abbe,

As discussed, please find draft plea documents attached.  These documents are subject to final approval at the Department of Justice and the U.S. Attorneys' Office and do not constitute a formal offer until that approval is

obtained.  In the interim, please review the terms with your client and let us know if you have any proposed edits by July 22.  If we are able to agree on terms, after we finalize the documents and the leadership at the Department of Justice and the U.S. Attorney's Office have approved the final plea terms, I will transmit to you a final plea agreement to be executed by you and your client.

Based on our call, I have also attached two overlapping sets of relevant communications between your client and Elliott Broidy, many of which are set forth in the attached draft Information and Plea Agreement.  We did not receive these sets of communications from your client in response to the subpoena that we issued to her and in the event that she no longer has access to the communications, I wanted both you and your client to have the benefit of being able to review them in connection with your review of the Information and Plea Agreement.

-John

John D. Keller
Principal Deputy Chief
Public Integrity Section
United States Department of Justice
1331 F St. NW | Washington, D.C. 20004
████████ (Desk) | ████████ (Cell)

The contents of this message may be privileged and confidential. If this message has been received in error, please delete it without reading it. Your receipt of this message is not intended to waive any applicable privilege. Please do not disseminate this message without the permission of the author. Any tax advice contained in this email was not intended to be used, and cannot be used, by you (or any other taxpayer) to avoid penalties under applicable tax laws and regulations.

# EXHIBIT 9

**From:**       Keller, John (CRM)
**Sent:**       Monday, July 13, 2020 9:51 AM
**To:**         Salgado, Victor (CRM); O'Brien Waymack, Erica (CRM); Lockhart, Nicole (CRM)
**Subject:**    RE: Broidy Filter Request

Todd will serve as the filter deputy if you have pleadings for review or want to discuss whether specific communications are worth litigating.

---

**From:** Salgado, Victor (CRM) <Victor.Salgado@CRM.USDOJ.GOV>
**Sent:** Sunday, July 12, 2020 1:20 AM
**To:** Keller, John (CRM) <████████████████ O'Brien Waymack, Erica (CRM) ████████████████ Lockhart, Nicole (CRM) ████████████████
**Subject:** RE: Broidy Filter Request

Erica and I are thinking about seeking court relief for some of these communications.

John, as you know, Pam Hicks oversaw our prior filings in this matter but she left DOJ in October 2019. As Erica and I continue our analysis before we reach a decision point, would you be inclined to assign a supervisor to oversee our efforts or is this something we can decide on our own?

Thanks,
Victor

---

**From:** Keller, John (CRM) ████████████████
**Sent:** Friday, July 10, 2020 2:41 PM
**To:** O'Brien Waymack, Erica (CRM) ████████████████ Lockhart, Nicole (CRM)
**Cc:** Salgado, Victor (CRM) ████████████████
**Subject:** RE: Broidy Filter Request

Thanks, Erica and Victor.

---

**From:** O'Brien Waymack, Erica (CRM) ████████████████
**Sent:** Friday, July 10, 2020 2:40 PM
**To:** Keller, John (CRM) ████████████████ Lockhart, Nicole (CRM) ████████████████
**Cc:** Salgado, Victor (CRM) ████████████████
**Subject:** RE: Broidy Filter Request

John and Nikki –

Victor and I have decided to withhold all of these communications on the basis of potential attorney-client privilege. We will let you know if our assessment changes. Happy to discuss further over the phone if you'd like.

Erica

**Erica O'Brien Waymack**
Trial Attorney

1

Public Integrity Section
Department of Justice, Criminal Division
Desk: ██████████████
Email: ████████████████████████

---

**From:** O'Brien Waymack, Erica (CRM)
**Sent:** Thursday, July 9, 2020 11:36 AM
**To:** Lockhart, Nicole (CRM) ██████████████████████ Keller, John (CRM) ████████████████
Salgado, Victor (CRM) █████████████████████████
**Subject:** RE: Broidy Filter Request

Nikki – FYI, the Abbe Lowell communications have been moved to the taint side. I'll start working on the privilege review ASAP.

Erica

---

**From:** Lockhart, Nicole (CRM) ██████████████████████
**Sent:** Monday, June 29, 2020 2:36 PM
**To:** O'Brien Waymack, Erica (CRM) ██████████████████████████; Keller, John (CRM)
████████████████████ Salgado, Victor (CRM)
**Subject:** RE: Broidy Filter Request

Thanks for your help, Erica.

---

**From:** O'Brien Waymack, Erica (CRM) ████████████████████
**Sent:** Monday, June 29, 2020 2:33 PM
**To:** Keller, John (CRM) < ████████████████ Lockhart, Nicole (CRM)████████████████████
Salgado, Victor (CRM)██████████████████████████
**Subject:** RE: Broidy Filter Request

Just a quick update –

1. The email you pointed us to is privileged and we'll have it moved over to the taint side ASAP.
2. I didn't find any communications from Lowell's Winston & Strawn account on the investigative side; there were several emails from ADLowell@████████████████ that were already moved the taint side. I did, however, locate comms with Lowell using the email address ADLowell@████████████████ (including the email you pointed me to) on the investigative side; it will get added to the list of attorneys, and we'll have Lit Support pull any of those communications over to the taint side.
3. I'm working on a general QC now and have not found any issues so far; it looks like Lowell's Chadbourne account is the only one that may have fallen through the cracks. Standby.

Erica

---

**From:** Keller, John (CRM) ██████████████████████████
**Sent:** Monday, June 29, 2020 10:58 AM
**To:** O'Brien Waymack, Erica (CRM) ██████████████████████ Lockhart, Nicole (CRM)
████████████████ Salgado, Victor (CRM)██████████████████████
**Subject:** RE: Broidy Filter Request

Thanks, everyone. Let us know if there are additional communications with Lowell, Winston & Strawn, or other counsel so that we can have IT pull those communications off of the investigative side.

**From:** O'Brien Waymack, Erica (CRM) ████████████████████
**Sent:** Monday, June 29, 2020 10:56 AM
**To:** Lockhart, Nicole (CRM) ██████████████████████ Salgado, Victor (CRM)
**Cc:** Keller, John (CRM) ████████████████████
**Subject:** RE: Broidy Filter Request

Sure thing. Will let you know when it's done.

**From:** Lockhart, Nicole (CRM) ████████████████████████
**Sent:** Monday, June 29, 2020 10:54 AM
**To:** Salgado, Victor (CRM) ████████████████████
**Cc:** O'Brien Waymack, Erica (CRM) ████████████████████████████ >; Keller, John (CRM)
████████████████████
**Subject:** Broidy Filter Request

Victor/Erica,

While doing some searches in the Broidy database, I came across what appears to be a privileged communication between Broidy and Abbe Lowell. (BATES number B0005593). Lowell was not included on the list of Broidy's attorneys provided by Broidy's counsel, which is attached. I have a couple requests for you guys:

1) Can you review the communication and identify it as privileged/non-privileged?
2) Can you add Lowell to the list of Broidy's counsel along with his firm and run searches through the database to identify any additional communications? His email address is: ADlowell@ ████████████ and the law firm is Winston & Strawn.
3) Could you do some additional QC on the database just to make sure that in the move to new Relativity, privileged communications didn't wind up on the investigative side? (I haven't found evidence of this, and I assume the Lowell communication is a one-off).

No one on the investigative side will access the database again until we get the all-clear from you.

Thanks!

Nikki Lockhart
Trial Attorney
DOJ, Public Integrity Section
1331 F St. NW, 3rd Floor
Washington, DC 20005
Office: ████████████
Cell: ████████████

# EXHIBIT 10

**From:** Salgado, Victor (CRM) <█████████████████████>
**Sent:** Monday, August 10, 2020 4:57 PM
**To:** Howell_Chambers@█████████████
**Cc:** O'Brien Waymack, Erica (CRM)████████████████████████
**Subject:** Crime Fraud Application

Dear Chief Judge Howell,

As discussed earlier today with your staff, attached please find the following documents:

(1) Government's *Ex Parte* Motion Seeking Authorization to Review Certain Attorney-Client Communications;
(2) Proposed Order Related to the Government's *Ex Parte* Motion;
(3) Exhibits (zipped);
(4) Motion for Leave to File Under Seal; and
(5) Proposed Sealing Order.

Electronic copies of the foregoing documents will be filed under seal with the clerk's office later this evening.

Please do not hesitate to reach out to me or my colleague, Trial Attorney Erica O'Brien Waymack (contact information below), should you need additional information.

Sincerely,

**Victor R. Salgado**
**Trial Attorney**
Public Integrity Section | Criminal Division
United States Department of Justice
1331 F Street, N.W.
Washington, D.C. 20004
██████████ (o) | █████████████ (c)



# EXHIBIT 11

**From:** Salgado, Victor (CRM) ███████████████████
**Sent:** Wednesday, August 26, 2020 4:27 PM
**To:** DCDml_Intake@DCD.USCOURTS.GOV
**Cc:** O'Brien Waymack, Erica (CRM) ██████████████████████
**Subject:** Under Seal: No. 20-GJ-00035 (Supplemental Filing)

Hello,

Please see attached a supplemental filing in the above-captioned matter.  Courtesy copies of these materials were sent to Chief Judge Howell's chambers earlier today.

Best,
Victor

**Victor R. Salgado**
**Trial Attorney**
Public Integrity Section | Criminal Division
United States Department of Justice
1331 F Street, N.W.
Washington, D.C. 20004
████████ (o) | ███████ (c)
██████████████

# EXHIBIT 12

| | |
|---|---|
| **From:** | Keller, John (CRM) |
| **Sent:** | Tuesday, August 25, 2020 7:56 PM |
| **To:** | Lowell, Abbe David |
| **Cc:** | Gee, Todd (CRM); Salgado, Victor (CRM); O'Brien Waymack, Erica (CRM) |
| **Subject:** | Call |

Abbe,

I'm connecting you here with our team on the filter side to facilitate a call between you regarding the issue we discussed today.

-John

John D. Keller
Principal Deputy Chief
Public Integrity Section
United States Department of Justice
1331 F St. NW | Washington, D.C. 20004
███████ (Desk) | ███████ (Cell)

EXHIBIT 13

**From:** Salgado, Victor (CRM)
**Sent:** Wednesday, August 26, 2020 9:07 PM
**To:** Lowell, Abbe; Gee, Todd (CRM)
**Cc:** O'Brien Waymack, Erica (CRM)
**Subject:** RE: Call
**Attachments:** Emails.pdf

Abbe,

As discussed earlier today, please see attached.

Victor

**Victor R. Salgado**
**Trial Attorney**
Public Integrity Section | Criminal Division
United States Department of Justice
1331 F Street, N.W.
Washington, D.C. 20004
██████ (o) | ██████ (c)

---

**From:** Lowell, Abbe <ADLowell@██████>
**Sent:** Tuesday, August 25, 2020 10:20 PM
**To:** Gee, Todd (CRM) ██████████ Keller, John (CRM) ██████████████
**Cc:** Salgado, Victor (CRM) ██████ O'Brien Waymack, Erica (CRM) ██████████
**Subject:** RE: Call

I can do a call at 2 and then after 4 (which would be better)

**Abbe David Lowell**
**Partner**
Winston & Strawn LLP
1901 L Street, N.W.
Washington, DC 20036
D: +1 ████████
F: +1 ████████

200 Park Avenue
New York, NY 10166-4193
D: +1 ████████
F: +1 ████████

VCard | Email | winston.com



---

**From:** Gee, Todd (CRM) ███████████████
**Sent:** Tuesday, August 25, 2020 9:00 PM
**To:** Keller, John (CRM) ██████████████
**Cc:** Lowell, Abbe <ADLowell@██████████████  Salgado, Victor (CRM) ███████████████  O'Brien Waymack, Erica (CRM) ███████████████
**Subject:** Re: Call

Abbe,

We would be free any time after 1pm tomorrow. Let us know if there is a time that works for you then and we can set up a call.

Thanks,

Todd Gee
Deputy Chief
Public integrity Section
Criminal Division
U.S. Department of Justice
1331 F Street N.W.
Washington, D.C. 20530-0001

████████████

On Aug 25, 2020, at 7:56 PM, Keller, John (CRM) ██████████████████ wrote:

Abbe,

I'm connecting you here with our team on the filter side to facilitate a call between you regarding the issue we discussed today.

-John

John D. Keller
Principal Deputy Chief
Public Integrity Section
United States Department of Justice
1331 F St. NW | Washington, D.C. 20004
██████████ (Desk) | ██████████ (Cell)

---

The contents of this message may be privileged and confidential. If this message has been received in error, please delete it without reading it. Your receipt of this message is not intended to waive any applicable privilege. Please do not disseminate this message without the permission of the author. Any tax advice contained in this email was not intended to be used, and cannot be used, by you (or any other taxpayer) to avoid penalties under applicable tax laws and regulations.

# EXHIBIT 14

| | |
|---|---|
| **From:** | Gee, Todd (CRM) |
| **Sent:** | Wednesday, August 26, 2020 10:21 PM |
| **To:** | Lowell, Abbe |
| **Cc:** | Salgado, Victor (CRM); O'Brien Waymack, Erica (CRM) |
| **Subject:** | Re: Call |

Abbe,

On the first question, page 32 of the PDF that we sent over references "future" contributions. Additionally, the reference to "Plan B" may be a reference to a contribution in exchange for pardon scheme (see pages 24, 28, and 29 of the PDF). On the second question, we're aware of Sen. Specter's proposed amendment in 2001, but we disagree that the plain language of the LDA may not cover lobbying activities seeking pardons/clemency. As we discussed, however, all of these matters are with respect to potential exposure to allegations of LDA and bribery, it is not us saying those crimes were necessarily committed. Given the potential exposure, however, we wanted to bring the matter to your attention so you could discuss it with your client. Please let us know if you need anything else to facilitate that.


Thx.

-Todd

On Aug 26, 2020, at 10:00 PM, Lowell, Abbe <ADLowell@████████ wrote:


Thank you for the emails to review. Two questions: you mentioned emails about someone seeking or giving a large political contribution; I did not see it in what you sent; did I miss it? And, putting facts aside, I think you mentioned the LDA which, because of various parts of the statute, is not applied for attorneys' actions with respect to executive clemency (so much so that after President Clinton pardoned Marc Rich there was a specific amendment proposed by Sen . Arlen Specter and others to include it because it was not covered; that amendment, I believe, never even was voted on in either house). Did I hear you correctly saying the concern were over the LDA?
In any event, I will include our conversation and this issue in conversations with my client and other counsel.

**Abbe David Lowell**
**Partner**

Winston & Strawn LLP
1901 L Street, N.W.
Washington, DC 20036
D: +1 ██████
F: +1 ██████

200 Park Avenue
New York, NY 10166-4193
D: +1 ██████
F: +1 ██████

VCard | Email | winston.com

<image001.jpg>

1

**From:** Salgado, Victor (CRM) ████████████████
**Sent:** Wednesday, August 26, 2020 9:07 PM
**To:** Lowell, Abbe ████████████ Gee, Todd (CRM) ████████████
**Cc:** O'Brien Waymack, Erica (CRM) ████████████████████
**Subject:** RE: Call

Abbe,

As discussed earlier today, please see attached.

Victor

**Victor R. Salgado**
**Trial Attorney**
Public Integrity Section | Criminal Division
United States Department of Justice
1331 F Street, N.W.
Washington, D.C. 20004
████████ (o) | ████████ (c)

---

**From:** Lowell, Abbe ████████████████
**Sent:** Tuesday, August 25, 2020 10:20 PM
**To:** Gee, Todd (CRM) ████████████████ Keller, John (CRM) ████████████████
**Cc:** Salgado, Victor (CRM) ████████████ O'Brien Waymack, Erica (CRM)
**Subject:** RE: Call

I can do a call at 2 and then after 4 (which would be better)

**Abbe David Lowell**

**Partner**

Winston & Strawn LLP
1901 L Street, N.W.
Washington, DC 20036
D: +1 ████████████
F: +1 ████████

200 Park Avenue
New York, NY 10166-4193
D: +1 ████████████
F: +1 ████████

VCard | Email | winston.com
<image001.jpg>

---

**From:** Gee, Todd (CRM) ████████████████
**Sent:** Tuesday, August 25, 2020 9:00 PM
**To:** Keller, John (CRM ████████████
**Cc:** Lowell, Abbe ████████████; Salgado, Victor (CRM) ████████████; O'Brien Waymack, Erica (CRM) ████████████
**Subject:** Re: Call

Abbe,

We would be free any time after 1pm tomorrow. Let us know if there is a time that works for you then and we can set up a call.

Thanks,

Todd Gee
Deputy Chief
Public integrity Section
Criminal Division

U.S. Department of Justice
1331 F Street N.W.
Washington, D.C. 20530-0001

█████████████

On Aug 25, 2020, at 7:56 PM, Keller, John (CRM) ████████████████ wrote:


Abbe,
I'm connecting you here with our team on the filter side to facilitate a call between you regarding the issue we discussed today.
-John
John D. Keller
Principal Deputy Chief
Public Integrity Section
United States Department of Justice
1331 F St. NW | Washington, D.C. 20004
███████████ Desk) | █████████ (Cell)

The contents of this message may be privileged and confidential. If this message has been received in error, please delete it without reading it. Your receipt of this message is not intended to waive any applicable privilege. Please do not disseminate this message without the permission of the author. Any tax advice contained in this email was not intended to be used, and cannot be used, by you (or any other taxpayer) to avoid penalties under applicable tax laws and regulations.

# EXHIBIT 15

| | |
|---|---|
| **From:** | Keller, John (CRM) |
| **To:** | Lowell, Abbe David |
| **Subject:** | Conflict Provision |
| **Date:** | Tuesday, August 25, 2020 9:27:00 PM |

Abbe,

I've drafted below a paragraph to be added to the plea agreement after the Waiver of Trial Rights Section to encompass the potential conflicts raised by the FARA letter, the issue to be discussed with the filter team, and the prior representation of individuals as to whom Ms. Lum Davis may provide information. This seems like a cleaner, more controlled way to address the potential conflict issue, rather than raising it at the plea hearing cold and having the court potentially initiate a full-blown colloquy with Ms. Davis about her understanding of the potential issues and conflict:

Waiver of any Potential Conflict of Interest

The defendant understands that one of her attorneys, Abbe D. Lowell, has previously represented other individuals against whom Ms. Lum Davis may potentially cooperate. Ms. Lum Davis also understands that Mr. Lowell has been notified by the United States Department of Justice that he may have potential civil and/or criminal exposure for conduct unrelated to this matter. Ms. Lum Davis has discussed these matters and the resulting potential conflicts of interest with Mr. Lowell and with third-party counsel and knowingly and intelligently waives any potential or actual conflict of interest as to Mr. Lowell and affirms that she wishes to proceed with Mr. Lowell as her counsel in this matter.

-John

John D. Keller
Principal Deputy Chief
Public Integrity Section
United States Department of Justice
1331 F St. NW | Washington, D.C. 20004
██████████ (Desk) | ██████████ (Cell)

# EXHIBIT 16

| | |
|---|---|
| **From:** | Keller, John (CRM) |
| **To:** | Lowell, Abbe |
| **Subject:** | RE: Conflict Provision |
| **Date:** | Tuesday, August 25, 2020 9:51:00 PM |

I'm not—I'm not involved with the FARA piece.  Feel free to edit the draft language.  But we need to place on the record something to reflect the potential for you to be inclined to assist the government through facilitating Lum Davis's cooperation in this matter in order to gain favor in your other unrelated dealings with the Department.

**From:** Lowell, Abbe ███████████████
**Sent:** Tuesday, August 25, 2020 9:40 PM
**To:** Keller, John (CRM) ████████████████
**Subject:** RE: Conflict Provision

The letter did not say I have potential civil or criminal exposure or anything close.  They wrote a letter asking for information as to if I needed to register.  There is no indication at all that this was more than that or I had or have any intentional, willful act.  These were/are the kinds of letters that are sent that might end up in a registration.  Here there is not even that.   Are you saying otherwise? If so, we need to get my counsel involved now at the very least.

**Abbe David Lowell**

**Partner**

Winston & Strawn LLP
1901 L Street, N.W.
Washington, DC 20036
D: +1 ███████████
F: +1 ███████████

200 Park Avenue
New York, NY 10166-4193
D: +1 ███████████
F: +1 ███████████

VCard | Email | winston.com

WINSTON
&STRAWN
LLP

**From:** Keller, John (CRM) ████████████████
**Sent:** Tuesday, August 25, 2020 9:28 PM
**To:** Lowell, Abbe ██████████████
**Subject:** Conflict Provision

Abbe,

I've drafted below a paragraph to be added to the plea agreement after the Waiver of Trial Rights Section to encompass the potential conflicts raised by the FARA letter, the issue to be discussed with the filter team, and the prior representation of individuals as to whom Ms. Lum Davis may provide information.  This seems like a cleaner, more controlled way to address the potential conflict issue, rather than raising it at the plea hearing cold and having the court potentially initiate a full-blown colloquy with Ms. Davis about her understanding of the potential issues and conflict:

Waiver of any Potential Conflict of Interest

The defendant understands that one of her attorneys, Abbe D. Lowell, has previously represented other individuals against whom Ms. Lum Davis may potentially cooperate.  Ms. Lum Davis also understands that Mr. Lowell has been notified by the United States Department of Justice that he may have potential civil and/or criminal exposure for conduct unrelated to this matter.  Ms. Lum Davis has discussed these matters and the resulting potential conflicts of interest with Mr. Lowell and with third-party counsel and knowingly and intelligently waives any potential or actual conflict of interest as to Mr. Lowell and affirms that she wishes to proceed with Mr. Lowell as her counsel in this matter.

-John

John D. Keller
Principal Deputy Chief
Public Integrity Section
United States Department of Justice
1331 F St. NW | Washington, D.C. 20004
██████████ (Desk) | ██████████ (Cell)

---

The contents of this message may be privileged and confidential. If this message has been received in error, please delete it without reading it. Your receipt of this message is not intended to waive any applicable privilege. Please do not disseminate this message without the permission of the author. Any tax advice contained in this email was not intended to be used, and cannot be used, by you (or any other taxpayer) to avoid penalties under applicable tax laws and regulations.

# EXHIBIT 17

| | |
|---|---|
| **From:** | Keller, John (CRM) |
| **To:** | Lowell, Abbe |
| **Subject:** | RE: Conflict Provision |
| **Date:** | Tuesday, August 25, 2020 10:02:00 PM |

Thank you. Potential alternative language highlighted below.

**From:** Lowell, Abbe ██████████████████
**Sent:** Tuesday, August 25, 2020 9:53 PM
**To:** Keller, John (CRM) <John.Keller@CRM.USDOJ.GOV>
**Subject:** RE: Conflict Provision

Thank you for the clarification.  I will talk with Ms. Davis, Mac, and now others and talk with you tomorrow.

**Abbe David Lowell**
**Partner**

Winston & Strawn LLP
1901 L Street, N.W.
Washington, DC 20036
D: +1 █████████████
F: +1 ████████████

200 Park Avenue
New York, NY 10166-4193
D: ████████████████
F: +█████████████

VCard | Email | winston.com

WINSTON
&STRAWN
LLP

**From:** Keller, John (CRM) ██████████████████
**Sent:** Tuesday, August 25, 2020 9:52 PM
**To:** Lowell, Abbe ██████████████████
**Subject:** RE: Conflict Provision

I'm not—I'm not involved with the FARA piece.  Feel free to edit the draft language.  But we need to place on the record something to reflect the potential for you to be inclined to assist the government through facilitating Lum Davis's cooperation in this matter in order to gain favor in your other unrelated dealings with the Department.

**From:** Lowell, Abbe ██████████████████

**Sent:** Tuesday, August 25, 2020 9:40 PM
**To:** Keller, John (CRM) █████████████████████
**Subject:** RE: Conflict Provision

The letter did not say I have potential civil or criminal exposure or anything close.  They wrote a letter asking for information as to if I needed to register.  There is no indication at all that this was more than that or I had or have any intentional, willful act.  These were/are the kinds of letters that are sent that might end up in a registration.  Here there is not even that.   Are you saying otherwise? If so, we need to get my counsel involved now at the very least.


**Abbe David Lowell**
**Partner**
Winston & Strawn LLP
1901 L Street, N.W.
Washington, DC 20036
D: +1 ███████████
F: +1 ███████████

200 Park Avenue
New York, NY 10166-4193
D: +1 ███████████
F: +1 ███████████
VCard | Email | winston.com



---

**From:** Keller, John (CRM) █████████████████████
**Sent:** Tuesday, August 25, 2020 9:28 PM
**To:** Lowell, Abbe █████████████████████
**Subject:** Conflict Provision

Abbe,

I've drafted below a paragraph to be added to the plea agreement after the Waiver of Trial Rights Section to encompass the potential conflicts raised by the FARA letter, the issue to be discussed with the filter team, and the prior representation of individuals as to whom Ms. Lum Davis may provide information.  This seems like a cleaner, more controlled way to address the potential conflict issue, rather than raising it at the plea hearing cold and having the court potentially initiate a full-blown colloquy with Ms. Davis about her understanding of the potential issues and conflict:

Waiver of any Potential Conflict of Interest

The defendant understands that one of her attorneys, Abbe D. Lowell, has previously represented other individuals against whom Ms. Lum Davis may potentially cooperate. Ms. Lum Davis also understands that Mr. Lowell has been notified by the United States Department of Justice that it is reviewing conduct unrelated to this matter involving Mr. Lowell. Ms. Lum Davis has discussed these matters and the resulting potential conflicts of interest with Mr. Lowell and with third-party counsel and knowingly and intelligently waives any potential or actual conflict of interest as to Mr. Lowell and affirms that she wishes to proceed with Mr. Lowell as her counsel in this matter.

-John

John D. Keller
Principal Deputy Chief
Public Integrity Section
United States Department of Justice
1331 F St. NW | Washington, D.C. 20004
[REDACTED] (Desk)   [REDACTED] (Cell)

The contents of this message may be privileged and confidential. If this message has been received in error, please delete it without reading it. Your receipt of this message is not intended to waive any applicable privilege. Please do not disseminate this message without the permission of the author. Any tax advice contained in this email was not intended to be used, and cannot be used, by you (or any other taxpayer) to avoid penalties under applicable tax laws and regulations.

EXHIBIT 18

| | |
|---|---|
| **From:** | Keller, John (CRM) |
| **To:** | William C. McCorriston; Sorenson, Ken (USAHI) |
| **Cc:** | David J. Minkin |
| **Subject:** | RE: Nickie Mali Lum Davis |
| **Date:** | Wednesday, August 26, 2020 11:34:00 PM |
| **Attachments:** | image001.png |

Thanks, Bill.  When can we talk tomorrow?

-John

**From:** William C. McCorriston ███████████████████████
**Sent:** Wednesday, August 26, 2020 11:33 PM
**To:** Sorenson, Ken (USAHI) ████████████████ Keller, John (CRM)
███████████████████
**Cc:** David J. Minkin ████████████████████
**Subject:** Nickie Mali Lum Davis

Ken and John:

<u>Before</u> we proceed further I need to have a discussion with client regarding issues raised as to Mr. Lowell's representation.  I have scheduled a time to speak with her tomorrow and I will contact you thereafter.

Best,

Bill



William C. McCorriston
Founding Partner
**McCorriston Miller Mu███i MacKinnon LLP**

**Honolulu, Hawaii  96813**
☎ ███████████ | 🖨 ████████████ | ✉ ████████████████

This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please notify us immediately by e mail or telephone, and return the original message.  THANK YOU.

Anyone communicating to or from this office by means of an electronic device (including computers, smart phones, tablets or others) and using electronic communication (including e-mail, text messages, instant messages, chat rooms, comments on blogs or websites or others) is advised that such communications may not be confidential, particularly in instances where you are transmitting personal information using your employer's devices or networks or where you are using you are using public computers (such as libraries or hotels) or using a public wireless internet connection.  The effect of the loss of confidentiality will be the loss of attorney-client privilege and the possibility that such communications may not be protected from disclosure in any legal procedure in which you are involved.  You are cautioned to act accordingly.

# EXHIBIT 19

| From: | William C. McCorriston |
|---|---|
| To: | Keller, John (CRM) |
| Cc: | Sorenson, Ken (USAHI); David J. Minkin; Abbe Lowell |
| Subject: | Re: Nickie Mali Lum Davis |
| Date: | Thursday, August 27, 2020 2:47:10 PM |
| Attachments: | image001.png |

John: Ms Davis is proceeding with Mr Lowell as counsel. Please work out final language regarding this matter with him which I will also review and approve. Bill

Sent from my iPhone

> On Aug 26, 2020, at 5:35 PM, Keller, John (CRM) ███████████████ wrote:

Thanks, Bill.  When can we talk tomorrow?

-John

**From:** William C. McCorriston ███████████████
**Sent:** Wednesday, August 26, 2020 11:33 PM
**To:** Sorenson, Ken (USAHI)███████████████ Keller, John (CRM) ███████████████
**Cc:** David J. Minkin ███████████████
**Subject:** Nickie Mali Lum Davis

Ken and John:

Before we proceed further I need to have a discussion with client regarding issues raised as to Mr. Lowell's representation.  I have scheduled a time to speak with her tomorrow and I will contact you thereafter.

Best,

Bill



<image001.png>

William C. McCorriston
Founding Partner
McCorriston Miller Mukai MacKinnon LLP

This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please notify us immediately by e mail or telephone, and return the original message.  THANK YOU.

Anyone communicating to or from this office by means of an electronic device (including computers, smart phones, tablets or others) and using electronic communication (including e-mail, text messages, instant messages, chat rooms, comments on blogs or websites or others) is advised that such communications may not be confidential, particularly in instances where you are transmitting personal information using your employer's devices or networks or where you are using public computers (such as libraries or hotels) or using a public wireless internet connection.  The effect of the loss of confidentiality will be the loss of attorney-client privilege and the possibility that such communications may not be protected from disclosure in any legal procedure in which you are involved.  You are cautioned to act accordingly.

# EXHIBIT 20

| From: | Keller, John (CRM) |
|---|---|
| To: | William C. McCorriston; Sorenson, Ken (USAHI); Lowell, Abbe |
| Subject: | RE: Nickie Mali Lum Davis |
| Date: | Thursday, August 27, 2020 5:27:00 PM |
| Attachments: | image001.png |

Thanks, Bill.

That language looks good to me and largely mirrors what I proposed to Abbe.  I have an edit to one sentence included below.  If we are all comforable with this language, I will add it to the plea agreement and send the revised signature page for signatures.  We also still need the signed waiver of indictment.

-John

---

**From:** William C. McCorriston ████████████████
**Sent:** Thursday, August 27, 2020 3:12 PM
**To:** Keller, John (CRM) ████████████████; Sorenson, Ken (USAHI) ████████████████; Lowell, Abbe ████████████
**Subject:** Nickie Mali Lum Davis

To expedite things I propose the following language:

"The defendant understands that one of her attorneys, Abbe D. Lowell, has previously represented other individuals with whom Ms. Davis also has had contact or interactions and whose names have or might come up during her cooperation.  Ms. Davis also understands that the United States Department of Justice has reviewed information concerning Mr. Lowell's representation of certain clients on matters unrelated to Ms. Davis and has raised those matters with Mr. Lowell.  Ms. Davis has discussed these issues and the resulting potential for conflicts of interest with Mr. Lowell and with third-party counsel and knowingly and intelligently waives any potential or actual conflict of interest as to Mr. Lowell and affirms that she wishes to proceed with Mr. Lowell as one of her attorneys in this matter."

Bill





William C. McCorriston
Founding Partner
**McCorriston Miller Mukai MacKinnon LLP**

This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please notify us immediately by e mail or telephone, and return the original message.  THANK YOU.

Anyone communicating to or from this office by means of an electronic device (including computers, smart phones, tablets or others) and using electronic communication (including e-mail, text messages, instant messages, chat rooms, comments on blogs or websites or others) is advised that such communications may not be confidential, particularly in instances where you are transmitting personal information using your employer's devices or networks or where you are using you are using

public computers (such as libraries or hotels) or using a public wireless internet connection.  The effect of the loss of confidentiality will be the loss of attorney-client privilege and the possibility that such communications may not be protected from disclosure in any legal procedure in which you are involved.  You are cautioned to act accordingly.

# EXHIBIT 21

| From: | Keller, John (CRM) |
|---|---|
| To: | William C. McCorriston |
| Cc: | Sorenson, Ken (USAHI); Lowell, Abbe |
| Subject: | RE: Nickie Mali Lum Davis |
| Date: | Thursday, August 27, 2020 5:42:00 PM |

I could draft it as a sealed addendum to the plea agreement and see if the Court will accept it as such.  I expect the plea agreement itself to be filed on the public docket.

---

**From:** William C. McCorriston █████████████████████
**Sent:** Thursday, August 27, 2020 5:40 PM
**To:** Keller, John (CRM)██████████████████████
**Cc:** Sorenson, Ken (USAHI████████████████████ Lowell, Abbe ██████████████
**Subject:** Re: Nickie Mali Lum Davis

I can live with it. My greater concern is confidentiality. If the plea agreement becomes public it would affect both Nickie and Abbe. Is there a way to make this confidential, perhaps a different document?

Sent from my iPhone

> On Aug 27, 2020, at 11:27 AM, Keller, John (CRM) ██████████████████ wrote:
>
> Thanks, Bill.
>
> That language looks good to me and largely mirrors what I proposed to Abbe.  I have an edit to one sentence included below.  If we are all comforable with this language, I will add it to the plea agreement and send the revised signature page for signatures.  We also still need the signed waiver of indictment.
>
> -John
>
> ---
>
> **From:** William C. McCorriston ████████████████████████
> **Sent:** Thursday, August 27, 2020 3:12 PM
> **To:** Keller, John (CRM)████████████████████ Sorenson, Ken (USAHI)
> ██████████████████; Lowell, Abbe ████████████████
> **Subject:** Nickie Mali Lum Davis
>
> To expedite things I propose the following language:
>
> "The defendant understands that one of her attorneys, Abbe D. Lowell, has previously represented other individuals with whom Ms. Davis also has had contact or interactions and whose names have or might come up during her cooperation.  Ms. Davis also understands that the United States Department of Justice has reviewed information concerning Mr. Lowell's representation of certain clients on matters unrelated to Ms. Davis and has raised those matters with Mr. Lowell.  Ms. Davis has discussed these issues and the resulting potential for conflicts of interest with Mr. Lowell and with third-party counsel and knowingly and intelligently waives any potential or actual conflict of interest as to Mr. Lowell and affirms that she wishes to proceed with Mr. Lowell as one of her attorneys in this matter."

Bill

\<image001.png\>   **William C. McCorriston**
Founding Partner
**McCorriston Miller Mu___i MacKinnon LLP**

This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please notify us immediately by e mail or telephone, and return the original message.  THANK YOU.

Anyone communicating to or from this office by means of an electronic device (including computers, smart phones, tablets or others) and using electronic communication (including e-mail, text messages, instant messages, chat rooms, comments on blogs or websites or others) is advised that such communications may not be confidential, particularly in instances where you are transmitting personal information using your employer's devices or networks or where you are using you are using public computers (such as libraries or hotels) or using a public wireless internet connection.  The effect of the loss of confidentiality will be the loss of attorney-client privilege and the possibility that such communications may not be protected from disclosure in any legal procedure in which you are involved.  You are cautioned to act accordingly.

EXHIBIT 22

| | |
|---|---|
| **From:** | Keller, John (CRM) |
| **To:** | William C. McCorriston |
| **Cc:** | Sorenson, Ken (USAHI); Lowell, Abbe |
| **Subject:** | Re: Nickie Mali Lum Davis |
| **Date:** | Thursday, August 27, 2020 6:37:01 PM |
| **Attachments:** | image001.png |

That language doesn't cover it. Let's file the sealed addendum. There is no reason we can't address the general concept of a conflict waiver in open court and reference the sealed addendum. You just don't want the more specific text detailing the conflict to be public, right? I'll prepare the addendum.

On Aug 27, 2020, at 6:19 PM, William C. McCorriston ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ wrote:

If it has to be in a public document, maybe the following, more benign language, works:

"The defendant understands that the United States Department of Justice has raised with one of her attorneys, Abbe D. Lowell, his previous representation of certain individuals with whom Ms. Davis also has had contact or interactions and whose names have or might come up during her cooperation and of certain other individuals on matters unrelated to Ms. Davis. Ms. Davis has discussed these issues and the resulting potential for conflicts of interest with Mr. Lowell and with third-party counsel and knowingly and intelligently waives any potential or actual conflict of interest as to Mr. Lowell and affirms that she wishes to proceed with Mr. Lowell as one of her attorneys in this matter."

Bill



William C. McCorriston
Founding Partner
McCorriston Miller Mu▮▮i MacKinnon LLP

☎ ▮▮▮▮▮▮▮    📠 ▮▮▮▮▮▮▮  |  ✉ ▮▮▮▮▮▮▮▮▮▮▮▮

This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by e mail or telephone, and return the original message. THANK YOU.

Anyone communicating to or from this office by means of an electronic device (including computers, smart phones, tablets or others) and using electronic communication (including e-mail, text messages, instant messages, chat rooms, comments on blogs or websites or others) is advised that such communications may not be confidential, particularly in instances where you are transmitting personal information using your employer's devices or networks or where you are using you are using public computers (such as libraries or hotels) or using a public wireless internet connection. The effect of the loss of confidentiality will be the loss of attorney-client privilege and the possibility that such communications may not be protected from disclosure in any legal procedure in which you are involved. You are cautioned to act accordingly.

# EXHIBIT 23

| | |
|---|---|
| **From:** | Sorenson, Ken (USAHI) |
| **To:** | Keller, John (CRM) |
| **Subject:** | RE: Nickie Davis - Waiver of Indictment |
| **Date:** | Friday, August 28, 2020 3:34:57 PM |

John:  Stand by, I'm teleworking today and having some computer issues.

---

**From:** Keller, John (CRM) <John.Keller@CRM.USDOJ.GOV>
**Sent:** Friday, August 28, 2020 8:47 AM
**To:** Lowell, Abbe <ADLowell@winston.com>; William C. McCorriston <WMcCorriston@m4law.com>
**Cc:** Sorenson, Ken (USAHI) <KSorenson@usa.doj.gov>
**Subject:** RE: Nickie Davis - Waiver of Indictment

Thanks.

Ken, can you and Mike sign the page for the sealed addendum and resend?

---

**From:** Lowell, Abbe ████████████████████
**Sent:** Friday, August 28, 2020 2:42 PM
**To:** Keller, John (CRM) ████████████████████>; William C. McCorriston ████████████████████
**Cc:** Sorenson, Ken (USAHI) ████████████████
**Subject:** RE: Nickie Davis - Waiver of Indictment

**Abbe David Lowell**
**Partner**
Winston & Strawn LLP
1901 L Street, N.W.
Washington, DC 20036
D: +1 ████████████
F: +1 ████████████

200 Park Avenue
New York, NY 10166-4193
D: +1 ████████████
F: +1 ████████████

VCard | Email | winston.com

WINSTON
&STRAWN
LLP

---

**From:** Keller, John (CRM) ████████████████
**Sent:** Friday, August 28, 2020 2:33 PM
**To:** William C. McCorriston ████████████████
**Cc:** Sorenson, Ken (USAHI) ████████████████; Lowell, Abbe ████████████████
**Subject:** RE: Nickie Davis - Waiver of Indictment

Thanks, Bill.

Abbe, can you circulate to this group both documents including your signature as well as soon as possible?  Then we will just need Ken and Mike's signatures on the sealed addendum and I can sign and transmit to the Court, copying all counsel.

---

**From:** William C. McCorriston ███████████████████████
**Sent:** Friday, August 28, 2020 2:28 PM
**To:** Keller, John (CRM) ██████████████████████
**Cc:** Sorenson, Ken (USAHI) ████████████████████  Lowell, Abbe ███████████████████████
**Subject:** RE: Nickie Davis - Waiver of Indictment

Attached are the signature pages for the Sealed Addendum and Plea Agreement.

Bill

---

**From:** Keller, John (CRM) ████████████████████
**Sent:** Thursday, August 27, 2020 5:12 PM
**To:** William C. McCorriston ████████████████████
**Cc:** Sorenson, Ken (USAHI) ██████████████████  Lowell, Abbe ████████████████████████
**Subject:** RE: Nickie Davis - Waiver of Indictment

Sealed addendum attached for signatures. Ken—if you and Mike are in the office, can you recirculate to the group with your signatures first?

If not, I imagine that we'll have to pass this around tomorrow given the hour.

-John

---

**From:** William C. McCorriston ████████████████████
**Sent:** Thursday, August 27, 2020 10:33 PM
**To:** Keller, John (CRM) ██████████████████
**Cc:** Sorenson, Ken (USAHI) ████████████████████  Lowell, Abbe █████████████████████████
**Subject:** Re: Nickie Davis - Waiver of Indictment

Having trouble with Nickie's WiFi. Can you email sig page one more time?  Sorry.

Sent from my iPhone

> On Aug 27, 2020, at 4:23 PM, Keller, John (CRM) ████████████████████ wrote:
>
> Thanks, Bill.  I'll send the addendum shortly.  Plea agreement signature page still forthcoming?

---

**From:** William C. McCorriston ██████████████████████
**Sent:** Thursday, August 27, 2020 10:20 PM
**To:** Sorenson, Ken (USAHI) ████████████████████  Keller, John (CRM)

**Cc:** Lowell, Abbe
**Subject:** Nickie Davis - Waiver of Indictment

Ken and John,

Attached is the signed Waiver of Indictment.

Bill

&lt;image001.png&gt;    William C. McCorriston
                    Founding Partner
                    McCorriston Miller Mu    i MacKinnon LLP

This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please notify us immediately by e mail or telephone, and return the original message.  THANK YOU.

Anyone communicating to or from this office by means of an electronic device (including computers, smart phones, tablets or others) and using electronic communication (including e-mail, text messages, instant messages, chat rooms, comments on blogs or websites or others) is advised that such communications may not be confidential, particularly in instances where you are transmitting personal information using your employer's devices or networks or where you are using you are using public computers (such as libraries or hotels) or using a public wireless internet connection.  The effect of the loss of confidentiality will be the loss of attorney-client privilege and the possibility that such communications may not be protected from disclosure in any legal procedure in which you are involved.  You are cautioned to act accordingly.

The contents of this message may be privileged and confidential. If this message has been received in error, please delete it without reading it. Your receipt of this message is not intended to waive any applicable privilege. Please do not disseminate this message without the permission of the author. Any tax advice contained in this email was not intended to be used, and cannot be used, by you (or any other taxpayer) to avoid penalties under applicable tax laws and regula ions.

# EXHIBIT 24

DRAFT FOR DISCUSSION PURPOSES ONLY

**Strictly Confidential**

Via Email

January 11, 2017

Dear█████,

You have asked me, through my firm████████████████ ("████████") and████████ has
agreed, to consider acting as your strategic consultant with respect to how to navigate the
complicated and time-consuming process involved in inquiring about diplomatic opportunities
("Strategic Goal"). In order to achieve the Strategic Goal we anticipate the need to accomplish
many things including, but not limited to, the events set forth on Exhibit "A" attached hereto
("the Roadmap"). We would advise you on the way to accomplish each of the events listed on the
Roadmap and any others we determine are necessary during the course of trying to achieve the
Strategic Goal. The purpose of this letter is to explain the terms and conditions of our services
with respect to helping you achieve the Strategic Goal. It is very important that you understand
that during the terms of our contract that████████████, █████ or any of its representatives
cannot act as a lobbyist or FARA agent in any capacity.

As we discussed, I know and have already spoken to many influential experts, lobbyists and US
attorneys familiar with this area who will be key to accomplishing the Strategic Goal and who
are ready, willing and able to work immediately on your behalf and on behalf of your clients.
Among the key team members I have spoken to our former high-ranking officials of the
Departments of Justice, Defense, State, Treasury, and Commerce, and former House and Senate
staff members on relevant committees. We would advise on the creation of the appropriate team
and negotiate on your behalf reasonable fees for the hiring of each of the team members. You
would be responsible to pay each team member directly. We would provide advice and manage
coordination of the team so that it can achieve the Strategic Goal. You understand that█████████
is not a "Lobbyist" or registered "Foreign Agent" and at no time would█████ be acting in
such capacities.  Please see my bio attached as Exhibit "C" to this Agreement and Exhibit "D"
for the names and short bios of potential members of the team. As part of our services,█████████
would produce a monthly progress report for you.

You and we would agree that each of us and your clients and your client's representatives would
abide by the terms and conditions set forth in Exhibit "B" entitled "Mutual Confidentiality, Non-
Compete, Non-Circumvention, Non-Disparagement and Warranties Rider".  Those who agree to
Exhibit "B" will be invited to attend all meetings set forth on Exhibit "A". We will give you and
you will give your clients as much notice as possible on the date, time and location of each
meeting set forth in Exhibit "A" or such other meetings as may be set up in furtherance of the
Strategic Goal.

By     _____

         Elliott Broidy, Chairman and CEO


ACCEPTED and AGREED TO this _____ day of _____, 2017


[_____]

By     _____

         Print Name and Title _____

# EXHIBIT 25

| | |
|---|---|
| **From:** | Keller, John (CRM) |
| **To:** | Claffee, Scott (NSD); Richardson, Ian (USANYE) 1 |
| **Cc:** | Mann, James (CRM) |
| **Subject:** | RE: FARA Letter |
| **Date:** | Tuesday, January 19, 2021 6:02:00 PM |

Thank you, Scott.  Definitely not contemplating filing it at all.  We were just looking for more context on the ▮▮▮▮ investigation to help us articulate the potential damage to the investigation that could result if this particular filing is unsealed.







# EXHIBIT 26

| | |
|---|---|
| **From:** | Keller, John (CRM) |
| **To:** | Agalelei Elkington; adlowel███████████ minkin@████████ mccorriston@████████ Sorenson, Ken (USAHI) |
| **Subject:** | RE: CR20-00068 LEK USA vs. Nickie Mali Lum Davis; Initial, waiver, arraignment, plea |
| **Date:** | Thursday, August 27, 2020 11:19:00 PM |
| **Attachments:** | Waiver of Indictment.pdf |

Thank you, Agalelei. I have attached the signed Waiver of Indictment. We will have the signed plea agreement to you tomorrow—technical difficulties have delayed the remote signing and scanning of the documents.

We have a sealed addendum to the plea agreement that references other potential subjects of investigation by the government. If the judge wishes to address that addendum during the plea hearing, will we be able to create a virtual sidebar where only the parties and the Court will be able to hear the content of the colloquy?

-John


John D. Keller
Principal Deputy Chief
Public Integrity Section
United States Department of Justice
1331 F St. NW | Washington, D.C. 20004
█████████ (Desk) | █████████ (Cell)


---

**From:** Agalelei Elkington █████████████████████████
**Sent:** Thursday, August 27, 2020 9:10 PM
**To:** adlowell@█████████ minkin@█████████ mccorriston@█████████ Keller, John (CRM) █████████████████████████; Sorenson, Ken (USAHI)█████████████████████
**Subject:** CR20-00068 LEK USA vs. Nickie Mali Lum Davis; Initial, waiver, arraignment, plea

Counsel:

A video telephone conference (VTC) has been set for the MOTION hearing the above noted case on Monday 08/31/2020 at 11:00 AM (HST)

Please connect about *5-10 minutes* before the scheduled VTC by following the attached instructions.

From your ipad, iphone or camera/microphone enabled computer you can click the following and follow the prompts to download and open Zoom. URL:

████████████████████████████████

Alternatively, you can open Zoom on your device and enter the following Meeting ID and password:

Meeting ID: 
Password: ▊▊▊▊

**Please do not distribute or provide anyone else with this information. Zoom participation will be limited to the parties.  The general public may access the hearing telephonically via the number provided on the daily calendar, which is available on the court's website.**

Once connected you can say to join using computer audio. If you trouble hearing the people on the call, please click the ^ symbol next to the microphone and change your **speaker** setting to a different option and test again.

If the people on the call can't hear you, please make sure you are unmuted first, if that isn't the issue then click the ^ symbol next to the microphone and change your **microphone** setting to a different option and test again.

Should you have any questions or issues please feel free to contact U.S. Courts IT at 
▊▊.
Thank you.

*Agalelei Elkington*
Courtroom Manager for The Hon. Leslie E. Kobayashi
United States District Court, District of Hawaii
Phone: ▊▊▊▊
Email: ▊▊▊▊▊▊▊
*"Courage. Kindness. Friendship. Character.*
*These are the qualities that define us as human beings*
*and propel us, on occasion, to greatness."*

EXHIBIT 27

| | |
|---|---|
| **From:** | Michelle Chaclan ██████████████████████ |
| **Sent:** | Monday, August 31, 2020 4:52 PM |
| **To:** | Salgado, Victor (CRM); O'Brien Waymack, Erica (CRM) |
| **Subject:** | FW: Activity in Case 1:20-gj-00035-BAH *SEALED* IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE PREMISES KNOWN AS THE OFFICE OF ANKURA CONSULTING GROUP LOCATED AT 1220 19TH ST NW, WASHINGTON, DC 20036, AND THE OFFICES OF BROIDY CAPIT Memora |
| **Attachments:** | 20gj35 Mem Opinion.pdf |

Counsel,

Please see Memorandum Opinion attached.

Thank you,

H. Michelle Chaclan
Courtroom Deputy to the Honorable Trevor N. McFadden
U.S. District Court for the District of Columbia
333 Constitution Avenue NW, Washington, DC 20001
██████████████

**From:** DCD_ECFNotice@dcd.uscourts.gov <DCD_ECFNotice@dcd.uscourts.gov>
**Sent:** Friday, August 28, 2020 5:59 PM
**To:** ECFMail DCD <DCD_ECFNotice@dcd.uscourts.gov>
**Subject:** Activity in Case 1:20-gj-00035-BAH *SEALED* IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE PREMISES KNOWN AS THE OFFICE OF ANKURA CONSULTING GROUP LOCATED AT 1220 19TH ST NW, WASHINGTON, DC 20036, AND THE OFFICES OF BROIDY CAPIT Memoran...


This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.
***NOTE TO PUBLIC ACCESS USERS*** There is no charge for viewing opinions.

NOTE: This docket entry (or case) is SEALED. Do not allow it to be seen by unauthorized persons.

**U.S. District Court**

**District of Columbia**

## Notice of Electronic Filing

The following transaction was entered on 8/28/2020 at 5:58 PM and filed on 8/28/2020

| | |
|---|---|
| **Case Name:** | IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE PREMISES KNOWN AS THE OFFICE OF ANKURA CONSULTING GROUP LOCATED AT 1220 19TH ST NW, WASHINGTON, DC 20036, AND THE OFFICES OF BROIDY CAPIT |
| **Case Number:** | 1:20-gj-00035-BAH *SEALED* |
| **Filer:** | |

**Document Number:** 7

**Docket Text:**

**MEMORANDUM OPINION regarding [1] Government's *Ex Parte, In Camera* Application Seeking Authorization to Review Certain Attorney-Client Communications. Signed by Chief Judge Beryl A. Howell on August 28, 2020. Counsel have NOT been notified. (lcbah2)**

**1:20-gj-00035-BAH *SEALED* Notice has been electronically mailed to:**

**1:20-gj-00035-BAH *SEALED* Notice will be delivered by other means to::**

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** suppressed
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=973800458 [Date=8/28/2020] [FileNumber=6719040-0]
[722cf3ba31fb64ca7b3a75cfdc4672b2e636142760bf8c9b3048de260c1debc48547
5b7d66165caec2b91ef33dc18f473c127a7f8b68bd8eae124dbaa5320e00]]

---

## REDACTED NOTICE FOLLOWS

---

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.
***NOTE TO PUBLIC ACCESS USERS*** There is no charge for viewing opinions.

**NOTE: This docket entry (or case) is SEALED. Do not allow it to be seen by unauthorized persons.**

<div align="center">

**U.S. District Court**

**District of Columbia**

</div>

## Notice of Electronic Filing

The following transaction was entered on 8/28/2020 at 5:58 PM and filed on 8/28/2020
**Case Name:** Sealed v. Sealed
**Case Number:** 20-35 (Requires CM/ECF login)
**Filer:** Redacted
**Document Number:** Sealed (Requires CM/ECF login)

**Docket Text:**

**Redacted due to sealed restriction. Docket text can be viewed via the unredacted NEF receipt available here.** (Requires CM/ECF login)

The following document(s) are associated with this transaction:

**Document description:** Redacted
**Original filename:** Redacted
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=973800458 [Date=8/28/2020] [FileNumber=6719040-0]
[722cf3ba31fb64ca7b3a75cfdc4672b2e636142760bf8c9b3048de260c1debc48547
5b7d66165caec2b91ef33dc18f473c127a7f8b68bd8eae124dbaa5320e00]]

# EXHIBIT 28

| | |
|---|---|
| **From:** | Salgado, Victor (CRM) |
| **Sent:** | Tuesday, September 1, 2020 7:34 PM |
| **To:** | Keller, John (CRM); Mulryne, Sean (CRM); Mann, James (CRM); Lockhart, Nicole (CRM); Thomas, Matthew (CRM) |
| **Cc:** | O'Brien Waymack, Erica (CRM); Gee, Todd (CRM) |
| **Subject:** | Court Ruling |
| **Attachments:** | 20gj35 Order.pdf; 20gj35 Mem Opinion.pdf; Ex Parte Motion.pdf; Exhibits.zip |

All,

We've attached Chief Judge Howell's order and opinion authorizing review of certain attorney-client communications. We've also attached our underlying motion and exhibits. As you will see in Judge Howell's order, the investigative team is authorized to review all of the attached documents.

Please let us know if you have any questions.

Victor

**Victor R. Salgado**
**Trial Attorney**
Public Integrity Section | Criminal Division
United States Department of Justice
1331 F Street, N.W.
Washington, D.C. 20004
████████ (o) | ████████ (c)

# EXHIBIT 29

The Washington Post

*Democracy Dies in Darkness*

# The cottage industry behind Trump's pardons: How the rich and well-connected got ahead at the expense of others

By Beth Reinhard, Rosalind S. Helderman, Tom Hamburger and Josh Dawsey

February 5, 2021

A federal judge in South Dakota was blunt last summer when she sentenced Paul Erickson, a seasoned Republican operative who had pleaded guilty to wire fraud and money laundering.

"What comes through is that you're a thief, and you've betrayed your friends, your family, pretty much everyone you know," District Judge Karen E. Schreier told Erickson in July, before sentencing him to seven years in prison for scamming dozens of people out of $5.3 million.

But Erickson, who had advised GOP presidential campaigns and a noted conservative organization, had a way out.

He had the support of White House adviser Kellyanne Conway, a member of President Donald Trump's inner orbit. And, unrelated to his conviction, he had been caught up in the investigation of Russia's interference in the 2016 presidential campaign, an inquiry much reviled by Trump.

And so after less than five months in prison, Erickson received a pardon and was freed on Inauguration Day     part of a blizzard of 144 clemency grants issued in Trump's final hours in office after a process marked by unprecedented favoritism and a rush by well-paid lobbyists.

Erickson and his attorney declined to comment.

"I was completely blindsided," said Lisa Coll Nicolaou, a New Jersey teacher whom Erickson persuaded to invest in a fraudulent medical device company after befriending her at their 25th college reunion. Contrary to Trump's oft cited pledge to root out corruption in Washington, Coll Nicolaou said, "he pardoned the swamp."

The Constitution gives the president the virtually unchecked power to grant clemency. Trump's use of that power reflected how he viewed the presidency through the prism of his own interests and as a way to reward friends and spite enemies, according to longtime clemency advocates and people who participated in the process.

His transactional approach largely sidelined low-level offenders who had waited years after filing petitions through the Justice Department and elevated those with personal connections to the White House   or the money to pay someone with those connections.

Even Trump allies who advised the White House on clemency say they were startled and disappointed by who was on the final list.

In all, Trump granted 237 pardons and commutations, according to the Justice Department, the majority of which he issued in a frantic final session with White House lawyers during his last night as president. A Washington Post review of pardon records found that about 100 of those granted clemency had never even petitioned the Justice Department's Office of the Pardon Attorney, which reviews applications using standardized criteria to impose order and fairness on the process. Only about one third of the grants went to drug offenders serving long sentences.

An additional 14,000 people who had filed petitions under the federal guidelines were left in limbo.

"Along with the devastating harm Trump wrought upon clemency as an institution are the unfathomable injustices of Trump diverting the power from those critically needing and warranting clemency to his menagerie of undeserving recipients," said Larry Kupers, who ran the pardon office at the beginning of the Trump administration.

Former White House officials did not respond to requests for comment.

When President Bill Clinton pardoned 140 people on his last day in office in 2001, including fugitive financier and Democratic donor Marc Rich, Republicans railed against what they dubbed "Pardongate," and criminal and congressional investigations were opened.

There has been little such blowback for Trump, whose last-minute pardon spree has been eclipsed by the fallout from the Jan. 6 attack on the U.S. Capitol by his supporters, including his second impeachment.

Rep. Steve Cohen (D-Tenn.), whose House Judiciary subcommittee will hold a hearing Tuesday on preventing abuse of the clemency process, said a full scale congressional investigation of Trump's pardons is needed.

Cohen pointed to Alice Johnson — a former Tennessee resident imprisoned for nearly 22 years for nonviolent drug crimes — as an example of someone who was deserving of clemency but did not receive it until Kim Kardashian West, a Trump-friendly celebrity, brought her name to the White House.

"Under Trump, pardon decisions were all about who you knew," Cohen said. "The overall Trump record is a perversion of the pardon power and an abuse of it."

Rep. Adam B. Schiff (D-Calif.), chairman of the House Intelligence Committee, said this week he has deep concerns about Trump's pardons and will reintroduce legislation that would require the Justice Department and the White House to provide detailed information to Congress about any presidential pardon or commutation involving the president or his relatives, obstruction of Congress or contempt of Congress.

For years, criminal justice experts have pushed to overhaul the Justice Department's backlogged system for vetting pardon applicants, in which prosecutors wield significant influence. Some initially held out hope that a Trump administration that touted its commitment to reforming the criminal justice system might improve the clemency process, helping to alleviate the racial inequities in the country's prison population.

Instead, pardons were doled out haphazardly, driven largely by personal connections rather than public policy decisions, according to people with knowledge of the decisions. And even some of those whose clients benefited acknowledge that the process broke down.

Brett Tolman, a former U.S. attorney, had feet in both camps: He advised the White House on pardons while also charging some clients to lobby for their clemency.

Although he says he thinks the traditional process run by the Justice Department is flawed, "I also don't like this informal system that developed with the Trump White House, in which people were pushing to get their names in," he added. "That, to me, is not a system that is right, because there are thousands of people who don't have that chance."

# Highly paid lobbyists

By late 2019, Trump seemed intent on identifying people with compelling stories who were deserving of clemency, such as Johnson, who had been sentenced to life for a first-time drug offense.

That October, more than one year after her release, she was invited to attend a speech the president gave on criminal justice reform in Columbia, S.C. In the middle of his remarks, Trump called on Johnson to help him find other inmates worthy of pardons.

Johnson said she took Trump at his word. She became part of an informal kitchen cabinet that included Tolman, who echoed Trump's concerns about voter fraud in the November presidential election; Mark Holden, chairman of the conservative group Americans for Prosperity; Matt Whitaker, a former acting U.S. attorney general under Trump; and Pam Bondi, a former Florida attorney general who represented the president in his first impeachment.

The group viewed itself as part of a White House initiative — led by Trump's son-in-law, Jared Kushner — aimed at creating a more organized and streamlined clemency system.

But soon, a cottage industry emerged of lawyers and lobbyists who sought to leverage their access to the White House for clients seeking pardons.

Among those who were paid to lobby last year for pardon seekers, according to public records, were Jack Burkman, a political operative who has repeatedly spread debunked claims and commanded more than $92,000 from the wife of one convicted fraudster who did not secure a pardon; Joshua Nass, a New York-based public relations executive who received $100,000 in December from four clients, none of whom received clemency; and Nick Muzin, a former top aide to Sen. Ted Cruz (R-Tex.) who has worked as a foreign agent for Qatar.

Muzin reported receiving $75,000 to lobby on behalf of Eliyahu Weinstein, who served eight years of a 24-year sentence for a real estate fraud that bilked investors out of $200 million, according to court filings. Trump commuted his sentence. Muzin said in an email that he is "proud" of the role his firm played in giving Weinstein "a second chance."

Nass said he pushed successful clemency petitions earlier in the Trump administration and sought to "manage expectations" for his clients so that they understood the "great challenge."

Burkman did not respond to requests for comment.

Separately, the D.C.-based Sonoran Policy Group publicly registered Monday as a lobbyist seeking a presidential commutation in connection with George Nader, an international business executive who tried to broker ties between the United States and foreign leaders before he pleaded guilty to child sex charges. According to the filing, which did not disclose the amount of the fee, the group's registration was effective as of Dec. 17.

Nader, who was sentenced in June to 10 years in prison, has not received clemency. Robert Stryk, who leads the Sonoran firm, declined to comment.

Alan Dershowitz, who served as a lawyer for Trump during his first impeachment, said he also was hired by Nader's team in late 2019 to advise on legal issues and that they discussed clemency, but he said he did not help Nader file a petition and his advice was "not encouraging." Dershowitz was named in the White House release as having endorsed four successful pardon requests among Trump's final grants of clemency.

"Knowing who to call in the White House is a not a guarantee of success by any means," he said. "I had a mixed record."

It is unclear how many lobbyists were paid to pursue Trump pardons. Federal lobbying guidelines do not explicitly cover appeals for clemency, and lawyers and other advocates have not traditionally registered as federal lobbyists when seeking pardons. A Justice Department investigation of allegations of unregistered lobbying for a pardon revealed in heavily redacted court documents unsealed in December — may have spurred some lobbyists to disclose their clients and fees.

Tolman, who served as U.S. attorney in Utah during the George W. Bush administration and went on to advocate for changes in the criminal justice system, had been involved in policy discussions with the White House when he registered as a lobbyist for eight people seeking pardons last year.

He said he started charging lobbying fees of up to $25,000 because he was trying to keep up his law practice while juggling a flood of clemency requests, some of which demanded as much work as preparing for trial.

"It was a labor of love borne more out of my desire to change the system and my compassion for those individuals than it was for my financial gain," he said.

Tolman said he also advocated during the Trump administration for at least 20 other people on a pro bono basis. They mostly included drug offenders serving long sentences, as well as well-heeled insiders such as Kushner's father, real estate developer Charles Kushner, who pleaded guilty in 2004 to making false statements to the Federal Election Commission. Trump granted Kushner a pardon in December.

Tolman said that although he had not spoken to Trump personally since late November, he was able to directly email the White House Counsel's Office — an advantage he realizes many others who deserved pardons did not have.

"I don't think it's inconsistent to say I wanted to get clemencies and that was the damn system we had to deal with it," he said.

He registered as a lobbyist, he said, to "err on the side of transparency."

But in the two cases in which his clients received clemency, the White House identified Tolman as a former U.S. attorney who backed the requests    not as a paid lobbyist. He noted that his lobbyist registrations were public.

The biggest fee reported by the clemency seeking lobbying corps went to a staunch Trump ally: Matt Schlapp, chairman of the American Conservative Union, who charged $750,000 for about a month of work, public filings show.

Schlapp's lobbying client was Parker "Pete" Petit, an Atlanta-area biopharmaceutical executive convicted of securities fraud on Nov. 19. His attorneys were trying to move quickly to secure a pardon before Trump left office.

"Pete Petit is 81 years old and suffering from bladder cancer. A sentence of incarceration for Mr. Petit would be the equivalent of a death sentence," Michael Volkov, one of Petit's attorneys, said in a written statement to The Post.

Although the longtime Republican donor had served as finance chairman for the Trump campaign in Georgia in 2016, Petit did not have a personal relationship with the president, according to people familiar with his case who spoke on the condition of anonymity because of his upcoming sentencing.

Petit's attorneys decided they needed someone who could plead his case directly to Trump. They contacted Schlapp, the husband of former White House communications adviser Mercedes Schlapp.

Matt Schlapp referred questions to Volkov, who said in a statement that Schlapp reported the lobbying fee based on legal advice and because "we all wanted to do this right."

"Matt Schlapp agreed to help Mr. Petit seek a Presidential Pardon along with additional consulting services related to Pete's desire to pass on life lessons and play a role in criminal justice reform efforts," he added.

Schlapp personally asked Trump about the pardon, according to a person familiar with the process. Petit's team was optimistic about his chances, but he was not on the final list.

The omission surprised Clayton Halunen, a Minnesota lawyer who represented a whistleblower involved in the Petit case.

"When I looked the pardon list, I would have bet my life that his name would be on it — and that was before I learned that he hired a lobbyist and paid $750,000," Halunen said. "Obviously, there's a big problem if you think that you can use money to buy justice or forgiveness."

# A   nal scramble

In the last days of the Trump administration, aides prepared paperwork for more than 400 pardons and commutations as the president kept vacillating about which ones to grant, according to people involved in the process who spoke on the condition of anonymity to describe the sensitive discussions.

Aides said Trump solicited clemency requests from a wide range of advisers, sometimes even offering pardons to those who did not request them, and considered granting pardons to himself and his family members, though they have not been charged with any crimes.

White House Counsel Pat Cipollone officially ran the process, but Trump's daughter Ivanka Trump and Jared Kushner served as key gatekeepers, the people said.

In the end, the final list that the White House released at 12:50 a.m. on Trump's last night as president had been assembled so hastily that it contained inaccurate information about some cases. Detailed background information was provided about some clemency recipients and the people who had vouched for them, but there was little information about others who were chosen.

Holden, of Americans for Prosperity, and other advocates were crushed to find that some inmates they had been told would be freed were not.

"It's like a sick joke, because we were so excited," said Nick Scarmazzo of Modesto, Calif., whose younger brother, Luke Scarmazzo, was seeking a commutation of a 22-year sentence for selling marijuana. "It would have been better if we had never known he was close."

Added Holden, who had helped push for Scarmazzo's release: "I don't know why some people made the list and others didn't."

Doug Deason, a major Texas-based Trump donor and supporter of criminal justice reform, said the White House appeared "distracted" after the Jan. 6 attack on the Capitol, as he and other advocates pressed for commutations for hundreds of inmates serving long sentences for nonviolent drug offenses.

"Everyone was disappointed," Deason said of the clemency list. "I don't know what happened to many of the names."

Among those who made it on the list was Republican megadonor Elliott Broidy, who had raised millions for Trump's 2016 presidential campaign.

His pardon was among several clemency grants that some top White House officials, including Cipollone, urged Trump to resist, according to the people familiar with the process.

Justice Department guidelines recommend inmates wait five years after conviction or release from confinement whichever comes later — before submitting a pardon application. Broidy, who had served as a top finance official at the Republican National Committee, pleaded guilty to conspiring to act as an unregistered foreign lobbyist just three months ago and had not even been sentenced.

His case touched directly on the Trump administration. In court filings, he acknowledged that he illegally lobbied top White House officials to the benefit of Malaysian and Chinese interests without registering as required by law and, as part of his illegal activity, attempted to broker a meeting between Trump and the Malaysian prime minister. He also had a criminal record from a 2009 guilty plea in which he agreed that he gave illegal gifts to officials involved in New York state's pension fund.

The White House did not explain why Trump extended him mercy, beyond saying that Broidy is "well known for his numerous philanthropic efforts" and citing 21 people, including several Trump allies, who endorsed his application.

Broidy has not spoken to Trump for two years and never spoke with him or any White House personnel about his case, according to a representative for the Los Angeles-based investor. The representative added that the White House indicated that Trump had heard from people he respected who supported the pardon request.

One former associate of Broidy was particularly upset about his pardon: Nickie Lum Davis, a Hawaii business executive who pleaded guilty in August to aiding and abetting him in his lobbying efforts. She is set to be sentenced in June.

As part of her plea, she had agreed to cooperate with the government, a decision that the Justice Department generally views favorably. Trump, however, has shown disdain for people who cooperate with prosecutors.

Filings show that Davis paid $100,000 to a consulting firm led by Mark Cowan, a member of Trump's transition team, to try to secure clemency for herself but was unsuccessful.

Cowan declined to comment. William C. McCorriston, an attorney for Davis, said her submission to the White House included letters of support and proof of her philanthropy. He said her legal team did not learn why Broidy was pardoned and she was overlooked, even though she had acted in a secondary capacity to his crime.

He said she was "distraught."

"She doesn't understand how this equates to justice," McCorriston said. "It is incomprehensible that any decision to grant clemency to Mr. Broidy would not also include a pardon for Ms. Davis."

H. Christopher Bartolomucci, an attorney for Broidy, said in a statement that "the fact that the President decided to pardon Mr. Broidy but not Ms. Lum Davis does not mean that his pardon was somehow improper or that she was improperly denied one."

Another pardon that generated criticism was the one that went to Erickson, a conservative political operative well known in Republican circles.

Erickson came under the scrutiny of federal investigators because he was romantically linked to Maria Butina, a Russian graduate student who pleaded guilty in 2018 to acting as an unregistered agent of the Kremlin.

As part of her plea, Butina admitted that she worked with an American political operative — identified by government officials as Erickson — to advance Russia's interests by forging ties with the National Rifle Association, conservative leaders and presidential candidates such as Trump.

Butina served 15 months in prison and was then deported to Russia. Erickson was never charged in her case.

But in 2019, prosecutors in South Dakota accused him of wire fraud and money laundering connected to three investment schemes dating to 1996. He agreed to plead guilty nine months later to two felonies in a case unrelated to his work with Butina.

Among his many friends in Washington is Conway, who spoke to Trump and the White House Counsel's Office about his pardon, according to a person familiar with the discussions.

The Trump White House said in its statement about the final clemency grants that Erickson's conviction "was based off the Russian collusion hoax. After finding no grounds to charge him with any crimes with respect to connections with Russia, he was charged with a minor financial crime."

The language infuriated Erickson's victims, who lost money in fraudulent businesses that had no connection to Russia.

"Minor to who?" demanded Susan Holden, a Yale classmate of Erickson's who at his urging had invested in a scheme to build housing for workers in North Dakota's Bakken oil fields.

For years, Holden said, Erickson lied to her on a near-daily basis about the project, guaranteeing that she would not lose money. He even traveled to North Dakota to meet her and her 80-year-old mother, showing off a parcel of land he claimed had been purchased with her money.

In fact, Erickson admitted in court that he never bought any land for the project. His pardon means he no longer has to pay her or his other victims restitution.

"I was crushed," Holden said. "All I could think of was, 'Goddamnit, Trump, you didn't even look into the case. Kellyanne walked into your office and said, 'This poor guy, Russia witch hunt' — and you did it.' "

Asked about criticism of the pardon, Conway said, "President Trump reviewed the Erickson matter and hundreds of requests like it at length with his legal counsel." She added that she received no money for the pardon, adding, "It had never crossed my mind that individuals would either offer or accept money with the expectation of a presidential pardon."

Carol D. Leonnig, Alice Crites, Aaron Schaffer and Amy Brittain contributed to this report.

# EXHIBIT 30





**WILLIAM C. MCCORRISTON**
Partner

**ABBE DAVID LOWELL**
Partner

February 1, 2021

**VIA EMAIL**

Kenji M Price, Esq.
United States Attorney
Kenneth M. Sorenson, Esq.
Assistant U.S. Attorney
District of Hawaii
Room 6-100, PJKK Federal Bldg.
300 Ala Moana Boulevard
Honolulu, Hawaii 96850

Corey R. Amundson, Esq.
Chief
John D. Keller, Esq.
Public Integrity Section
Criminal Division
U.S. Department of Justice
1331 F Street, N.W.
Washington, D.C. 20004

> Re: **Nickie Lum Davis**

Gentlemen:

We are writing to bring to your attention and seek a solution to a profound injustice that circumstances have caused to our client, Nickie Lum Davis. Since its inception, the Department of Justice has reaffirmed that its goal is *not* just to bring cases, but to ensure justice is served. Ms. Davis's situation requires that now.

To start off with, when the Department sought her cooperation, she provided it voluntarily and fully. She authorized counsel to provide information and also sat for her own interviews when asked. She then agreed to a case resolution even though the Department was pursuing a new interpretation of the Foreign Agent Registration Act (applied to someone who never made any contact with the government and sought to bring criminal charges instead of allowing her to retroactively register and/or have a civil resolution). Furthermore, even though a person who does register has no limits on the fees she or he can earn, and the offense is not like





February 1, 2021
Page 2

causing a loss or having a gain through fraud, she agreed to forfeit an enormous sum ($3 million) as another indication of her acceptance of responsibility.

The Department attorneys made clear that they needed her cooperation because they believed that others were much more involved and culpable in the conduct under investigation. Specifically, the Department's attorneys stated that Mr. Elliot Broidy was someone who fit that category. It was also confirmed that Ms. Davis's cooperation was an important (if not the main) factor in Elliott Broidy's plea and resolution with the government. The factual resumes of the plea agreements confirmed the different roles; that it was Mr. Broidy who stated that a FARA registration was unnecessary and also confirmed that Ms. Davis's violation was that she merely consciously avoided pursuing Mr. Broidy's assertions concerning his FARA registration. In keeping with that, her resolution was framed around her aiding and abetting and as an accomplice-- not as the principal actor.

Then the world changed.

On January 19, 2021, President Trump pardoned Mr. Broidy for the very offense charged in this case. As a result, an enormous anomaly now exists. The principal has no exposure, including forfeiture of the even greater amount which he agreed to pay, and the accomplice remains on the hook for a felony and all that brings with it. Ms. Davis faces possible separation from her young daughter though incarceration and a large forfeiture. She also bears the stigma, loss of rights, loss of business and all that comes with a felony conviction. Business agreements Ms. Davis had with a production company and investments firm were cancelled (in part after these entities were contacted as part of the pre-sentencing report being compiled). Credit cards and bank accounts were closed. Aside from the difference in culpability, Ms. Davis had no criminal record and has as many community accomplishments and good acts as Mr. Broidy. Moreover, as the pre-sentencing report itself confirms, Ms. Davis sought and her efforts resulted in the return of two American hostages, one of whom was a pregnant woman. In itself, how can this disparity be allowed to stand?

But there is more.

Research has shown that the Department has allowed various firms and people who also did not do a FARA registration at the time – including attorneys with much more knowledge of the law – to accept fees and do the work to promote the interests of the same foreign principal (Jho Low) involved in Ms. Davis's charge without the same criminal exposure. Law firms, public relations firms, consultants and their attorneys and officials began work, as did Ms. Davis, as early as 2017, but did not register until the issues of working for this individual and the Department's investigation began to be reported in the media, in some case a year or more later. And then, these registrants stated that their fees were being paid by the same third person who Ms. Davis explained she understood was responsible for funds she received but which





February 1, 2021
Page 3

Department attorneys said should have been known to come from the foreign principal under investigation. One of the people who was allowed to back register even then went to work in the National Security Division within days of her retroactive filing – the very division which oversees FARA. Also now clear is that a number of these registrants made their arrangements for payment through the law firm representing Mr. Low and that this was a way that their involvement could initially be cloaked.

The only way to remedy this inequity is to rethink the case against Ms. Davis. The criminal charges should be dismissed before entry of any judgment and she be allowed to register and pay an appropriate civil fine. This is such an important issue – both as to the specific case and the integrity of the process and the goals of the Department – that we would like to discuss it at a meeting. Circumstances change in cases all the time. When they do, the Department, those under investigation or already charged, or the courts make changes to address and remedy what has occurred. This should happen here.

Sincerely,

William C. McCorriston

Abbe David Lowell

# EXHIBIT 31



**U.S. Department of Justice**

Criminal Division

_Public Integrity Section_                    _Washington, D.C. 20530_

February 3, 2021

William C. McCorriston
McCorriston, Miller, Mukai, MacKinnon LLP
████████████

Abbe D. Lowell
Winston & Strawn LLP
████████ █████

**VIA EMAIL**

RE: _United States v. Nickie Mali Lum Davis_, Case No. 1:20-cr-68

Counsel:

We have received your letter of February 1, 2021, containing your description of your client's cooperation; characterizing her relative culpability; setting forth your disagreement with criminal application of the Foreign Agents Registration Act, 22 U.S.C. § 611, _et seq._ in this case; and noting the pardon for your client's co-conspirator, Elliott Broidy, contrasted with the lack of any pardon or clemency for Ms. Lum Davis.

We respectfully decline your request for a dismissal of the FARA charge to which your client has pleaded guilty. Your client's culpability, the extent of her cooperation, and the degree to which she has fully accepted responsibility for her substantial role in this offense will be addressed at sentencing, along with other factors. Her co-conspirators' conduct and the resolutions of their cases may also be relevant in determining Ms. Lum Davis's ultimate sentence, but the fact that Mr. Broidy received a pardon does not diminish the seriousness of the criminal scheme executed by the co-conspirators or Ms. Lum Davis's central role in the offense.

COREY R. AMUNDSON
Chief, Public Integrity Section

_John D. Keller_
John D. Keller
Principal Deputy Chief

Sincerely,

KENJI M. PRICE
United States Attorney, District of Hawaii

_Kenneth M. Sorenson_
Kenneth M. Sorenson
Chief, National Security

# EXHIBIT 32

| From: | William C. McCorriston |
| To: | Keller, John (CRM); Sorenson, Ken (USAHI) |
| Cc: | James A. Bryant ▮▮▮▮▮▮▮▮▮ Lowell, Abbe; nickielumdavis |
| Subject: | USA v. Davis, Cr. No. 20-00068 LEK |
| Date: | Tuesday, April 13, 2021 7:32:17 PM |
| Attachments: | image001.png |

Gentlemen,

This will inform you that Mr. Lowell will no longer be serving as counsel for Ms. Davis in the above matter and shortly will be filing his withdrawal as co-counsel in USA vs. Davis, Cr. No. 20-00068 LEK.

Mr. James Bryant will be the attorney assisting you in the preparation of Ms. Davis for the upcoming Grand Jury proceeding (Paz). Mr. Bryant's contact information is as follows:

James A. Bryant III
The Cochran Firm – California
4929 Wilshire Blvd Suite 1010
Los Angeles, CA 90010
Phone: ▮▮▮▮▮▮▮▮
Email: ▮▮▮▮▮▮▮▮▮▮▮

Hence, I am forwarding to Mr. Bryant your email transmission of documents for grand jury preparation sent to me this morning.  It is Ms. Davis' intention to continue to cooperate with your investigation.

Please call or email me if you have any questions.

Bill





William C. McCorriston
Managing Partner
McCorriston Miller Mu▮▮▮i MacKinnon LLP

This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please notify us immediately by e mail or telephone, and return the original message.  THANK YOU.

Anyone communicating to or from this office by means of an electronic device (including computers, smart phones, tablets or others) and using electronic communication (including e-mail, text messages, instant messages, chat rooms, comments on blogs or websites or others) is advised that such communications may not be confidential, particularly in instances where you are transmitting personal information using your employer's devices or networks or where you are using you are using public computers (such as libraries or hotels) or using a public wireless internet connection.  The effect of the loss of confidentiality will be the loss of attorney-client privilege and the possibility that such communications may not be protected from disclosure in any legal procedure in which you are involved.  You are cautioned to act accordingly.

# EXHIBIT 33

**From:** Mulryne, Sean (CRM)
**Sent:** Tuesday, March 15, 2022 11:14 PM
**To:** James A. Bryant
**Cc:** William C. McCorriston; Sorenson, Ken (USAHI); Lockhart, Nicole (CRM); Keller, John (CRM)
**Subject:** RE: [EXTERNAL] RE: Stipulation to Continue Sentencing

James,

Thank you for the follow-up.  We propose meeting with Ms. Lum Davis on either March 29 or April 1.  Please let us know if either of those dates works for you and your client.

Regarding the recently filed motion for continuance, we agreed to postpone the sentencing hearing to allow for the filing and resolution, prior to sentencing, of the motion you mentioned submitting as early as last Friday.  Please advise as to when you intend to file that motion so we may ensure there is sufficient time to address and resolve it before sentencing.

Thank you.

Sean

---

**From:** James A. Bryant ███████████████████
**Sent:** Tuesday, March 15, 2022 6:52 PM
**To:** Mulryne, Sean (CRM) ██████████████████
**Cc:** William C. McCorriston ████████████████████; Sorenson, Ken (USAHI) ████████████████; Lockhart, Nicole (CRM) ████████████████████; Keller, John (CRM) ███████████████
**Subject:** Re: [EXTERNAL] RE: Stipulation to Continue Sentencing

Hey Sean my schedule is filling up and I have several trials in April and May. Can you see if you can get back to me on dates for Nickie so I can make sure I have availability.

Thanks,

James A. Bryant II
Partner
The Cochran Firm - California
4929 Wilshire Blvd Suite 1010
Los Angeles, CA 90010
Ph. ████████ Cell ███████████ Fax. ██████████████████

*ATTORNEY WORK PRODUCT - PRIVILEGED & CONFIDENTIAL*
**The information contained in this message from The Cochran Firm California and any attachments are privileged and confidential and intended only for the named recipient(s). If you have received this message in error, you are prohibited from reviewing, copying, distributing or using the information. Please contact the sender immediately by return email and delete the original message and attachments.**

On Mar 10, 2022, at 2:17 PM, Mulryne, Sean (CRM) ███████████████████ wrote:

James,

Thank you for the quick response.  We do not oppose a 30-day continuance of the sentencing hearing.  We will confer among ourselves on possible dates and be back in touch shortly.

Sean



**From:** James A. Bryant
**Sent:** Thursday, March 10, 2022 5:00 PM
**To:** Mulryne, Sean (CRM)
**Cc:** William C. McCorriston                    Sorenson, Ken (USAHI)
                              ; Lockhart, Nicole (CRM)                              ; Keller, John (CRM)

**Subject:** Re: [EXTERNAL] RE: Stipulation to Continue Sentencing

Hi Sean:

Thank you for the email. I do not disagree that Ms. Davis' participation per her agreement is separate and a part from the other issues raised and she has been and will continue to cooperate. Let's discuss dates and get a meeting set up. If and until there is something stated otherwise by the Court my client understands her obligations. The sooner the better as I will be starting several concurrent trials in the very near future.

On a separate note we are in the final stages of finalizing the motion previously discussed and we intend to file that as early as tomorrow. We were going to concurrently file a motion to continue sentencing, how did the government want to address the request to continue given my client intends continue to cooperate as she always has?

Best,

James A. Bryant II
Partner
The Cochran Firm - California
4929 Wilshire Blvd Suite 1010
Los Angeles, CA 90010
Ph.                 Cell                   Fax.

*ATTORNEY WORK PRODUCT - PRIVILEGED & CONFIDENTIAL*
The information contained in this message from The Cochran Firm California and any attachments are privileged and confidential and intended only for the named recipient(s). If you have received this message in error, you are prohibited from reviewing, copying, distributing or using the information. Please contact the sender immediately by return email and delete the original message and attachments.

On Mar 9, 2022, at 11:56 AM, Mulryne, Sean (CRM)                              wrote:

James,

I hope all has been well.  As noted in my email dated January 12, 2022, we consider Ms. Lum Davis's cooperation separate and distinct from the ethics allegations you have raised previously.  We therefore request again to set up a meeting with Ms. Lum Davis as soon as possible, specifically this month, to inquire about some recently declassified materials and information.  We also ask again that Ms. Lum Davis please provide a signed preliminary order of forfeiture that may be filed immediately with the court.  The need to schedule this meeting and obtain a signed preliminary order are particularly urgent given the rapidly approaching deadline for the parties to submit sentencing memoranda to the court by March 21, 2022, and the sentencing hearing scheduled for April 21, 2022.  Absent continued cooperation from your client, the government intends to move forward with sentencing on April 21.

Thank you.

Sean

---

**From:** Mulryne, Sean (CRM)
**Sent:** Friday, January 21, 2022 5:08 PM
**To:** James Bryant ████████████████████████
**Cc:** William C. McCorriston ████████████████ ; Sorenson, Ken (USAHI) ████████████████ ; Lockhart, Nicole (CRM) ████████
Keller, John (CRM)
**Subject:** RE: [EXTERNAL] RE: Stipulation to Continue Sentencing

James,

Thank you for the email.  No search warrant or subpoena was ever issued for Mr. Lowell's email account.  Again, as was discussed during the June 2021 call, the relevant emails related to the alleged bribery-for-pardon scheme were uncovered by a filter team while searching Mr. Broidy's emails in July 2020.  No one other than the filter team was aware of those documents or raised this issue with Mr. Lowell until days before Ms. Lum Davis's plea.  The investigative team was not provided the emails at issue until after Ms. Lum Davis's plea hearing.  The only prosecutors on the investigative team were Mr. Keller, Ms. Lockhart, Mr. Sorenson, Jamie Mann, and myself.

As a result of our June 2021 call, you were on notice about these and other relevant facts related to the substance of your allegations.  Also during that call, Mr. Keller stated he would report to OPR if you believed, based on these facts, that he or any other government attorney acted unethically.  You never followed up with the government about this issue.  Instead, approximately six months later—in spite of that June 2021 call, and without any notification to the investigative team that you believed the government had acted unethically—you filed your OPR complaint knowing that the facts contained therein directly contradicted those provided by Mr. Keller.  Given those actions, we have serious questions about whether you are willing to correct the inaccuracies set forth in your OPR filing.  Your representations that you want to ensure that you are as accurate as possible and do not want to unfairly characterize anyone's actions on the investigative team are inconsistent with you persisting in a baseless and grossly inaccurate OPR complaint.  If you still intend to proceed with these erroneous claims through the Court and/or OPR, the government will address them accordingly at the appropriate time and sees no reason to continue addressing this issue through email.

Thank you again, and have a good weekend.

Sean



**From:** James Bryant ████████████████████ >
**Sent:** Wednesday, January 19, 2022 11:01 PM
**To:** Mulryne, Sean (CRM) ████████████████
**Cc:** William C. McCorriston ████████████████; Sorenson, Ken (USAHI) ████████████████; Lockhart, Nicole (CRM) ████████████; Keller, John (CRM) ████████████████
**Subject:** RE: [EXTERNAL] RE: Stipulation to Continue Sentencing

Sean:

Thank you for the response. I apologize for the late response, as I have had a heavy travel week. I must admit that I'm now a bit more confused. As stated previously, prior to submitting any filing to the Court, I want to ensure that I am as accurate as possible, and since you raised concerns that there were allegations in the OPR complaint that were inaccurate it's only fair that your team is afforded the opportunity to provide me with any information that would be helpful in addressing any allegations to which you believe are inaccurate.

On that basis, it would be helpful to understand the following: When did the DOJ first make contact with Abbe and/or his counsel regarding the pardon matter? Also, when did DOJ first obtain any of Mr. Lowell's emails via either subpoena or search warrant? The reason for the second question is that, even without direct contact from the DOJ, Mr. Lowell could have learned about the inquiry. Also, you indicated that others besides Mr. Keller were on the "investigative team" on the pardon matter. Who else, if anyone, from the team prosecuting my client was on that investigative team, besides Mr. Keller?

Please know that I am open to acknowledging any mistakes that I may have made, but in order to do so, I need some additional information from you.

As I'm sure you can appreciate, what matters here is not what labels (target, subject, etc.) that DOJ applied to Mr. Lowell when it took interest in the pardon matter. This is especially true considering that most "persons of interest" have no real way of knowing if prosecutors are building towards bring charges against them or not.

So please help me understand the timing of events, especially with respect to when Mr. Lowell knew about (or might have discovered) certain things (actual communications with Mr. Lowell regarding the pardon matter, including any crossover with my client's matter would be helpful as well).

I appreciate your willingness to help shed light on this matter. Once you let me know about your first contact with Mr. Lowell or his counsel about the pardon matter, and when you subpoenaed (or executed a warrant on) Mr. Lowell's emails, that would obviously help me see where I had been mistaken. I hope you realize that the last thing I would want is to unfairly characterize the actions of anyone, including those of anyone on your team.

Happy to continue our interactions over writing, as you have requested.  Looking forward to your response, and hoping that it will provide me some clarity on these very complex issues.

Best,

James A. Bryant II
Partner
The Cochran Firm - California
4929 Wilshire Blvd Suite 1010
Los Angeles, CA 90010
Ph. ███████   Cell ████████   Fax. ████████████

*ATTORNEY WORK PRODUCT - PRIVILEGED & CONFIDENTIAL*
The information contained in this message and any attachments are privileged and confidential and intended only for the named recipient(s). If you have received this message in error, you are prohibited from reviewing, copying, distributing or using the information. Please contact the sender immediately by return email and delete the original message and attachments.

---

**From:** Mulryne, Sean (CRM) ████████████████
**Sent:** Wednesday, January 12, 2022 1:00 PM
**To:** James Bryant ██████████████████
**Cc:** William C. McCorriston ███████████   Sorenson, Ken (USAHI) ███████████████; Lockhart, Nicole (CRM) ████████  Keller, John (CRM) ████████
**Subject:** RE: [EXTERNAL] RE: Stipulation to Continue Sentencing

James,

Thank you for confirming the accuracy of the complaint.  In short, your allegations about Mr. Keller's involvement in an alleged criminal investigation of Mr. Lowell concerning a bribery-for-pardon scheme are baseless and without merit.  As Mr. Keller explained during the parties' call on June 15, 2021—in which you and Mr. McCorriston participated, and in which Mr. Sorenson and I also joined—the investigative team, including Mr. Keller, was not involved in any alleged investigation of Mr. Lowell prior to Ms. Lum Davis's plea.  Therefore, the alleged scheme could not have had any bearing on the plea negotiations between the investigative team and Mr. Lowell (on Ms. Lum Davis's behalf).  Given that you filed an OPR complaint despite being on notice about the inaccuracy of these allegations, we believe it is best to address this issue through litigation, if that is what you choose to pursue.  We will respond to your motion accordingly.  Moreover, we prefer to exchange all communications in writing for the time being.  Lastly, we note your previous representation that Ms. Lum Davis will not proceed with her cooperation until after the resolution of this litigation.  To be clear, we consider Ms. Lum Davis's cooperation as a matter entirely separate and distinct from the present issue.

Thank you.

Sean

**From:** James Bryant ███████████████████████████
**Sent:** Tuesday, January 11, 2022 12:02 PM
**To:** Mulryne, Sean (CRM) ████████████████████
**Cc:** William C. McCorriston ███████████████████; Sorenson, Ken (USAHI) ████████████████
████████ Lockhart, Nicole (CRM) ████
Keller, John (CRM) ████████
**Subject:** RE: [EXTERNAL] RE: Stipulation to Continue Sentencing

Sean:

I have had a chance to review the document. Although someone has added their own formatting, and this document contains revisions that would have only been included in the version that was submitted through the web form (i.e. the addition of asterisks for emphasis), the document is accurate. This was helpful in determining that we were speaking about the same facts that were submitted. I look forward to your team's responses.

Best,

James A. Bryant II
Partner
The Cochran Firm - California
4929 Wilshire Blvd Suite 1010
Los Angeles, CA 90010
Ph. ████████ Cell ████████ Fax. ████████████

*ATTORNEY WORK PRODUCT - PRIVILEGED & CONFIDENTIAL*
**The information contained in this message and any attachments are privileged and confidential and intended only for the named recipient(s). If you have received this message in error, you are prohibited from reviewing, copying, distributing or using the information. Please contact the sender immediately by return email and delete the original message and attachments.**

**From:** Mulryne, Sean (CRM) ██████████████████
**Sent:** Monday, January 10, 2022 1:22 PM
**To:** James A. Bryant ████████████████
**Cc:** William C. McCorriston ████████████████████; Sorenson, Ken (USAHI) ████████████████
████████████; Lockhart, Nicole (CRM) ████
Keller, John (CRM) ████████████
**Subject:** Re: [EXTERNAL] RE: Stipulation to Continue Sentencing

Thank you, James.

On Jan 10, 2022, at 4:16 PM, James A. Bryant ███████████████████
wrote:

Thanks Sean. I will cross check it against what was files, and let you know a little later today.

Best,

James A. Bryant II
Partner
The Cochran Firm - California
4929 Wilshire Blvd Suite 1010
Los Angeles, CA 90010
Ph. ███████   Cell ███████   Fax. ████████████

*ATTORNEY WORK PRODUCT - PRIVILEGED & CONFIDENTIAL*
The information contained in this message from The Cochran Firm California and any attachments are privileged and confidential and intended only for the named recipient(s). If you have received this message in error, you are prohibited from reviewing, copying, distributing or using the information. Please contact the sender immediately by return email and delete the original message and attachments.

On Jan 10, 2022, at 12:39 PM, Mulryne, Sean (CRM) ████████████ wrote:

James,

Attached is a PDF version of the OPR complaint's text we received. Please advise if this is a complete and accurate summary of your submission. Your response will help us in further addressing your request/points below.

Thank you.

Sean

From: James Bryant ████████████
Sent: Monday, January 10, 2022 1:00 PM
To: Mulryne, Sean (CRM) ████████████
Cc: William C. McCorriston ████████████ Sorenson, Ken (USAHI) ███████   Lockhart, Nicole (CRM) ████████████   Keller, John (CRM)
Subject: RE: [EXTERNAL] RE: Stipulation to Continue Sentencing

Good Morning Sean:

Thank you for your response as well. A motion to disqualify is imminent, however, based upon some of the concerns raised in your email regarding the accuracy of some of the facts set forth in Ms. Lum's OPR complaint (which I will address below) I think that it is important to provide you with an opportunity to address anything you believe to be factually inaccurate, in order to avoid submitting a pleading to the court that contains inaccurate facts which could have been addressed before such a document was filed. So could you please provide me with an

explanation to what facts your team believes to be inaccurate so that I can make revisions to our motion to avoid including anything that is inaccurate.

Which now leads me to address your comments regarding a "draft" of the OPR complaint that was provided to you by a reporter. For starters not only do I have no knowledge as to how a reporter may have obtained a copy of the OPR complaint that was filed on Ms. Lum's behalf, I cannot even tell you if the document you are referencing is in fact that complaint that was filed. It would be helpful if you can send to me what you were able to review to first ensure that it in fact accurately reflects what was submitted. While I do not know what information a respondent to an OPR complaint is provided, I definitely wouldn't want that information getting out during a pending investigation. Due to the nature of facts set forth in the OPR complaint and the bar complaint against Mr. Lowell, I have prepared an application to have my declaration to the motion, along with those exhibits reviewed *in camera*, for the purpose of ensuring that no one sees the contents of those complaints. So needless to say, I wasn't exactly thrilled to learn that some of the complaint information seemed to have gotten leaked and an article came out before the motion was even filed.

I am sure this reporter would have really wanted to get his hands on the bar complaint that was filed as well as it provides a more detailed factual background as it relates to Mr. Lowell's actions that could not be expressed in the OPR complaint, as an OPR complaint is limited in how long a complaint submission can be. Clearly he did not seem to have that information, as I could not imagine that he wouldn't have referenced the contents of that complaint in his article as well, had he been in possession of it. If it was our teams intention to disseminate this type of information to the press, believe me Mr. Lowell's bar complaint would have been included.

With that said, once again I would like to submit a pleading that has given your team the opportunity to address any inaccuracies before it is filed so please get back to me on that as soon as you can, and as you suggested we can set up a meeting thereafter. Again, I prefer in person but whatever makes most sense.

Best,

James A. Bryant II
Partner
The Cochran Firm - California
4929 Wilshire Blvd Suite 1010
Los Angeles, CA 90010
Ph. ███████  Cell ███████  Fax. ███████
████████████████

*ATTORNEY WORK PRODUCT - PRIVILEGED & CONFIDENTIAL*
The information contained in this message and any attachments are privileged and confidential and intended only for the named

recipient(s). If you have received this message in error, you are prohibited from reviewing, copying, distributing or using the information. Please contact the sender immediately by return email and delete the original message and attachments.

---

**From:** Mulryne, Sean (CRM) ████████████████████████████
**Sent:** Friday, January 7, 2022 3:28 PM
**To:** James Bryant ███████████████████████████
**Cc:** William C. McCorriston ████████████████████; Sorenson, Ken (USAHI) ████████████████ Lockhart, Nicole (CRM) ████████████████████████; Keller, John (CRM) ███████████████████████

**Subject:** RE: [EXTERNAL] RE: Stipulation to Continue Sentencing

James,

Thank you for your quick response. We have seen a draft of the OPR complaint shared by a Politico reporter. To that point, do you have any information or knowledge as to how the media obtained a copy of the complaint? There are multiple, gross factual inaccuracies in the complaint we reviewed, and we strongly disagree with and dispute many of the assertions therein. Should you choose to file a motion as represented below, the government will respond to it in due course. If such a motion is imminent, we should consider arranging a conference call to address this case after the pleadings are filed. In the meantime, our Section has discussed this matter with Mr. Polite, and there is no need to copy him on any future correspondence at this time

Sean

---

**From:** James Bryant ████████████████████████████
**Sent:** Thursday, January 6, 2022 3:01 PM
**To:** Mulryne, Sean (CRM) ██████████████
**Cc:** William C. McCorriston ████████████████████>; Sorenson, Ken (USAHI) ████████████████ Lockhart, Nicole (CRM) ████████████████████; Keller, John (CRM) ████████████████████████; Polite, Kenneth (CRM) ████████████████

**Subject:** [EXTERNAL] RE: Stipulation to Continue Sentencing

Good Morning Sean:

Happy New Year to you as well. As I am sure you are aware, an OPR complaint has been filed against Mr. Keller, and a bar complaint has been filed against Mr. Lowell. Based upon what we believe to be serious ethical violations committed by both Mr. Keller and Mr. Lowell, we intend to move for the disqualification of Mr. Keller on this case. This is most certainly not a decision that has been taken lightly, nor is a decision that was done without significant due diligence.

With that said, there is still a plea agreement in place and my client has cooperated and will continue to cooperate so long as she is legally obligated to do so. However, there are a number of different issues that need to be addressed prior to any further discussions with my client. To be frank, the issues raised in our OPR complaint must be addressed by both the DOJ and before Judge Kobayashi before we can feel comfortable moving forward with the continued cooperation of our client. This is a road I do not believe any of us have been down before, and I have a duty to my client to ensure that this is handled properly.

I am in the process of finalizing our motion to disqualify / recuse, which should be filed by early next week. I think that the prudent thing to do would be for Judge Kobayashi to decide on that motion first, take whatever appropriate action necessary and provide some guidance on this very unusual challenge. Further, I believe than an in person meeting with your team, which should include the new Head of the Criminal Division, Kenneth Polite (added to this communication), would be appropriate to discuss what should happen moving forward pending the DOJ's review of the OPR complaint, the pending motion and logistics related to the Michel matter. I can be in DC as early as next week, due to the gravity of the matter and essence of time.

Again, I recognize that this uncharted territory for all of us. However, despite the uniqueness of the facts of this particular matter, this is not the first time there has been serious allegations of AUSA misconduct raised by a defendant, so I am sure there may be some possible guidance within the DOJ in how to appropriately handle this matter when there are unresolved issues that are pending. Please let me know your thoughts. My trial that was supposed to begin on the January 4th was continued due to Covid related concerns, so I am available to discuss this week.

Best,

James A. Bryant II
Partner
The Cochran Firm - California
4929 Wilshire Blvd Suite 1010
Los Angeles, CA 90010
Ph. ███████   Cell ██████   Fax. ████████
██████████████

*ATTORNEY WORK PRODUCT - PRIVILEGED & CONFIDENTIAL*
The information contained in this message and any attachments are privileged and confidential and intended only for the named recipient(s). If you have received this message in error, you are prohibited from reviewing, copying, distributing or using the information. Please contact the sender immediately by return email and delete the original message and attachments.

**From:** Mulryne, Sean (CRM) █████████████████
**Sent:** Thursday, January 6, 2022 8:39 AM
**To:** James Bryant █████████████████
**Cc:** William C. McCorriston █████████████; Sorenson, Ken (USAHI) █████████████; Lockhart, Nicole (CRM) █████████████████; Keller, John (CRM)
**Subject:** RE: Stipulation to Continue Sentencing

James,

Happy New Year, and I hope you enjoyed the holidays.  I'm following up on the items below, including the preliminary order of forfeiture and our request to sit down with Ms. Lum Davis in the upcoming weeks or so.  Moreover, given the lapse in time between our communications, can you please confirm whether Ms. Lum Davis remains cooperative in this matter, or whether she will be seeking to withdraw her guilty plea?

Thank you.

Sean

---

**From:** Keller, John (CRM) █████████████
**Sent:** Friday, December 10, 2021 10:11 AM
**To:** James Bryant █████████████
**Cc:** William C. McCorriston █████████████; Sorenson, Ken (USAHI) █████████████; Mulryne, Sean (CRM) █████████████; Lockhart, Nicole (CRM)
**Subject:** RE: Stipulation to Continue Sentencing

James—following up on this request.  Also, we may want to talk to Ms. Lum Davis as early as January regarding some materials that we anticipate being declassified.  Are you and she generally available the weeks of January 17 and 24?  We can do the interview over Webex.

-John

John D. Keller
Principal Deputy Chief
Public Integrity Section
United States Department of Justice
1301 New York Ave. NW | Washington, D.C. 20350
████████ (Desk) | ████████ (Cell)

---

**From:** Keller, John (CRM) █████████████
**Sent:** Tuesday, November 30, 2021 5:50 PM
**To:** James Bryant █████████████

11

**Cc:** William C. McCorriston ███████████████████ Sorenson, Ken (USAHI) ███████████████; Mulryne, Sean (CRM) ███████████████; Lockhart, Nicole (CRM) ███████████████

**Subject:** RE: Stipulation to Continue Sentencing

James,

Checking in on the preliminary order of forfeiture.  Ken has reached out to Mac but hasn't been able to reach him.  The USAO needs the signed preliminary order to file with the Court pursuant to the plea agreement.

Separately, just as a  heads up for planning purposes, we anticipate needing to sit down again with Ms. Lum Davis to for some trial prep, likely in February or March.

-John

**From:** James Bryant ███████████████████
**Sent:** Monday, August 2, 2021 4:20 PM
**To:** Keller, John (CRM) ███████████████
**Cc:** William C. McCorriston ███████████ Sorenson, Ken (USAHI) ███████████ Mulryne, Sean (CRM) ███████████████ Lockhart, Nicole (CRM)

**Subject:** Re: Stipulation to Continue Sentencing

My e-sig is fine. You have my authorization.

On Mon, Aug 2, 2021 at 12:21 PM Keller, John (CRM) ███████████████ > wrote:

Received—James, can you sign and re-circulate?  I can also insert an electronic /s/ signature for you with your authorization.  Whatever you prefer.

-John

**From:** William C. McCorriston < ███████████████████
**Sent:** Monday, August 2, 2021 3:15 PM
**To:** Keller, John (CRM) ███████████ William C. McCorriston ███████████ James A. Bryant
**Cc:** Sorenson, Ken (USAHI) ███████████; Mulryne, Sean (CRM) ███████████ Lockhart, Nicole (CRM) ███████████████

**Subject:** RE: Stipulation to Continue Sentencing

Take 2 – Thanks.

**From:** Keller, John (CRM) ███████████████
**Sent:** Monday, August 2, 2021 9:09 AM

**To:** William C. McCorriston █████████████████████████; James A. Bryant █████

**Cc:** Sorenson, Ken (USAHI) ███████████████████████ Mulryne, Sean (CRM) █████████████████████; Lockhart, Nicole (CRM)

**Subject:** RE: Stipulation to Continue Sentencing

Thanks, Bill—but no signatures are showing up.

---

**From:** William C. McCorriston ██████████████████████

**Sent:** Monday, August 2, 2021 2:58 PM

**To:** James A. Bryant ████████████████████; Keller, John (CRM)█████████████████████████

**Cc:** William C. McCorriston █████████████; Sorenson, Ken (USAHI ███████████ Mulryne, Sean (CRM) ███████████████████; Lockhart, Nicole (CRM) █████████████

**Subject:** RE: Stipulation to Continue Sentencing

Attached is the Stipulation with my e-signature.  Thanks.



William C. McCorriston
Managing and Founding Partner
**McCorriston Miller Mukai MacKinnon LLP**

This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please notify us immediately by e mail or telephone, and return the original message.  THANK YOU.

Anyone communicating to or from this office by means of an electronic device (including computers, smart phones, tablets or others) and using electronic communication (including e-mail, text messages, instant messages, chat rooms, comments on blogs or websites or others) is advised that such communications may not be confidential, particularly in instances where you are transmitting personal information using your employer's devices or networks or where you are using you are using public computers (such as libraries or hotels) or using a public wireless internet connection.  The effect of the loss of confidentiality will be the loss of attorney-client privilege and the possibility that such communications may not be protected from disclosure in any legal procedure in which you are involved.  You are cautioned to act accordingly.

---

**From:** James A. Bryant █████████████████████████████

**Sent:** Monday, August 2, 2021 5:43 AM

**To:** Keller, John (CRM)████████████████████

**Cc:** William C. McCorriston ████████████████████>; Sorenson, Ken (USAHI) ████████████████████; Mulryne, Sean (CRM) ████████████ Lockhart, Nicole (CRM)███████

**Subject:** Re: Stipulation to Continue Sentencing

Will do. I'll reach out to Bill today.

James A. Bryant II
Partner
The Cochran Firm - California
4929 Wilshire Blvd Suite 1010
Los Angeles, CA 90010
Ph. ███████  Cell ███████  Fax. ███████

*ATTORNEY WORK PRODUCT - PRIVILEGED & CONFIDENTIAL*
The information contained in this message from The Cochran Firm California and any attachments are privileged and confidential and intended only for the named recipient(s). If you have received this message in error, you are prohibited from reviewing, copying, distributing or using the information. Please contact the sender immediately by return email and delete the original message and attachments.

> On Aug 2, 2021, at 8:21 AM, Keller, John (CRM) ███████ wrote:
>
> Trying again.
>
> James—if you and Bill could electronically sign today and then send the signed version back to Ken and me for electronic signatures, then we can get this filed.
>
> -John
>
> John D. Keller
> Principal Deputy Chief
> Public Integrity Section
> United States Department of Justice
> 1331 F St. NW | Washington, D.C. 20004
> ███████ (Desk) | ███████ (Cell)
>
> <Davis__Stip to Continue Sentencing__2021.08.02.pdf>

# EXHIBIT 34

| From: | Josh Gerstein |
|---|---|
| To: | Keller, John (CRM) |
| Subject: | [EXTERNAL] Q re Davis case & OPR complaint |
| Date: | Thursday, December 30, 2021 12:14:02 PM |
| Attachments: | OPRCompNLD1121.docx |

Hi Mr. Keller:

I'm a reporter with POLITICO working on an article about an Office of Professional Responsibility complaint that was filed last month about the handling of the Nice Lum Davis case.

I reached out a few days back to DOJ's Office of Public Affairs to seek comment about it, but wanted to also reach out to you directly to see fi you had a reaction or comment that I could include.

I am attaching the text of the complaint if you haven't seen it.

The article could run as soon as tomorrow (Friday) so if you have any comment, it would be most useful to share it today.

Many thanks,

Josh Gerstein


Josh Gerstein
Senior Legal Affairs Reporter
POLITICO