| | |
|---|---|
| CLARE E. CONNORS #7936 | COREY R. AMUNDSON |
| United States Attorney | Chief, Public Integrity Section |
| District of Hawaii | United States Department of Justice |
| | |
| KENNETH M. SORENSON | JOHN D. KELLER |
| Assistant U.S. Attorney | Principal Deputy Chief |
| Room 6-100, PJKK Federal Bldg. | |
| 300 Ala Moana Boulevard | SEAN F. MULRYNE |
| Honolulu, Hawaii 96850 | Deputy Director, Election Crimes |
| Telephone: (808) 541-2850 | NICOLE R. LOCKHART |
| Facsimile: (808) 541-2958 | Trial Attorney |
| Email:ken.sorenson@usdoj.gov | Public Integrity Section |

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA | ) Crim. No. 20-00068 LEK |
| | ) |
| Plaintiff, | ) |
| | ) REPLY RE MOTION FOR |
| vs. | ) JUDICIAL FINDING OF WAIVER |
| | ) OF ATTORNEY-CLIENT |
| NICKIE MALI LUM DAVIS | ) PRIVILEGE |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

REPLY RE MOTION FOR JUDICIAL FINDING OF WAIVER OF
ATTORNEY-CLIENT PRIVILEGE

Despite over one-hundred pages of groundless speculation, mischaracterization, and distortion, the defendant has failed to establish a single instance of government misconduct. Based only on an unfounded assumption of bad

1

faith, the defendant first accused the government of initiating a criminal investigation into her former counsel, Lowell, to extort him to pressure the defendant to plead guilty to an offense that she now claims she did not commit. After seeing the government's Response and the evidence that the prosecution team never initiated any such investigation and that the filter team handled the matter appropriately, the defendant has pivoted to suggest that the prosecution team injected itself into a separate FARA matter, ostensibly as part of a similar effort to extort Lowell. These far-fetched theories are nothing more than calculated conjecture. The prosecution team never represented or implied to Lowell that he had FARA exposure other than in the context of discussing his potential conflicts before the defendant's plea, and PIN had no involvement in the civil FARA letter of inquiry sent to Lowell.

The defendant disavows that she is seeking relief based on Lowell's potential conflicts of interest but nonetheless spends much of her Response baselessly arguing that the FARA matter was criminal and that this prosecution team was behind it, all to buttress her claim that Lowell was in fact laboring under an actual conflict of interest. The defendant cannot have it both ways. In two separate scattershot pleadings, espousing equally spurious theories of government misconduct, the defendant has repeatedly put Lowell's conduct at issue and has thereby waived the attorney-client privilege.

I. **Argument**

   a. <u>The Prosecution Team Had No Involvement in the Civil FARA Inquiry</u>

Lacking any evidence to support her initial allegation that the prosecution team initiated a "bribery-for-pardon" investigation into Lowell to extort him, the defendant focuses much of her response on a new false claim: that the prosecution team initiated a separate FARA investigation of Lowell to pressure him to coerce the defendant to plead guilty. To the contrary, the prosecution team had no involvement in the civil FARA inquiry into Lowell.

The August 2019 calls cited by the defendant as evidence of the prosecution team weaponizing a criminal FARA investigation into Lowell, Def. Response, 10-11, ECF No. 58, had nothing to do with any investigation of Lowell; rather, they concerned Lowell's potential conflicts arising from his prior representation of individuals against whom the defendant could potentially cooperate. ECF No. 55-2 at 12-16. The first substantive paragraph of the contemporaneously drafted FBI report memorializing the initial call provides: "The Government is aware that Abbe Lowell represents, or has represented [name redacted] and has concerns of a conflict of interest between that representation and that of LUM DAVIS. The Government expressed that such conflict, if not addressed preemptively, could lead to issues surrounding any potential judicial outcome for LUM DAVIS." *Id*. at 12. The defendant ignores this description and, without any basis, alleges that the call was

actually Keller's effort to leverage potential FARA exposure for Lowell against him in plea negotiations with the defendant. ECF No. 58 at 10-11. Not only do the FBI reports memorializing the calls unequivocally establish that the discussions concerned a potential conflict—without any mention of FARA liability in either report, ECF No. 55-2 at 12-13, 15-16—but plea negotiations did not resume with Lowell until ten months after the calls. It makes no sense that Keller would insidiously initiate the calls to extort Lowell to secure the defendant's plea and then abandon plea negotiations for almost a year. This is yet another intentional mischaracterization of the record by the defendant to manufacture bogus allegations of misconduct.[1]

The defendant also argues at length that the FARA inquiry of Lowell, undertaken by the National Security Division (NSD) and its FARA Unit, was criminal, and not civil, in nature. *See* ECF No. 58 at 13-17. Not so. According to the NSD attorney handling that matter, as set forth in the declaration appended as

---

[1] The defendant also suggests that the government acted inappropriately by failing to alert others, besides conflicted counsel, of any potential conflicts. ECF No. 58 at 11-12 (citing *Manhalt v. Reed*, 847 F.2d 576 (9th Cir. 1988)). As previously discussed in the government's Response, the prosecution team was informed by third-party, conflict-free counsel that the defendant had been independently advised regarding Lowell's potential conflicts prior to her guilty plea; the prosecution team and third-party counsel jointly drafted the language for the conflict waiver; the prosecution team provided the conflict waiver to the Court prior to the plea; and the prosecution team raised the waiver during the hearing. The prosecution team was unaware of the underlying details of Lowell's exposure and was limited in what it could say in open court regarding non-public matters, but the fact of the potential conflicts, the advice from third-party, conflict-free counsel regarding the potential conflicts, and the resulting waiver were all placed on the record.

Exhibit 1, the inquiry into Lowell was civil in nature and Keller and PIN had nothing to do with the inquiry or the letter sent to Lowell in April 2020.[2] Initially, in August and September 2019, when the U.S. Attorney's Office for the Eastern District of New York ("EDNY") and NSD first informed Keller that Lowell could have FARA liability, Keller was unaware of the exact nature of the exposure but believed that if Lowell did have criminal exposure and if the defendant could be a witness against Lowell, the resulting conflict would likely be unwaivable. Keller expressed this to EDNY and subsequently cut off contact with Lowell until learning roughly ten months later that Lowell's FARA exposure was purely civil and did not involve the defendant. From the very beginning of being notified of any potential exposure for Lowell, Keller considered the potential conflicts and sought to avoid any impact on Lowell's representation of the defendant.

Moreover, NSD and its FARA Unit, not the prosecution team, conducted the FARA inquiry. Where the government office or agency investigating a defense attorney is different and distinct from the office or agency investigating the client, an actual conflict of interest does not exist. *See, e.g., United States v. Baker*, 256 F.3d 855, 861 (9th Cir. 2001) ("Other circuits that have found an actual conflict under analogous circumstances have emphasized the fact that the same office was prosecuting or investigating both the attorney and client.").

---

[2] Declaration of Scott Claffee, Ex. 1.

### b. The Prosecution Team Did Not Direct the Filter Team to Investigate or Pressure Lowell

As demonstrated in the government's Response to the defendant's initial Motion to Disqualify, the prosecution team did not know prior to the defendant's plea about the substance of Lowell's potential exposure for his efforts to secure a pardon for a third party. Pivoting, the defendant now claims that Keller directed the filter team to investigate Lowell. *See* ECF No. 58 at 17-23. The record similarly belies this claim. The initial email alerting the filter team to the presence of a Lowell communication in the investigative database was not sent by Keller. ECF No. 55-2 at 32. More importantly, that email could not have been part of an effort to direct the filter team to investigate Lowell because the prosecution team intentionally screened themselves from any Lowell communications and did not know the substance of the communications or even whether any additional communications existed. *Id.* The filter team properly pulled all communications with Lowell out of the investigative database, reviewed the communications for attorney-client privilege, withheld the communications based on privilege, and made the independent determination to seek court authorization to disclose the communications to the prosecution team. *Id.* at 30-32. Unsurprisingly, Keller and the prosecution team were informed as to the status—but not the factual substance— of the filter team's work. *Id.* at 30-32, 38, 40-41. In his role as Principal Deputy Chief, Keller also assigned a separate supervisor to oversee the filter-side litigation

when the filter team notified Keller that the prior filter supervisor who worked in another DOJ section had left the Department. *Id.* at 30. But neither Keller nor any member of the prosecution team directed the filter team to review Lowell's communications for potential crimes or to seek court authorization to disclose the communications, and the prosecution team did not dictate the timing of the filter team's actions.[3] Finally, the filter team did not disclose the factual substance of Lowell's communications or the nature of his potential exposure until after the defendant's plea. *Id.* at 85.

The defendant acknowledges that "[i]f, in fact, Mr. Lowell was unaware [of his exposure] until speaking on August 25, 2020 with Mr. Keller and then the filter team, then there would have been no conflict[.]" ECF No. 58 at 22. The defendant now argues that the only possible reason for the disclosure was for the filter team to pressure Lowell into moving forward with the defendant's plea. *Id.* Oppositely, the reason for the disclosure to Lowell was to insist that he inform the defendant of the potential conflict.[4] The timing of the disclosure was driven by the filter team's late discovery of communications outlining Lowell's exposure and the filter team awaiting court authorization to provide those communications to the prosecution team so that the prosecution team could address the conflict with Lowell directly.[5]

---

[3] Declarations of Filter Team Attorneys, Exs. 2, 3, 4.
[4] *Id*.
[5] *Id.*

7

Because the court had not authorized disclosure within days of the defendant's plea, the filter team itself raised the conflict with Lowell out of an abundance of caution to ensure that all known potential conflicts were addressed prior to the defendant's plea.[6]

Finally, the lack of extensive investigation or charges against Lowell does not undermine the filter team's *ex parte* motion. After the underlying communications were disclosed to the prosecution team pursuant to court authorization, the prosecution team assessed the conduct. Broidy pleaded guilty and agreed to cooperate on October 20, 2020, and in April 2021, as part of Broidy's cooperation, his counsel provided an attorney proffer related to this conduct. The attorney proffer did not provide additional evidence of criminal intent, and the subject with the greatest exposure in the bribery-for-pardon allegations was deceased. Thus, the prosecution team did not open a criminal grand jury investigation. That ultimate decision by the prosecution team had nothing to do with the filter team's independent initial review of Lowell's relevant communications and decision to seek court authorization to disclose the communications to the investigative team. The filter team itself was aware of the equivocal nature of the evidence and explicitly stated to Lowell, "it is not us saying those crimes were necessarily committed. Given the potential exposure, however, we wanted to bring the matter to your attention so you

---

[6] *Id*.

could discuss it with your client." ECF No. 55-2 at 43. There was no effort by any government attorney to extort or pressure Lowell. The point of the disclosure was to ensure that Lowell disclosed the conflict to his client.

        c. The Defendant's Claims Implicitly Waive Attorney-Client Privilege

A defendant waives attorney-client privilege when she makes arguments that put her "lawyer's performance at issue." *Bittaker v. Woodford*, 331 F.3d 715, 718-20 (9th Cir. 2003). A finding of waiver is necessary to assist the government in defending the allegations made against it. *See id.* at 720.

Waiver of the attorney-client privilege by argument is not limited to the post-conviction posture. *See United States v. Barnhart*, No. 1:15-CR-270-AJT, 2016 WL 9223869, at *1 (E.D. Va. Apr. 26, 2016) ("Here, the Court finds that the defendant has 'impliedly waived' this privilege through his decision to place the advice and communications of his former counsel at issue in challenging whether his guilty plea was entered knowingly and voluntarily.")[7]; *United States v. York,* No. 04-20038-BC, 2008 WL 4298386, at *2 (E.D. Mich. Sept. 18, 2008) (same); *United States v. Ahmed*, No. 2:16-CR-00021, 2017 WL 6271262, at *3 (D. Utah Dec. 8, 2017) (same).

---

[7] While the defendant has not yet moved to withdraw her guilty plea, by attacking the factual underpinning of her plea, insisting that she was coerced into pleading guilty, and attempting multiple times to evade responsibility for her actions, it is reasonable to assume that a motion to withdraw her plea or motion to dismiss will shortly follow the resolution of the instant litigation.

9

The defendant has put Lowell's conduct at the center of this litigation. The defendant has explicitly alleged that Lowell conspired with the government to "coerce[] [the defendant] . . . into: 1) pleading guilty under duress, and 2) falsely admitting to having intended to violate the law[.]" Mem. in Support, 2, ECF No. 48. The defendant's pleadings are replete with accusations that Lowell labored under a conflict of interest, concealed that conflict, and forced his client to make false admissions. The defendant has necessarily put "at issue" Lowell's actions and has waived any privilege as to his communications with her or third-party counsel regarding his potential conflicts. *Bittaker*, 331 F.3d at 718.

        d. <u>The Defendant's Additional Claims of Government Misconduct are Baseless</u>

In anticipation of the defendant's plea hearing, both Keller and AUSA Sorenson suggested to defense counsel that counsel prepare the defendant to answer questions from the Court and provide a factual basis for her plea. *See* ECF No. 59 at 14-15. The defendant has cast this rather conventional advice as further evidence of a nefarious plot to force the defendant to make false admissions. As the emails mischaracterized by the defendant make plain, the "advice" was merely "meant as a guide to assist counsel" in preparing their client for the plea colloquy. *Id*. at 15.

Similarly, Keller engaged in no misconduct by requesting that Lowell not inform counsel for the defendant's co-conspirators of the defendant's forthcoming plea and cooperation until the day that the Information was going to be publicly filed.

The charges and plea were not public, and disclosure to the co-conspirators prior to the formal filing of the documents could have invited last-minute attempts to discourage the defendant from cooperating with the government's investigation. Lowell disclosed no privileged information in these limited discussions about the timing of notification to other counsel.[8]

Finally, the airport search of the defendant on August 11, 2020, was conducted pursuant to information and concerns raised by FBI agents in Honolulu regarding the defendant's prior international trips in which she carried large amounts of currency. PIN did not suggest the search or direct CBP in any manner whatsoever.

e. The Defendant Seeks Unlimited Discovery as Part of a Fishing Expedition

In the year since the defendant initially raised these allegations with the government and was informed on multiple occasions that there was no factual basis for those claims, the defendant made no request for any discovery. After seeing the evidence appended to the government's Response disproving the defendant's claims, the defendant, beginning two days before her initial Reply deadline, started making increasingly specious demands for discovery from the government.[9] The government has made a good faith effort, in a matter of days, to provide counsel with all relevant communications, including: (1) those between PIN and Lowell from

---

[8] Aug. 12, 2020 Email from Keller to Lowell, Ex. 5.
[9] May 17, 2022 Emails between Bryant and Mulryne, Ex. 6.

July 1, 2020, when plea negotiations resumed, through August 31, 2020, when the defendant pleaded guilty; (2) those between the prosecution team and the filter team; and (3) those involving or referencing counsel for Lowell in the FARA inquiry, Reid Weingarten. Pursuant to counsel's requests, the government also provided specific screenshots seized as part of the investigation and agreed to provide all communications between PIN and Lowell during his representation of the defendant, with no limit as to time frame. Pursuant to yet another request, the government has agreed to provide counsel with all of the subpoenas and search warrants issued in this investigation subject to a protective order. Nonetheless, the defendant has made increasingly expanding and outlandish requests, including a request for "any communications Keller had on a non-DOJ email account or on SMS or messaging app with Lowell between July 1, 2020, and the present, including but not limited to any discussions regarding Keller's role as an adjunct at Georgetown Law."[10] Keller has never had any non-DOJ communications with Lowell. And Keller's work as an adjunct faculty member at the Georgetown University Law Center has no connection to Lowell or relevance to this matter.

The defendant's constantly burgeoning claims and requests for discovery are a fishing expedition, embarked on only after his initial set of unsubstantiated allegations of government misconduct were categorically disproven. Some of the

---

[10] *Id.* at 2.

defendant's requests seek communications from other FBI and DOJ offices, including a request for "all communications" regarding one of Lowell's former clients who was also the subject of a national security grand jury investigation. In the grand jury context, defendants are required to show a "particularized need" for the material. *United States v. Procter & Gamble Co.*, 356 U.S. 677, 683 (1958). "Mere unsubstantiated, speculative assertions of improprieties in the proceedings do not supply the particular need" required for disclosure of grand jury materials. *United States v. Ferreboeuf*, 632 F.2d 832, 835 (9th Cir. 1980) (internal quotation marks omitted); *see also United States v. Ail*, No. CR 05-325-RE, 2007 WL 1229415, at *3-*4 (D. Or. Apr. 24, 2007) (noting Fed. R. Crim. P. 16(a)(2) exempted "work product" from discovery and stating "to obtain discovery in support of an outrageous governmental misconduct claim, a defendant must present 'clear evidence to the contrary' to the presumption that a prosecutor has not violated the Constitution.") (internal quotation marks and citation omitted); *United States v. Eisenberg*, 773 F. Supp. 662, 709 (D.N.J. 1991) (same).

The defendant should not be permitted to obtain internal government communications of DOJ and FBI offices, some of which relate to other subjects of criminal grand jury investigations, as part of a desperate search for some crumb to mischaracterize as misconduct. Absent direction from the Court, the government

does not intend to provide additional documents to the defendant beyond the broad categories of information already agreed to and outlined above.

> f. <u>The Defendant's Response to the Government's Motion for a Judicial Finding of Waiver of the Attorney-Client Privilege is also a Reply to the Government's Response to the Defendant's Initial Motion to Disqualify</u>

The defendant filed a thirty-eight-page Response to the Government's one-page motion for a judicial finding of waiver of the attorney-client privilege. The majority of the Response actually serves as a Reply to the Government's Response to the defendant's initial Motion to Disqualify and the defendant designated it as such in her ECF caption. ECF No. 58. The Response far exceeded the local rule limit on motion responses of twenty-five pages or 6,250 words. *See* LR7.4(a)-(b). The government has disproven the evolving litany of the defendant's claims of misconduct. The defendant should not be afforded another opportunity to again reply to the government's Response and level additional unsupported claims. The government requests that the Court construe the Defendant's thirty-eight-page Response as the combined Response and Reply that it is and conclude the briefing in this matter, while still permitting the parties to file supplemental exhibits from the forthcoming discovery or stemming from any finding by the Court that the defendant has waived privilege. Any such records can be addressed at the hearing on the defendant's Motion to Disqualify.

## II. Conclusion

The defendant has now filed two lengthy, internally inconsistent pleadings accusing a number of government attorneys of acting in bad faith. The claims are frivolous; the defendant's discovery requests illustrate an unhinged fixation on a non-existent conspiracy between Keller and Lowell; and the defendant has largely ignored the presence and role of third-party, conflict-free counsel in her plea negotiations, conflict discussions, and plea hearing. The defendant's conflict claims—though they fail to demonstrate any actual, unwaived conflict—have put Lowell's conduct at issue and waive the attorney-client privilege as to any communications regarding his potential conflicts. The Court should enter an Order finding the privilege so waived, close briefing in this matter, and proceed with a hearing for argument on the defendant's Motion to Disqualify.

DATED: May 20, 2022

Respectfully submitted,

COREY R. AMUNDSON
Chief, Public Integrity Section
United States Department of Justice

| | |
|---|---|
| */s/ John D. Keller* | */s/ Ken Sorenson* |
| By: JOHN D. KELLER | KENNETH M. SORENSON |
| Principal Deputy Chief | Chief, Criminal Division |
| Sean F. Mulryne | |
| Deputy Director, Election Crimes | |
| Nicole R. Lockhart | |
| Trial Attorney | |
| Public Integrity Section | |

CERTIFICATE OF SERVICE

       I hereby certify that, on the dates and by the methods of service noted below, a true and correct copy of the foregoing was served on the following at their last known addresses:

Served Electronically through CM/ECF:

    William McCorriston, Esq.
    James Bryant, Esq.

Attorneys for Interested Party
NICKIE MALI LUM DAVIS

DATED: May 20, 2022

                                                  */s/ John D. Keller*
                                                John D. Keller