# Exhibit 3

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| UNITED STATES OF AMERICA, | ) | CR. NO. 20-00068 LEK |
|---|---|---|
| Plaintiff, | ) ) ) | DECLARATION OF ERICA O. WAYMACK |
| vs. | ) ) | |
| NICKIE MALI LUM DAVIS, | ) ) | |
| Defendant. | ) ) | |

## DECLARATION OF TODD GEE

I, Erica O. Waymack, declare under penalty of perjury that the facts regarding the activity of the filter team set forth in the Government's RESPONSE IN OPPOSITION TO MOTIONS TO DISQUALIFY, STAY SENTENCING, AND FOR JUDICIAL RELIEF (ECF No. 55) and the Government's REPLY RE MOTION FOR JUDICIAL FINDING OF WAIVER OF ATTORNEY CLIENT PRIVILEGE (ECF No. 62) are true and correct to the best of my knowledge and belief.

I further declare under penalty of perjury the following:

1. I was a member of the filter team assigned to review potentially privileged materials obtained in the course of the government's investigation of Elliott Broidy, Nickie Mali Lum Davis and others.

1

2. In or about July to August 2020, when reviewing potentially privileged communications from Broidy's email account, the filter team determined that Abbe Lowell and others several years earlier had sought to obtain a pardon for a wealthy businessman in a manner that could potentially be illegal (hereinafter referred to as the "Pardon Matter"). After the discovery of the Pardon Matter in Broidy's emails, the filter team was concerned that Lowell could have a potential conflict that his current client, Nickie Lum Davis, may need to be made aware of prior to entering into a guilty plea because, assuming *arguendo* the emails did reflect illegal activity, Lowell could be aware that the government had knowledge of his involvement in that activity through the seizure of Broidy's email account, and he could therefore potentially have a motive to curry favor with the government to avoid any potential prosecution for his involvement in that matter. Accordingly, the filter team decided that it would prepare and file an *ex parte* motion seeking authorization to provide the withheld communications regarding the Pardon Matter to the prosecution team in order to permit the prosecution team to take whatever steps it deemed necessary with respect to this information, such as discussing with Lowell how to ensure Ms. Davis was aware of this potential conflict in advance of her guilty plea. The filter team included a notification in its *ex parte* motion to inform the court that plea

negotiations were ongoing between the prosecution team and Ms. Davis through Lowell, and that it was unknown whether Lowell had disclosed his potential conflict created by the Pardon Matter to Ms. Davis.[1]

3. At no point was I ever directed by John D. Keller or any member of the prosecution team to seek court authorization for the purpose of sharing the email communications from Broidy's email account involving Lowell with the prosecution team, and the decision to seek such authorization through the *ex parte* motion filed by the filter team on August 10, 2020, including the timing of the filing of that motion, was made exclusively by the filter team without any input from Mr. Keller or any other member of the prosecution team.

4. At no point was I directed by either Mr. Keller or any member of the prosecution team to review the communications from Broidy's email account involving Lowell for the purpose of assessing any potential criminal exposure involving Lowell.

5. Because the court had not ruled on the filter team's *ex parte* motion by August 25, 2020, and the filter team could therefore not release the emails related to the Pardon Matter to the investigative team, the filter team

---

[1] Aug. 10, 2020, Filter Team Submission of Filing to Court, p. 4 n.3 (ECF No. 55, Ex. 10).

3

asked the investigative team to connect it with Lowell so that the filter team could advise him of a potential conflict he may need to discuss with Ms. Davis in advance of her guilty plea. In making this request, the filter team did not inform the investigative team of the factual substance of that potential conflict and/or the nature of Lowell's potential criminal exposure—*i.e.* the Pardon Matter and the nature of Lowell's involvement in it.

6. After Mr. Keller provided the filter team with an introduction to Lowell by email on August 25, 2020, the filter team discussed the potential conflict created by the Pardon Matter with Lowell during a telephone call on August 26, 2020. The filter team also provided Lowell with a sample of emails included in the *ex parte* motion,[2] and, in response to follow-up questions Lowell posed in an email, the filter team wrote back the following: "As we discussed, however, all of these matters are with respect to potential allegations . . . it is not us saying those crimes were necessarily committed. Given the potential exposure, however, we wanted to bring the matter to your attention so you could discuss it with your client."[3]

7. At no point prior to September 1, 2020, the day after the court granted the filter team's *ex parte* motion, did I share with either Mr. Keller or

---

[2] Aug. 26, 2020, Email from Filter Team to Lowell re: Emails (ECF No. 55, Ex. 13).
[3] Aug. 26, 2020, Email from Filter Deputy Chief, Todd Gee, to Lowell re: Exposure (ECF No. 55, Ex. 14).

4

with any other member of the prosecution team (1) a description of the factual substance of the Pardon Matter or the nature of Lowell's potential criminal exposure for his involvement in it, or (2) the potentially privileged emails from Broidy's account regarding the Pardon Matter.

DATED: May 20, 2022, at Washington, D.C.

                                              */s/ Erica O. Waymack*
                                              Erica O. Waymack
                                              Trial Attorney
                                              Public Integrity Section
                                              Criminal Division
                                              U.S. Department of Justice