| | |
|---|---|
| CLARE E. CONNORS #7936<br>United States Attorney<br>District of Hawaii | COREY R. AMUNDSON<br>Chief, Public Integrity Section<br>United States Department of Justice |
| KENNETH M. SORENSON<br>Assistant U.S. Attorney<br>Room 6-100, PJKK Federal Bldg.<br>300 Ala Moana Boulevard<br>Honolulu, Hawaii  96850<br>Telephone: (808) 541-2850<br>Facsimile: (808) 541-2958<br>Email: ken.sorenson@usdoj.gov | JOHN D. KELLER<br>Principal Deputy Chief<br>SEAN F. MULRYNE<br>Director of Enforcement & Litigation,<br>Election Crimes<br>NICOLE R. LOCKHART<br>Trial Attorney |

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>     Plaintiff,<br><br>vs.<br><br>NICKIE MALI LUM DAVIS,<br><br>     Defendant. | CR. NO. 20-00068 LEK<br><br>SUPPLEMENTAL RESPONSE IN OPPOSITION TO MOTION TO DISQUALIFY<br><br>DATE: July 07, 2022<br>TIME: 11:00 a.m.<br>JUDGE: Leslie E. Kobayashi |

SUPPLEMENTAL RESPONSE TO MOTION TO DISQUALIFY

Previously privileged records and the attached declaration of the defendant's prior counsel, Lowell, confirm that there has been no government misconduct in this case; Lowell labored under no actual conflict of interest; and the defendant knowingly and voluntarily waived Lowell's potential conflicts of interest.  Prior to

1

the defendant's guilty plea, Lowell explicitly disclosed (1) his prior representation of clients against whom the defendant could cooperate; (2) his receipt of a letter of inquiry from the Department of Justice ("DOJ") related to civil enforcement of the Foreign Agents Registration Act ("FARA"); and (3) the government's assessment that Lowell's and others' efforts to obtain executive clemency for a client through lobbying and contemplated campaign contributions could possibly constitute a violation of law. With the benefit of advice from at least two separate third-party lawyers, the defendant waived any conflicts and implored Lowell to continue to represent her at her plea hearing. The defendant's arguments to the contrary are belied by the now fully-developed record. The Court should deny the defendant's unfounded Motion to Disqualify and enter an order finding that there was no government misconduct. The Court should also find that the defendant waived Lowell's potential conflicts of interest, and alternatively, that any conflicts did not adversely impact the defendant's representation as Lowell was unaware of the government's knowledge of his clemency-related conduct during plea negotiations and third-party counsel was actively involved in those negotiations and the defendant's plea.

### I.   Lowell's Declaration

Pursuant to this Court's Order Granting Motion for Judicial Finding of Waiver of Attorney-Client Privilege, ECF No. 65, the government requested a declaration

and any relevant communications from Lowell. Lowell provided a declaration—attached as Exhibit 1—along with twenty-four supporting exhibits.[1] Lowell's declaration sets forth the following key points:

- Current counsel, Bryant and McCorriston, were involved in this matter, at least in some capacity, as early as 2018;
- McCorriston and the defendant were "actively involved" in plea negotiations;
- Lowell did not coerce the defendant to plead guilty;
- The defendant herself provided the now-contested portion of her factual basis;
- Lowell was never told and did not ever believe that he was being criminally investigated or threatened with prosecution;
- Lowell disclosed any potential conflicts regarding his prior representation of individuals against whom the defendant could potentially cooperate and obtained informed waivers from the clients;
- In July 2020, Lowell informed the defendant of the FARA letter, and on August 25, 2020, Lowell revisited the FARA letter and the potential conflict with both McCorriston and the defendant;

---

[1] June 2, 2022, Declaration of Abbe Lowell, Ex. 1.

- On August 26, 2020, eight days after the criminal information in this matter was filed, Lowell was informed by the filter team of a potential conflict arising from his clemency-related conduct. He then held a video conference with the defendant and McCorriston and disclosed his conversation with the filter team, including the government's position that Lowell's efforts to obtain clemency for a client could give rise to criminal exposure;

- The following day, on August 27, 2020, McCorriston, copying the defendant and a colleague, emailed Lowell:

    > Abbe, thank you for again disclosing in detail your prior representations of and/or contacts with individuals brought to your attention by the government to Nickie as well as to David Minkin and me. . . . Ms. Davis acknowledges your previous disclosures and wishes to proceed with your representation . . . . Ms. Davis is making an informed and voluntary decision.

- The defendant then wrote Lowell: "Abbe Please I want you to be PHV - For me for my things even in Hawaii Thanks Nickie."[2]

## II. Argument

### a. There has been No Government Misconduct

The defendant has asserted broad, diverging claims of government misconduct. Each of these claims has been disproven in turn, and Lowell's

---

[2] *Id.*

declaration reinforces the following facts: neither Keller nor any other government attorney ever initiated a criminal investigation of Lowell or threatened him with criminal prosecution[3]; any allegedly false statements that the defendant made as part of her factual basis were self-serving and were of her own creation[4]; neither Keller nor Lowell sought to conceal Lowell's conflicts from the defendant or the Court[5]; and Lowell never provided any privileged information to the government[6]. There is no basis for disqualification of Keller or any government counsel because there has been no government misconduct. *See United States v. Chong*, 58 F. Supp. 2d 1153, 1160 (D. Haw. 1999). Bryant was repeatedly put on notice that his claims were contradicted by record evidence based on his communications with multiple government counsel, prior defense counsel, and numerous emails in his possession. The defendant's motion should be denied, and the Court should consider finding that Bryant "acted in an unprofessional and unethical manner by continuing to argue prosecutorial misconduct although, after a reasonable inquiry, [he] should have known there was no basis to do so." *In re Bell*, 713 F. Supp. 2d 717, 721-22 (E.D. Tenn. 2010).

---

[3] *Id.* at ¶ 5.
[4] *Id.* at ¶ 4.
[5] *Id.* at ¶¶ 6-27.
[6] *Id.* at ¶ 28.

### b. The Defendant Waived Any Conflicts of Interest

Lowell's declaration also makes clear that the defendant waived any conflicts of interest. Lowell exchanged emails with the defendant and his former clients against whom she could cooperate establishing their consultation with independent counsel and their waivers as to any conflicts of interest regarding Lowell's representation of the defendant.[7] As for the FARA letter, Lowell explicitly referenced the FARA letter and the resulting potential conflict of interest in an email to McCorriston and the defendant and subsequently emailed Keller and copied McCorriston referencing "the FARA letter."[8] That same email also referenced "the taint team issue."[9] Lowell held a video conference with McCorriston and the defendant in which he recounted his discussion with the filter team regarding his clemency-related conduct.[10] And Lowell later again emailed McCorriston addressing the "taint team" issue and the potential resulting exposure under the Lobbying Disclosure Act.[11] The day after Lowell's conversation with the filter team and video conference with the defendant and McCorriston, McCorriston emailed Lowell thanking him for disclosing "in detail" the issues "brought to your attention by the government," and stated that McCorriston and another lawyer, David Minkin,

---

[7] *Id.* at ¶ 7.
[8] *Id.* at ¶¶ 14, 16.
[9] *Id.* at ¶ 16.
[10] *Id.* at ¶ 17.
[11] *Id.* at ¶ 26.

discussed the issues with the defendant and that she was "making an informed and voluntary decision with assistance of independent counsel" to proceed with Lowell as counsel.[12] Finally, the defendant, after the conflicts were disclosed, beseeched Lowell to remain as counsel in this matter.[13] These communications demonstrate that any potential conflict of interest was disclosed and waived. *See* Gov. Response, ECF No. 55 at 30-31. The defendant's frustration with her failure to obtain a presidential pardon and her resulting change of heart as to her decision to plead guilty provide no basis for rejection of the defendant's guilty plea or her plea agreement. *See, e.g.*, *United States v. Modafferi*, 112 F. Supp. 1192, 1199 (D. Haw. 2000) (denying a request for rejection of a plea agreement or for withdrawal from the agreement based on a claim of ineffective assistance and stating, "to show prejudice, a defendant must show that there was a reasonable probability that, but for counsel's errors, he or she would not have pled guilty and would have insisted on going to trial."). To clarify the record and minimize future litigation in the context of a motion to withdraw her guilty plea, a direct appeal, or a habeas petition, the Court should enter an order finding that the defendant waived any applicable conflicts of interest.

---

[12] *Id.* at ¶ 20.
[13] *Id.* at ¶ 22.

      c.  <u>There was no Actual Conflict of Interest</u>

Lowell's declaration also demonstrates that he did not believe that he was under investigation at any point and did not know about the filter team or its awareness of his clemency-related conduct until more than a week after the criminal information was filed in this matter and the defendant's plea documents were substantively finalized. Thus, no actual conflict of interest existed. *See* ECF No. 55 at 26-30. Lowell's declaration also demonstrates that the defendant had the benefit of some counsel from McCorriston and Bryant extending all the way back to 2018, and that third-party counsel was actively involved in her plea negotiations and plea.[14] To minimize re-litigation of these same claims in future proceedings, the Court should also find, in the alternative to the above-requested finding of waiver, that no actual conflict existed because Lowell was unaware of the filter team issue during plea negotiations, and that even assuming a conflict did exist, there was no adverse impact on the defendant's representation due to the active involvement of third-party counsel and the defendant's fully voluntary decision to plead guilty.

### III. Conclusion

The defendant's assertions should be rejected. Undersigned counsel, the filter team, NSD attorney Claffee, and Lowell have all provided declarations supported

---

[14] *Id*. at ¶¶ 1-3.

by corroborating evidence demonstrating the patent falsity of the defendant's conspiratorial claims. The defendant is entitled to no relief.

Finally, this supplemental filing is nine pages and Lowell's declaration is six pages for a total of fifteen pages. Given the Court's twenty-page limit for the government's filing, the government seeks leave to file the approximately thirty pages of email exhibits attached to Lowell's declaration as additional supplemental exhibits.

DATED: June 6, 2022.


Respectfully submitted,

COREY R. AMUNDSON
Chief, Public Integrity Section
United States Department of Justice

*/s/ John D. Keller*                                */s/ Kenneth M. Sorenson*
JOHN D. KELLER                            KENNETH M. SORENSON
Principal Deputy Chief                     Chief, Criminal Division
Sean F. Mulryne
Director of Enforcement & Litigation, Election Crimes
Nicole R. Lockhart
Trial Attorney
Public Integrity Section

## CERTIFICATE OF SERVICE

I hereby certify that, on the dates and by the methods of service noted below, a true and correct copy of the foregoing was served on the following at their last known addresses:

<u>Served Electronically through CM/ECF</u>:

    William McCorriston, Esq.
    James Bryant, Esq.

Attorneys for Interested Party
NICKIE MALI LUM DAVIS

DATED: <u>June 6, 2022</u>

                                                                                         <i>John D. Keller</i>
                                                                                         John D. Keller