DECLARATION OF WILLIAM C. McCORRISTON

I, WILLIAM C. McCORRISTON declare and state the following:

1. I was retained by Ms. Davis to assist her on issues regarding the execution of a Search Warrant when her property was seized. My limited legal services extended between July 11, 2018 to July 26, 2019, where I communicated with AUSA Kenneth Sorenson and FBI Agents. I do not recall any communications with John Keller/PIN during this time. Ex A

2. On or about July 22-24, 2020, Mr. Lowell, Ms. Davis' mainland criminal law expert counsel, informed me that the Department of Justice was pursuing the FARA case against Ms. Davis and had chosen the US District Court of Hawaii as its forum. Mr. Lowell further informed me that they would need local counsel, and he provided me with a general summary of the case and updated me on his discussions with Mr. Keller and others, as evidenced by an internal memorandum dated July 23, 2020, and discussed strategy for his subsequent communications with the DOJ.

3. Mr. Lowell had been retained by Ms. Davis to represent her in regard to the FARA investigation against her by PIN. Mr. Lowell was the only attorney tasked by Ms. Davis to represent her in dealing with plea negotiations with PIN/Keller. Contrary to the representations made by Mr. Lowell to this Court in his June 2, 2020 declaration, I did not participate in negotiating the material terms of the FARA plea with PIN/Keller. Statements or inferences that I directly

1

participated in the plea negotiations with Mr. Keller are false. Exhibit B hereto contains emails between Mr. Lowell and Mr. Keller substantiating I was not part of the substantive negotiations for the FARA plea.[1] See also Exhibit C below.

> Lowell, Abbe <ADLowell@winston.com>
> Mon 8/10/2020 3:27 AM
> To: William C. McCorriston <WMcCorriston@m4law.com>
> Cc: nickielumdavis <nickielumdavis@protonmail.com>;Porter, Jennie <JPPorter@winston.com>
>
> 1 attachments (597 KB)
> Plea Agreement_Lum Davis_2020.08.09_Redline.pdf;
>
> I am still banging away on the DOJ and we are getting closer to what might be a good resolution. I am attaching their latest drafts which accept a lot of what I requested. I probably can get a few more tweaks on language. The deal-breaker is the forfeiture and I am trying to come up with more arguments to get it much lower. One thing – I have not only added you to the documents but, given this will happen in Hawaii, made you lead. Your experience and reputation and relations with judges there will be important. OK?

Ex C

4.     Although Mr. Lowell had provided me with a general summary of the case in late July 2020, I was not introduced to the PIN prosecutors until on or about August 10, 2020—three days before Ms. Davis signed her Plea Agreement—when I began to participate in matters concerning the mechanics and procedures regarding the presentation of the plea to the USDC Hawaii and to prepare Pro Hac Vice pleadings for Mr. Lowell. My primary focus during this time frame in August 2020, however, was assisting Ms. Davis with Pretrial Services, bond, forfeiture, clemency, and other matters.

5.     Mr. Bryant's Declaration in Support of the Motion to Disqualify dated April 25, 2022 ("Bryant Decl."), describes the nature of Mr. Lowell's "conflict disclosures" to me, David Minkin and Ms. Davis between the period of August 25

---

[1] Exhibit B will be produced upon request of the Court. For page length purposes it was not attached.

and August 26, 2020. (See Bryant Decl. ¶¶27-39 Exs. D-N, Q-S). As it relates to Mr. Lowell's disclosures regarding his representation of the Chinese nationals and the FARA letter he received, my understanding was that Mr. Lowell presented the issue as a standard ABA Rule 1.7/1.9 conflict between two clients with potential competing interests. At no point did Mr. Lowell specifically inform Ms. Davis, Mr. Minkin or myself that the waiver he sought was waiver of conflict arising from his own personal involvement or activities, let alone that he faced possible criminal exposure from DOJ investigations. This understanding is memorialized in the initial draft of the language Mr. Lowell provided to me as evidenced in Exhibit D below:

| From: | Lowell, Abbe <ADLowell@winston.com> |
|---|---|
| Sent: | Wednesday, August 26, 2020 4:01 AM |
| To: | nickielumdavis |
| Cc: | William C. McCorriston |
| Subject: | ATTORNEY CLIENT PRIVILEGE |

To address my representation of others and the letter I received from the DOJ FARA unit in April (for some of that work), Keller suggested ridiculous language to be added to the plea agreement. I changed it and this is my version for you to review and we can discuss it and the issues:

"The defendant understands that one of her attorneys, Abbe D. Lowell, has previously represented other individuals with whom Ms. Davis also has had contact or interactions and whose names have or might come up during her cooperation. Ms. Davis also understands that Mr. Lowell has been asked by the United States Department of Justice for information concerning his representation of certain clients on matters unrelated to Ms. Davis. Ms. Davis has discussed these issues and the resulting potential for conflicts of interest with Mr. Lowell and with third-party counsel and knowingly and intelligently waives any potential or actual conflict of interest as to Mr. Lowell and affirms that she wishes to proceed with Mr. Lowell as one of her attorneys in this matter."

Ex. D

Neither Mr. Keller nor Mr. Lowell submitted to me a copy of Mr. Keller's initial proposed language that Mr. Lowell references in the email above. Despite Mr. Bryant's request for Mr. Lowell to turn over all client records, it was only because of document production from the government that I was finally able to see it.

3

6.      Mr. Lowell vaguely described the FARA letter but never made it clear that the FARA letter was an inquiry into whether *he* (Lowell) was required to register under the FARA Act. Having now had an opportunity to review the heavily redacted version of the 5-page FARA letter signed by now former FARA Unit Chief Brandon Van Grack, with copy to Scott Claffee and Heather Hunt, whom I understand were then *criminal prosecutors*, I learned/understood it to be a serious inquiry (three or more pages of questions and the requirement that Mr. Lowell provide his responses under penalty of perjury) about Mr. Lowell. Mr. Lowell did not at any point inform me that he himself was being investigated by the DOJ's PIN Unit for criminal, civil or other purposes.

7.      Regarding the "taint team," much like the FARA letter, Mr. Lowell vaguely disclosed to us during an August 26, 2020 video call that a taint team was reviewing his emails related to an inquiry focused on one of his clients, *not him*. At no point did Mr. Lowell ever inform us that the government was possibly investigating *him* personally for bribery or violations of the Lobbying Disclosure Act ("LDA"). His strange email to me on August 27, 2020, only mentions "maybe someone's LDA violations."[2] At no time do I recall Mr. Lowell mentioning to me that the LDA investigation potentially involved allegations against him.

---

[2] See generally, Bryant Decl. ¶46, Ex. Q

8. My understanding that the conflict raised by Mr. Lowell was related to Rule 1.7/1.9 is reflected in Exhibit E below, where Mr. Keller stated that the waiver language that Mr. Lowell asked me to present to him (Keller) "doesn't cover it," I responded by stating that based upon my understanding that there was a conflict *between Mr. Lowell's clients*, and "I don't understand what isn't covered."

> From: William C. McCorriston <WMcCorriston@m4law.com>
> Sent: Thursday, August 27, 2020 6:54 PM
> To: Keller, John (CRM) <John.Keller@CRM.USDOJ.GOV>
> Cc: Sorenson, Ken (USAHI) <KSorenson@usa.doj.gov>; Lowell, Abbe <ADLowell@winston.com>
> Subject: Re: Nickie Mali Lum Davis
>
> I don't understand what isn't covered.
>
> Sent from my iPhone
>
>> On Aug 27, 2020, at 12:37 PM, Keller, John (CRM) <John.Keller2@usdoj.gov> wrote:
>>
>> That language doesn't cover it. Let's file the sealed addendum. There is no reason we can't address the general concept of a conflict waiver in open court and reference the sealed addendum. You just don't want the more specific text detailing the conflict to be public, right? I'll prepare the addendum.
>>
>> On Aug 27, 2020, at 6:19 PM, William C. McCorriston <WMcCorriston@m4law.com> wrote:
>>
>> If it has to be in a public document, maybe the following, more benign language, works:
>>
>> "The defendant understands that the United States Department of Justice has raised with one of her attorneys, Abbe D. Lowell, his previous representation of certain individuals with whom Ms. Davis also has had contact or interactions and whose names have or might come up during her cooperation and of certain other individuals on matters unrelated to Ms. Davis. Ms. Davis has discussed these issues and the resulting potential for conflicts of interest with Mr. Lowell and with third-party counsel and knowingly and intelligently waives any potential or actual conflict of interest as to Mr. Lowell and affirms that she wishes to proceed with Mr. Lowell as one of her attorneys in this matter."

Ex E.

9. Just over 20 minutes later, Mr. Keller responded. At the moment he read my email expressing confusion as to "what isn't covered" in the Conflict, Mr. Keller chose not to disclose PIN's involvement with Mr. Lowell knowing I was Ms. Davis' local, independent counsel. Instead, Mr. Keller quickly shut down my question expressing confusion, writing "I think you're right. I didn't read the

5

language carefully enough the first time around. I think this covers it." Mr. Keller then changed topics, asking that we sign the Plea Agreement signature page. [3]

> **From:** Keller, John (CRM)
> **To:** William C. McCorriston
> **Cc:** Sorenson, Ken (USAHI); Lowell, Abbe
> **Subject:** RE: Nickie Mali Lum Davis
> **Date:** Thursday, August 27, 2020 7:18:00 PM
> **Attachments:** Lum Davis PA Signature Page.pdf
>
> I think you're right. I didn't read the language carefully enough the first time around. I think this covers it. I'll prepare a sealed addendum with this language. And if we need to discuss it in more detail with the court at a virtual sidebar, I'll give the courtroom deputy a heads up so that we can be prepared to do that. Given that we will not be altering the initial plea agreement (other than changes Ken flagged for the caption), the signed page that Ken already circulated is ripe for signatures from defense counsel and Lum Davis. I've attached it again here. When can you get that signed signature page back to me along with the signed waiver of indictment?
>
> The Court is expecting those signed forms today. We'll also all need to sign the sealed addendum but I won't be able to circulate that for a few hours. Let's get the plea agreement signed along with the waiver of Indictment.
>
> -John
>
> **From:** William C. McCorriston <WMcCorriston@m4law.com>
> **Sent:** Thursday, August 27, 2020 6:54 PM
> **To:** Keller, John (CRM) <John.Keller@CRM.USDOJ.GOV>
> **Cc:** Sorenson, Ken (USAHI) <KSorenson@usa.doj.gov>; Lowell, Abbe <ADLowell@winston.com>
> **Subject:** Re: Nickie Mali Lum Davis
>
> I don't understand what isn't covered.

Ex F

10. In Paragraph 5 of Mr. Lowell's Declaration, he represents to the Court that he was never informed, nor did he believe, that he was under criminal investigation. I now have had the opportunity to review the communication between Mr. Lowell and Mr. Keller (which neither Mr. Keller nor Mr. Lowell provided to me in 2020) regarding Mr. Keller's proposed waiver language. In 2020, neither Mr. Keller nor Mr. Lowell informed me that "he may have potential civil and/or criminal exposure unrelated to this matter" as evidenced in Exhibit G below:

---

[3] It should be noted that in response to Mr. Lowell's idea on August 25, 2020 that I proceed with the plea alone, our firm rejected that idea which is reflected in an email, dated August 26, 2022, Mr. Minkin wrote: "He [McCorriston] asked me to let you know that without you remaining as pro hac vice co-counsel in this matter, he is hesitant to continue our representation of Ms. Davis given your extensive knowledge of the case, the negotiations, and the sentencing issues compared to us." Exhibit K will be produced upon request of the Court. For page length purposes it was not attached.

> From: Keller, John (CRM)
> To: Lowell, Abbe David
> Subject: Conflict Provision
> Date: Tuesday, August 25, 2020 9:27:00 PM
>
> Abbe,
>
> I've drafted below a paragraph to be added to the plea agreement after the Waiver of Trial Rights Section to encompass the potential conflicts raised by the FARA letter, the issue to be discussed with the filter team, and the prior representation of individuals as to whom Ms. Lum Davis may provide information. This seems like a cleaner, more controlled way to address the potential conflict issue, rather than raising it at the plea hearing cold and having the court potentially initiate a full-blown colloquy with Ms. Davis about her understanding of the potential issues and conflict:
>
> Waiver of any Potential Conflict of Interest
>
> The defendant understands that one of her attorneys, Abbe D. Lowell, has previously represented other individuals against whom Ms. Lum Davis may potentially cooperate. Ms. Lum Davis also understands that Mr. Lowell has been notified by the United States Department of Justice that he may have potential civil and/or criminal exposure for conduct unrelated to this matter. Ms. Lum Davis has discussed these matters and the resulting potential conflicts of interest with Mr. Lowell and with third-party counsel and knowingly and intelligently waives any potential or actual conflict of interest as to Mr. Lowell and affirms that she wishes to proceed with Mr. Lowell as her counsel in this matter.
>
> -John

Ex. G

11. Nor did Mr. Lowell inform me in 2020 of the email exchange he had with Todd Gee of the filter team, as excerpted in Exhibit H below:

> From: Gee, Todd (CRM)
> To: Lowell, Abbe
> Cc: Salgado, Victor (CRM); O'Brien Waymack, Erica (CRM)
> Subject: Re: Call
> Date: Wednesday, August 26, 2020 10:21:23 PM
>
> Abbe,
>
> On the first question, page 32 of the PDF that we sent over references "future" contributions. Additionally, the reference to "Plan B" may be a reference to a contribution in exchange for pardon scheme (see pages 24, 28, and 29 of the PDF). On the second question, we're aware of Sen. Specter's proposed amendment in 2001, but we disagree that the plain language of the LDA may not cover lobbying activities seeking pardons/clemency. As we discussed, however, all of these matters are with respect to potential exposure to allegations of LDA and bribery, it is not us saying those crimes were necessarily committed. Given the potential exposure, however, we wanted to bring the matter to your attention so you could discuss it with your client. Please let us know if you need anything else to facilitate that.

Ex H

12. These communications with Mr. Keller and the "filter team" were all conducted prior to our August 26, 2020 videoconference, and none of these communications were substantially disclosed to me, Mr. Minkin, or Ms. Davis.

13. Mr. Lowell in his declaration in Paragraph 21, represents that I initially proposed and negotiated the waiver language. In fact, Mr. Lowell was the person who drafted this language and asked me to forward the draft language to

7

Mr. Keller.[4]

> From: Lowell, Abbe <ADLowell@winston.com>
> Sent: Thursday, August 27, 2020 9:03 AM
> To: William C. McCorriston
> Subject: RE: Nickie Mali Lum Davis
>
> Also, do please be the one to send Keller the suggested language on me

Ex. I

14. Mr. Lowell's declaration states that the idea of the plea agreement and wavier be confidential or filed under seal was initially proposed by me, citing a communication from me to Mr. Keller on August 27, 2020 at 5:45 pm. As evidenced by Mr. Lowell's communication to me at 11:34 am and 11:41 am[5] earlier that same day, it was Mr. Lowell who proposed that these documents be filed under seal. I agreed on the basis that the provision's purpose was to protect Ms. Davis during her cooperation with PIN in other cases (Broidy and Pas).

> From: Lowell, Abbe <ADLowell@winston.com>
> Sent: Thursday, August 27, 2020 11:34 AM
> To: William C. McCorriston
> Subject: FW: Nickie Mali Lum Davis
>
> What do you think? I do not love it but it might be OK but consider this: does the plea agreement ever become public? I think it would be discoverable if one of the other defendants goes to trial to request and get the information they would want on the promises, etc. to Nickie. Then it gets public. So we need to suggest some other vehicle for this? Maybe a sealed part of the colloquy with Nickie and the judge?

Ex. J

I, William C. McCorriston, do declare under penalty of law that the foregoing is true and correct.

Honolulu, Hawai'i, June 20, 2022

/s/ William C. McCorriston
WILLIAM C. McCORRISTON

---

[4] Bryant Decl. ¶41-42, Ex. K
[5] At 11:41 am Mr. Lowell sends a follow up email to myself stating, "Or suggest a side colloquy with the judge under seal – this is NOT a promise that undercuts Nickie's credibility as a witness. It is a side issue." Exhibit K.