McCORRISTON MILLER MUKAI MACKINNON LLP

WILLIAM C. McCORRISTON  #995-0
DAVID J. MINKIN  #3639-0
Five Waterfront Plaza, 4th Floor
500 Ala Moana Boulevard
Honolulu, Hawai'i 96813
Telephone: 808.529.7300
Facsimile: 808.535.8056

E-Mail: mccorriston@m4law.com; minkin@m4law.com

JAMES A. BRYANT *(pro hac vice)*
The Cochran Firm California
4929 Wilshire Blvd., Suite 1010
Los Angeles, CA 90010
Telephone: 323-435-8205
Facsimile: 310-802-3829
E-mail: jbryant@cochranfirm.com

Attorneys for Defendant
NICKIE MALI LUM DAVIS

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| UNITED STATES OF AMERICA, | CR. NO. 20-00068 LEK |
|---|---|
| Plaintiff, | DEFENDANT'S REPLY BRIEF |
| vs. | |
| NICKIE MALI LUM DAVIS; | |
| Defendant. | |

## MEMORANDUM OF POINTS AND AUTHORITIES[1]

I.   INTRODUCTION

If you peel back the heated rhetoric and overt hostility from the Government's filings in this current dispute, their position would be untenable even if their multitude of deceptions and misrepresentations were actually true. The Government admits that Mr. Keller and PIN overtly involved themselves in the FARA probe into Mr. Lowell at its outset, launched an investigation into Mr. Lowell *precisely* when they started plea talks, and took no affirmative steps to ensure Ms. Davis was aware of Mr. Lowell's profound conflicts of interest. Mr. Keller and his PIN subordinates knew better, considering that PIN "monitors the investigation and prosecution of… conflict of interest crimes."[2]

II.   ARGUMENT

   A. PIN Visibly Inserted Itself Into and Exploited FARA Probe

Mr. Keller and PIN intentionally involved themselves in the August 2019 call Mr. Lowell had with a criminal prosecutor from the DOJ's China Initiative about his work for a Chinese intelligence officer and another Chinese national—a call which Mr. Lowell two days later described as an "ambush." Mr. Keller only contacted Mr. Lowell again 10 months later to suddenly start plea talks—*after* he knew that *Mr. Lowell was aware that NSD had opened a FARA probe into him* for potential criminal violations relating to those two Chinese nationals and one other foreign principal. Armed with the knowledge

---

[1] The case law and arguments set forth in in Sections II A. and B. as well as the relevant facts and Exhibits of Defendant's Opposition to Motion for Judicial Finding ("MJF") ECF No. 58 are incorporated by reference for judicial economy.
[2] See https://www.justice.gov/criminal/sectionsoffices.

1

that Mr. Lowell felt the weight of criminal FARA exposure, Mr. Keller *only then* contacted Mr. Lowell. But apparently not willing to leave anything to chance, Mr. Keller made sure his July 1, 2020 call with Mr. Lowell call occurred shortly after he and Nicole Lockhart had a call with the "Filter Team," who 48 hours prior had been tasked with reviewing emails involving Mr. Lowell relating to the "bribery-for-pardon"/LDA matter.

B. Mr. Lowell Did Not Disclose His Conflicts to Ms. Davis

That same evening, on July 1, 2020, Mr. Lowell began aggressively pushing Ms. Davis to plead guilty to violating FARA. This was despite there having been no contact with PIN regarding her case for over ten months. This was also despite the fact that DOJ had *never* prosecuted a FARA case involving representation of an individual with no governmental authority, never mind that the law firm Kobre & Kim—whom DOJ simply allowed to back-register in October 2018 for representing the very same client—helped advise and oversee at least some of Ms. Davis' efforts.

Shockingly, a Kobre & Kim attorney who had belatedly registered for that work, Danielle Rosborough, was hired shortly afterwards by NSD—the very division within DOJ that oversees FARA enforcement and compliance. Whether or not Mr. Lowell knew of this history regarding similar cases or DOJ actually hiring a party similarly situated to Ms. Davis, he should have. A reasonably diligent inquiry would have enabled Mr. Lowell to attain that knowledge—and no one with that knowledge would be pushing

2

his client to plead guilty the way Mr. Lowell pushed Ms. Davis *starting the very same day that Mr. Keller had a private call with Mr. Lowell,* on July 1, 2020.[3]

Of course, Mr. Lowell's competence and effectiveness as defense counsel are not the central issues in this current matter; those peripheral issues were elevated by Mr. Keller and his PIN colleagues, no doubt eager to distract from their own malfeasance. The question of whether or not Mr. Lowell told Ms. Davis and Mr. McCorriston about the true nature of his conflicts likewise should not be a central concern given that Mr. Lowell's conflicts were inherently unwaivable, but that must be addressed because Mr. Keller and his PIN colleagues have also latched on to that red herring.

Throughout his declaration, Mr. Lowell cited various examples in which he noted in writing to Mr. McCorriston and/or Ms. Davis that he had told them about the "conflict."[4] What neither Mr. Lowell nor the Government ever cited or excerpted was anything that gives *any* details regarding the "conflict," not even a broad reference to the *actual* nature of the "conflict"—because no such communication exists. And the reason no such message exists is because Mr. Lowell never divulged anything resembling the actual *conflicts*.

On August 26, 2020, however, Mr. Lowell *did* describe the supposed "conflict" in writing to Mr. McCorriston—and to the extent he offered a small amount of detail, he clearly intended to portray the "conflict" as a typical ABA Rule 1.7/Rule 1.9 conflict

---

[3] Although the Government's own brief makes no mention of a July 1, 2020 call, Mr. Lowell's own declaration discloses that he spoke that day with Mr. Keller. *See* Lowell Declaration, ¶ 9.
[4] Mr. Lowell also referenced a single email from Mr. McCorriston stating that Mr. Lowell had disclosed the "conflict," but his understanding at that time was evidenced in both the Declarations of William McCorriston and James Bryant.

3

regarding common representation among two or more related parties. Mr. Lowell never divulged to Mr. McCorriston or Ms. Davis that PIN itself was investigating Mr. Lowell himself regarding the "bribery-for-pardon"/LDA matter, nor did he ever disclose that this investigation also potentially involved Ms. Davis' alleged co-conspirator, Elliott Broidy. Although the Government pointed to Mr. Lowell's fleeting reference to "the taint team issue" in an August 26, 2020 email to Mr. Keller with Mr. McCorriston cc'd as "proof" that Mr. Lowell had informed Mr. McCorriston about the nature of *that* conflict, Mr. Keller and PIN willfully chose to ignore hard proof contradicting their assertion. One day later, on August 27, 2020, Mr. Lowell wrote a heated, indignant email to Mr. McCorriston—from which Mr. Lowell included an excerpt in his declaration—where his active deception was on full display. Tellingly, Mr. Lowell in that email referred to the "taint team issue" as relating to "*maybe someone's* LDA violation." (emphasis added)

The Filter Team (aka "taint team") on August 26, 2020 told Mr. Lowell multiple times that he faced criminal exposure in the "bribery-for-pardon"/LDA matter. In the August 10, 2020 *ex parte* motion to Judge Beryl Howell—which requested the vitiation of attorney-client privileges based on the crime fraud exception—contained one section titled "Lowell and Potentially Others Engaged in a Conspiracy to Commit Bribery," and another section titled "Lowell… Violated the Lobbying Disclosure Act."

C. PIN Effectively Concealed Conflicts from Ms. Davis

The issue at hand is not Mr. Lowell's conduct, of course, but rather that of Mr. Keller and his PIN colleagues. At least Mr. Keller and possibly one or more of his

colleagues knew that no one from the Government had directly discussed the nature and significance of both conflicts with either Ms. Davis or her independent counsel, and Mr. Keller was even put on notice by email on August 27, 2020 that Mr. McCorriston did not understand the true nature of Mr. Lowell's conflicts. Most important, the entire prosecution team knew that the true nature of the conflict was concealed from this Court.

With no basis for believing that Ms. Davis actually understood even the basic nature of her defense attorney's profound conflicts, it would have been the ethical duty of everyone on the prosecution team to take steps to ensure that Ms. Davis knew far more than what was contained in the intentionally opaque Conflict Waiver that she signed on the eve of her arraignment. Not one prosecutor did so.

### D. PIN Exploited "Bribery-For-Pardon"/LDA Investigation

Mr. Keller and his PIN colleagues engaged in prosecutorial misconduct not simply through deliberately avoiding taking certain necessary steps, however, but also by actively crossing ethical lines. For example, Mr. Keller intentionally chose his subordinates from within PIN—at least one of whom praised Mr. Keller for Ms. Davis' guilty plea—to comprise the entirety of the "Filter Team." There would be no doubt that his own subordinates would have different motives and incentives with regard to Filter work than those whose job status and pay are not directly impacted by Mr. Keller.[5][6]

---

[5] Courts in recent years have closely scrutinized the "ethical wall" between prosecution teams and filter team's. One of the key requirements has been meaningful separation between the prosecutors and the Filter Team. Once Filter Team members have an incentive to please or ingratiate the prosecutors, they would have the same incentive as prosecutors to push forward with the case. See *In Re Search Warrant Issued* June 13, 2019. 942 F 3d 159 (4th Cir. 2019). See also *In Re Sealed Search Warrant* (S.D Fla, August 17, 2020).
[6] "Filter Team's" inclusion of at least one senior PIN prosecutors, was in direct violation DOJ procedures set forth in Justice Manual § 9-14.420 as explained in DOJ Journal of Law & Practice May 2020 pg 104-106.

5

When Victor Salgado of the Filter Team emailed his boss, Mr. Keller, just after midnight on Sunday, July 12, 2020, asking about the potential appointment of a team lead for the Filter Team, Mr. Keller chose to appoint Todd Gee, his "Chief Deputy" at PIN. Thus, Mr. Keller's and PIN's claim that "the prosecution team was not provided the underlying emails or the factual details," is disingenuous. With three of his subordinates reviewing Mr. Lowell's communications as plea negotiations started, *Mr. Keller didn't need to see* "the underlying emails or factual details." Regardless of whether that claim is actually truthful, PIN concerningly has not yet disclosed to this Court that Mr. Keller and Ms. Lockhart had a call with the Filter Team to discuss the "bribery-for-pardon"/LDA investigation 48 hours after it began—and just before Mr. Keller's call with Mr. Lowell.

E. PIN's Pattern of Misrepresentations and Falsehoods

In their initial Opposition filing, Mr. Keller and his PIN colleagues clearly indicated that their first discussion with Mr. Lowell regarding Ms. Davis' plea deal was on or around July 8, 2020. In reality, Mr. Keller and Mr. Lowell evidently had an informal, one-on-one phone call on July 1, 2020—almost immediately after the call discussing the "bribery-for-pardon"/LDA investigation into Mr. Lowell with Mr. Salgado and Ms. O'Brien Waymack of the Filter Team. The concealing of those July 1, 2020 calls is part of a troubling pattern of deceit before this Court and in dealings with undersigned counsel. In its initial Opposition brief, PIN claimed that the FARA probe into Mr. Lowell "did not present a conflict of interest for Lowell because it was... handled by an entirely separate office." Mr. Keller and PIN then "explained" to this Court that this "entirely

6

separate office" was known as "[t]he civil FARA Unit[, which] is housed within the National Security Division of DOJ." PIN then (falsely) assured the Court that the DOJ team investigating Mr. Lowell "does not conduct criminal investigations."

There are too many FARA probe-related falsehoods to address in detail here, but a few examples of PIN's deliberate bad faith should suffice. First, Mr. Keller's and PIN's assertion that PIN and the National Security Division (NSD) "are entirely distinct" with respect to Mr. Lowell is simply not true. Because the charge against Ms. Davis was FARA-related, NSD *had* to be involved in her prosecution. Mr. Keller himself acknowledged as much in an email on August 15, 2020, when he informed Mr. Lowell that NSD had only just then given final approval to file the Information with the Court—two days after Mr. Lowell had already convinced Ms. Davis to sign the signature page—because he had finally "[r]eceived NSD's edits" on the Information.

But perhaps PIN's most brazen misrepresentation was the claim that the FARA probe was handled by a "civil FARA Unit." The reason that particular falsehood is so galling is for the simple reason that *in the year 2020, there was **no** "civil FARA Unit."* Brandon Van Grack—who had served as the head of the FARA Unit until early 2021—noted in a January 2022 essay the significance of his former office hiring *one* civil attorney *in the year 2021*.[7] As explained by Mr. Van Grack, the DOJ official who signed the April 2020 FARA letter sent to Mr. Lowell, "The *FARA Unit has **never before** had an attorney specializing in civil litigation*." (emphasis added)

---

[7] *FARA's Next Big Year*, By Brandon L. Van Grack and Haydn Forrest January 31, 2022
https://www.justsecurity.org/80024/faras-next-big-year/

The sheer volume and audacity of Mr. Keller's and PIN's misrepresentations alone warrant the request for an independent investigation. PIN has also refused to produce materials that could be used to confirm or refute many of their own assertions and representations. PIN has also withheld certain relevant materials and offered a provably false explanation regarding three missing pages from what appears to be a critical document regarding the "bribery-for-pardon"/LDA investigation into Mr. Lowell.

On May 16, 2022, PIN produced to undersigned counsel materials represented to be the entirety of communications between PIN and the Filter Team regarding the investigation into Mr. Lowell. Two weeks later, however, PIN produced (without explanation) additional communications exchanged with the Filter Team. Among the new emails produced was the June 30, 2020 email exchange involving the Filter Team and both Mr. Keller and Ms. Lockhart to schedule a call for July 1, 2020.[8]

Separately, when pressed by undersigned counsel to produce what appeared to be three pages missing from a 4-page "Memo to File"—which had "1 of 4" on the bottom of the page—PIN sent in reply an email from less than two hours prior written by Mr. Keller's subordinate, Ms. O'Brien Waymack, who claimed that there was only one page in the document. That "Memo to File" contained Ms. O'Brien Waymack's notes from the Filter Team's August 26, 2020 call with Mr. Lowell to discuss the exhibits that had been submitted in the *ex parte* proceeding before Judge Howell. Crucially, the one page that was produced shows Mr. Lowell evidently lying to the Government about the "bribery-

---

[8] The government never produced to undersigned counsel anything showing the existence of a July 1, 2020 call between Mr. Keller and Mr. Lowell. Mr. Lowell, however, disclosed it in his declaration. *See* Lowell declaration at Para. 9.

for-pardon"/LDA matter. While it is unclear what might be in those other three pages, the Government's claim that it had produced the original document was easily disproven by basic forensics. In short, PIN's claim regarding the timing and manner of the PDF's creation is impossible given its metadata and document properties.[9]

The central issue underpinning this entire matter is not actually in dispute: Mr. Lowell had a strong incentive "to assist the government through facilitating Lum Davis' cooperation in this matter in order to gain favor" with DOJ given the multiple investigations into him. Those words, in fact, were written by Mr. Keller himself, in an August 25, 2020 email to Mr. Lowell. In the context of the initial draft of the Conflict Waiver, Mr. Keller said "we need to place something on the record to reflect" Mr. Lowell's incentive to please DOJ. Of course, as the evidence clearly demonstrates, Ms. Davis was never told that Mr. Lowell could be "inclined to assist the government... in order to gain favor" with DOJ. Nor was her local, third-party counsel, Bill McCorriston. Nor was the Court. Nor was Mr. Lowell's troubling incentive ever put on the record.

F. PIN Leveraged Ms. Davis' Plea To Get The "Big Fish," Mr. Broidy

In the end, the government leveraged the guilty plea that Mr. Lowell encouraged Ms. Davis to accept in order to get its "big fish," Mr. Broidy. The record evidence demonstrates that Mr. Keller was worried, however, that Ms. Davis might

---

[9] See *ECF Dkt No.* 72 Govt Ex. 1 (Their attachment of the email exchange) It should be noted that a key exchange between Mr. Bryant and Ms. Lockhart was oddly not included in the exhibit filed by the government where Mr. Bryant stated "Nikki: Thank you for the prompt response. With all due respect that is not how adobe pdf maker works. It does not use the created date of the word file, when evidencing when the document was created, it uses the created date of the pdf itself. It then shows it was modified on May 10, 2022 at 4:33:15 pm. The attachment submitted in the email was the screenshot of the metadata. You can confirm with this your IT department."

9

not give a sufficient statement regarding intent—both her own *and* Mr. Broidy's—at her arraignment. In an August 18, 2020 email to the Filter Team—the day after Ms. Davis' Information was filed—Mr. Keller thanked the Filter Team for "making this possible." He noted that Ms. Davis pleading guilty was "a big development," but he expressed his concern about her forthcoming allocation, "Still have to get through the plea hearing." Replying to Mr. Keller, his subordinate Mr. Salgado wrote, "Well done and congrats!" Mr. Salgado then asked almost rhetorically the question about what would come next: "[N]ow that this is out there, it should be easier to get approval for Person B's [Broidy's] indictment, right?"

Less than two months later, PIN used Ms. Davis' plea to secure a guilty plea from the "big fish," Mr. Broidy. Thus, Mr. Keller and PIN achieved their goal of getting someone close to the then-President on the eve of the Election. All they had to do was trammel on Ms. Davis' Sixth Amendment right to conflict-free counsel by insinuating themselves into one criminal investigation (the FARA probe), launching another ("bribery-for-pardon"/LDA), and then deliberately taking steps to ensure that the conflicts were concealed from Ms. Davis, her third-party counsel, and the Court.

I. CONCLUSION

For the forgoing reasons, Movant respectfully requests that the Court grant the Motion.

Los Angeles, California, July 1, 2022.

*/s/ James A. Bryant*
JAMES A. BRYANT WILLIAM C. McCORRISTON
Attorneys for NICKIE MALI LUM DAVIS

10