1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - X
UNITED STATES OF AMERICA,      :    21-CR-00371(BMC)
                               :
                               :
                               :    United States Courthouse
      -against-                :    Brooklyn, New York
                               :
                               :
                               :    July 27, 2022
                               :    12:00 p.m.
THOMAS JOSEPH BARRACK and      :
MATTHEW GRIMES,                :
                               :
        Defendants.
- - - - - - - - - - - - - - X

   TRANSCRIPT OF CRIMINAL CAUSE FOR STATUS CONFERENCE VIA
                      VIDEOCONFERENCE
          BEFORE THE HONORABLE BRIAN M. COGAN
            UNITED STATES DISTRICT JUDGE


              A P P E A R A N C E S:

For the Government:        BREON PEACE, ESQ.
                           Acting United States Attorney
                           Eastern District of New York
                           271 Cadman Plaza East
                           Brooklyn, New York 11201

                           BY:  RYAN HARRIS, ESQ.
                                HIRAL MEHTA, ESQ.
                                SAMUEL NITZE, ESQ.
                                Assistant United States Attorneys

For Deft Barrack:          O'MELVENY & MYERS LLP
                           1999 Avenue Of The Stars, 7th Floor
                           Los Angeles, CA 90067

                           BY:  DANIEL M. PETROCELLI, ESQ.
                                JAMES A. BOWMAN, ESQ.

                           WILLKIE FARR & GALLAGHER LLP
                           787 Seventh Avenue
                           New York, NY 10019-6099

                           BY:  MICHAEL STEVEN SCHACHTER, ESQ.

2

1          A P P E A R A N C E S:   (Continued.)

2  For Deft Grimes:          WINSTON & STRAWN LLP
                             1901 L Street NW
3                            Washington, DC 20036

4                            BY:   ABBE DAVID LOWELL, ESQ.
                                   JOHANNA RAE HUDGENS, ESQ.
5                                  SOFIA ROA ARGUELLO, ESQ.

6
   Court Reporter:           DENISE PARISI, RPR, CRR
7                            225 Cadman Plaza East
                             Brooklyn, New York 11201
8                            Telephone: (718) 613-2605
                             E-mail: DeniseParisi72@gmail.com
9
   Proceedings recorded by computerized stenography.  Transcript
10  produced by Computer-aided Transcription.

11                 *     *     *     *     *

12         THE COURTROOM DEPUTY:  21-CR-371, United States of

13  America versus Barrack and Grimes.

14         Will the parties please state their appearances

15  starting with the Government.

16         MR. HARRIS:  Good afternoon.

17         This is Ryan Harris for the United States.  I'm

18  joined by Samuel Nitze and Hiral Mehta.

19         MR. PETROCELLI:  Good afternoon, Your Honor.

20         Daniel Petrocelli with Jim Bowman.  I think Michael

21  Schachter for Mr. Barrack.  Mr. Barrack is also present.

22         I will tell the Court, however, it appears that

23  there's some technical difficulties, and we're not able to get

24  any audio from Mr. Schachter, nor for Mr. Barrack, but if

25  that's okay with Your Honor, we can proceed.

3

1          THE COURT:  If it's okay with you, it's okay with
2    me.
3          MR. PETROCELLI:  Okay.  Let's move forward, then.
4          THE COURT:  Okay.
5          All right.  First of all, everyone is okay doing
6    this on video?
7          MR. LOWELL:  Sorry to interrupt, Your Honor.  This
8    is Abbey Lowell.  I just wanted to enter our appearance.  It's
9    Abbey Lowell, Sophia Arguello, and Johanna Hudgens on behalf
10   of Matthew Grimes.  Mr. Grimes is present.
11         THE COURT:  This is not the first time I have
12   forgotten to get your appearance.  I'm going to try to do
13   better at that.
14         MR. LOWELL:  I would just assume we can drop out of
15   this, but I don't think -- depending on what you're doing,
16   we'll raise it.
17         THE COURT:  We'll see.
18         Okay.  Everybody is okay with video, yes?
19         MR. PETROCELLI:  Yes.  On behalf of Mr. Barrack, we
20   are.
21         MR. LOWELL:  Yes, Your Honor.
22         THE COURT:  Okay.  For the sake of the order, we are
23   still being told to avoid in-person proceedings to the extent
24   possible, and since this is largely just a check-in status
25   conference, not entirely, I think there's cause under the

4

1    CARES Act and the administrative order that's in place in this

2    district to hold this conference by video.

3              I have the agenda.  I want to go, possibly, in a

4    slightly different order than was presented in it.

5              First, I want to talk about the questionnaires,

6    because we had a miscommunication, and I'm going to take

7    responsibility for it because it's unlikely that all three of

8    the parties were confused, so I must have not clearly

9    indicated what I wanted.

10             What I intended to get yesterday was an agreed-upon

11   questionnaire.  Everyone thought, okay, this is the

12   questionnaire.  To the extent there were questions that one

13   party wanted that another side thought were inappropriate,

14   those would be marked on this single questionnaire, and then I

15   make rulings as to those.

16             I also must not have told you, but I should have,

17   that, you know, you have to send this to my chambers' email

18   address in Word format, because if we're going to play with it

19   at all, it's very hard to do it in a PDF.

20             So the question now is:  Can we get everybody

21   together to generate the form that I thought I was going to

22   get without having, apparently, told anybody that that's what

23   I wanted?

24             MR. PETROCELLI:  Your Honor, on behalf of

25   Mr. Barrack, we are working with the Government and in the

5

1    process of doing exactly that.

2            THE COURT:  Okay.  Mr. Lowell.

3            MR. LOWELL:  Same.  I think -- we saw your order,

4    and I think we have the ability to do that by three o'clock,

5    as you had asked.

6            THE COURT:  Okay.  Assuming that's done, then I

7    think we're sticking to the schedule, and that is I will get

8    those questionnaires to the clerk, hopefully on -- hopefully

9    tomorrow, if not over the weekend, they will be distributed to

10   jurors to be filled out on August 1st and August 2nd.  That

11   will be in the ceremonial courtroom.

12           As soon as they are filled out, they will go to the

13   Government, the Government will make copies for both parties

14   to the defense, and then you're going to confer and hopefully

15   get me enough jurors that both sides think are potential so

16   that we can let everyone else go.  If you don't do that and

17   can't reach an agreement on a sufficient number, then you will

18   each give me separate piles of what you think should be okay

19   to your adversary, but is not, and then I will go over those

20   two piles and decide which to take.

21           And then I get the supplemental voir dire questions

22   by August 26th.  We will have picked the people before coming

23   in by August 23rd, and then I will do the jury selection based

24   on the questionnaires on September 19th, okay?

25           Can everyone hear me okay?  There seems to be a

6

1    little feedback.

2              MR. PETROCELLI:  Yeah, we can hear you.

3              MR. LOWELL:  Yes, Your Honor.

4              THE COURT:  Just to be sure, I will say this about

5    the defendants' questionnaire.  I appreciate the need to ask

6    the jurors generally about potential hostility to a former

7    president; I think that's okay.  There's a level of detail in

8    there that I really think I'm disinclined to go into, and I

9    don't want to put the jurors on the spot by making them

10   effectively declare their political affiliation, just like I

11   wouldn't ask them to declare their region -- I think it's just

12   a little too personal and unnecessary -- if we get to the

13   general issues that the defense is concerned about.  So just

14   keep that in mind as you go through the questions and decide

15   what you want to do.

16             Okay.  Next, with regard to the Curcio hearing, I'm

17   not going to do a Curcio hearing.  I appreciate the

18   Government's need to be protective.  I think in the prior

19   situation where we've done these -- and I know we've done two

20   or three -- there was at least a potential argument that there

21   might be a conflict.  I really don't think there is one here.

22   What's happening in Hawaii has all the indications of being a

23   frivolous motion practice, and all I'll ask the defense

24   counsel to do is to make sure that Mr. Lowell just talk to

25   Mr. Grimes and make sure he understands the situation and he's

7

1    okay with it.  I really think that that's all we need to do.

2             Does the Government really want to have a further

3    discussion about this?

4             MR. HARRIS:  Your Honor, Ryan Harris for the United

5    States.

6             We're simply trying here to protect the record.  If

7    the Court believes that Mr. Lowell's representations that he's

8    spoken to his client regarding these potential conflicts is

9    sufficient, we'll defer to the Court, obviously.  We are just

10   trying to protect the record.

11            I do have some clarifications regarding the juror

12   questionnaire that I would like to raise.

13            THE COURT:  Please.

14            MR. HARRIS:  So the first is, Your Honor, we -- I

15   think, typically, the way our office -- (Videoconference

16   interruption.) -- with the Court handles it is that we will

17   print the questionnaire once it is finalized from the Court

18   and then provide those to the clerk's office.

19            As you can imagine, printing -- I think, in this

20   case -- 425 copies of a lengthy document does take some time,

21   and so I respectfully request if the Court does have a

22   finalized questionnaire by the end of the day tomorrow, that

23   would certainly facilitate us having enough time to print and

24   provide it to the clerk's office well in advance.

25            THE COURT:  Okay.  That's fine.

8

1        MR. HARRIS:  And then, secondly, Your Honor, I think

2   all parties are endeavoring to submit a joint questionnaire --

3   or as close to what can be a joint questionnaire -- by three

4   o'clock today.  If the parties are making progress on that

5   joint questionnaire but still have some issues they're trying

6   to resolve at three o'clock, I think the parties -- at least

7   the Government will request leave until the end of the day to

8   continue to get the Court a more harmonized version.

9   Obviously, if the parties are not making progress, we'll

10  submit, you know, what we have at three o'clock.

11       THE COURT:  No, I want you to finish.  It doesn't do

12  any good for you to give me something partial.  I would try

13  hard to get three o'clock, but if you can't, you can't.  You

14  know, I really want to be done by Friday, otherwise we're

15  jeopardizing the selection dates because we can't just move

16  this volume of jurors out for a day, so do your best, but I

17  understand if you need until 5:00, 6 o'clock, then, by all

18  means, you can take it.

19       MR. HARRIS:  Thank you, Your Honor.  We, obviously,

20  hope not to need that time.

21       MR. LOWELL:  Your Honor, I needed to respond to what

22  the Court had said before --

23       THE COURT:  Go ahead.

24       MR. LOWELL:  -- just to put it on the record.

25       So, Judge, thank you for your statement.  Let me say

1   that Mr. Grimes has known about this particular proceeding

2   since it arose, so I just wanted you to be clear about that,

3   and so has any other lawyer that he's been involved with other

4   than me, so I just wanted to assure you.  The only thing I

5   need to say on the record, just because of the way -- I'm

6   sorry to be a stickler about what Mr. Harris says -- he said

7   he wanted to protect the record to make sure that this, quote,

8   potential conflict, end quote.  There is no potential

9   conflict.  At least, I want to point that out as I did in my

10  submission.  I just needed to clarify that we don't concede to

11  that.

12          THE COURT:  Okay.  Let me say this:  First of all, I

13  agree with you that this was not a potential conflict.

14          Second, I agree with the Government that they've got

15  an obligation, not only to protect the record, but to bring to

16  my attention anything that they feel could cause a problem.

17  The way I think about these Curcio issues, generally, is if I

18  get a 2255 based on it, what am I going to do?  And what I'm

19  saying to the Government is, don't worry about it, okay, on

20  this one, because I really don't see the potential conflict.

21          MR. PETROCELLI:  Your Honor, quick question on the

22  juror issue -- two questions actually.

23          THE COURT:  Let's everyone mute if you're not

24  talking.

25          MR. PETROCELLI:  Your Honor, two questions:

10

1    Approximately how many prospective jurors will be summoned on

2    the first of August; and, secondly, it may be too early to

3    tell, but are we looking at a COVID protocol-type trial where

4    people are going to be masked and so forth?  I just finished

5    one such trial and it's challenging.

6            THE COURT:  First of all, I don't have the number

7    offhand.  I know it's a lot.

8            Mr. Scott, do you, by any chance, have it?

9            THE COURTROOM DEPUTY:  425 jurors are going to be

10   broken up between Monday and Tuesday between the morning and

11   afternoon.

12           THE COURT:  So it will be a busy day, but that

13   should be plenty.  I mean, I'm hoping we can easily do this

14   without much rigamarole.

15           And what was your second question?

16           MR. PETROCELLI:  About the COVID protocols.

17           THE COURT:  Yes.  I am willing to be guided by the

18   parties.  You know, the courthouse is still under a masking

19   and social distancing protocol.  I have deviated from that

20   where possible, and I think one thing we might be able to do

21   here is put some jurors in front of the jury box as well as in

22   the two rows of the jury box.  That will enable us to have

23   social distancing between them.  Obviously, it will limit

24   attendance in the courtroom if we observe social distancing of

25   3 feet.

11

1          I think the jurors, and everybody in the gallery of

2     the courtroom, really does have to be masked, but I could be

3     talked out of this.  I will say, I think the defendants have a

4     right not to wear a mask if they don't want to, and I do not

5     require masks for any attorney who is asking questions, or any

6     witness who is answering them at the time they are doing that.

7     So those are the modifications I start out with.  Again, I

8     leave it to the parties to see if they want less or more.  We

9     need to have the jurors comfortable, but at the same time --

10    I've done trials that were fully socially distanced and, I

11    agree with you, they're unpleasant.  So see what you can agree

12    to if you want something beyond what I said.

13          MR. LOWELL:  Judge, one point on that.

14          I did a trial in this mess in which we found out

15    that all the jurors and alternates were vaccinated and -- and

16    at that point, there were no boosters -- and that -- all the

17    parties were -- and then the only issue for masking really

18    turned out to be witnesses, and there was a shield so that

19    that didn't necessarily have to happen.  I'm wondering whether

20    we would be able to inquire of the jury, as happened in my

21    other case, because then it makes it easier to avoid the

22    challenges that you just talked about.

23          THE COURT:  How did you, in that other case, avoid

24    embarrassing the jurors?

25          MR. LOWELL:  I can find -- it was part of the jury

12

1    questionnaire, and it was a supplement to the jury

2    questionnaire, because the jury questionnaire had occurred

3    prior to the scheduling of this case -- the trial when it

4    actually got done.  I will fish for that, Your Honor, and, by

5    the three o'clock, send that to you as well.

6            THE COURT:  Let me also say this:  Because of the

7    way the demographics have worked out in New York City, there

8    is an argument that if you limit jurors to those who have been

9    fully vaccinated, you're kind of skewing the jury pool.  In

10   fact, I think that's being argued in for brief now in the

11   Second Circuit because there's another judge here who did

12   that.  If I'm going to do that, I'm going to need very clear

13   waivers by the defendants that you want me to do that, and I

14   will hear the Government if they think we shouldn't do that,

15   but if I can get the waivers and it's not too embarrassing to

16   ask the potential jurors, I'm not necessarily opposed to it.

17           MR. LOWELL:  I don't know that that's something --

18   let's talk among ourselves as to whether we'll do that.  I'm

19   going to fish for that supplement, Your Honor.  But one thing

20   I'm just curious in that -- to point out was that in this

21   trial, it turned out that it was completely irrelevant as to

22   the demographics.  The pool that came to court matched the

23   demographics of the veneer exactly precisely, and those that

24   ended up in the selection process did the same.  But let me

25   talk to co-counsel, because I didn't realize this issue would

13

1    come up -- and also with the Government -- and we'll either

2    tell you that by three o'clock, or we'll say let's do the best

3    we can given the way things are going in your courthouse.

4         THE COURT:  All right.

5         At this point -- I don't know about all of you, but

6    even people who weren't vaccinated had it.  I mean, it's so

7    widespread now that it probably doesn't even matter to ask

8    them, but I agree with you in terms of masking, we need to

9    make everyone comfortable by giving that assurance, so see

10   what you can work out.

11        MR. LOWELL:  Yes.

12        MR. SCHACHTER:  Your Honor, may I ask you just one

13   more question about jury selection?

14        THE COURT:  Sure.

15        MR. SCHACHTER:  I think our technical issues have

16   been resolved.

17        In terms of what will occur on Monday and Tuesday, I

18   assume that there is no expectation that any parties or

19   counsel will be present for that?

20        THE COURT:  Not necessary.  Stay by your phones in

21   case something comes up.  If we need to have a video or audio

22   conference, we'll do that, but I don't think it's likely you

23   will have to come to court.

24        MR. SCHACHTER:  Okay.  And just in terms of the

25   Court's order -- the docket order -- on the process, I think

14

1    the language that was used was "We are to provide the Court

2    with a list of jurors who are acceptable to both sides," and I

3    assume what that means is that based on the questionnaire

4    there is no -- a list of jurors for whom, based upon the

5    questionnaire alone, there is no basis for a challenge for

6    cause.

7              THE COURT:  This is exactly what it means.  It does

8    not mean that you've waived your right to object for cause or

9    to exercise peremptories if during the voir dire something

10   comes out that, you know, wasn't picked up by the

11   questionnaire.  No one is waiving anything.

12             MR. SCHACHTER:  Thank you, Your Honor.

13             THE COURT:  Okay.  Was that you, Mr. Harris?  Who

14   was just --

15             MR. SCHACHTER:  No.  I'm sorry.  That was Michael

16   Schachter.

17             THE COURT:  Oh, you got your sound.

18             MR. SCHACHTER:  Yes.

19             THE COURT:  Okay.  Thank you, Mr. Schachter.  I'm

20   looking at Mr. Harris's picture, and I'm thinking, maybe he's

21   frozen because he's really not moving, and I didn't notice

22   that you had become un-muted.

23             MR. SCHACHTER:  I apologize for not identifying

24   myself, Your Honor.

25             THE COURT:  No problem.

15

1        Okay.  The next thing I want to talk about is -- and
2   I'm going to be careful because I know the defense wants me to
3   be careful about this -- I've gotten -- again, I don't think
4   this compromises anything to say what I'm about to say -- I've
5   gotten some ex parte motions from the defense for trial
6   subpoenas, and I disincline to deal with those on an ex parte
7   basis.  There are two reasons why I'm disinclined:  Number
8   one, as to some of the matters requested, it's moot; the
9   Government is going to know immediately.  And as to others,
10  you know, you are coming up on the date pretty soon --
11  probably by the time you get these documents -- where you
12  would have a reciprocal obligation to produce anything you are
13  going to use at trial anyway.  I would rather hear from the
14  Government in advance than put off the fight until, you know,
15  we're all on trial and it's taking longer to do this, so I
16  would rather have the Government's input now.
17        MR. SCHACHTER:  I think the issue, Your Honor, is
18  not the fact of the issuance of the subpoena or the -- to whom
19  the subpoena is directed; it is rather the submission that
20  lays out our arguments as to why -- why we are entitled to
21  these new materials, as that does describe our defenses, and I
22  suppose our request, Your Honor, would be to either redact --
23  to be able to submit on an ex parte basis a redacted, an
24  un-redacted version, of our brief that explains why these
25  documents are material to the defense.

16

1          THE COURT:  Don't you think that if, in a perfect

2    world, you got exactly the documents you want to have, and

3    then you turned over a set to the Government, the Government

4    would know everything you say in your motion about why the

5    subpoenas are proper?

6          MR. SCHACHTER:  Well, with all due respect, of

7    course, to the talented prosecution team.  We just don't know

8    that, Your Honor, and we have engaged in discussions about

9    *Brady* issues that have multiple circumstances, at least it

10   appears to us, that they may not -- you know, that we may have

11   defense arguments that they are not focused on, and we would

12   like to be able to receive these documents based on the

13   Court's conclusion that they are material, we are entitled to

14   these materials, without having to lay bare our defense

15   arguments for the prosecution.

16         THE COURT:  Okay.  Well, let's start with the

17   redaction of your motions.

18         MR. SCHACHTER:  Yes, Your Honor.

19         THE COURT:  Let's see if the Government has anything

20   in response to the redaction that persuades me that I should

21   not issue this --

22         MR. SCHACHTER:  Yes, Your Honor, we'll do that.

23         THE COURT:  If there's more, then I will decide

24   myself whether the non-disclosed grounds are adequate to

25   support issuance of the subpoenas.  And if they are, like I

17

1  say, it's going to happen one way or the other.  It's like a

2  motion in limine before trial.  You know, you have to say why,

3  and so even if it's in the context of a motion to quash,

4  you're still going to have to say why.  So you can try it that

5  way, we'll play it out, and see how it goes.

6          MR. SCHACHTER:  Thank you, Your Honor.

7          THE COURT:  Okay.  And do that, again, like

8  everything in this case, as soon as you can.

9          Okay.  I know that I have some other motions sub

10  judice, I'm going to get to those pretty quickly, because I

11  know they will direct when and how and if the trial is going

12  forward, so you have my assurance that we'll get to those as

13  soon as we can, like everyone else.  I think I probably have

14  the smallest staff of any of the parties in this case trying

15  to handle the volume, but we will definitely get it done.

16          Okay.  That's all I've got.  What else do we need to

17  talk about?

18          MR. HARRIS:  Your Honor, Ryan Harris for the United

19  States.

20          I think you've covered pretty much everything.  I

21  guess one point I just wanted to confirm was the trial

22  schedule.  Am I correct that the Court plans to sit Monday

23  through Thursday 9:00 to 5:00; is that correct?

24          THE COURT:  9:30 to 4:30.

25          MR. HARRIS:  9:30 to 4:30.

1        And Monday through Thursday, so Fridays we will not

2  be sitting.

3        THE COURT:  That's correct.  We may sit on Fridays

4  if I think the case is going very badly in terms of time, and

5  if the jurors are amenable to that in order to speed it up.

6  In addition, we may sit on Fridays if the jurors are in

7  deliberations.  You know, they may want to stay on a Friday,

8  and I would encourage them to do so.  Other than that, the

9  goal is not to sit on Fridays because there's so much catchup

10  work for all of us to do on a case like that, and we can all

11  use that extra day.

12        MR. HARRIS:  Thank you, Your Honor.

13        THE COURT:  And the jurors, who can also use the

14  extra day and sit four days a week.

15        MR. LOWELL:  Your Honor, this is Abbe Lowell.

16        On that point about schedule, a couple of things.

17        I understand that there might come a time that we do

18  Fridays for the reasons you said.  Just to be telling you some

19  parameters I'm working under; one is, as I've explained

20  before, and certainly I told the Government recently, the

21  trial starts and following the first week of trial, there will

22  be a number of holidays I observe and, unfortunately, it's one

23  of those years where they don't fall on the weekend, and so

24  I'll let the Court know about those.

25        THE COURT:  Remind me, Mr. Lowell, do you need any

1   more than the first two days of Rosh Hashanah and Yom Kippur?

2          MR. LOWELL:  For Rosh Hashanah, I will need that.

3   For Yom Kippur, it could theoretically be a half day and the

4   day before because I have to get back home in time for the

5   holiday, and then it's the day of.  But I'm pointing out to

6   the Court that the following week, there's one day of an

7   observance holiday, and maybe the week following, but --

8          THE COURT:  Okay.

9          MR. LOWELL:  -- I think I'll submit just so you know

10  the dates and it's on the record.

11         THE COURT:  Okay.

12         MR. LOWELL:  Secondarily, and it's not critical, but

13  on this Friday issue, I am waiting to inform the dean of

14  Columbia Law School after we're done what the schedule will be

15  because I am supposed to teach, as I always do, and the course

16  is usually on Mondays, but I said I've got the trial, so they

17  said, can you teach it on Friday, and, theoretically, I

18  probably will say yes, because even if there's one, I can

19  always throw that session off to a make-up session after the

20  trial, so I just wanted to let the Court know about that.

21         THE COURT:  Okay.  I think the answer is definitely

22  yes, and we will accommodate you as needed if we decide that

23  we have to work a Friday.  Just because we work one Friday

24  doesn't mean we work every Friday.

25         MR. LOWELL:  That's what I was hoping.  I appreciate

1    the accomodation and consideration.

2         Thank you.

3         MR. PETROCELLI:  Your Honor, I have a question going

4    back to the jury questionnaires, if that's okay.  I'm

5    wondering if you can give us some guidance about your practice

6    regarding hardship and what kind of circumstances the Court

7    typically takes into account.  You know, we're estimating a

8    five-week trial here.

9         THE COURT:  Right.  The most important thing to me

10   is that the jurors not lose money for having sat.  It's a

11   hardship for me if somebody has to give up a month of income,

12   okay?  That's a major hit.  Other than that, I don't like to

13   force people onto the jury who are very reluctant to serve.

14   It always causes problems and I would rather have a jury of

15   the willing than the forced.

16        On the other hand, sometimes you've got to use a

17   little coercion to get the jury, and so, you know, we'll be

18   flexible, but, you know, it depends how you are all doing.  If

19   you are getting up to a number that you think is clear, that's

20   fine.  I do ask jurors to, you know, reschedule doctors'

21   appointments, and do other things on Fridays that they would

22   otherwise do, and so I do push them a little bit to the extent

23   possible, but I don't want someone who is really, really

24   unhappy here.

25        MR. PETROCELLI:  Thank you, Judge, I ask that

1   because in the trial that I just concluded, the judge, who was

2   here in Manhattan, asked for a show of hands of everyone who

3   wanted to be on the jury who was willing to serve, and out of

4   100 people, only two people raised their hand.

5             THE COURT:  And, by the way, you probably wouldn't

6   want those two people, right?

7             MR. PETROCELLI:  No, no.  We did not.  We put them

8   at the end of the list, Your Honor.

9             THE COURT:  I did one large case where this woman

10  when we were doing voir dire, she said to me:  Judge, what do

11  I have to do to get on this jury?  And I thought:  Okay, I'm

12  going to let one of the parties challenge that for cause and

13  then use a peremptory, so...

14            MR. PETROCELLI:  Okay.  Well, that's helpful, Your

15  Honor.  Thank you so much.

16            THE COURT:  Anything else?

17            MR. LOWELL:  One more issue for me -- or two,

18  actually, but I don't want to monopolize.  May I proceed?

19            THE COURT:  Sure.

20            MR. LOWELL:  Last night, of course, we'd gotten the

21  order you entered on the CIPA matter, and that was going to be

22  something that you saw in the letter we sent in the agenda

23  today, and I certainly understand what the order says.  It

24  dovetails, though, with some of the other issues because, as

25  you remember from our conference in your chambers, one of the

22

1   issues was the breadth of the Government's harvesting of

2   information and from which agencies, and if -- I know you

3   will, and I know you will remember as well, some of the items

4   on behalf of Mr. Grimes I pointed out as perhaps being

5   contrary to the Government's assertion helpful or material to

6   the defense.  So I saw the order, but I don't know the

7   breadth.  The Government has told us, I think, some of -- one

8   or -- I mean, they've told us a little bit about where they

9   have gotten their information from, which would have started

10  the process of CIPA, but it's not a big secret to indicate

11  that our request to look further than what the Government has

12  provided by way of subpoena encompasses that issue, so that is

13  something that I will raise at the appropriate time in how you

14  said you wanted it raised.

15         THE COURT:  Okay.  That's fine.  I will tell you

16  that that concern was very much a part of my discussion with

17  the Government, and I have reviewed the in camera documents

18  that the -- the documents we have in our SCIF that would

19  address that.  I'm pretty confident that everything has gone

20  the way it has gone, and if there isn't anything there, it's

21  because there isn't anything there, but, as you say, at the

22  appropriate time, we'll have to get into it more.

23         MR. LOWELL:  The last piece on this, not to beat a

24  dead classified document to death, is that if there's nothing

25  there, you understand that can be probative of something, and

23

1   that's --

2           THE COURT:  I understand.  I mean, one of the things

3   that I thought about -- and I will leave it to the parties --

4   is if the Government wants to have a discussion with

5   Mr. Lowell and say, look, what there is is what you have, and

6   that's a representation.  And I think if the Government didn't

7   want to enter into some kind of stipulation, there's probably

8   a way that Mr. Lowell can get at that at trial, okay, so

9   that's something to think about.

10          MR. LOWELL:  I was thinking about that procedure

11  myself after I read the order, so I will follow up with the

12  Government about that.

13          THE COURT:  Okay.

14          MR. LOWELL:  Last, but not least, it has been many,

15  many months since I last addressed with the Court the

16  remaining condition of release of my client who has proven, I

17  think, definitively that he's not a risk of flight.

18  Especially, as we get closer to the trial, that becomes still

19  an annoyance beyond any real reason to have it.  I asked the

20  Government their position, they opposed the removal of that

21  device, so I will be submitting a letter to Your Honor.  And,

22  if you remember, one of the reasons that we -- when you

23  addressed it and said it was a close call, had something to do

24  with the Government's representation that there was something

25  out there that would have reflected some -- I don't know how

24

1   they phrased it -- possibility that there could be a risk of

2   flight.  I don't think that's materialized, so I will address

3   it with Your Honor in a very short reiteration.  I know the

4   Government opposes, but that's something I wanted to give you

5   a heads up about.

6              THE COURT:  I appreciate that.  Not that this is

7   crucial, but just because it might occur to me once I get

8   these letters -- (Videoconference interruption.) -- I wonder

9   if you'd have any objection, Mr. Lowell, for me asking

10  Mr. Grimes right now if I can remove the bracelet, is he going

11  to show up to trial.  May I ask him that?

12             MR. LOWELL:  You most definitely should ask him

13  that.

14             THE COURT:  Okay.

15             Mr. Grimes, tell me how I know that if I take the

16  bracelet off you are going to meet your obligation to be here

17  and not go to Antarctica.

18             DEFENDANT GRIMES:  Your Honor, you have my word that

19  I will be at trial.  The -- my family's financial well-being,

20  their home, their reputation is at risk, all my ties are in

21  Santa Barbara in the state of California, and in the United

22  States, and I'm innocent, and I will be -- I will be at trial.

23             THE COURT:  Okay.

24             All right.  I will take that into account when I get

25  the motion.

25

1          MR. PETROCELLI:  And, Your Honor, you will be

2     getting a like motion from us as well.

3          THE COURT:  Okay.

4          MR. SCHACHTER:  And I am confident that you would

5     hear the same from Mr. Barrack if you wish to inquire, Your

6     Honor.  There is no conceivable cause for an electronic

7     monitoring device for Mr. Barrack.  I don't understand its

8     imposition originally, and the same is true now, there is no

9     question that Mr. Barrack has every intention of appearing in

10    court and proving his innocence.

11         THE COURT:  Okay.  I don't think I need to hear that

12    from Mr. Barrack.  I've heard from him before, and I am

13    confident that he would say the same thing.  I will tell you,

14    the Government is going to say, as we get closer to trial,

15    that increases the risk of flight, rather than decreases, but

16    I will rule on who's right on that once I get the letters.

17         MR. LOWELL:  Your Honor, that's all I have on behalf

18    of Mr. Grimes.

19         I appreciate your consideration.

20         THE COURT:  Okay.

21         Anything else from anybody?

22         MR. PETROCELLI:  Not for Mr. Barrack, Your Honor.

23         Thank you very much.

24         THE COURT:  Mr. Harris, anything?

25         MR. HARRIS:  No, Your Honor.

26

1          Thank you.

2          THE COURT:  When are we going to see each other

3     next?  Voir dire?

4          MR. HARRIS:  I believe we have a final trial

5     conference scheduled -- I want to say August 29th, but that

6     could be wrong.

7          THE COURT:  Okay.  I'm getting a nod from

8     Ms. Arguello, which suggests to me that's the right date, but

9     we'll confirm.

10         MR. HARRIS:  I have it as August 29th at 9:30.

11         THE COURT:  Okay.

12         Thank you, all, for calling in, and I will see you

13    in August.

14         We are adjourned.

15         (Matter concluded.)

16

17              *    *    *    *    *

18

19    I certify that the foregoing is a correct transcript from the
      record of proceedings in the above-entitled matter.

20

21     /s/ Denise Parisi              July 28, 2022
      _____        _____
22       DENISE PARISI                    DATE

23

24

25