IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>vs.<br><br>NICKIE MALI LUM DAVIS;<br><br>            Defendant. | CR. NO. 20-00068 LEK<br><br>DECLARATION OF JAMES A. BRYANT |

<u>DECLARATION OF JAMES A. BRYANT</u>

I, James A. Bryant, do hereby state and declare as follows:

1. I am counsel for Defendant Nickie Mali Lum Davis and if called as a witness, I could and would competently testify thereto.

2. I make this declaration in support of Defendants' Motion to Continue Sentencing, on the grounds that good cause exists to continue the October 27, 2022 sentencing, due to the fact that I am unavailable to attend the hearing due to my engagement in trial, but also most importantly, due to a series of unforeseen circumstances, I have been unable to file a motion to withdraw Ms. Davis' plea that has been twice drafted.

3. First, tomorrow on, October 19, 2022, I begin trial in the Los Angeles Superior Court in the matter of *Woodhill Ventures, LLC v. Ben Yang*, Case No.

435047.1

19BBCV00929. Based upon the court's assessment of the case, the Court has estimated that the case will not conclude until October 28, 2022, at the earliest. As such I would be unavailable to be present at Ms. Davis hearing that is scheduled for October 27, 2022, which is a very consequential hearing that I need to attend as I am lead counsel for that purpose.

4. Following the hearing on Defendant's Motion to Disqualify John D. Keller ("MTD") we agreed with the Court that the MTD should wait and the first issue that would need to be addressed was a request to withdraw the guilty plea through a Motion to Withdraw the Guilty Plea and Memorandum of Plea Agreement.

5. In August 2022, I emailed Sean Mulryne to inform him that Ms. Davis was still bound to cooperate with the government pursuant to her Memorandum of Plea Agreement ("MOPA") while she contemplated what her next steps would be in the interim.

6. Shortly thereafter, based upon everything that Ms. Davis discovered about her former counsel Abbe Lowell, and his failure to fully inform her of all relevant information that would have afforded her the ability to make an informed decision whether to enter a guilty plea, I was instructed by my client to begin drafting the Motion to Withdraw the Guilty Plea and Memorandum of Plea

435047.1                                        2

Agreement ("MTW").

7. In mid-August 2022, my law firm's server suffered a major crash during a hardware upgrade to our firm's data and email servers due to the incompatibility of some of the new hardware that was being installed. Our office utilizes a central system where all client files are stored. It is also where I routinely save my pleading and motion drafts for each client matter.

8. When our server crashed, I initially lost all access to my files stored on our firm's shared drive, as well as access to my email.

9. In late-August 2022, our IT department was able to get our servers back online, however, we would soon thereafter be informed that any files that were saved on the shared drive from the third week of July through the date in which the servers crashed would not be recoverable. As a result, I completely lost my initial draft of the MTW, as well as the corresponding research and notes associated with the preparation of the motion.

10. Having lost my initial draft of the MTW, as well as other work product from several other cases, I resumed my work on preparing the MTW around the third week of September 2022, as I intended to file it in late September/early October.

11. Because my email service had still not been restored, and I still had concerns regarding the stability of our firm's server, I did not want to risk losing my work once again, so I thought it made the most sense to save my work on my drafts and research on my local drives as the information would be safest there, or so I thought.

12. On or about October 14, 2022, I had just completed the drafts of the MTW and accompanying declarations, which were going to be circulated later that morning for review and approval by co-counsel William McCorriston and Ms. Davis, in order to file the motion by end of day.

13. However, on that same morning, while I was engaged in the arbitration matter of *Gwen Gatti v. CBS Broadcasting et al.* before JAMS Arbitration (the "CBS Matter") which had began on October 10, 2022, a full cup of coffee was inadvertently spilled all over my laptop.

14. Immediately following the spill, within less than a matter of seconds the laptop completely shorted and died.

15. In response, at the time that the incident occurred our IT technicians had yet to make it into the office. As such, I immediately knew that the only way to potentially salvage the device and the very sensitive data on the laptop, was to have a professional IT technician immediately open it and dry its components. I

immediately directed my staff to take the laptop to the nearest Geek Squad service, in order to have the computer dried to prevent any further damage if possible.

16. I was very concerned at the fact that the laptop had gone dead before I had a chance to turn it off manually, as that could potentially signify possible electrical damage to the motherboard, but I was hopeful that this would not be the case. Several hours following the delivery of the computer to the Geek Squad technicians, I was informed by the Geek Squad technician that the motherboard suffered severe damage, and that computer would no longer be operable. However, the technician did inform me that it may still be possible to save the data on the solid state hard drive, as it did not appear to have suffered from any water damage, but they could not rule out the possibility that the SDD drive suffered electrical damage.

17. Later that day my staff retrieved the inoperable computer, and our in-house IT technician began the attempt to retrieve the data. Despite numerous hours spent attempting to retrieve the data, by late that evening, it was determined that the SDD drive appeared to have suffered from some form of electrical damage, and that it if any data was retrievable, it would require a company that specializes in the repairing and data recovery for solid state drives.

18. On Saturday, October 15, 2022, I submitted the SDD drive to a data

recovery company to attempt to repair and retrieve the data from the drive. After the technician did an initial review of the device, I was informed it would be several days to determine whether they could repair and recover the data locally, or whether it would have to be sent to their partner lab at a different location.

19. As a result of the damage to the laptop suffered by the coffee spill, I lost all data stored on that computer in its entirety, which included all files related the MTW that I had nearly finalized.

20. Following the initial loss of my original MTW draft, it was my goal to have filed the MTW by no later than October 14, 2022. Unfortunately, due to what will likely be a loss to the data that was stored on the laptop, I was unable to retrieve the nearly finalized motion, and I am now in the process of redrafting the motion for a third time.

21. Filing such a consequential motion, a mere few days before Ms. Davis' sentencing hearing, without any explanation whatsoever would constitute poor form, and is disruptive to the Court and all parties engaged in this matter. As such, it is the prudent and right thing do to inform the Court as to why there has been a delay in filing the motion, and to request that Ms. Davis's Sentencing Hearing be continued, in order to permit me time to re-draft and file Ms. Davis' MTW.

I, James A. Bryant do declare under penalty of laws of the United States that the foregoing is true and correct.

Dated: Los Angeles, CA, October 18, 2022.

*/s/ James A. Bryant*
JAMES A. BRYANT