McCORRISTON MILLER MUKAI MACKINNON LLP

WILLIAM C. McCORRISTON          #995-0
DAVID J. MINKIN                          #3639-0
Five Waterfront Plaza, 4th
Floor500 Ala Moana
Boulevard Honolulu, Hawai'i
96813
Telephone:  808.529.7300
Facsimile:  808.535.8056

E-Mail:       mccorriston@m4law.com;   minkin@m4law.com

JAMES A. BRYANT *(pro hac vice)*
The Cochran Firm California
4929 Wilshire Blvd., Suite 1010
Los Angeles, CA 90010
Telephone: 323-435-8205
Facsimile:  310-802-3829
E-mail:       jbryant@cochranfirm.com

Attorneys for Defendant
NICKIE MALI LUM DAVIS

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR. NO. 20-00068 LEK |
| Plaintiff, | DEFENDANT NICKIE MALI LUM DAVIS' MOTION TO WITHDRAW GUILTY PLEA AND MEMORANDUM OF PLEA AGREEMENT |
| vs. | |
| NICKIE MALI LUM DAVIS; | |
| Defendant. | |

1

Defendant Nickie Lum Davis ("Davis", through her undersigned counsel, hereby moves to withdraw her prior guilty plea, pursuant to Federal Rule of Criminal Procedure 11(d)(2)(B), as well as her constitutional rights to due process and a fair criminal proceeding. As demonstrated herein, as well as in the accompanying declaration of the defendant, and her counsel William McCorriston, she can show fair and just reasons for the Court to exercise its discretion and permit her withdrawal of her plea. Ms. Davis specifically claims that if she had known about an unavoidable conflict of interest that was not disclosed to her by former counsel, Abbe D. Lowell, and was accompanied by Mr. Lowell's inadequate and erroneous legal advice, she would not have entered into the plea.

## MEMORANDUM IN SUPPORT OF MOTION

## I.    RELEVANT FACTS AND PROCEDURAL HISTORY

The Indictment in this case charges the defendant with a violation of 18 U.S.C. Section 2 Aiding and Abetting, Violations of 22 U.S.C. Sections 612 and 618(a) of the Foreign Agent Registration Act or FARA (Count One).

On [August 16, 2020], Ms. Davis entered into a Memorandum of Plea Agreement ("MOPA") providing that she would plead guilty and waive her right to appeal. See Exhibit A.

On August 31, 2020, the defendant's plea hearing was held, and her plea was accepted as knowing and voluntary.

2

The Court reserved acceptance of the MOPA, pending review of Ms. Davis' sentencing report.

Ms. Davis' sentencing is scheduled for October 27, 2022.

## II.   LEGAL ARGUMENT

A criminal defendant may withdraw a guilty plea prior to sentencing if the defendant demonstrates a "fair and just reason for withdrawal." Fed. R. Crim. P. 11(d)(2)(B); *see also United States v. Rio-Ortiz*, 830 F.2d 1067, 1068 (9th Cir. 1987); *United States v. Shehadeh*, 962 F.3d 1096, 1100 (9th Cir. 2020); *United States v. Ortega-Ascanio*, 376 F.3d 879, 887 (9th Cir. 2004). This "fair and just" standard "is generous and must be applied liberally," but nonetheless a defendant may not withdraw his plea "simply on a lark." *United States v. Ensminger*, 567 F.3d 587, 590 (9th Cir. 2009) (citations and internal quotation marks omitted); *see also United States v. Hyde,* 520 U.S. 676-77 (1997). "'Fair and just' reasons for withdrawal of a guilty plea include inadequate Rule 11 plea colloquies, newly discovered evidence, intervening circumstances, or any other reason for withdrawing the plea that did not exist when the defendant entered his plea." *United States v. Yamashiro*, 788 F.3d 1231, 1237 (9th Cir. 2015) (citation omitted); *see also United States v. Garcia*, 401 F.3d 1008, 1111 (9th Cir. 2005); *Ortega-Ascanio*, 376 F.3d at 883.

Further, it is the defendant who bears the burden to show a fair and just reason exists to withdraw a previously entered plea of guilty. *United States v. Garcia-Lopez*, 903 F.3d 887, 891 (9th Cir. 2018); *United States v. Myers*, 993 F.2d 713, 714 (9th Cir. 1993). However, if a defendant satisfies his burden of demonstrating the existence of one of these grounds, withdrawal of the guilty plea should be "**freely allowed**." *United States v. Showalter*, 569 F.3d 1150, 1154 (9th Cir. 2009).

Most importantly in this case, the Ninth Circuit has recognized "[e]rroneous or inadequate legal advice may also constitute a fair and just reason for plea withdrawal, even without a showing of prejudice, when the motion to withdraw is made presentence." *United States v. McTiernan*, 546 F.3d 1160, 1167 (9th Cir. 2008). In such instances it is a defendant's burden is to show, however, first that her counsel's advice was "[e]rroneous or inadequate" and, second, that "proper advice" could "plausibly have motivated a reasonable person in his position *not to have pled guilty*." *Id.* at 1167–68 (emphasis added)6; *see also Yamashiro*, 788 F.3d at 1237; *United States v. Bonilla, 637* F.3d 980, 983 (9th Cir. 2011).

In *McTiernan*, for example, the Ninth Circuit concluded that because the defendant had demonstrated a suppression motion was at least a "realistic possibility," counsel's failure to advise the defendant about the basis for such a motion (or lack thereof) constituted a fair and just reason for the defendant to

withdraw his plea. 546 F.3d at 1167–68.

Further, although it has long been recognized that "[a] defendant cannot withdraw his plea because he realizes that his sentence will be higher than he had expected" *United States v. Medina-Fructuoso*, 472 Fed. Appx. 758, 759 (9th Cir. 2012)  (quoting United States v. Nostratis, 321 F.3d 1206, 1211 (9th Cir. 2003); see also *United States v. Alber*, 56 F.3d 1106, 1111 (9th Cir. 1995); *Shah v. United States*, 878 F.2d 1156, 1162 (9th Cir. 1989), there are instances where an attorney's representation about sentencing was so inaccurate that court's have accepted the withdrawal of a defendant's guilty plea. For instance, where counsel had advised that the likely sentence to be imposed was "probation to eight years," when "there was virtually no chance" of a probationary sentence, the Ninth Circuit has stated that the question to be answered in resolving the defendant's motion to withdraw his guilty plea is only whether he had shown that his counsel's grossly inaccurate prediction "plausibly could have motivated his decision to plead guilty." *United States v. Davis*, 428 F.3d 802, 805–08 (9th Cir. 2005).

### A. Lowell Failed To Disclosed Material Information Related to His Unwaivable Conflict of Interest Pertaining To His Own Exposure to Two Separate Criminal/Civil Investigations Conducted by Both The National Security Division - FARA Unit and the Public Integrity Section

The Supreme Court has held that an aspect of the constitutional right to counsel is a right to representation that is free from conflicts of interest that

adversely affect counsel's performance. *Cuyler v. Sullivan*, 446 U.S. 335, 348, 64 L. Ed. 2d 333, 100 S. Ct. 1708 (1980) "The 'Assistance of Counsel' guaranteed by the Sixth Amendment contemplates that such assistance be untrammeled and unimpaired by . . . conflicting interests." *Holloway v. Arkansas*, 435 U.S. 475, 481 (1978) (quoting *Glasser v. United States*, 315 U.S. 60, 70 (1942)). Impairments of the right to conflict-free counsel threaten not only the defendant's right to effective representation, but also the trial court's interest in the fairness of its proceedings and the integrity of its judgments. "The waiver of the right to counsel must be knowing and intelligent. Whether there is a proper waiver should be determined by the trial court and any such waiver should appear on the record." *Mannhalt*, 847 F.2d at 581 citing *Johnson v. Zerbst*, 304 U.S. 458, 464-65 (1938).

To establish a sixth amendment violation based on a conflict of interest the defendant must show: (a) that counsel actively represented conflicting interests; and (2) that an actual conflict of interest adversely affected his lawyer's performance. *Mannhalt*, 847 F.2d at 579, citing *Cuyler v. Sullivan*, 446 U.S. 335, 348, 350 (1980). "Unlike a challenge to counsel's competency, prejudice is presumed if the defendant makes such a showing." Id. citing *Strickland v. Washington*, 466 U.S. 668, 692, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). "Although *Cuyler* involved a conflict of interest between clients, the

presumption of prejudice extends to a conflict between a client and his lawyer's personal interest." Id., see also *United States v. Hoffman*, 733 F.2d 596, 601-02 (9th Cir.).

Where the conflict arises from the representation of an attorney who is under criminal investigation concurrently with their criminal client, an actual conflict does not immediately arise in instances where the attorney and client were being prosecuted by two completely unrelated offices, for separate and distinct criminal acts. See *Baker*, 256 F.3d 855. However, the court in *Baker* determined that where the same office is investigating or prosecuting both the attorney and the client for either related or unrelated criminal acts, an actual conflict will arise. Id. at 861-862, citing *United States v. McLain*, 823 F.2d 1457, 1463-64 (11th Cir. 1987) (actual conflict when counsel, unbeknownst to defendant, had been under investigation for bribery); *United States v. Levy*, 25 F.3d 146, 155 (2d Cir. 1994) (finding actual conflict for several reasons, including attorney's prosecution on unrelated charges by same office prosecuting defendant).

In *Baker*, the defendant sought to have his conviction overturned on the grounds that his defense attorney and the prosecution violated his Sixth Amendment right to conflict-free counsel on the grounds that his attorney who was representing him on an appeal the U.S. District Court, Central

7

District of Los Angeles, was concurrently being prosecuted for tax evasion in the U.S. District Court, Southern District of New York. *Baker,* 256 F.3d at 861. After reviewing the record, the court did not find that an actual conflict existed on the basis that although defendant's counsel was being prosecuted at the same time as the defendant's appeal was being litigated, there was no indication that the two U.S. attorneys' offices were in any way involved with the other matter, and that it appeared that the two offices were not even aware that the other office was prosecuting defendant's attorney at the same time his counsel was litigating his appeal. The Court further found that there was no evidence that defendant's counsel's advocacy was in any way impacted by the unrelated prosecution. The same cannot be said in Ms. Davis' matter.

Here, Ms. Davis' matter is more analogous to *McLain*, 823 F.2d 1457 cited by *Baker.* In *McLain*, the defendant discovered that during his criminal prosecution his counsel was being investigated by the same U.S. attorney's office, for unrelated bribery violations. Id. at 1463. The court found that counsel's failure to "inform Sher of the investigation and the possibility that it would affect Johnson's judgment while acting as Sher's counsel," constituted an actual conflict. Id. The Court noted that a hearing should have been held before the court, in order to assist defendant in determining whether the conflict was waivable, and affording him the right to make a fully informed decision in whether to waive

8

such a conflict. Id. at 1464, fn 11.

Here, concurrent with Ms. Davis' criminal investigation, Mr. Lowell was being investigated for two separate criminal matters: (1) the National Security Division – FARA Unit ("NSD") was investigating Mr. Lowell for criminal/civil FARA violations; and (2) the Public Integrity Section ("PIN") was investigating Mr. Lowell for bribery and criminal LDA violations. As set forth in McClain, Mr. Lowell had an absolute obligation to fully inform Ms. Davis of both of these investigations, as PIN and NSD were each intimately involved in her in her concurrent criminal prosecution, and were not unrelated agencies or from a completely different section within the DOJ. Instead, they were literally the same sections, and at times included the same exact prosecutors, i.e. John Keller and the PIN bribery probe.

As set forth in the Declarations of Nickie Mali Lum Davis, William McCorriston and David Minkin, at no point did Mr. Lowell ever disclose in any discernable detail to any of them, that the conflict waiver in which he was requiring Ms. Davis to sign was related to him personally, rather than the waiving being nothing more than a Rule 1.7/1.9 conflict that an attorney may often encounter when representing two clients with competing interests as he portrayed it.

Ms. Davis makes clear in her declaration that at no point did Mr. Lowell

disclose to her that the conflict was not between Ms. Davis and his clients, but was instead a conflict of his own personal interest, and investigations into his own possible wrong doings. Ms. Davis was even more disturbed to learn that an additional layer of conflict, arose when not only was Mr. Lowell being investigated by PIN prosecutors for a bribery for pardon violation during the same time in which PIN prosecutors were seeking Ms. Davis to plea guilty to aiding and abetting FARA violations, but they were also requiring that Ms. Davis cooperate against Elliott Broidy, the same person that was possibly an adverse witness or co-conspirator in their investigation into Ms. Davis' attorney.

As Ms. Davis represents in her declaration, had she known that Mr. Lowell was not only currently under investigation by PIN and NSD prosecutors, but that at least one of those possible investigations also included Mr. Broidy as a possible witness or co-conspirator, she would have immediately terminated Mr. Lowell's services, she would have rescinded the MOPA, she would not have proceeded to enter into a guilty plea on August 31, 2020, and she would have sought competent and unconflicted counsel to advise her on pursuing a defense of her case. Ms. Davis supported this position on the fact that given that Mr. Lowell had first learned of a possible FARA investigation as early as April 2020, and in addition discovered that he was under possible criminal investigation by PIN for bribery, she could not trust that Mr. Lowell's advice was not motivated by his own

10

personal interest, which he placed above hers. Ms. Davis could not have trusted

that Mr. Lowell was not attempting to curry favor with the government by

helping assist them in getting convictions from Ms. Davis and the bigger fish Mr.

Broidy, however, we do know that based upon evidence set forth in previous

court filings, Mr. Broidy's indictment was not approved until Ms. Davis agreed to

enter into a plea.

This concern that Mr. Lowell could have been perceived as acting in his

own self interest by delivering Ms. Davis to the government in order to improve

his standing with the DOJ, was also reflected in an August 26, 2020 email, as

evidenced is Ms. Davis' declaration.

Furthermore, Ms. Davis' conflict counsel William McCorriston also stated

in his declaration, that had Mr. Lowell disclosed these unwaivable conflicts to

him, he would have immediately demanded that Mr. Lowell withdraw from the

case, as Mr. Lowell's motivations for Ms. Davis entering into the plea would

have great been called into question.

On that basis, Mr. Lowell's deception in failing to disclose to Ms. Davis his

personal conflicts related to the same DOJ sections that were prosecuting Ms.

Davis, therefore preventing Ms. Davis the right to knowingly and intelligently

make a sound decision whether or not entering a guilty plea was in her best

interest or the best interest of her counsel constitutes clear justification that

satisfies Ms. Davis' burden as a fair and just reason to permit her to withdraw her guilty plea and rescission of the MOPA.

### B. Mr. Lowell Failed To Advise Ms. Davis of Her Available Option Of Submitting An Appeal to The Office of The Deputy Attorney General Prior to Advising That She Enter A Guilty Plea

As set forth in *McTiernan*, where an attorney fails to advise the defendant about options available to them prior to agreeing to a plea deal, and the basis for a motion or appeal (or lack thereof), the Ninth Circuit has held that such a failure by an attorney constitutes a just and fair reason to withdraw a plea. See generally *McTiernan*, 546 F.3d 1160.

Here, as set forth in the Declarations of Ms. Davis and Mr. McCorriston, Mr. Lowell never once advised Ms. Davis of the viability of submitting an appeal to the Office of the Deputy Attorney General ("ODAG") for argument as to why criminal charges should not be filed against Ms. Davis. As Mr. McCorriston explained, no one in U.S. history has ever been prosecuted for a FARA violation in connection with actions on behalf of non-government agent related foreign private individual, let alone prosecuted or aiding and abetting such a violation. Further, in this instances numerous Americans who were also working on behalf of Lo Tak Jho ("Jo Lho") here in the U.S. were permitted to back register for FARA in October 2018, and face no criminal or civil consequence, while Ms. Davis who engaged in far less activity than they did was being prosecuted for criminal violations.

12

At no point did Mr. Lowell approach Ms. Davis to propose that this be taken to ODAG first prior to her agreeing to enter into a plea agreement with the government. Through discovery in this matter, Mr. McCorriston had learned that Mr. Broidy had in fact submitted such an appeal before ODAG and even gave a presentation on his position on August 15, 2020. As noted in Ms. Davis' briefs and exhibits in support of her Motion to Disqualify Prosecutor, Mr. Keller had not received approval to move forward with the prosecution of Mr. Broidy until Ms. Davis entered into the MOPA. It may have been possible that had both Ms. Davis and Mr. Broidy stated their case before ODAG, Ms. Davis' outcome could have been significantly different.

On that basis, Mr. Lowell's failure to advise Ms. Davis of the viability of submitting an appeal to ODAG prior to accepting a guilty plea establishes that Ms. Davis has met her burden that it would be fair and just reason to permit her to withdraw her guilty plea and rescission of the MOPA.

### C.  Lowell's Representation That Ms. Davis Would Only Receive Probation If She Pled Was A Grossly Inaccurate Prediction

As stated above, the Ninth Circuit has held that it is fair and just to withdraw a defendant's guilty plea instances where defendant's counsel's grossly inaccurate prediction about the sentencing range, "plausibly could have motivated his decision to plead guilty" *Davis*, 428 F.3d at 805–808.

Here, as evidenced by Ms. Davis' declaration, prior to Ms. Davis entering

into her guilty plea, Mr. Lowell informed her that should she proceed with defending her case, there was a possibility that she would be convicted and separated from her daughter. Mr. Lowell then represented to Ms. Davis that should she cooperate with the government and enter a guilty plea the government had agreed that they would not recommend anything greater than probation at sentencing. In considering whether to agree to plead guilty, the idea of being separated from her daughter in a fight for principle versus taking a guilty plea, cooperating with the government and knowing that prosecutors would never recommend jail time, was an important motivating factor in deciding to enter a plea, as the thought of Ms. Davis being taken aware from her daughter was unbearable.

However, despite Mr. Lowell's representations, as stated by Mr. McCorriston's declaration,  it would later be disclosed during a meeting between PIN prosecutors and Ms. Davis' legal team in February 2021, that a recommendation for significant jail time was still on the table for Ms. Davis. In response Mr. Lowell stated that he thought that the government would only agree to a recommendation for probation due to her cooperation in securing Mr. Broidy's plea. Mr. Keller rebutted Mr. Lowell's assertions on the grounds that Mr. Lowell at no point approached him with such a proposal, and secondly PIN's policy would never allow them to agree to such narrow leniency. As such, not only were Mr.

Lowell's mistruths once again exposed, but based upon Mr. Keller's own statements the idea that Ms. Davis would only be subject to a sentencing recommendation of no grater than probation was not within the realm of reality, and thus impossible.

On that basis, Mr. Lowell's woefully erroneous and misleading sentencing prediction meets the burden of a fair and just reason to permitting Ms. Davis to withdraw her plea.

## III.   CONCLUSION

For the reasons set forth above Defendant Nickie Mali Lum Davis respectfully requests that this Court grant her Motion to Withdraw Her Guilty Plea and Memorandum of Plea Agreement on the grounds that she has met her burden of showing that the here is fair and just reasons for permitting her to withdraw her plea.

Los Angeles, California, October 22, 2022.

*/s/ James A. Bryant*

JAMES A. BRYANT
WILLIAM C. McCORRISTON
Attorneys for Defendant NICKIE
MALI LUM DAVIS
