McCORRISTON MILLER MUKAI MacKINNON LLP

WILLIAM C. McCORRISTON       #995-0
DAVID J. MINKIN       #3639-0
Five Waterfront Plaza, 4th Floor
500 Ala Moana Boulevard
Honolulu, Hawai'i 96813
Telephone: 808.529.7300
Facsimile: 808.535.8056
E-Mail:       mccorriston@m4law.com; minkin@m4law.com

JAMES A. BRYANT (*pro hac vice*)
The Cochran Firm California
4929 Wilshire Blvd., Suite 1010
Los Angele, CA 90010
Telephone: 323-435-8205
Facsimile: 310-802-3829
E-mail:       jbryant@cochranfirm.com

Attorneys for Defendant
NICKIE MALI LUM DAVIS

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR. NO. 20-00068 LEK |
| Plaintiff, | DECLARATION OF WILLIAM C. McCORRISTON |
| vs. | |
| NICKIE MALI LUM DAVIS; | |
| Defendant. | |

<u>DECLARATION OF WILLIAM C. McCORRISTON</u>

I, WILLIAM C. McCORRISTON declare and state the following:

1.      On or about July 22-24, 2020, Mr. Lowell, Ms. Davis' mainland criminal law expert counsel, informed me that the Department of Justice was pursuing the FARA case against Ms. Davis and had chosen the US District Court of Hawaii as its forum. Mr. Lowell further informed me that they would need local counsel, and he provided me with a general summary of the case and updated me on his discussions with Mr. Keller and others, as evidenced by an internal memorandum dated July 23, 2020, and discussed strategy for his subsequent communications with the DOJ.

2.      Mr. Lowell had been retained by Ms. Davis to represent her regarding the FARA investigation against her by the Public Integrity Unit (PIN).  Mr. Lowell was the only attorney tasked by Ms. Davis to represent her in dealing with plea negotiations with PIN and John Keller ("Keller"). Contrary to the representations made by Mr. Lowell to this Court in his June 2, 2020 declaration, I did not participate in negotiating the material terms of the FARA plea with PIN/Keller. [Dkt. No. 66-1] Statements or inferences that I directly participated in the plea negotiations with Mr. Keller are false.  <u>Exhibit A</u> hereto contains emails between

Mr. Lowell and Mr. Keller substantiating I was not part of the substantive

negotiations for the FARA plea.[1] See also Exhibit B below.

Lowell, Abbe <ADLowell@winston.com>
Mon 8/10/2020 3:27 AM
To: William C. McCorriston <WMcCorriston@m4law.com>
Cc: nickielumdavis <nickielumdavis@protonmail.com>;Porter, Jennie <JPPorter@winston.com>

📎 1 attachments (597 KB)
Plea Agreement_Lum Davis_ 2020.08.09_ Redline.pdf;

I am still banging away on the DOJ and we are getting closer to what might be a good resolution. I am attaching their latest
drafts which accept a lot of what I requested. I probably can get a few more tweaks on language. The deal-breaker is the
forfeiture and I am trying to come up with more arguments to get it much lower. One thing – I have not only added you to
the documents but, given this will happen in Hawaii, made you lead. Your experience and reputation and relations with
judges there will be important. OK?

Ex B

3.      Although Mr. Lowell had provided me with a general summary of the

case in late July 2020, I was not introduced to the PIN prosecutors until on or about

August 10, 2020—three days before Ms. Davis signed her Plea Agreement—when

I began to participate in matters concerning the mechanics and procedures

regarding the presentation of the plea to the USDC Hawaii and to prepare Pro Hac

Vice pleadings for Mr. Lowell.  My primary focus during this time frame in

August 2020, however, was assisting Ms. Davis with Pretrial Services, bond,

forfeiture, clemency, and other case related matters.

4.      Mr. Bryant's Declaration in Support of the Motion to Disqualify dated

April 25, 2022 ("Bryant Decl."), describes the nature of Mr. Lowell's "conflict

disclosures" to me, David Minkin and Ms. Davis between the period of August 25

---

[1] Exhibit A will be produced upon request of the Court. For page length purposes it was not attached.

and August 26, 2020. (See Bryant Decl. ¶¶27-39 Exs. D-N, Q-S) [Filed Under Seal].

5.      As it relates to Mr. Lowell's disclosures regarding his representation of the Chinese nationals and the FARA letter he received, my understanding was that Mr. Lowell presented the issue as a standard ABA Rule 1.7/1.9 conflict between two clients with potential competing interests.  At no point did Mr. Lowell specifically inform Ms. Davis, Mr. Minkin or me that the waiver he sought was waiver of conflict arising from his own personal involvement or activities, let alone that he faced possible criminal exposure from DOJ investigations. This understanding is memorialized in the initial draft of the language Mr. Lowell provided to me as evidenced in <u>Exhibit C</u> below:

| | |
|---|---|
| **From:** | Lowell, Abbe <ADLowell@winston.com> |
| **Sent:** | Wednesday, August 26, 2020 4:01 AM |
| **To:** | nickielumdavis |
| **Cc:** | William C. McCorriston |
| **Subject:** | ATTORNEY CLIENT PRIVILEGE |

To address my representation of others and the letter I received from the DOJ FARA unit in April (for some of that work), Keller suggested ridiculous language to be added to the plea agreement.  I changed it and this is my version for you to review and we can discuss it and the issues:

"The defendant understands that one of her attorneys, Abbe D. Lowell, has previously represented other individuals with whom Ms. Davis also has had contact or interactions and whose names have or might come up during her cooperation.  Ms. Davis also understands that Mr. Lowell has been asked by the United States Department of Justice for information concerning his representation of certain clients on matters unrelated to Ms. Davis.  Ms. Davis has discussed these issues and the resulting potential for conflicts of interest with Mr. Lowell and with third-party counsel and knowingly and intelligently waives any potential or actual conflict of interest as to Mr. Lowell and affirms that she wishes to proceed with Mr. Lowell as one of her attorneys in this matter."

Ex. C

Neither Mr. Keller nor Mr. Lowell submitted to me a copy of Mr. Keller's initial proposed language that he references in the email above.  Despite Mr. Bryant's request for Mr. Lowell to turn over all client records, it was only because of document production from the government that I was finally able to see it, which will be addressed further below.

6.     During an August 26, 2020 video call that included me, Mr. Minkin, Ms. Davis and Mr. Lowell, Mr. Lowell vaguely described the FARA letter that he had received from the DOJ, but never represented to any of us during the video conference that the FARA letter was an inquiry into whether *he* (Lowell) was required to register under the FARA Act.  Having now had an opportunity to review the heavily redacted version of the 5-page FARA letter signed by now former FARA Unit Chief Brandon Van Grack, with copy to Scott Claffee and Heather Hunt, whom I understand were then *criminal prosecutors*, I learned/understood it to be a serious inquiry (three or more pages of questions and the requirement that Mr. Lowell provide his responses under penalty of perjury) about Mr. Lowell.

7.     Mr. Lowell did not at any point inform me, Mr. Minkin or Ms. Davis that he himself was being investigated by the DOJ's NSD and PIN for criminal, civil or other purposes. Instead, Mr. Lowell represented that his conflicts were related to the fact that because Ms. Davis may have had interactions with two

Chinese Nationals, who he has represented in the past, one of which was convicted for a separate criminal matter, and the other person whom the DOJ had deemed a person of interest, the government was requesting that he and Ms. Davis enter a conflict-of-interest waiver.

8.      Regarding the "taint team," much like the FARA letter, Mr. Lowell vaguely disclosed to us during an August 26, 2020 video call that a taint team was reviewing his emails related to an inquiry focused on one of his clients, *not him*. At no point did Mr. Lowell ever inform us that the government was possibly investigating *him* personally for bribery or violations of the LDA. His strange email to me on August 27, 2020, only mentions "maybe someone's LDA violations".  (See, generally Bryant Decl. ¶46, Ex. Q). At no time do I recall Mr. Lowell mentioning to me that the LDA investigation potentially involved allegations against him.

9.      Furthermore, while there can be no doubt that had Mr. Lowell informed me that he was being investigated by both the NSD and PIN, I would have immediately informed Ms. Davis that she should request that Mr. Lowell withdraw as her counsel. Given the fact that Mr. Lowell was being investigated by the same sections that were seeking to prosecute her, on that basis, even a hint that Mr. Lowell may put his own personal interests before hers could not be ruled out, and in order to avoid the very scenario we are faced with today, Mr. Lowell should

not have proceeded any further, or at a minimum, he was required to disclose such

a serious set of facts to Ms. Davis and myself.

10.    Even more disturbing, Mr. Lowell never once disclosed that his

bribery for pardon investigation involved Elliott Broidy ("Broidy'), the very same

person whom as a condition of any potential plea, Ms. Davis would be required to

cooperate against.

11.    As has been raised to the Court in previous filings, having had an

opportunity to read an unredacted version of Judge Beryl Howell's Memorandum

of Decision regarding the government's *Ex Parte, In Camera* Application Seeking

Authorization to Review Certain Attorney-Client Communications, Mr. Broidy

was not only a person of interest related to this investigation, but he could have

also been an adverse witness to Mr. Lowell.

12.    Had Mr. Lowell disclosed that both he and Elliott Broidy were

involved in a potential investigation by PIN, the very same section seeking to

prosecute Ms. Davis, I would have immediately told Mr. Lowell to withdraw as

counsel, given such an obvious personal conflict.

13.    Based upon Mr. Lowell's representations, it was my understanding

that the conflict raised by Mr. Lowell was related to Rule 1.7/1.9 as reflected in

Exhibit C below, where Mr. Keller stated that the waiver language that Mr. Lowell

asked me to present to him (Keller) "doesn't cover it," I responded by stating that

based upon my understanding that there was a conflict *between Mr. Lowell's clients*, and I didn't understand what wasn't covered.

> **From:** William C. McCorriston <WMcCorriston@m4law.com>
> **Sent:** Thursday, August 27, 2020 6:54 PM
> **To:** Keller, John (CRM) <John.Keller@CRM.USDOJ.GOV>
> **Cc:** Sorenson, Ken (USAHI) <KSorenson@usa.doj.gov>; Lowell, Abbe <ADLowell@winston.com>
> **Subject:** Re: Nickie Mali Lum Davis
>
> I don't understand what isn't covered.
>
> Sent from my iPhone
>
>> On Aug 27, 2020, at 12:37 PM, Keller, John (CRM) <John.Keller2@usdoj.gov> wrote:
>>
>> That language doesn't cover it. Let's file the sealed addendum. There is no reason we can't address the general concept of a conflict waiver in open court and reference the sealed addendum. You just don't want the more specific text detailing the conflict to be public, right? I'll prepare the addendum.
>>
>> On Aug 27, 2020, at 6:19 PM, William C. McCorriston <WMcCorriston@m4law.com> wrote:
>>
>>> If it has to be in a public document, maybe the following, more benign language, works:
>>>
>>> "The defendant understands that the United States Department of Justice has raised with one of her attorneys, Abbe D. Lowell, his previous representation of certain individuals with whom Ms. Davis also has had contact or interactions and whose names have or might come up during her cooperation and of certain other individuals on matters unrelated to Ms. Davis. Ms. Davis has discussed these issues and the resulting potential for conflicts of interest with Mr. Lowell and with third-party counsel and knowingly and intelligently waives any potential or actual conflict of interest as to Mr. Lowell and affirms that she wishes to proceed with Mr. Lowell as one of her attorneys in this matter."

Ex D.

14.     In Paragraph 5 of Mr. Lowell's Declaration, previously submitted to the Court, he represented to the Court that he was never informed, nor did he believe, that he was under criminal investigation. I now have had the opportunity to review the communication between Mr. Lowell and Mr. Keller (which neither Mr. Keller nor Mr. Lowell provided to me) regarding Mr. Keller's proposed waiver language. Neither Mr. Keller nor Mr. Lowell informed me that "he may have

potential civil and/or criminal exposure unrelated to this matter" as evidenced in

Exhibit E below:

| | |
|---|---|
| From: | Keller, John (CRM) |
| To: | Lowell, Abbe David |
| Subject: | Conflict Provision |
| Date: | Tuesday, August 25, 2020 9:27:00 PM |

Abbe,

I've drafted below a paragraph to be added to the plea agreement after the Waiver of Trial Rights
Section to encompass the potential conflicts raised by the FARA letter, the issue to be discussed with
the filter team, and the prior representation of individuals as to whom Ms. Lum Davis may provide
information.  This seems like a cleaner, more controlled way to address the potential conflict issue,
rather than raising it at the plea hearing cold and having the court potentially initiate a full-blown
colloquy with Ms. Davis about her understanding of the potential issues and conflict:

Waiver of any Potential Conflict of Interest

The defendant understands that one of her attorneys, Abbe D. Lowell, has previously represented
other individuals against whom Ms. Lum Davis may potentially cooperate.  Ms. Lum Davis also
understands that Mr. Lowell has been notified by the United States Department of Justice that he
may have potential civil and/or criminal exposure for conduct unrelated to this matter.  Ms. Lum
Davis has discussed these matters and the resulting potential conflicts of interest with Mr. Lowell
and with third-party counsel and knowingly and intelligently waives any potential or actual conflict of
interest as to Mr. Lowell and affirms that she wishes to proceed with Mr. Lowell as her counsel in
this matter.

-John

Ex. E

15.    Nor did Mr. Lowell inform me of the email exchange he had with

Todd Gee of the filter team, as excerpted in Exhibit F below:

| | |
|---|---|
| From: | Gee, Todd (CRM) |
| To: | Lowell, Abbe |
| Cc: | Salgado, Victor (CRM); O"Brien Waymack, Erica (CRM) |
| Subject: | Re: Call |
| Date: | Wednesday, August 26, 2020 10:21:23 PM |

Abbe,

On the first question, page 32 of the PDF that we sent over references "future" contributions.
Additionally, the reference to "Plan B" may be a reference to a contribution in exchange for pardon
scheme (see pages 24, 28, and 29 of the PDF). On the second question, we're aware of Sen.
Specter's proposed amendment in 2001, but we disagree that the plain language of the LDA may not
cover lobbying activities seeking pardons/clemency. As we discussed, however, all of these matters
are with respect to potential exposure to allegations of LDA and bribery, it is not us saying those
crimes were necessarily committed. Given the potential exposure, however, we wanted to bring the
matter to your attention so you could discuss it with your client. Please let us know if you need
anything else to facilitate that.

Ex. F

9

16.    These communications with Mr. Keller and the "filter team" were all conducted prior to our August 26, 2020 videoconference, and none of these communications were substantially disclosed to me, Mr. Minkin, or Ms. Davis.

17.    Having reviewed and compared the proposed conflict waiver language that Mr. Keller presented to Mr. Lowell and having reviewed what Mr. Lowell presented to me and Ms. Davis, I conclude that Mr. Lowell intentionally withheld the original language proposed by Mr. Keller because he did not want me, Ms. Davis or Mr. Minkin to know about the potential investigations into him by the NSA and PIN. And most certainly he did not inform  any of us, nor provide  any of us, with any communications between himself and the PIN filter team, where Mr. Gee informs Mr. Lowell that there may be criminal exposure.

18.    While I was not privy to the conversations between Mr. Lowell and PIN prosecutors prior to the point in which plea discussions had begun,  I do know that based upon the information available to me, Mr. Lowell did not request an internal appeal to the Office of the Deputy Attorney General ("ODAG") to further discuss or refute the claims alleged by PIN prosecutors prior to negotiating a plea deal. We do know that Mr. Broidy had submitted an internal appeal to ODAG and even gave a presentation to the Assistant Attorney Generals regarding matters related to this action on August 14, 2020, based upon email communications between Mr. Keller and Mr. Lowell between the period of August 13, 2020 and

August 15, 2020, where it had appeared Mr. Lowell had violated the common-interest privilege owed to Mr. Broidy.

19.    As Mr. Bryant pointed out in his April 25, 2022 declaration, prior to Ms. Davis and Mr. Broidy no one had ever been prosecuted for failing to register under FARA when representing the interest of a foreign non-government individual, let alone the prosecution for someone aiding and abetting such a charge. Mr. Bryant and I would further learn that there were numerous contractors and attorneys who were also acting directly with US officials on behalf of Low Tak Jho's ("Jho Lo") interests, yet they were all allowed to retroactively register for FARA in October of 2018.[2] (See Bryant Decl. Ex. AA).

20.    Given the fact that no one in Ms. Davis' position had ever been prosecuted for such a claim, given the fact that numerous individuals were permitted to back-register in October 2018, having seemingly engaged in similar conduct on behalf of Jho Lo, and given the fact that Mr. Broidy had already submitted an appeal to ODAG, Mr. Lowell also submitting an appeal on Ms. Davis' behalf would have been a prudent action and a viable option for a possible resolution that could have avoided an indictment and guilty plea. However, no

---

[2] Based upon my review of Ms. Davis' file provided by Mr. Lowell, there is no indication that Mr. Lowell had ever conducted any research to determine whether other Americans who had been acting on Jho Lo's behalf, for compensation, were permitted to back-register at that time.

such option was ever discussed with me or Ms. Davis prior to Mr. Lowell presenting Ms. Davis with the Government's plea proposal.

21.     Finally, the issue of what Mr. Lowell represented to Ms. Davis regarding sentencing prior to her entering her guilty plea has also become another significant issue that must be addressed.

22.     Sometime in or around early February 2021, and following Mr. Broidy's presidential pardon,  Mr. Lowell, Mr. Bryant and I participated on a conference call to discuss Ms. Davis' case with PIN prosecutors. During that discussion, Mr. Keller informed us that while the government was very disappointed that Mr. Broidy received a pardon,  a recommendation for  jail time was still a strong possibility should Ms. Davis choose not to comply with her obligations set forth in the MOPA.

23.     Mr. Lowell then responded that it was his understanding that because her cooperation led to Mr. Broidy's guilty plea, the government would only be recommending probation.

24.     Mr. Keller then rebutted Mr. Lowell stating that he and Mr. Lowell never had any such discussions about the DOJ only recommending probation for Ms. Davis' cooperation, that if that is what he was looking for he should have attempted to negotiate that, however, any such request would have been denied as it was not PIN's policy to agree to such terms.

25.     I was extremely surprised to hear this, as Mr. Lowell had informed me on several occasions that he and Mr. Keller had  discussed a probation recommendation for Ms. Davis due to her cooperation in assisting them with Mr. Broidy. I was also surprised to hear Mr. Keller inform Mr. Lowell that this had never been raised to him before that day.

26.     Following that call with Mr. Keller and PIN prosecutors, it was clear to me why Ms. Davis had  unfounded expectations in her sentencing.

I, William C. McCorriston, do declare under penalty of law that the foregoing is true and correct.

DATED:  Honolulu, Hawaiʻi, October 22, 2022.

*/s/ William C. McCorriston*
WILLIAM C. McCORRISTON