CLARE E. CONNORS #7936
United States Attorney
District of Hawaii

KENNETH M. SORENSON
Criminal Chief
Room 6-100, PJKK Federal Bldg.
300 Ala Moana Boulevard
Honolulu, Hawaii     96850
Telephone: (808) 541-2850
Facsimile: (808) 541-2958
Email:ken.sorenson@usdoj.gov

COREY R. AMUNDSON
Chief, Public Integrity Section
United States Department of Justice

JOHN D. KELLER
Principal Deputy Chief

SEAN F. MULRYNE
Director of Enforcement & Litigation
NICOLE R. LOCKHART
Trial Attorney
Public Integrity Section

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA | ) CR. NO. 20-00068 LEK |
| | ) |
| | ) RESPONSE IN OPPOSITION TO |
| Plaintiff, | ) MOTION TO WITHDRAW |
| | ) GUILTY PLEA; CERTIFICATE OF |
| vs. | ) SERVICE |
| | ) |
| NICKIE MALI LUM DAVIS | ) JUDGE: Leslie E. Kobayashi |
| | ) |
| | ) |
| Defendant. | ) |

<u>UNITED STATES' RESPONSE IN OPPOSITION TO MOTION TO
WITHDRAW DEFENDANT'S GUILTY PLEA</u>

For the second time, the defendant has filed a motion on the eve of her

sentencing based on the false premise that her prior counsel, Abbe Lowell, was under

criminal investigation when he negotiated her plea agreement.  The government

never initiated a criminal investigation of Lowell and Lowell was unaware of the

filter team's review of his conduct during plea negotiations.   There was no conflict of interest and there is no basis for withdrawal of the defendant's plea. Additionally, any suggestion by Lowell that probation was a possible, or even likely, sentence was not a grossly inaccurate mischaracterization.   No specific sentencing guidelines apply to the FARA offense to which the defendant pleaded, and the defendant entered into a cooperation agreement to obtain a reduced sentence.

The defendant's recent disavowal of her offense conduct and effective breach of her cooperation agreement resulted in a government sentencing recommendation reflecting limited credit for cooperation.   The defendant's false retractions and diminished cooperation credit do not entitle her to withdraw her plea.   She pleaded guilty knowingly and voluntarily with the benefit of effective representation, admitted the facts of her offense under oath, and later testified to those same facts before a federal grand jury.   Granting the defendant's motion would provide a basis for all cooperators dissatisfied with an anticipated government sentencing recommendation to cease cooperating, complain that the resulting reduction in cooperation credit was inconsistent with their counsel's initial predictions, and withdraw their guilty pleas.   The defendant's motion should be denied.

## I.      Factual Background[1]

### A. Facts Related to the Alleged Conflict of Interest

In July 2020, during plea negotiations between the government and Lowell, a government filter team discovered communications between Lowell, Elliott Broidy, and a third party concerning their efforts in 2017 to obtain a presidential pardon for a defendant serving a custodial sentence.   The third party was deceased at the time of the discovery of the communications.   Due, in part, to the third party's references to historical and potential campaign contributions, the filter team assessed that one or more of the involved individuals may have been engaged in illegal lobbying or an illegal conspiracy to offer campaign contributions in exchange for a pardon.

During plea negotiations in this case, these communications and the underlying facts were not shared with the prosecution team or Lowell.   Instead, because of Lowell's status as an attorney, on August 10, 2020, a government filter team filed a crime-fraud motion seeking authorization to provide the communications to the prosecution team so that it could address any potential conflicts with Lowell.

---

[1]   The government incorporates by reference the factual recitations and corresponding attachments in its prior litigation on this topic.   *See* Resp. to Mot. to Disqualify, ECF No. 55 at 3-23; Supplemental Response to Mot. to Disqualify, ECF No. 66 at 2-4.

While the filter team awaited a ruling, the prosecution team's plea negotiations with Lowell culminated in the filing of the defendant's criminal Information on August 17, 2020.[2]   On August 26, 2020, because no ruling had been issued on the crime-fraud motion and the defendant's plea was set for August 31, 2020, the filter team advised Lowell of the crime-fraud motion and his potential criminal exposure.   Lowell then discussed the filter team issue with other defense counsel, William McCorriston and David Minkin, who in turn advised the defendant of the potential conflict of interest.   To memorialize the potential conflict and waiver, the parties drafted and signed a sealed conflict waiver as an addendum to the plea agreement.[3]   The defendant pleaded guilty on August 31, 2020.

B. Facts Related to Sentencing Discussions

In the defendant's Memorandum of Plea Agreement—executed by the defendant, Lowell, McCorriston, and the government, on August 28, 2020—the defendant explicitly acknowledged that she could be sentenced to prison for her plea to aiding and abetting a violation of the Foreign Agents Registration Act (FARA) in this case.   Specifically, the defendant acknowledged "the maximum penalties for the offense to which she is pleading guilty include[ . . . ] [a] term of imprisonment

---

[2] See Information, ECF No. 1.
[3] See Addendum to Plea Agreement, ECF No. 16.

of up to 5 years and a fine of up to $10,000, plus a term of supervised release of not more than 3 years."[4]   She further acknowledged the Court's role in deciding and imposing an appropriate sentence.[5]   The defendant affirmed that the government made no promises, agreements, or conditions other than those in the plea agreement or any written proffer agreements.[6]   During her plea hearing on August 31, 2020, the defendant acknowledged that the possible penalties she could receive included up to five years of imprisonment.[7]   The defendant further attested that the factual basis was "true in every respect," that the plea agreement comprised her entire understanding with the government, and that no one provided her with any other promises or assurances or pressured her to plead guilty.[8]

In addressing her potential sentence at the hearing, the Court explained its authority to impose a sentence potentially more or less severe than what the defendant might expect or have been advised by her attorneys; that the factual basis of the plea would inform the ultimate sentence imposed; and that any dissatisfaction with her sentence would not entitle the defendant to withdraw her plea:

---

[4] Def. Memo of Plea Agreement, ECF No. 15 ¶ 7.a.
[5] *Id.* ¶¶ 11, 21-22.
[6] *Id.* ¶ 29.
[7] Trans. of Plea Hearing, ECF No. 21 at 14-15.
[8] *Id.* at 12-13, 21.

THE COURT:   Do you understand that any sentence I impose may be different from any estimates you and your lawyers have discussed?

THE DEFENDANT:   Yes, Your Honor.

. . . .

THE COURT:   I'm also going to make decisions with regard to an appropriate sentence based on the admissions of fact that you make at today's hearing.   So while you don't have to admit to anything you don't agree with the government on, if you do admit to certain facts, I can rely on those admissions and as a result your sentence might be increased.   Do you understand this?

THE DEFENDANT:   Yes.

THE COURT:   If your sentence is more severe than you expected, you're still going to be bound by your plea.   Even if you don't like the sentence I imposed, you won't be able to take it back at that time.   So the time to make that decision whether to plead guilty or not is now.   You understand this?

THE DEFENDANT:   Yes, Your Honor.[9]

## II.   Legal Analysis

A defendant may withdraw a guilty plea after a district court accepts the plea but before sentencing if "the defendant can show a fair and just reason for requesting the withdrawal."   Fed. R. Crim. P. 11(d)(2)(B); *United States v. Ruiz*, 257 F.3d 1030, 1032 (9th Cir. 2001) (en banc) (holding that the fair and just reason standard applies to pre-sentencing motions to withdraw guilty pleas).   Once a district court

---

[9] *Id.* at 17-18.

sentences a defendant, however, a "plea may be set aside only on direct appeal or collateral attack."   Fed. R. Crim. P. 11(e).

"[T]he decision to allow withdrawal of a plea is solely within the discretion of the district court."   *United States v. Nostratis*, 321 F.3d 1206, 1208 (9th Cir. 2003).   "The defendant has the burden to show a fair and just reason for withdrawal of a plea," *id.*, and such a withdrawal is not permitted "simply on a lark," *United States v. Hyde*, 520 U.S. 670, 676 (1997).   The standard, however, is applied liberally.   *See United States v. Nagra*, 147 F.3d 875, 880 (9th Cir. 1998).   Fair and just reasons for withdrawal include inadequate plea colloquies under Federal Rule of Criminal Procedure 11, newly discovered evidence, intervening circumstances, or any other reason for withdrawing the plea that did not exist when the defendant entered her plea.   *See United States v. Turner*, 898 F.2d 705, 713 (9th Cir. 1990).

A.   The Defendant Has Failed to Show any Actual Conflict of Interest that Adversely Affected Her Representation.

The defendant reasserts the same false claim of conflict of interest raised six months ago, but Lowell did not labor under any actual conflict of interest and no conflict adversely impacted the defendant's representation.   To establish a violation of Sixth Amendment rights based on an attorney's conflict of interest, the defendant "must demonstrate that an actual conflict of interest adversely affected his lawyer's performance."   *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980); *Mickens v. Taylor*,

7

535 U.S. 162, 172 n.5 (2002) ("An 'actual conflict,' for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance.").   A conflict arises when "a defendant shows that his counsel *actively represented* conflicting interests."   *Mickens*, 535 U.S. at 175 (citation and internal quotation marks omitted) (emphasis in original).   A "possibility of conflict is insufficient to impugn a criminal conviction." *Cuyler*, 446 U.S. at 350.   Where a motion to withdraw a guilty plea is premised on a conflict of interest, this same standard applies, requiring the defendant to demonstrate an actual conflict of interest.   *See United States v. Bailey*, 49 F. App'x 755, 756 (9th Cir. Nov. 4, 2002) (applying actual conflict of interest standard in addressing motion to withdraw plea); *see also United States v. Berkeley*, 567 F.3d 703, 708 (D.C. Cir. 2009) (same); *United States v. Jackson*, 318 F. Supp. 2d 773, 776 (W.D. Ark. 2003) (same).

Courts have found an actual conflict of interest in some instances where a defense attorney is investigated or prosecuted by the same office investigating or prosecuting the attorney's client.   *See, e.g.*, *United States v. McNeary*, No. 12-4010-01, 2013 WL 2237844, at **5-6 (W.D. Mo. May 21, 2013) (collecting cases).   But this presupposes both that the defense attorney is, in fact, being investigated or prosecuted by the same office and that the attorney is aware of the investigation. *See Berkeley*, 567 F.3d at 709 ("[B]ecause an unknown conflict could not have

'adversely affected [the defendant's lawyer's] performance,' the *Cuyler* standard cannot be met." (quoting *Cuyler*, 446 U.S. at 348)).

Lowell was not under investigation by the Public Integrity Section and did not know about the bribery-for-pardon allegations, or the filter team's awareness of his relevant communications, until August 26, 2020—more than a week after the plea documents were substantively finalized and the Information was filed.[10]   Lowell could not have sought to curry favor with the government in connection with the later-revealed bribery allegations when Lowell was not informed of the filter team's knowledge of those allegations until after the plea agreement had been reached.   *See United States v. Purpera*, 844 F. App'x 614, 620, 623-24 (4th Cir. Feb. 5, 2021) (rejecting defendant's arguments that defense counsel feared "angering" federal investigators who "caused him to labor 'under a conflict that provided him with a personal incentive to pull his punches'" because "the facts of this case simply do not bring these concerns to fruition").   As the defendant noted in her own prior pleadings on this topic:  "If, in fact, Mr. Lowell was unaware until speaking on August 25, 2020 with Mr. Keller and then the filter team, then there would have been no conflict of the probe because Mr. Lowell's conduct could not be altered by

---

[10]  *See* ECF No. 66 at 12 ¶ 12.

9

circumstances about which he was completely unaware."[11]   The defendant has not, and cannot, present evidence rebutting this timeline of events that wholly undermines her claims of conflicted counsel.

Similarly, a civil FARA inquiry did not present an actual conflict of interest for Lowell because it was a civil inquiry handled by an entirely separate office.   *See, e.g.*, *United States v. Baker*, 256 F.3d 855, 861 (9th Cir. 2001) ("Other circuits that have found an actual conflict under analogous circumstances have also emphasized the fact that the same office was prosecuting or investigating both the attorney and client."); *id.* at 860-61 (finding no basis to believe that actions of counsel were "intended to curry favor with the prosecutors in another District" when counsel was under investigation by the Southern District of New York for conduct unrelated to his client's charged conduct in the Central District of California (quoting *United States v. Aiello*, 900 F.2d 528, 532 (2d Cir. 1990)).   The Ninth Circuit has emphasized the significance of the same office investigating or prosecuting an attorney and client in finding an actual conflict.   *See id.* at 861-62.   The defendant argues that her situation falls into this category of cases,[12] but it does not.   Lowell was not under criminal investigation by the same office that was prosecuting the

---

[11]  Resp. in Opp. to Mot. for Finding of Waiver, ECF No. 58 at 22.

[12]  Mot. to Withdraw Guilty Plea, ECF No. 117 at 8-9 (citing *United States v. McLain*, 823 F.2d 1457, 1463 (11th Cir. 1987)).

defendant "concurrent with [her] criminal investigation,"[13] because the FARA inquiry was civil and was handled by a separate office.

Even had an actual conflict of interest existed, throughout plea negotiations and during the plea hearing itself, the defendant had the benefit of third-party, conflict-free counsel in McCorriston, who continues to represent her to this day.[14] During the plea colloquy, the defendant made clear that she understood the ramifications of the guilty plea and was voluntarily choosing to plead guilty.[15] McCorriston, who was well versed in the facts underlying the defendant's guilt,[16] told this Court that he was in full agreement with the facts supporting her guilty plea and the defendant's decision to plead guilty.[17]   Even if the Court were to find that actual conflicts existed for Lowell, the defendant had the benefit of conflict-free representation.  *See United States v. Wright*, 745 F.3d 1231, 1233-34 (D.C. Cir. 2014) (rejecting defendant's ineffective assistance of counsel claim where, in part, defense counsel enlisted conflict-free counsel to consult with defendant, and thus "[c]onflict-free counsel's prominent role in the plea discussions and in [defendant's] decision to enter a plea belie[d] [defendant's] claim that he was coerced by [defense

---

[13] *Id.* at 9.
[14] ECF No. 66 at 11 ¶¶ 1-3; Second Declaration of Abbe D. Lowell, Ex. 1 ¶ 16.
[15] *See* ECF No. 21.
[16] Ex. 1.
[17] *See, e.g.*, *id.* at 9-11, 22.

counsel] into entering the plea").   There was no actual conflict and no adverse effect on the defendant's representation during plea negotiations or the plea hearing itself. Her motion to withdraw her guilty plea on this basis should be denied.[18]

B.   <u>Any Discussion of a Potential Probationary Recommendation was Not a Gross Mischaracterization of the Likely Outcome and Does Not Constitute Deficient Performance.</u>

The government never promised, guaranteed, or otherwise represented to the defendant or her counsel that the government would recommend a probationary sentence for the defendant.   Lowell has sworn that he never represented to the defendant that the government made any such representation.[19]   The defendant nonetheless claims that she was deceived and prejudiced by Lowell's alleged sentencing prediction that the government would recommend a probationary, non-

---

[18] The Court could also deny the defendant's motion based on her signed conflict waiver.   *See* ECF No. 16.   But because there was no actual conflict, the Court need not resolve the factual dispute regarding whether the waiver was fully informed.

[19] Ex. 1 ¶ 14 ("Ms. Davis' claim that I told her that 'the DOJ would not recommend anything more than probation' is false. . . . I negotiated to create a potential plea in which no sentencing guidelines existed in an effort to maximize the possibility of probation, something the DOJ never promised to me and I would never promise to any client. . . . While I tried hard to get the DOJ to accept a civil outcome or a misdemeanor or a plea which included an agreed-upon probation sentence, Mr Keller made it clear that was not an outcome the DOJ would accept, and he never said (and therefore I never conveyed) that probation was the agreed-upon sentence.").

custodial sentence.[20]   Even if such representations were made, which Lowell vehemently denies, the defendant still is not entitled to withdraw her plea.   Any discussion about a possible government recommendation of probation was not a gross mischaracterization of the potential outcome in this case, especially where the underlying offense has no applicable sentencing guideline range and the defendant entered into a cooperation agreement.   The defendant, having chosen to effectively breach her cooperation agreement, cannot now claim that reduced cooperation credit at sentencing should nullify her guilty plea; the defendant caused the very disparity of which she now complains.

Absent a specific sentencing guideline and given the defendant's cooperation, a suggestion that probation could constitute a potential outcome does not constitute the kind of egregious assertion or grossly inaccurate advice that otherwise might justify withdrawal of a plea.   *See, e.g.*, *United States v. McTiernan*, 546 F.3d 1160, 1168-69 (9th Cir. 2008) (remanding based on the failure of an attorney to advise a defendant of the "realistic possibility" of prevailing on a motion to suppress critical evidence); *United States v. Davis*, 428 F.3d 802, 805-808 (9th Cir. 2005) (remanding where the attorney "rendered deficient performance by advising defendant that his likely sentence" included the possibility of probation where the defendant's

---

[20] ECF No. 117 at 13-15.

guideline range exceeded eight years and there was no cooperation agreement).[21] The defendant should not be permitted to withdraw her plea for failing to receive a probationary recommendation from the government where the defendant herself undermined the likelihood of such a recommendation by recanting her factual basis and prior testimony, ending her cooperation, and minimizing her criminal conduct.[22]

The defendant's claim that she should be able to withdraw her plea based on Lowell's inaccurate sentencing prediction is also undercut by her own attestations and acknowledgements set forth in the defendant's plea agreement and by the Court at her plea hearing. *See United States v. Rubalcaba*, 811 F.2d 491, 494 (9th Cir.

---

[21] The defendant cites both cases in her motion. *See* ECF No. 117 at 4-5, 12. The underlying district court opinion denying the motion to withdraw in *Davis* sets forth the relevant facts regarding the applicable guideline range and lack of a cooperation provision. *See United States v. Clifford Davis*, No. 2:00-CR 00-01132, (C.D. Cal. 2003), Order Denying Def. Mot. to Withdraw Guilty Plea, ECF No. 87 at 6.

[22] The defendant also seeks to set aside her plea because, according to her, Lowell did not advise the defendant about possibly appealing to the Department's Office of the Deputy Attorney General to resolve this matter prior to her guilty plea. *See* ECF No. 117 at 12-13. Lowell directly disputes the defendant's representations regarding this issue, stating in his declaration that he and the defendant addressed this option and he advised her as to its likely ineffectiveness. *See* Ex. 1 ¶ 15. Regardless, the defendant points to no cases or legal authority suggesting that a defense attorney's failure to advise a client regarding pursuit of an audience with a high-level government official to address the merits of a criminal case is a basis to withdraw a plea. A criminal defendant has no right or guarantee to such a discretionary meeting. The defendant should not be permitted to withdraw her plea based on an *ad hoc* justification with no legal support or precedent.

14

1987) (affirming denial of motion to withdraw plea where defense counsel allegedly failed to explain plea agreement because, in part, court's plea colloquy addressed alleged misinformation about consecutive sentences).

    C. <u>No Evidentiary Hearing is Necessary to Resolve this Motion.</u>

      In response to the Court's Order Setting a Briefing Scheduling for Defendant's Motion to Withdraw,[23] the defendant has requested an evidentiary hearing to address alleged factual disputes associated with her present motion.[24]   No evidentiary hearing is necessary because the Court can resolve this motion accepting the defendant's version of the material facts.   Even if Lowell did not raise his criminal or civil exposure with the defendant—an assertion undermined by the fact that the parties executed an otherwise unnecessary conflict waiver—it is uncontroverted that: (1) the government never opened a criminal investigation into Lowell; (2) Lowell did not know that the filter team was aware of the bribery-for-pardon allegations until after the principal plea negotiations; (3) a separate DOJ component handled the civil FARA inquiry into Lowell; and (4) the defendant remained represented by third-party, conflict-free counsel, McCorriston.   As a matter of law, even accepting the defendant's factual assertions, the Court may

---

[23] ECF No. 121.
[24] Def. Request for Evidentiary Hearing Re. Motion to Withdraw Plea, ECF No. 122.

conclude that the defendant has not established an actual conflict of interest or that her representation was adversely affected.  Similarly, even if Lowell predicted a probationary sentence and failed to raise a possible appeal to the Deputy Attorney General, the defendant has not established the deficient performance necessary to constitute a fair and just reason justifying withdrawal of her plea.

If the Court were to grant the defendant's request for an evidentiary hearing, the government would likely call Lowell as a witness, with an anticipated length of testimony of approximately one hour to address whether he advised the defendant of his civil and criminal exposure prior to her plea and whether he promised her a sentence of probation.  The government would move to exclude the testimony of several of the defendant's proposed witnesses, including government prosecutors, attorneys, and agents who had no role or involvement in advising the defendant and whose testimony is not relevant to her current claims.

## III.   Conclusion

The defendant committed a serious crime.  She received over $10 million from a foreign fugitive in exchange for waging a back-channel influence campaign on the President of the United States and his administration to drop a meritorious criminal investigation into the largest kleptocracy scheme in history and to extrajudicially remove a vocal critic of the Chinese government so that he could be

16

prosecuted in China. She has admitted these facts in detail under oath, twice. She received the benefit of vigorous negotiation by her prior counsel resulting in her guilty plea to a single count of aiding and abetting a FARA violation and limited forfeiture. Lowell was not under criminal investigation and had no reason to limit his advocacy on her behalf. To the extent that he discussed probation as a possible outcome with the defendant, it was due to the favorable plea agreement and cooperation agreement that the defendant obtained. There was no conflict of interest or deficient performance by Lowell. The defendant committed a crime, knowingly and voluntarily pleaded guilty with the benefit of effective representation, and then decided to try to get out of her plea by any means necessary when she did not receive a presidential pardon. Her latest attempt to avoid responsibility for her conduct should be rejected. Her motion should be denied without an evidentiary hearing, and the Court should proceed to sentencing.

DATED: November 7, 2022.

Respectfully submitted,

COREY R. AMUNDSON
Chief, Public Integrity Section
United States Department of Justice

17

_/s/ John D. Keller_                          _/s/ Kenneth M. Sorenson_
By: JOHN D. KELLER                    KENNETH M. SORENSON
Principal Deputy Chief                   Chief, Criminal Division
Sean F. Mulryne
Director of Enforcement & Litigation, Election Crimes
Nicole R. Lockhart
Trial Attorney

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on the dates and by the methods of service noted below, a true and correct copy of the foregoing was served on the following at their last known addresses:

<u>Served Electronically through CM/ECF</u>:

James A. Bryant, Esq.
William McCorriston, Esq.

Attorneys for Interested Party
NICKIE MALI LUM DAVIS

DATED:   <u>November 7, 2022</u>

*/s/ John D. Keller*
John D. Keller

19