# EXHIBIT 2

| | |
|---|---|
| **From:** | Roualet, Jennie |
| **To:** | "nickielumdavis@protonmail.com" |
| **Cc:** | Lowell, Abbe |
| **Subject:** | File Memo from August 7, 2020 Call with DOJ re Revised Plea |
| **Date:** | Friday, August 7, 2020 6:53:37 PM |
| **Attachments:** | August 7, 2020 - Memo of Call with DOJ_(14951972)_(1).DOCX |

Attorney Client Privilege

Attorney Work Product

Hi Nickie,

Please see attached a memo from today's call with DOJ.

Thanks,

Jennie

### Jennie Porter

**Associate Attorney**

Winston & Strawn LLP
1901 L Street, N.W.
Washington, D.C. 20036-3506

D: +1 202-282-5407

F: +1 202-282-5100

VCard | Email | winston.com





1901 L Street, NW
Washington, DC 20036
T +1 202 282 5000
F +1 202 282 5100

Internal Memorandum

**ATTORNEY-CLIENT PRIVILEGED
ATTORNEY WORK PRODUCT**

**To:**      Nickie Lum Davis File

**From:**    Jennie Porter

**Date:**    August 7, 2020

**Re:**      Call with DOJ re Revised Plea

     On August 7, 2020, Abbe David Lowell ("ADL"), and Jennie Porter of spoke with John Keller and Sean Mulryne of DOJ's Public Integrity Section about Nickie Lum Davis' (NLD) revised plea.

     The following memo consists of my thoughts, mental impressions, and opinions regarding the discussion and is intended to be protected by the attorney-client privilege and attorney work product privilege.  This memo is not intended to be a verbatim record of the conversation and has not been reviewed by Davis.

     **I.     Notes from the Call**

     ADL started the call by saying we are still on track for a plea to a federal offense - one count FARA. The ability for us to do that depends on us finding common ground on a few issues. When we get into the document, I'll address willful language. We also want to differentiate NLD's role on Low vs. Guo. And I'm going to continue to insist that you consider a misdemeanor, which reflects where we stand on money. NLD predilection to give up more money depends on misdemeanor vs. felony. She's willing to plea to the felony if we can arrange it so that is the Colfax money after taxes and we agree to a payment schedule. Misdemeanor she would be willing to forfeit more. On the facts, the screenshots sent over are consistent with what we've said. Pras sends screenshots of things that are being sent to him by Low. There is one from NLD's phone, but it is benign. What the screenshots do show is Steve Wynn saying I've done what I can and it is very clear that he has financial interests in the area. We've gone through the phone log and we can trace it to plea. It is clear – the line of communication is Pas to NLD, then NLD to Broidy. In instances where there is the cellphone associated with Low, we believe to be Pras. During those time periods, you'll see there is no contact with Pras. Also, there are more facts that NLD wants to talk to you about which isn't captured in this recitation. She is sure that in addition to Broidy lobbying Preibus and Gates, he talked to Bannon – this is corroborated by Bannon's later alignment (financial and otherwise) with Guo. We're going to continue candor in which we've talking – I'm being lobbied by all the other principals' counsel.

Keller said the one place to put a placeholder in is on the money. If you're talking about after taxes, which is interesting to me. Did she pay standard income tax?

ADL said after state, local and federal taxes, she was in a higher than 40% bracket. We can substantiate. Also, we've done as much research as we can do. We keep looking at every FARA plea and conviction and putting aside FARA convictions have some other element. You have a lot of discretion here in terms of forfeiture.

Keller agreed they had discretion and there is room to maneuver.

ADL said we've seen cases where some people who made money didn't have to forfeit a dime. Others paid a little bit. We just have to find a basis to come to a number.

Keller said yes, there is discretion here. One approach would be to claw back every dollar she was paid, another would be some middle ground acknowledging there is some argument and litigation risk that not every dollar was related to this endeavor. If we're talking about the amount she received after taxes for Colfax - that is around $2 million and she probably got 4-5 million after taxes on the $7.5 million. That is 6-7 million she received after taxes, so then it is from there – how much should she get to keep.

ADL said if the money part is going to drive the deal, then let it drive it. NLD will plead guilty to a felony at a range in 7 figures between 1-2 million. There comes a point where she is willing to roll the dice to continue to go forward and pay attorneys. If she pleads to felony, has different ramification for her to go forward than if she you want her to plea to a felony, then we need to be in the ballpark of what is reasonable. If you say, we've drawn the line and if she can't forfeit $3 million then no sense to talk about tweaks to the plea.

Keller said okay, the line for us – based on financials we've looked at – she bought that house in Hawaii for between 3 and 4 million dollars directly from proceeds of Lucky Mark transfers (both Colfax/Pras money). The line is if she wants to do this in a money judgment or payment plan to the fair market value of the home or she can just forfeit the residence.

ADL said you're saying the deal you want – is $3+ million? I'll find out what house was worth. On a different point, you asked us to substantiate her activity in the entertainment world and we have. She's had meetings, calls, and deals that she thought was going to be part of entertainment plan. If she used some money from this to buy this house, when she thought she had a $150 million deal. We should continue a conversation, but I have had deals that fell through for less of a difference than 1.5 to 3. I still don't understand why for your law enforcement interest especially if money is such an important part – you won't consider misdemeanor statement that talks about money. You have never responded saying it doesn't capture her conduct. If you're saying you want a higher amount of money - you understand the lever is felony vs. misdemeanor. If what you're saying is you need her to A) plead to a felony, B) forfeit $ 3 million and, C) agree to payment schedule. I will take that back to her and give her my opinion.

Keller said to your legal point, that misdemeanor statue seems to apply to someone who is a conduit of money involved in a transaction in furtherance of unregistered foreign activity. Our interpretation of the facts (and I think a fair interpretation) do not portray NLD as that in this conduct. I just think it is a far cry from that given the communications I have.

ADL said I can't fault you for your view of that statue. But you can't say that statue that has as its operative language that a person who has an arrangement by which she is going to. We understand you want a felony and forfeiture north of $3 million. I'm saying she'd be okay with a felony and a forfeiture in the 1.3-1.6 range. (Joking) I should see what it is worth to the other defendants for us not to plead. Let's move the ball forward anyway. As far as the precedent, if we're wrong – if we haven't found the right cases, if people who get X don't often pay X, then show me. Obviously not a ton of FARA cases. When we look for precedents I found trials vs. pleas, other counts, law firms. I still want one more chance to go through the document as to some of the legal issues. I haven't yet gone through each non-fact paragraphs, normal plea parts – small tweaks there. She knows she's giving up trial, privilege there is no exception for attorney-client, government has the right to file 5K1, but we have to go back to guidelines don't apply here. And I've done deals that the government should not unreasonably withhold a recommendation. Small tweaks in non-factual part of this – will get to those over the weekend.

Keller is fine that is not likely to be dispositive, but you also mentioned timing and wanted to come to that. Our goal would be that if we are able to get this done. Our goal would be to submit documents for final approval as early as Monday and that we would be sending you the final document at the same time for you to review with NLD and to extent small changes from the approval process we'd pass those along. We'd file an information in D. of Hawaii by the end of next week (Thurs./Fri.).

ADL if you were more reasonable on money we could move it along. We've talked more transparently than in the past, what is your plan? I'm getting full court press from the other principals. If we work out our deal with week and want that known to these people, then what is their deadline? When go for an indictment?

Keller: Our plan would be to indict in late August/early September.

ALD: Still indict on something like conspiracy, FARA, money launder?

Keller: Yes, plus some additional counts for some individual defendants.

ADL: Message is clear to me that they don't think you have a witness and you can't bring a case without one.

Keller: Calculus that you have to make.

ADL said it is my client's intention to get you and I to come to an agreement where she would plead to federal offense as long as we can work out the other arrangements. She thinks there are many facts you don't have. Let's see if we can make it happen. [Then ADL walked through his suggested changes to the plea.]

Keller agreed that they can cut the word unregistered from "unregistered agents." ADL suggested language for a new paragraph about willfulness. Abbe asked him to clarify NLD's role in some paragraphs – i.e. she didn't assist in drafting a retainer agreement, she did something because Person A asked or told her to do it, etc.

Keller said he was fine with these edits, but they seem to portray her as having this administrative role. In terms of her credibility as a cooperator. All of these changes add up.

ADL said he is making these edits for the purposes of portraying her in a way that the press and others will get – if these paragraphs were important in grand jury or trial, we're not going to quarrel on it. We're not at cross purposes, if you think I've asked for one too many, you'll tell me. We're not disagreeing with you, if/when she becomes important to grand jury, we're on the same page.

ADL continued to offer edits to plea, including that they add in that Pras told NLD that he was going to talk to the FBI. Keller suggested the language: "in an effort to obtain further information from the FBI to assist Foreign Minister A and Country B in their efforts to bring about the removal of foreign national B Pras indicated he would share some of this information with the FBI." Abbe said fine and he will discuss with NLD.

Keller said that with these edits, we're tying every communication NLD has with Broidy to Pras. ADL said not every time. For example, when she says great hero. Keller said he is raising that we are connecting many of her communications to a request by Pras. I want to know what her explanation is going to be – calling, texts, etc.

ADL said her testimony would be that it is a combination – he calls her or texts her. We've looked at her phone records to see there is a contact by Pras before she relays that to Elliot. Keller said okay, just wanted to make sure that is accurate. Pras' attorney is going to be all over that.

ADL said who knows what Pras is going to do. Pras is going to be hard pressed if he's going to be credible defendant to deny: 1) he has a relationship with Low, 2) through Low he has a relationship with Sun and others in China, 3) he made it clear never wanted to talk to Broidy without NLD and didn't want NLD talking to his contacts without him. He is going to say there are 14 contacts in NLD's information and I think you're wrong about one. He can't credibly argue that. Keller said he doesn't disagree with the overall point. ADL said we are sensitive to not overreach this point.

ADL asked what matter is it that NLD concealed identity to Person H? Keller said it is not critical, but it doesn't sound like she would deny it. AD said she won't deny it. It is a long explanation, but saw him at fundraisers, didn't want to mix social with this. It wasn't because she thought she was doing something wrong. Keller said they included it because it seems consistent with everyone's attempt to minimize any external visibility on to their arrangement on both of these ventures.

ADL said NLD has a real reason that isn't to hid like Higginbotham's. The way it is phrased puts Wynn in a better light. If you think NLD has done something vis a vis Guo – need to look at Wynn's screenshot. You've been beating on NLD thinking she had financial interest, when Wynn (the casino magnet) says in his screenshot about appreciating business he's done in China – he is way more explicit. The way it is written reads that she pulled the wool over his eyes and got him involved in something he didn't want to be involved in. I want a difference between Low and Guo situations.

Keller said his last point is an important one. If it is a conspiracy, something along those lines is okay – she assisted persons A and B in their actions as agents of Foreign National A. She is pleading to FARA here.

ADL said I don't know as many facts as you do, but some ways know more than you do. Pras has this other deal with Low. NLD knew at the time that Broidy was working the Guo thing for financial basis, bringing his brochures of his companies, offering to be in a deal with the UAE – he is explicit about his financial interest. Pras has a financial deal about this. It is different with NLD. If you can come up with a way that distinguishes her role with Low and Guo, but still allows her to be a cooperator. Keller said okay.

ADL said over the weekend, he'll send some non-fact edits. ADL ended the call by saying we're way down the road. NLD will be very valuable to them. We just have to figure out the finances and then we basically have a deal.