UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>               Plaintiff,<br><br>    vs.<br><br>NICKIE MALI LUM DAVIS,<br><br>               Defendant. | CR. NO. 20-00068 LEK |

**ORDER DENYING DEFENDANT'S MOTION TO WITHDRAW GUILTY PLEA AND MEMORANDUM OF PLEA AGREEMENT, [FILED 10/21/22 (DKT. NO. 117)]**

On October 21, 2022, Defendant Nickie Mali Lum Davis ("Defendant") filed her motion seeking to withdraw her plea of guilty. See Defendant's Motion to Withdraw Guilty Plea and Memorandum of Plea Agreement, filed 10/21/22 (dkt. no. 117) ("Motion"). Plaintiff United States of America ("the Government") filed its opposition memorandum on November 7, 2022. See Government's Response in Opposition to Motion to Withdraw Guilty Plea, filed 11/7/22 (dkt. no. 124) ("Opp. Mem."). Defendant filed her reply in support of the Motion on November 15, 2022. [Dkt. no. 127.]

After careful consideration of the Motion, the memoranda filed by the parties, and the relevant legal authority, the Motion is HEREBY DENIED for the reasons set forth below.

## INTRODUCTION

In the Motion, Defendant states that, "if she had known about an unavoidable conflict of interest that was not disclosed to her by former counsel, Abbe D. Lowell, [Esq. ('Attorney Lowell')] and was accompanied by [Attorney] Lowell's inadequate and erroneous legal advice, she would not have entered into the plea." [Motion at 1.] She contends that she has fair and just reasons for this Court to permit withdrawal of her guilty plea and recission of her memorandum of plea agreement with the Government. Specifically, that Attorney Lowell had a conflict of interest at the time that he represented Defendant because he "was being investigated for two separate criminal matters[,]" which were similar to the offenses to which she pleaded guilty and involved the same prosecuting attorneys. [Mem. in Supp. of Motion at 9.] Defendant submits that Attorney Lowell never disclosed that he had a conflict of personal interest, and that Elliott Broidy, the person about whom she agreed to cooperate with the government and testify against, was involved as a possible adverse witness or co-conspirator vis-à-vis Attorney Lowell. [Id. at 10.] She also states that Attorney Lowell "never once advised [Defendant} of the viability of submitting an appeal to the Office of the Deputy Attorney General ('ODAG') . . . as to why criminal charges should not be filed against [her]." [Id. at 12.] If so

2

advised, she contends that her "outcome could have been
significantly different." [Id. at 13.] Finally, she contends
that Attorney Lowell informed her that her cooperation with the
Government and pleading guilty would result in the Government
agreeing not to recommend anything more than probation for her
sentence, which was an important factor to Defendant as she does
not want to be separated from her daughter. [Id. at 14.] The
Government's counsel informed Defendant and her legal team "in
February 2021, that a recommendation for significant jail time
was still on the table for [Defendant]. . . . [and that the
Public Integrity Section's] policy would never allow them to
agree to [recommend probation]." [Id.] Therefore, Defendant
submits that she has been misled by her prior attorney and thus
has a fair and just reason to withdraw her plea and from her
obligations under the memorandum of plea agreement.

        The Government opposes the Motion on the singular
ground that, in direct contrast to Defendant's rendition of
events, Attorney Lowell was not "under criminal investigation
when he negotiated her plea agreement." [Opp. Mem. at 1.]
Rather, in July 2020, during plea negotiations in Defendant's
case, potential evidence involving Attorney Lowell and others
was discovered by a government filter team but not shared with
the prosecution team in Defendant's case nor with Attorney
Lowell. [Id. at 3.] The filter team then "filed a crime-fraud

3

motion seeking authorization to provide the communications to
the prosecution team so that it could address any potential
conflicts with [Attorney] Lowell." [Id.] Attorney Lowell was
advised by the filter team of the crime-fraud motion and "his
potential criminal exposure" on August 26, 2020 and he, in turn,
disclosed this information to his co-counsel, William C.
McCorriston, Esq. and David J. Minkin, Esq., and they advised
Defendant "of the potential conflict of interest." [Id. at 4.]
"To memorialize the potential conflict and waiver, the parties
drafted and signed a sealed conflict waiver as an addendum to
the plea agreement." [Id. at 4 & n.3 (citing Addendum to Plea
Agreement, filed 8/31/20, ECF No. 16).]

        The Government and Attorney Lowell also dispute
Defendant's assertions that she was unaware that she might face
a term of imprisonment and that she was induced into pleading
guilty because she believed that the Government would recommend
a term of probation.  The Government points to the terms of the
plea agreement, which state that Defendant acknowledges that the
penalties include a term of imprisonment as well as a term of
supervised release, and that it is the Court who will decide
what is an appropriate sentence to impose in her case.  See id.
at 4-5 & nn.4-5 (citing Def. Memo of Plea Agreement, filed
8/31/20, ECF No. 15 ¶¶ 7.a, 11, 21-22).  Additionally, the
Government submits that Defendant confirmed this understanding

4

at her plea hearing and that Court explained its authority to impose a sentence that might be different from what she expected or her attorneys may have advised.  See id. at 5-6 & nn.7-9 (citing Trans. of Plea Hearing, filed 10/15/20, ECF No. 21 at 12-15, 17-18, 21).

## BACKGROUND

This matter arises out of a criminal prosecution brought against Defendant by the filing of a felony information on August 17, 2020.  See Information, filed 8/17/20 (dkt. no. 1).  Defendant is alleged to have agreed with others "to act as agents of Foreign National A in exchange for millions of dollars in undisclosed wire transfers . . . ."  [Id. at ¶ 2.] Defendant is alleged to have

> specifically agreed to facilitate Person B's lobbying of the President of the United States ("the President"), his Administration, and the United States Department of Justice ("DOJ") to drop the investigation of Foreign National A for his role in the embezzlement of billions of dollars from 1Malaysia Development Berhad ("IMDB"), a strategic investment and development company wholly owned by the Government of Malaysia.

[Id.]  The Government alleges that Defendant and others agreed to work together to lobby the United States:

> On or about May 2, 2017, DAVIS, Person A, and Person B arrived in Bangkok.  During the trip, DAVIS, Person A, and Person B met with Foreign National A in a hotel suite.  Person B and Foreign National A spoke about the lMDB investigation and civil forfeiture actions.

5

Person B agreed to help Foreign National A
attempt to resolve the matter.  Foreign
National A agreed to pay Person B an $8 million
retainer and wanted Person B to contact the
Attorney General of the United States to get DOJ
to drop the lMDB matter.  Person B agreed to
lobby the Administration and DOJ for a favorable
result for Foreign National A while concealing
the fact that he was working on Foreign
National A's behalf.  With respect to payment,
Person B stated that the money should not come
directly from Foreign National A and should be
"clean."  Foreign National A identified a friend
who could pay Person B and others.  Person B,
Person A, and DAVIS agreed that the money would
first be routed through Person A and then be paid
to Person B through Law Firm A.  Person B and
DAVIS agreed that Person B would pay DAVIS thirty
percent of what Person B received.  Person A also
agreed to pay DAVIS a percentage of the funds
that Person A received.  Person A told Person B
and DAVIS that Person A's friend, Higginbotham,
was verifying the legitimacy of the funds.
Higginbotham did not actually perform any such
review.

[Id. at ¶ 33 (emphases in original).]  The Government alleges

that Defendant was paid various amounts for her services,

including "[o]n or about May 18, 2017, Law Firm A transferred

$500,000 to one of Person B's business accounts and $900,000 to

a business account controlled by [Defendant]"; [id. at ¶39;] on

or about May 26, 2017, "$600,000 was transferred from Law

Firm A's account to a business account associated with

[Defendant]"; [id. at ¶40;] "Person A also transferred $833,333

to a business account controlled by [Defendant]"; [id. at ¶ 69;]

and "[o]n or about August 10, 2017, Law Firm A transferred

$900,000 to a business account associated with [Defendant,]"
[id.].

Defendant is charged with one count of aiding and
abetting an unregistered agent of a foreign principal in
violation of 18 U.S.C. § 2 and 22 U.S.C. §§ 612 and 618(a)(1)
("Count I").  [Id. at pg. 37.]

Defendant made her initial appearance in this matter
on August 31, 2020.  At that time, she waived her right to
proceed by indictment and entered a plea of guilty to the felony
information pursuant to her memorandum of plea agreement with
the Government.  See Minutes - EP: Initial appearance, Waiver of
Indictment, Arraignment & Plea to Felony Information as to
Defendant, Nickie Mali Lum Davis, filed 8/31/20 (dkt. no. 13).
Her legal counsel at the time were Abbe David Lowell, Esq.,
admitted *pro hac vice*, and William C. McCorriston, Esq. and
David J. Minkin, Esq.  See Motion to Appear Pro Hac Vice, filed
8/25/20 (dkt. no. 6); Order Granting Motion to Appear Pro Hac
Vice, filed 8/27/20 (dkt. no. 10).

Defendant had been scheduled for sentencing on
October 27, 2022.[1]  See Minutes, filed 8/5/22 (dkt. no. 94), at

---

[1] This Court vacated Defendant's sentencing hearing after
the filing of the instant Motion.  See Minute Order - EO: Court
Order Vacating Sentencing Hearing and Setting a Briefing
Schedule for Defendant's Motion to Withdraw Guilty Plea and
Memorandum of Plea Agreement, filed 10/24/22 (dkt. no. 121).

PageID.1107.  Defendant filed her sentencing statement, under

seal, on August 22, 2022.  <u>See</u> Defendant's Sentencing Statement,

filed under seal 8/22/22 (dkt no. 97) ("Sentencing Statement").

However, she subsequently filed the instant Motion seeking to

withdraw her guilty plea and from the obligations imposed by the

Plea Agreement.

## <u>STANDARDS</u>

A defendant may withdraw a plea of guilty
before sentencing if "the defendant can show a
fair and just reason for requesting the
withdrawal." Fed. R. Crim. P. 11(d)(2)(B).
Although the defendant has the burden of
demonstrating a fair and just reason, <u>United
States v. Davis</u>, 428 F.3d 802, 805 (9th Cir.
2005), the "fair and just" standard is applied
liberally. <u>United States v. Bonilla</u>, 637 F.3d
980, 983 (9th Cir. 2011). "Fair and just" reasons
for withdrawal include inadequate Rule 11 plea
colloquies, newly discovered evidence,
intervening circumstances, or any other reason
for withdrawing the plea that did not exist when
the defendant entered his plea. [<u>United States
v.</u>] <u>McTiernan</u>, 546 F.3d [1160,] 1167 [(9th Cir.
2008)] (citing <u>Davis</u>, 428 F.3d at 805).
Erroneous or inadequate legal advice may also
constitute a fair and just reason for withdrawal
of a plea. <u>Bonilla</u>, 637 F.3d at 983 (citing
<u>McTiernan</u>, 546 F.3d at 1167). A defendant who
moves to withdraw a guilty plea "is not required
to show that he would not have pled, but only
that the proper legal advice of which he was
deprived 'could have at least plausibly motivated
a reasonable person in [the defendant's] position
not to have pled guilty.'" <u>Bonilla</u>, 637 F.3d at
983 (quoting <u>United States v. Garcia</u>, 401 F.3d
1008, 1011-12 (9th Cir. 2005)).

<u>United States v. Yamashiro</u>, 788 F.3d 1231, 1236-37 (9th Cir.

2015) (some alterations in <u>Yamashiro</u>).

8

A district court shall vacate the guilty plea when it is "'shown to have been unfairly obtained or given through ignorance, fear or inadvertence.'"  United States v. Rubalcaba, 811 F.2d 491, 493 (9th Cir. 1987) (quoting Kercheval v. United States, 274 U.S. 220, 224, 47 S. Ct. 582, 583, 71 L. Ed. 1009 (1927)).  However, "[t]he decision to allow a defendant to withdraw his plea . . . lies within the discretion of the district court."  United States v. Ruiz, 257 F.3d 1030, 1033 (9th Cir. 2001) (en banc) (citation omitted).

> A defendant who moves to withdraw a guilty plea before a sentence is imposed is not required to show that he would not have pled, but only that the proper legal advice of which he was deprived "could have at least plausibly motivated a reasonable person in [the defendant's] position not to have pled guilty . . . ."  United States v. Garcia, 401 F.3d 1008, 1011–12 (9th Cir. 2005).  A pre-sentence motion to withdraw a plea should be freely allowed if a defendant can show a "fair and just reason" for requesting the withdrawal.  See United States v. Davis, 428 F.3d 802, 808 (9th Cir. 2005).  "Erroneous or inadequate legal advice may . . . constitute a fair and just reason for plea withdrawal." McTiernan, 546 F.3d at 1167.

Bonilla, 637 F.3d at 983 (alterations in Bonilla).

## **DISCUSSION**

Defendant moves to withdraw her guilty plea prior to being sentenced and therefore must establish "a fair and just reason" for doing so.  See Fed. R. Crim P. 11(d)(2)(B).  She asserts that Attorney Lowell (her primary attorney at the time

9

she entered her guilty plea) had an undisclosed conflict of interest and, as a result, she argues that she was denied effective assistance of counsel in violation of her Sixth Amendment right.  See Mem. in Supp. of Motion at 6-10.

> A challenge to a guilty plea based on a claim of ineffective assistance of counsel is analyzed using a two-part test: "a criminal defendant must show that his counsel's performance was deficient, and that this deficient performance prejudiced his defense." [Doganiere v. United States, 914 F.2d 165, 168 (9th Cir. 1990).]  Accord Johnson v. Baldwin, 114 F.3d 835, 837-38 (9th Cir. 1997) ("In order to prevail on his claim of ineffective assistance of counsel, Albert must show (1) that his counsel's performance, viewed objectively, was outside the wide range of professionally competent assistance, and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different") (quotations omitted).
>
> To show deficient performance, the defendant must show that the counsel's representation fell below an objective standard of reasonableness. See United States v. Rubalcaba, 811 F.2d 491, 494 (9th Cir.), cert. denied, 484 U.S. 832, 108 S. Ct. 107, 98 L. Ed. 2d 66 (1987).  Ineffective assistance of counsel occurs when the behavior complained of falls below prevailing professional norms.  United States v. McMullen, 98 F.3d 1155, 1158 (9th Cir. 1996), cert. denied, 520 U.S. 1269, 117 S. Ct. 2444, 138 L. Ed. 2d 203 (1997). . . .

United States v. Modafferi, 112 F. Supp. 2d 1192, 1197-98 (D. Hawai`i 2000).

I.    **Reasonableness of Counsel's Challenged Conduct**

The two-part test for a claim of ineffective assistance of counsel starts with Defendant's burden to show that Attorney Lowell's "representation fell below an objective standard of reasonableness."  See Strickland v. Washington, 466 U.S. 668, 688 (1984).  This Court is instructed to "'judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct,' [Strickland, 466 U.S.] at 690, and '[j]udicial scrutiny of counsel's performance must be highly deferential,' id., at 689."  See Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (some alterations in Roe).  The Government soundly rejects Defendant's rendition of events, and submits Attorney Lowell's declaration in support of a finding that plea negotiations had been completed **without** any knowledge by him of the filter team and that there has not been any criminal investigation of him.  See Opp. Mem., Second Declaration of Abbe D. Lowell, dated 10/24/22 ("Lowell Decl.") at ¶¶ 10-11.

The Court elects not to engage in a fact-finding mission and conduct a "trial within a trial."  Rather, the Court proceeds to analyze the Motion with the presumption that Attorney Lowell's conduct fell below an objective standard of

reasonableness.[2]  Specifically, it is assumed (**for purposes of this Motion only**) that, at the time that he was defending Defendant and engaging in plea negotiations on her behalf, Attorney Lowell was being investigated for alleged criminal conduct similar, if not identical, to the charges currently pending against Defendant, and by the same attorneys at the Department of Justice who are involved in prosecuting Defendant.

According to Defendant, Attorney Lowell never disclosed that he was being investigated for criminal or civil violations, nor that these investigations were being done by the same authorities who were involved in her prosecution.  See Declaration of Nickie Mali Lum Davis, filed 10/21/22 (dkt. no. 118) ("Lum Davis Decl."), at ¶¶ 20-22.

Attorney Lowell was admitted *pro hac vice* in the District of Hawai`i, and thus he was obligated to follow the Hawai`i Rules of Professional Conduct ("HRPC").  See Local Rule LR83.3.  These rules prohibit the representation of a client where there is a concurrent conflict of interest.  See generally HRPC Rule 1.7.  This type of conflict exists where "there is a significant risk that the representation of [a client] will be materially limited . . . by a personal interest of the lawyer."

---

[2] The Court is cognizant that Attorney Lowell has provided sworn testimony to the contrary and is explicitly **not** making any factual finding about Attorney Lowell's professional conduct as Defendant's attorney.

HRPC Rule 1.7(a)(2).  Even assuming Attorney Lowell did not have
a "direct adversity of interest," a conflict of interest (under
the facts assumed for purposes of this Motion only) existed
because there was "a significant risk" that his "ability to
. . . recommend, or carry out an appropriate course of action
for the client [was] materially limited as a result of [his]
other responsibilities or interests."  See HRPC Rule 1.7 cmt.8.

        Notwithstanding the conflict of interest, Attorney
Lowell could continue to represent Defendant if he disclosed the
conflict and obtained her written consent after consultation.
See HRPC Rule 1.7(b)(4).  According to Defendant, Attorney
Lowell did not do so.  See Declaration of David J. Minkin, filed
10/21/22 (dkt. no. 119) ("Minkin Decl."), at ¶¶ 1-3; Declaration
of William C. McCorriston, filed 10/21/22 (dkt. no. 120)
("McCorriston Decl."), at ¶¶ 5-12; 15-17.  Attorney Lowell
states that he disclosed his understanding of the filter team
and what has been referred to as "the FARA letter"[3] to Defendant
and Mr. McCorriston.  See Lowell Decl. at ¶ 19.  As stated
previously, the Court will not resolve any conflict in
credibility but will assume, for purposes of this Motion only,
that a complete disclosure was not given and written consent to

---

        [3] "FARA" refers to the Foreign Agents Registration Act, 22
U.S.C. § 611, *et seq.*

continued representation was not obtained from Defendant.  Thus, Defendant did not waive the assumed conflict of interest.

The argument that Attorney Lowell's conduct fell below the standard of reasonableness because he failed to submit an internal appeal to the Office of the Deputy Attorney General ("ODAG") on Defendant's behalf to avoid an indictment and guilty plea, see McCorriston Decl. at ¶¶ 18-20, does not hold water. Defendant argues that no one (other than herself and Elliot Broidy) had ever been prosecuted for representing a foreign non-government individual and failing to register under FARA while representing the interests of a foreign non-government individual.  See id. at ¶ 19.  Mr. McCorriston postulates that Attorney Lowell could have submitted an appeal to ODAG on Defendant's behalf because it "would have been a prudent action and a viable option for a possible resolution that could have avoided an indictment and guilty plea."  See id. at ¶ 20. Attorney Lowell's alleged failure to seek a novel and untested approach must be given healthy deference by this Court.  Thus, Defendant cannot demonstrate that Attorney Lowell's neglect in failing to advise her about and failing to file an appeal to ODAG fell below the performance of reasonably effective assistance considering the circumstances.  See Strickland v. Washington, 466 U.S. 668, 689 (1984) ("Even the best criminal

defense attorneys would not defend a particular client in the same way." (citation omitted)).

## II.  **Whether Counsel's Conduct Prejudiced Defendant**

The Court turns to the second step of the Strickland test:  whether Defendant has shown "that counsel's deficient performance prejudiced the defendant[.]" Roe, 528 U.S. at 477 (citing Strickland, 466 U.S. at 694).  Under the facts of this case, to show prejudice, Defendant must demonstrate that "there is a reasonable probability that, but for [Attorney Lowell's] deficient failure . . .," she would not have entered a guilty plea.  See id. at 484.  "In certain Sixth Amendment contexts, prejudice is presumed.  Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice." Strickland, 466 U.S. at 692.  In cases where, as here, there is an actual conflict of interest, there is not a per se presumption of prejudice.  "Prejudice is presumed only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'" Id. (quoting Cuyler v. Sullivan, 446 U.S. 335, 350, 348 (1980) (footnote omitted)).

Defendant argues that she would not have agreed to enter a guilty plea but for Attorney Lowell's representation that she would receive a sentence of probation and not be

15

sentenced of imprisonment.  [Mem. in Supp. of Motion at 14.]
Attorney Lowell emphatically denies her assertion.  See Lowell
Decl. at ¶ 14.  Nevertheless, even assuming, for purposes of
this Motion only, that the alleged representation was made to
Defendant, the Government thoroughly sets forth the fact that
both the memorandum of plea agreement and the Court's colloquy
with Defendant at the time that she entered her guilty plea
clearly spelled out that she faced a possible sentence of
incarceration of up to five years, and that Defendant confirmed
her understanding that she could be sentenced to imprisonment by
agreeing to the plea agreement and stating in the affirmative to
questions by the Court.  See Opp. Mem. at 4-6 & nn.4-9 (citing
Def. Memo of Plea Agreement, filed 8/31/20, ECF No. 15 ¶¶ 7.a,
11, 21-22, 29; Trans. of Plea Hearing, filed 10/15/20, ECF
No. 21 at 12-15, 17-18, 21).  Defendant's reliance, if any, on a
prediction that she would be given a sentence of probation flies
in the face of the hard facts stated in the plea agreement and
during the Court's colloquy with her: that her possible sentence
included incarceration of up to five years; that the Court is
not bound by the recommendations of the parties and decides her
sentence; and that, even if she did not like the sentence that
the Court imposed, she would not be able to take back her guilty
plea.

Defendant thus fails to demonstrate a reasonable probability that, but for Attorney Lowell's alleged failure to warn her that she faces a sentence of imprisonment, she would not have entered a guilty plea.

<u>**CONCLUSION**</u>

For the foregoing reasons, Defendant's Motion to Withdraw Guilty Plea and Memorandum of Plea Agreement, [filed 10/21/22 (dkt. no. 117),] is DENIED.  Defendant's sentencing hearing will proceed on **January 18, 2023, at 1:30 p.m.**

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, December 9, 2022.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

<u>UNITED STATES OF AMERICA VS. NICKIE MALI LUM DAVIS</u>; CR 20-00068 LEK; ORDER DENYING DEFENDANT'S MOTION TO WITHDRAW GUILTY PLEA AND MEMORANDUM OF PLEA AGREEMENT