McCORRISTON MILLER MUKAI MACKINNON LLP

WILLIAM C. McCORRISTON            #995-0
DAVID J. MINKIN                            #3639-0
Five Waterfront Plaza, 4th
Floor500 Ala Moana
Boulevard Honolulu, Hawai'i
96813
Telephone:  808.529.7300
Facsimile:  808.535.8056

E-Mail:      mccorriston@m4law.com;  minkin@m4law.com

JAMES A. BRYANT *(pro hac vice)*
The Cochran Firm California
4929 Wilshire Blvd., Suite 1010
Los Angeles, CA 90010
Telephone: 323-435-8205
Facsimile:  310-802-3829
E-mail:      jbryant@cochranfirm.com

Attorneys for Defendant
NICKIE MALI LUM DAVIS

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>             Plaintiff,<br><br>   vs.<br><br>NICKIE MALI LUM DAVIS;<br><br>             Defendant. | CR. NO. 20-00068 LEK<br><br>DEFENDANT NICKIE MALI LUM DAVIS' PROPOSED FINDINGS OF FACT RE: DEFENDANT'S MOTION TO DISQUALIFY |

1

<u>DEFENDANT NICKIE LUM DAVIS' PROPOSED FINDINGS OF FACT</u>

<u>RE: DEFENDANT'S MOTION TO DISQUALIFY</u>

## I.  **Background**

On August 17, 2020, a one-count Information was filed against Ms. Davis, charging her with aiding and abetting a violation of the Foreign Agents Registration Act ("FARA").  [ECF No. 1.]

On August 31, 2020, Ms. Davis pleaded guilty to the Information pursuant to a plea agreement. [ECF Nos. 13, 15.] The plea agreement included a sealed addendum memorializing the defendant's waiver of a potential conflict of interest arising in Mr. Lowell's representation of clients. [ECF No. 16.]

On April 26, 2022, the Ms. Davis filed Motions to Disqualify, Stay Sentencing and Judicial Relief.  The Motion argued in its memorandum that John D. Keller ("Keller"), as the lead prosecutor in this matter, engaged in prosecutorial misconduct by exploiting Mr. Lowell's unwaivable conflicts of interest with his client Ms. Davis, in order to obtain her cooperation for procuring Elliott Broidy's eventual guilty plea, despite knowing that Ms. Davis should have conflict free counsel. [ECF No. 47, 48.] The Motion further requested judicial relief for an investigation into Mr. Keller and Mr. Lowell's unethical acts.

On May 10, 2022, PIN prosecutors filed a motion to vitiate the attorney client privilege between Ms. Davis and Mr. Lowell. [ECF No. 56.]

On May 17, 2022, Ms. Davis filed an opposition to the government's motion, which further evidenced in more specific detail of the actions of Mr. Keller in pressuring Mr. Lowell to procure a guilty plea from Ms. Davis. [ECF. No 58.] As evidenced by Mr. Keller's own words, Mr. Keller was aware that given the nature of the criminal and civil investigations into Mr. Lowell from both PIN and the NSD, Ms. Davis' plea could be viewed as Mr. Lowell being "inclined to assist the government through facilitating Lum Davis's cooperation in this matter in order to gain favor in your other unrelated dealings with the Department." [ECF. No 80, Pg. 9.]

On August 3, 2022, the Court issued a Minute Order regarding its inclination to deny the motion on the basis that Ms. Davis did not prove by clear and convincing evidence that Mr. Keller created a conflict of interest between her and Mr. Lowell, on the basis that Ms. Davis "essentially asks this Court to make an evidentiary ruling regarding the truth of the Addendum" as it relates to Mr. Lowell's conflicting statements. [ECF No. 87, Pg. 4.] Furthermore, the Court declined to make a determination whether Mr. Keller engaged in prosecutorial misconduct on the basis of the following grounds, "before it would be required to evaluate whether the evidence is sufficient to establish the improprieties alleged, Davis must first demonstrate actual prejudice as a result of the alleged improprieties." [Id.] Thus, Court declined to make a judicial determination whether

3

Mr. Keller had engaged in prosecutorial misconduct, because Ms. Davis was unable to show that even if Mr. Keller engaged in prosecutorial misconduct she was unable to prove she was prejudiced by it.

The Court denied the Motion to Disqualify without prejudice on August 5, 2022. [ECF No. 94.]

On October 21, 2022, Ms. Davis filed a Motion to Withdraw Guilty Plea ECF No. 117. The Court, for the purposes of the motion, determined that Mr. Lowell's conflict of interest was presumed.

On December 9, 2022, the Court denied the Motion to Withdraw Guilty Plea and denied the Motion to Disqualify with prejudice. [ECF No. 133.] The Motion to Disqualify was denied with prejudice because the issue had become moot with the denial of Ms. Davis' Motion to Withdraw Plea.

The Court, however, did not deny Ms. Davis' request for Judicial Relief, which was for the purpose of the Court on its own or through the appointment of independent counsel, investigate thoroughly, whether in fact Mr. Keller had engaged in prosecutorial misconduct. [ECF No. 47, 48.] In addition, as previously identified in the Court's Minute Order regarding its inclinations, no evidentiary hearing was heard on any of the issues set forth in the Motions, and therefore the Court could not make an evidentiary finding whether what Mr. Lowell represented

4

in his declaration was true, and whether Mr. Keller pressured Mr. Lowell to obtain Ms. Davis' conviction.

The Court's denial of the Motion to Disqualify was based on the fact that the issue was now moot, as the only remaining matter to be addressed was Ms. Davis' sentencing. Regardless of the decision to deny the Motion to Disqualify, Mr. Keller and Mr. Lowell both engaged in misconduct. In support of these conclusions, the Court makes the following findings of fact

## II.    Proposed Findings of Fact

1.     On October 31, 2018, two firms and 16 individuals registered under FARA for representing Low's interests, four weeks after the U.S. government had indicted Mr. Low under seal, but one day before the indictment was unsealed. The bulk of the individual "Short Form" registrations were lawyers at Kobre & Kim and various PR agents, consultants and others they had engaged, with all of the individual registrants admitting—by virtue of registering—that they were involved in furthering Mr. Low's political or publicity interests by engaging U.S. government officials and/or advancing Mr. Low's PR campaign.  One of the 16 individuals who was part of the group who FARA registered on October 31, 2018 was Danielle Rosborough. Almost immediately afterwards, in November 2018, Ms. Rosborough started working for NSD—the very section within DOJ that oversees compliance with and enforcement of FARA. [ECF. No. 48, Pg. 14; ECF No. ECF No. 53, *In Camera* Pg. 8 Ex. AA; ECF No. 58 pg. 4-5]

2.     Abbe Lowell had knowledge that he was under investigation by the National Security Division ("NSD") for possible FARA violations as late as April 2020,  during the same time that Ms. Davis was under investigation by Public Integrity Section ("PIN") for alleged FARA violations. [ECF No. 58, Pg. 9-17]

3.     On April 6, 2020, the NSD sent an extensive Letter of Inquiry to Mr. Lowell from criminal prosecutor Brandon L. Van Grack ("Van Grack"). [Declaration of Abbe Lowell, Ex. 11]

4.     As evidenced by Van Grack, a civil FARA unit did not exist at the

time that Mr. Lowell was being investigated by the NSD for FARA violations, and persons handling the matter were Ian Richardson, Scott Claffee and Van Grack, all NSD criminal prosecutors. [ECF No. 58, Pg. 13-17; ECF No. 80, Pg. 7-9]

5.      Shortly after Mr. Keller and the prosecution learned that Mr. Lowell knew that he formally was the focus of an ongoing FARA investigation in June 2020, the "filter team" **within PIN** began the investigation that resulted in the *ex parte* filing regarding the alleged "bribery-for-pardon" matter to Judge Beryl Howell, Chief Judge of the U.S. District Court for the District of Columbia. Based upon communications between Mr. Keller and the PIN filter team, it appears that Mr. Keller was clearly overseeing Victor Salgado and the filter team's activities. [ECF No. 58, Pg. 17-20; ECF No. 80, Pg. 1-2]

6.      Despite PIN's position that Mr. Lowell's communications that could be subject to privilege were filtered in their entirety from Mr. Keller's team that was prosecuting Ms. Davis, in a June 29, 2020 email from Erica O'Brien Waymack to Mr. Keller, she admits that Mr. Lowell's emails from his  former law firm's Chadbourne & Parke email address had slipped through the through cracks, and had not been segregated. Mr. Lowell's Chadbourne & Park emails that Mr. Keller's team reviewed are in fact the precise communications that pertained to bribery-for-pardon investigation, which triggered the filing of the government's *ex parte* application to Judge Beryl Howell on August 10, 2020. [ECF No. 55-2, Pg. 31]

7.      As early as June 29, 2020, Mr. Keller and his team knew that Mr. Lowell had possible criminal exposure beyond the NSD's FARA probe. Mr. Keller and PIN prosecutors initiated and directed a bribery for pardon investigation into Mr. Lowell, as PIN choose to include Mr. Keller's subordinates, there was no meaningful separation between Mr. Keller who was prosecuting Ms. Davis and his filter team that was investigating her attorney, in violation of DOJ policy.  [ECF No. 75, Pg. 5-9; ECF No. 80, Pg. 5-6]

8.      On July 1, 2020, two days after PIN's own investigation into Mr. Lowell began, and within days of Mr. Keller confirming that the FARA investigation into Mr. Lowell was still on-going, Mr. Keller contacted Mr. Lowell—the first such contact in 11 months—to begin plea negotiations with Ms. Davis. [ECF No. 58, Pg. 17-20; ECF No. 80, Pg. 1-4] Based upon Mr. Keller's own representations, NSD prosecutors were involved in the prosecution of Ms. Davis, as Mr. Keller required the NSD's approval prior to finalizing the plea agreement with Ms. Davis. [ECF No. 80, Pg. 6]

9.     Ms. Davis hired William McCorriston as local counsel for search and seizure issues in 2018 and, much later, to assist in presenting the MOPA to the Court as her matter was being heard in the United States District Court of Hawaii. Mr. McCorriston did not have any substantive involvement in the negotiation of Ms. Davis plea agreement, as that was solely Mr. Lowell's role. [ECF No. 80-1; ECF No. 120]

10.     In order to secure approval to prosecute Elliott Broidy, Mr. Keller and PIN prosecutors, including those on the filter team, were aware that by obtaining a plea from Ms. Davis, it would result in getting "approval" to proceed with Broidy's indictment. [ECF No. 80, Pg. 9-10]

11.     On August 26, 2020 the PIN filter team told Mr. Lowell multiple times that he faced criminal exposure in the "bribery-for-pardon"/LDA matter. In addition, Mr. Keller also informed Mr. Lowell he faced possible civil and criminal exposure regarding the NSD's FARA investigation. [ECF No. 80, Pg. 4; ECF No. 120 Pg. 9]

12.     In the August 10, 2020 *ex parte* motion to Judge Beryl Howell— which requested the vitiation of attorney-client privileges based on the crime fraud exception—contained one section titled "Lowell and Potentially Others Engaged in a Conspiracy to Commit Bribery," and another section titled "Lowell… Violated the Lobbying Disclosure Act." [ECF No. 80, Pg. 4]

13.     On August 25, 2020, Mr. Keller informed Mr. Lowell that he would need to obtain a conflict waiver from Ms. Davis due to his concern that Mr. Lowell may possibly be "inclined to assist the government through facilitating Ms. Lum Davis's cooperation to gain favor" related to the NSD's investigation into his possible FARA, bribery-for-pardon and LDA violations. [ECF No. 119 Pg. 15-16]

14.     In response, Mr. Keller solely provided Mr. Lowell the initial draft language of the conflict waiver which included the following statement: "Mr. Lowell has been notified by the United States Department of Justice that he may have potential civil and/or criminal exposure for conduct unrelated to this matter." However, Mr. Keller did not include in this email third party independent counsel Mr. McCorriston or Mr. Minkin. This initial version proposed to Mr. Lowell was never disclosed to third-party counsel. [ECF No. 120, Pg. 8-9]

15.     Mr. Keller was well aware that Ms. Davis is entitled to conflict-free

counsel, and a full and complete understanding of any potential conflict of interests that may exist between a defendant and her legal counsel. However, obtaining Ms. Davis' plea through the exploitation of Mr. Lowell's conflicts, outweighed Mr. Keller's ethical obligation he once argued in the case *United States v. Suhl*, stating: "the Court has an obligation to ensure that a defendant fully understands any conflict of interest that is being waived -- "Impairments of the right to conflict-free counsel threaten not only the defendant's right to effective representation, but also the trial court's interest in the fairness of its proceedings and the integrity of its judgments." [ECF No. 48, Pg. 4]

16.    On August 25, 2020, Mr. Lowell informed Ms. Davis that she would need to use Mr. McCorriston as independent third-party counsel to address issues raised to him by Mr. Keller, regarding the potential conflict of interest related to his representation of a past client. [ECF No. 80, Pg. 2-5; ECF No. 80-1; ECF No. 120, Pg. 4]

17.    During the August 26, 2020 video conference between Mr. Lowell, Ms. Davis, Mr. McCorriston and Mr. Minkin regarding his conflicts of interest, Mr. Lowell never disclosed to them that the conflict of interest involved an investigation by NSD into **his own** possible criminal and/or civil FARA violations, nor did he disclose to them that a filter team comprised of PIN prosecutors were investigating his for possible criminal acts related to bribery-for-pardon and Lobby Disclosure Act ("LDA") violations. Instead, Mr. Lowell explained that the conflict was simply regarding his representation of a particular past client that Ms. Davis knew and who's name may come up in future questioning by the DOJ. [ECF No. 48, Pg. 25-26; ECF No. 80, Pg. 2-3; ECF No. 120, Pg. 4]

18.    Mr. Lowell's knowledge of the investigations into possible criminal and/or civil FARA violations, as well as possible criminal acts related to bribery-for-pardon and LDA violations, by PIN and NSD prosecutors, the same units involved in prosecuting Ms. Davis, constitutes an unwaivable conflict of interest. [ECF No. 58, Pg. 9-23; ECF No. 80, Pg. 2-4]

19.    Mr. Keller knew as early as June 2020, that given the progression of the NSD's FARA investigation into Mr. Lowell for similar violations as alleged against his client Ms. Davis, following PIN's joint meeting with Mr. Lowell, NSD prosecutors and FBI agents in August 2019, Mr. Lowell's inclination to protect his own interests would be the perfect opportunity to exploit this conflict, as Mr. Keller reiterated in his August 25, 2020 email to Mr. Lowell (the "August 25, 2020 Email"), which prompted the request for the conflict waiver. [ECF No. 120, Pg. 4]

20.     Furthermore, upon discovering that Mr. Lowell may have been involved in possible criminal activity related to a possible bribery-for-pardon and LDA violations that involved Ms. Davis' then co-conspirator Elliott Broidy, Mr. Keller was able to capitalize on Mr. Lowell's personal interest of self-preservation. As memorialized in emails, Mr. Keller was concerned that although Ms. Davis signed the plea agreement, it would not be effective if she stated during her plea hearing that she never intended to violate or assist someone in violating FARA. [ECF No. 48, Pg. 31-34; ECF 58, 20-23]

21.     At the plea hearing, Mr. Keller and Mr. Lowell intentionally misled the Court about the conflict waiver addendum for the purpose of avoiding a detailed colloquy by the Court. This is supported by Mr. Keller's own statements in his August 25, 2020 Email to Mr. Lowell stating, "[t]his seems like a cleaner, more controlled way to address the potential conflict issue, rather than raising it at the plea hearing cold and having the court potentially initiate a full-blown colloquy with Ms. Davis about her understanding of the potential issues and conflict." [ECF No. 120, Pg. 8-9] The addendum was filed under seal, without the Court's permission, and Mr. Keller only raised the issue of the addendum to Court in passing at the end of the plea hearing. When the Court inquired as to the nature of the waiver Mr. Keller misrepresented to the Court the purpose of the sealed addendum was to avoid certain individuals that they are potential subjects of the government's investigation, when in fact that very individual, Mr. Lowell, was already clearly aware. In response to a private communication from Mr. Lowell during the hearing, where Mr. Lowell inquired why Mr. Keller made mention of the addendum, Mr. Keller informed Mr. Lowell that he intentionally kept his response vague in order to "avoid any details that could reveal the substance."[ECF No. 48, Pg. 31-34, 58].

22.     Regardless of whether Ms. Davis proved that Mr. Keller's misconduct prejudiced her, Mr. Keller's exploitation of two DOJ investigations into her counsel by NSD and PIN, for the purposes of placing pressure on Mr. Lowell, knowing he had the inclination to put his own self-interest to gain favor over that of his client's Ms. Davis, constitutes prosecutorial misconduct.

Los Angeles, California, December 28, 2022.

/s/ James A. Bryant
JAMES A. BRYANT
WILLIAM C. McCORRISTON
Attorneys for NICKIE MALI LUM DAVIS