McCORRISTON MILLER MUKAI MacKINNON LLP

WILLIAM C. McCORRISTON         #995-0
DAVID J. MINKIN                #3639-0
Five Waterfront Plaza, 4th Floor
500 Ala Moana Boulevard
Honolulu, Hawai'i  96813
Telephone:  808.529.7300
Facsimile:  808.535.8056
E-Mail:     mccorriston@m4law.com; minkin@m4law.com

JAMES A. BRYANT (*pro hac vice*)
The Cochran Firm California
4929 Wilshire Blvd., Suite 1010
Los Angele, CA 90010
Telephone:  323-435-8205
Facsimile:  310-802-3829
E-mail:     jbryant@cochranfirm.com

Attorneys for Defendant
NICKIE MALI LUM DAVIS

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| UNITED STATES OF AMERICA, | CR. NO. 20-00068 LEK |
|---|---|
| Plaintiff, | DEFENDANT NICKIE MALI LUM DAVIS'S RESPONSE TO GOVERNMENT'S SENTENCING MEMORANDUM; EXHIBIT A; CERTIFICATE OF SERVICE |
| vs. | |
| NICKIE MALI LUM DAVIS; | |
| Defendant. | |

430429.12

DEFENDANT NICKIE MALI LUM DAVIS'S RESPONSE TO
GOVERNMENT'S SENTENCING MEMORANDUM

Defendant NICKIE MALI LUM DAVIS ("Davis"), by and through her attorneys undersigned, hereby responds to the Government's Sentencing Memorandum[1].

### A. Government's Recommended Sentence

In its filing, the Government recommends, *inter alia*, a term of incarceration for thirty (30) months. Despite the Government's promise that Ms. Davis would be given credit for her cooperation, it is nowhere evident in its recommendation which is ten times (10x) the recommendation by the Probation Office and inconsistent with the case citations offered by the Government and the PSR.

### B. Cases Cited by the Government Lack Comparability

The Government asserts that three purportedly "similar" cases are "instructive" in determining the sentence. Gov. Sen Mem. 14. As even the Government's descriptions demonstrate, the cases are far from "similar," and, if anything, support a probationary sentence for Ms. Davis rather than the Government's recommendation.

The first case cited by the Government is *United States v. Zuberi*, where the defendant was sentenced on two different indictments that also included convictions

---

[1] The sentencing process was stayed during the Motion to Vacate Plea; proceeding which now is ended; hence our Reply at this time.

for tax evasion, illegal campaign contributions, and witness tampering (and additional allegations of massive fraud).  See C.D. Cal. No. 19CR00642-VAP, Docket Entry 233.  His sentencing guideline range for the multiple counts of conviction was 121-151 months.  In essence, the defendant did not receive any additional time for his FARA violation because he received a within-guidelines sentence of 144 months, and that range was based on all of his other fraudulent and obstructive activity.  Interestingly, the Government claimed that Zuberi's "FARA offenses are pervasive and among the most wide-ranging ever prosecuted[,]" id., a claim that it repeats here, taking much of the bite out of the familiar hyperbole.

The second case cited by the Government is the highly publicized prosecution of Paul Manafort.  Like Zuberi, Manafort's criminality was so pervasive that he was charged in two different indictments, one of which he went to trial on, and was convicted on numerous counts.  As stated in the sentencing memorandum submitted by the Government in the Manafort case, he "committed an array of felonies for over a decade," including "tax fraud, money laundering, obstruction of justice, and bank fraud, [and] more esoteric laws that he nevertheless was intimately familiar with, such as the Foreign Agents Registration Act (FARA)."  D.D.C. No. 17CR00210-ABJ, Docket Entry 528.  Again like Zuberi, he essentially received no additional time for his FARA conduct because he only received sentences of 60 and 47 months on both indictments (much of which was run concurrently), far below the guidelines

range of 235-293 months generated for the totality of his criminal conduct, which was based on an offense level of 38.  See E.D. Va. No. 18CR00083-TSE, Docket Entry 326.  Thus, Manafort received a downward departure or variance of approximately 15 years.  Despite the fact that Manafort's conduct and convictions were far more serious, the Government would not even recommend a specific custodial sentence for him, and therefore its custodial recommendation for Ms. Davis is, for practical purposes, a remarkably harsher one.  Of course, Manafort was also pardoned and therefore did not have to serve the bulk of his far below-guidelines sentence.

The final case cited by the Government is *United States v. Tongsun Park*.  As the Government's description recognizes, Park was also convicted of conspiring to violate 18 U.S.C. § 951 for acting on behalf of a foreign Government, and conspiring to commit money laundering, both more serious offenses.  In addition, the parties in Park stipulated that the guidelines range was 57-60 months, and therefore his 37-month sentence was below the range.  See S.D.N.Y. No. 05CR00059-DC, Docket Entry 343.  In contrast, while no guideline governs this case, a good reference point is U.S.S.G. § 2C1.3, which produces the minimum range of 0-6 months based on some of the lowest calculations possible on the sentencing table.  The bottom line is that all of the cases referenced by the Government involved more serious counts of conviction that were governed by statutory and guidelines sentencing provisions

calling for much higher sentences. And, as recognized by the probation officer, perhaps the most relevant comparison is to Ms. Davis's codefendant, Elliott Broidy, who received a full and unconditional pardon and therefore will serve no time for his more culpable conduct[2].

## C. Defendant Davis's Cooperation is Not Recognized in the Government's Recommendation

Since the Government's first contact with Ms. Davis beginning in 2019, she provided invaluable and substantial assistance resulting in the following: (1) a criminal indictment of Pras Michel; (2) the filing of a civil FARA action against casino mogul Steve Wynn; and most importantly (3) a guilty plea of the former Republican National Committee – Finance Chair Elliott Broidy.

1. <u>June 18, 2019 / July 26, 2019 Proffers</u>

Following Ms. Davis's initial contact with Department of Justice ("DOJ") prosecutors in mid-2019 regarding her alleged role in assisting Malaysian businessman Low Taek Jho's ("Jho Low") lobbying efforts of U.S. Government officials related to pending civil and criminal investigations against him, as well as

---

[2] The cases cited in the PSR (¶ 52) are somewhat more comparable although they involve principals; not aiders or abettors. Significantly, all but one resulted in probation. The only case involving substantial assistance (cooperation) is *USA vs. Potten*, resulting in probation.

assisting in the facilitation of the safe return of U.S. citizens held hostage in China, Ms. Davis entered into a proffer agreement with the Department of Justice.

In agreeing to participate in a proffer with the DOJ, Ms. Davis initiated what would be an over three-year period of cooperation with DOJ prosecutors, providing them invaluable information related to the activities surrounding Jho Low's lobbying efforts through Pras Michel and Elliott Broidy, as well as providing information related to efforts to secure the return of U.S. hostages held in China in exchange for the return of Chinese National Guo Wengui. At the time that Ms. Davis began her cooperation she was informed that she was a witness with potential information that the DOJ sought, and that at the time she was not the specific target of the investigation.

In good faith, and after several weeks of preparation with her then counsel Abbe D. Lowell, which included the review of documents provided by the DOJ and related documents that she produced, Ms. Davis flew to Washington D.C. to conduct her first proffer on June 18, 2019. Subsequently, given the value of the information provided to prosecutors during the initial proffer, the DOJ conducted a second proffer on July 26, 2019. As referenced above, at the time Ms. Davis was not informed that she was a target of the DOJ's investigation and all expenses related to her cooperation were covered by her.

2. <u>Ms. Davis's Cooperation Results In The Indictment and Guilty Plea of Elliott Broidy</u>

In or around August 31, 2020, on the advice of counsel, Ms. Davis entered into a Memorandum of Plea Agreement ("MOPA") where she agreed to plead guilty to one count of aiding and abetting a violation of the Foreign Agent Registration Act ("FARA"). In entering this plea, Ms. Davis agreed, among other things, that she would be required to serve as a cooperating witness for the Government's investigation described above. It was explicity told to Ms. Davis that at the time of the plea, the Government required her cooperation in order to procure an indictment and conviction of Mr. Broidy.

This understanding that Ms. Davis's cooperation was paramount to procuring approval of an indictment of Mr. Broidy, where PIN prosecutors had yet to obtain approval to move forward with such an indictment, was supported by internal DOJ communications amongst the prosecutors who were seeking to indict him. As evidenced by an August 18, 2020 communication between PIN prosecutors John Keller and Victor Salgado, Mr. Salgado confirmed that at the time that Ms. Davis's information was filed, Mr. Keller had not yet obtained approval to move forward with the indictment of Elliott Broidy. Mr. Salgado then states through an inquiry, that in obtaining Ms. Davis's cooperation this should make approval of Mr. Broidy's indictment easier as highlighted below.

> **Salgado, Victor (CRM)**
>
> **From:** Salgado, Victor (CRM)
> **Sent:** Tuesday, August 18, 2020 11:08 AM
> **To:** Keller, John (CRM)
> **Subject:** Re: Lum Davis
>
> Yes, he sent it last night. Well done and congrats!
>
> Also, now that this is out there, it should be easier to get approval for Person B's indictment right?
>
>> On Aug 18, 2020, at 8:10 AM, Keller, John (CRM) <John.Keller@crm.usdoj.gov> wrote:
>>
>> Jamie may have already sent this but filed Information attached. Still have to get through the plea hearing but still a big development. Thank you for all of your work throughout on the filter side to make this possible.
>> <ECF No. 1__Information.pdf>

Mr. Salgado's email to Mr. Keller makes clear that as of August 18, 2020, Mr. Keller had difficulties in obtaining approval to indict Mr. Broidy, and needed some further support to obtain that approval. Further, Ms. Davis's agreement to plead guilty and serve as a cooperating witness against Mr. Broidy, this would make obtaining approval to indict Mr. Broidy much easier.

Following the entry of Ms. Davis's guilty plea for a count of aiding and abetting a violation of FARA on August 31, 2020, on October 20, 2020, Mr. Broidy pled guilty to one count of conspiracy to violate FARA, thus showing just how critical Ms. Davis's cooperation was in ensuring his conviction. In entering into his own MOPA, Mr. Broidy too agreed to become a cooperating witness.

In or around January 2021, Mr. Broidy received a pardon from former President Donald Trump negating his conviction. However, despite the presidential

pardon, Mr. Broidy still identified as a cooperating witness in the United States' upcoming trial against Pras Michel, who was recently indicted as a result of Ms. Davis's cooperation (including grand jury testimony) as set forth below. Without Ms. Davis's willingness to serve as a cooperating witness against Mr. Broidy, his cooperation would not have been possible.

3. Ms. Davis's Cooperation Results in an Indictment Against Pras Michel

Pursuant to Ms. Davis's MOPA, the Government requested that she provide information and testimony regarding Mr. Michel's involvement in the matters described above. Ms. Davis, through her counsel, was informed that the Government would be requesting that she appear before a grand jury to provide testimony regarding Mr. Michel, and that prior to this testimony she would be required to engage in a preparation session with PIN prosecutors.

On April 14, 2021, and then again April 19, 2021, after having received hundreds of pages of documents from PIN prosecutors, Ms. Davis spent two full days with her counsel reviewing and preparing for the preparation session scheduled with PIN prosecutors for April 20, 2021.

On April 20, 2021, Ms. Davis, with her counsel, participated in a preparation session with various DOJ prosecutors, including lead prosecutor John Keller, which lasted several hours. During this time Ms. Davis continued to reiterate her previous

statements, and other information that DOJ prosecutors felt necessary to prepare her for her to say.

On May 6, 2021, accompanied by her counsel, Ms. Davis traveled to Washington D.C. and testified before a grand jury as the Government's cooperating witness against Mr. Michel. While Ms. Davis's travel accommodations were paid for by the United States, the cost of Ms. Davis's counsel for preparation for her grand jury appearance, as well as his accommodations were all covered by Ms. Davis. Having already entered into her plea, Ms. Davis personally bore these costs of approximately 85 attorney hours, and his travel accommodations, in order to be prepared for and to provide testimony during this grand jury appearance.

On June 10, 2021, following Ms. Davis's cooperation, a grand jury returned a superseding indictment against Mr. Michel related to the abovementioned investigation.

4. <u>Ms. Davis's Cooperation Results In The Filing of A Civil FARA Action Against Steve Wynn</u>

In addition to the DOJ's criminal investigation related to Jho Low, the National Security Division of the DOJ, began a civil FARA investigation into casino mogul Steve Wynn related to his involvement with the Chinese National Guo Wengui. As a result of Ms. Davis's knowledge as it related to Mr. Wynn's activities regarding the aforementioned investigation, DOJ attorneys had requested

cooperation session where Ms. Davis would provide information related to her knowledge of the facts and circumstances surrounding their investigation.

After receiving numerous documents from DOJ attorneys, on August 29, 2021, Ms. Davis and her counsel spent a full day preparing for an August 30, 2021 cooperation session with the requesting prosecutors.

On August 30, 2021, Ms. Davis with her counsel, participated in a joint session with DOJ attorneys regarding Mr. Wynn's involvement with the Guo Wengui matter. Ms. Davis's counsel spent approximately 15 hours reviewing documents, preparing Ms. Davis and attending the joint cooperation session, all of which was a cost borne by Ms. Davis.

On May 17, 2022, the United States filed a civil FARA action against Mr. Wynn.

In sum, Ms. Davis's cooperation was instrumental in procuring the indictment and conviction of Elliott Broidy, along with his cooperation with the DOJ against Mr. Michel and possibly others. In addition, Ms. Davis's cooperation resulted in a superseding indictment of Mr. Michel. Finally, Ms. Davis's cooperation resulted in the filing of a civil FARA enforcement action against Mr. Wynn. Furthermore, following Ms. Davis's guilty plea, she continued to cooperate and expend thousands of dollars of her own resources in order to honor her obligations set forth in the plea agreement, and to provide her best cooperation.

Although the PSR acknowledges cooperation can be a mitigating factor, it does not take the foregoing into account in its sentencing recommendation as it was not advised by the Government of the significant cooperation outlined. The Government, contrary to the obligations in the MOPA, did not advise those persons conducting the PSR or the Court of Ms. Davis's significant cooperation. Ms. Davis never received any communication that she failed in any way to live up to her cooperation obligations under the MOPA and in fact, was praised for her cooperation following Mr. Broidy's plea and Mr. Michel's indictment.

### D. Ms. Davis's Supporting Role is Not Recognized as the Government Treats Her as a Principal

As acknowledged in the MOPA (¶ 5), Mr. Broidy initially falsely assured Ms. Davis that "their work could consist of legal representation and should not require them to register under FARA…" This made sense to Ms. Davis as Mr. Broidy's wife and her law firm were involved and Mr. Broidy claimed to have consulted with additional legal counsel. It is true that Ms. Davis did not revisit this issue.

It is undisputed under the MOPA that Ms. Davis never met with any DOJ officials (including George Higgenbottom), or any other Trump Administration officials with regard to any of the lobbying efforts. It is further undisputed that Mr. Broidy's efforts (which were largely overstated by him (MOPA ¶ 1) were

unsuccessful (MOPA ¶ 5).  No action was taken by anyone in the Administration to accommodate Mr. Broidy's lobbying efforts.

Thus, while there may be important policy foundations for FARA, the circumstances of this case are mitigating in terms of any actual harm that was inflicted by the conduct, which is important to give perspective and context in formulating a fair and equitable sentence.

Ms. Davis's role, as evidenced by the MOPA, was primarily administrative support for Mr. Broidy and Mr. Michel (MOPA ¶ 12.  She transmitted information for Mr. Broidy and others[3], coordinated meetings[4], and provided other administrative and logistical support[5].  It was understood that the lobbying efforts of U.S. Officials would involve and be the responsibility of only Mr. Broidy.  While Ms. Davis attended a meeting  in Bangkok and in China with Jho Low, Mr. Michel and Mr. Broidy,  both meetings were arranged by Mr. Michel with Ms. Davis only conveying the schedule and logistics from Mr. Michel to Mr. Broidy.  It was made clear in each meeting that Mr. Broidy – not Ms. Davis – would lobby the Trump Administration.  No one anticipated or proposed in any meeting that Ms. Davis would have a role in personally lobbying the Trump Administration.  And she didn't.  This is confirmed

---

[3] See MOPA ¶ 8(a) 5, 20, 21, 42, 44, 45, 47, 54, 55, 65, 66, 68, 73, 76, 82, 84-89, 90-92
[4] See MOPA ¶ 8(a) 21, 22, 27-30, 43, 48, 51-53, 57, 65, 72, 74, 76
[5] See MOPA ¶ 8(a) 5, 26, 27, 34, 33, 36, 39-41, 48, 51, 60, 65

in the finding in the PSR (¶ 5) that Ms. Davis was far less, Mr. Michel and Mr. Broidy[6].

### E. The PSR Recommended Sentence

While the PSR recommended a sentence of 3-months imprisonment, it did **not** have the information about Ms. Davis's cooperation, which should have been provided by the Government. See ¶ 130 of the PSR, p. 41. The PSR emphasized a "large lobbying payment" to support its recommendation, but the lobbying payment is being re-paid to the Government by way of the MOPA.

### F. Impact on Defendant

Ms. Davis's letter to Judge Kobayashi as to the Government's recommended sentence is attached hereto as Exhibit A.

### G. A Sentence of Probation Would Avoid Sentencing Disparities and Correctly Reflect Ms. Davis's Role

Consistent with the foregoing, we respectfully submit a sentence of probation for a period of 30 months or less together with the financial penalties set forth in the MOPA would be fair and appropriate.

---

[6] While we do not agree that Ms. Davis has pleaded guilty to a "conspiracy", we agree with the PSR conclusion that her role was subordinate to Mr. Broidy and others.

## H. Other Sentencing Matters

If a period of incarceration is imposed, it is respectfully requested that Ms. Davis be given a period of 60 - 90 days to self-surrender so that she can be designated to a suitable institution and deal with family issues – especially with regard to her daughter and finances.  The PSR agrees that self-surrender would be appropriate.  Furthermore, in the event of incarceration, it is requested that your Honor recommends to the Bureau of Prisons that Ms. Davis be placed under house arrest or community confinement, or as a last resort, a low-security Federal prison camp near Los Angeles.

DATED:  Honolulu, Hawai‘i, January 10, 2023.

*/s/ William C. McCorriston*
WILLIAM C. McCORRISTON
DAVID J. MINKIN
JAMES A. BRYANT

Attorneys for Defendant
NICKIE MALI LUM DAVIS