CLARE E. CONNORS #7936
United States Attorney
District of Hawaii

KENNETH M. SORENSON
Assistant U.S. Attorney
Room 6-100, PJKK Federal Bldg.
300 Ala Moana Boulevard
Honolulu, Hawaii   96850
Telephone:  (808) 541-2850
Facsimile:  (808) 541-2958
Email:  ken.sorenson@usdoj.gov

COREY R. AMUNDSON
Chief, Public Integrity Section
United States Department of Justice

JOHN D. KELLER
Principal Deputy Chief

SEAN F. MULRYNE
Deputy Director, Election Crimes
NICOLE R. LOCKHART
Trial Attorney
Public Integrity Section

AMANDA L. MUNDELL
Of Counsel
United States Department of Justice
Appellate Staff, Criminal Division

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR. NO. 20-00068 LEK |
| | ) | |
| Plaintiff, | ) | RESPONSE IN OPPOSITION TO |
| | ) | MOTION FOR BAIL PENDING |
| vs. | ) | APPEAL; CERTIFICATE OF |
| | ) | SERVICE |
| NICKIE MALI LUM DAVIS | ) | |
| | ) | DATE:  March 20, 2023 |
| Defendant. | ) | TIME:  10:00 a.m. |
| | ) | JUDGE:  Leslie E. Kobayashi |
| | ) | |

## RESPONSE IN OPPOSITION TO MOTION FOR BAIL PENDING APPEAL

TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ................................................................................i-iii

BACKGROUND ........................................................................................................2

ARGUMENT .............................................................................................................6

I.      Davis Cannot Raise A Substantial Question Of Law On Appeal Because
        Her Appeal Is Foreclosed By A Valid, Enforceable Appeal Waiver.............7

        A. The Waiver Expressly Forecloses Davis' Claims...............................7

        B. The Waiver Is Enforceable...............................................................11

II.     Even If The Appeal Waiver Does Not Bar Her Appeal, Davis Presents No
        Substantial Question That Would Result In Reversal Or A Lesser Term Of
        Imprisonment...............................................................................................18

        A.      Davis Raises No Substantial Question Regarding The Effectiveness
                Of Counsel......................................................................................18

        B.      The Imposition Of A $250,000 Fine Also Does Not Entitle Davis To
                Bail Pending Appeal.......................................................................23

        C.      Davis's First Amendment Challenge Does Not Present A Substantial
                Question..........................................................................................24

        CONCLUSION.............................................................................................26

## TABLE OF AUTHORITIES

Cases                                                                                Page(s)

*Att'y Gen. of U.S. v. Irish People, Inc.*, 684 F.2d 928 & n.23 (D.C. Cir. 1982)  ... 24

*Borden v. United States*, 141 S. Ct. 1817 (2021) ................................................... 16

*Class v. United States*, 138 S. Ct. 798 (2018) ....................................................... 11

*United States v. Brown*, 875 F.3d 1235  ............................................................... 11

*Cuyler v. Sullivan*, 446 U.S. 335 (1980) ........................................................ 5-6, 18

*Doganiere v. United States*, 914 F.2d 165 (9th Cir. 1990) ............................. 22- 23

*Greer v. United States*, 141 S. Ct. 2090 (2021) .................................................. 25

*Meese v. Keene*, 481 U.S. 465 (1987) .................................................................. 24

*Oliver v. United States*, 951 F.3d 841 (7th Cir. 2020) .......................................... 11

*Americans for Prosperity Foundation v. Bonta for Prosperity Foundation
   v. Bonta*, 141 S. Ct. 2373 (2021) .................................................................. 25

*Puckett v. United States*, 556 U.S. 129 (2009)  .................................................... 25

*Strickland v. Washington*, 466 U.S. 668 (1984)  ................................................ 5, 18

*United States v. Adams*, 432 F.3d 1092 (9th Cir. 2006) .................................. 13-14

*United States v. Anthony*, 545 F.3d 60 (1st Cir. 2008) ......................................... 16

*United States v. Arias-Espinosa*, 704 F.3d 616 (9th Cir. 2012) ........................... 10

*United States v. Arqueta-Ramos*, 730 F.3d 1133 (9th Cir. 2013) ................... 13- 14

*United States v. Baker*, 256 F.3d 855 (9th Cir. 2001)  .......................................... 19

*United States v. Baramdyka*, 95 F.3d 840 (9th Cir. 1996) ....................................... 8

*United States v. Bissell*, 954 F. Supp. 903 (D.N.J. 1997) ...................................... 16

*United States v. Cotton*, 535 U.S. 625 (2002) ......................................................... 10

*United States v. Dominguez Benitez*, 542 U.S. 74 (2004) .............................. 13-14

*United States v. Felix*, 561 F.3d 1036 (9th Cir. 2009) ............................................. 9

*United States v. Frisby*, 727 F. App'x 299 (9th Cir. 2018) ................................... 17

*United States v. Gonzalez-Aparicio*, 663 F.3d 419 (9th Cir. 2011) ...................... 26

*United States v. Gonzalez-Melchor*, 648 F.3d 959 (9th Cir. 2011) ...................... 11

*United States v. Guerra, No. 21-10921*, 2022 WL 244082
      (11th Cir. Jan. 27, 2022) ................................................................................. 16

*United States v. Haensgen*, 775 F. App'x 284 (9th Cir. 2019) ............................. 10

*United States v. Lo*, 839 F.3d 777 (2016) ............................................................... 8

*United States v. Michel, No. 1:19-cr-00148*, 2022 WL 4182342
      (D.D.C. Sept. 13, 2022) .............................................................................. 24-25

*United States v. Naghani*, 361 F.3d 1255 (9th Cir. 2004) .................................... 11

*United States v. Nishida*, 53 F.4th 1144 (9th Cir. 2022) ........................................ 9

*United States v. Odachyan*, 749 F.3d 798 (9th Cir. 2014) ................................... 7-8

*United States v. Palmer*, 854 F.3d 39 (D.C. Cir. 2017) ....................................... 10

*United States v. Reichert*, 747 F.3d 445 (6th Cir. 2014) ...................................... 16

*United States v. Ross*, 511 F.3d 1233 (9th Cir. 2008) ........................................... 17

*United States v. Shields*, 844 F.3d 819 (9th Cir. 2016) .................................... 25-26

*United States v. Walter-Eze*, 869 F.3d 891 (9th Cir. 2017) ............................. 20-21

*United States v. Wells*, 29 F.4th 580 (9th Cir. 2022) ........................................... 8- 9

*United States v. Wells¸* 394 F.3d 725 (9th Cir. 2005) ........................................... 20

<u>Statutes and Rules</u>

18 U.S.C. § 2 ........................................................................................................... 3

18 U.S.C. § 3143(b)(1)(B) ............................................................................ 2, 7, 24

18 U.S.C. § 3571 .....................................................................................................23

18 U.S.C. § 3571(b) ........................................................................................ 23-24

?18 U.S.C. § 3571(e) ............................................................................................ 23

22 U.S.C. § 612 .............................................................................................. 15, 17

22 U.S.C. § 618 ..................................................................................................... 23

22 U.S.C. § 618(a) ................................................................................................. 15

22 U.S.C. § 622 ....................................................................................................... 3

Fed. R. Crim. P. 11 ....................................................................................... 8, 13-15

Fed. R. Crim. P. 11(b)(1)(H) ................................................................................ 12

Fed. R. Crim. P. 11(h) ........................................................................................... 13

Fed. R. Crim. P. 52(b) ........................................................................................... 25

<u>RESPONSE IN OPPOSITION TO MOTION FOR BAIL PENDING APPEAL</u>

For at least 8 months in 2017 and 2018, Davis helped lobby the former President of the United States and his administration to drop a criminal investigation into the largest kleptocracy scheme in history and to extrajudicially remove a critic of the Chinese government so that he could be prosecuted in China in exchange for $10 million. After successfully negotiating a favorable plea agreement, Davis pleaded guilty to aiding and abetting a violation of the Foreign Agents Registration Act (FARA).

Over two years later, Davis moved to withdraw her plea. She contended that her former attorney Abbe Lowell was ineffective because he allegedly negotiated her plea agreement while laboring under a conflict of interest. The court denied Davis's motion and ultimately sentenced her to 24 months' imprisonment with a $250,000 fine.

Davis appealed the court's sentence and denial of her motion to withdraw her guilty plea, and now seeks bail pending appeal. The motion should be denied. To obtain bail pending appeal, a defendant must present "clear and convincing evidence that [she] is not likely to flee or pose a danger to the safety of any other person or the community if released" and must demonstrate that "the appeal is not for the purpose of delay and raises a substantial question of law or fact" that is "likely to result in," among other things, "reversal" of her conviction or a lesser

term of imprisonment.  18 U.S.C. § 3143(b)(1)(B).  The government does not contend that Davis poses a flight risk or a danger to the community at this time, so the only question for the court to decide is whether Davis has met the substantial-question standard.  She has not.

Davis's request fails at the outset because Davis knowingly and voluntarily pleaded guilty pursuant to a plea agreement with a broad waiver of her right to appeal her conviction and sentence, and her claims fall within the scope of that waiver.  Even if they did not, this court soundly rejected Davis's motion to withdraw her guilty plea.  Davis has offered no substantial question on which the Ninth Circuit is likely to reverse or impose lesser term of imprisonment:  Lowell was not laboring under an actual conflict of interest; even assuming an actual conflict, Davis does not identify any plausible defense tactic that Lowell failed to undertake because of the alleged conflict; Davis would have pleaded guilty notwithstanding the maximum fine; and numerous courts have upheld the constitutionality of FARA.

## BACKGROUND

In 2017, Davis became the subject of a grand jury investigation of, among other things, a "conspiracy to interfere [with] or obstruct lawful government functions through dishonest means," "to act as an unregistered foreign agent," and "to commit international promotion money laundering by funneling proceeds from

2

overseas into the U.S. to promote violations of the Foreign Agents Registration

Act." July 9, 2018, Lum Davis, Nickie Grand Jury Subpoena, Ex. 1. After

extensive plea negotiations, the government filed a one-count Information charging

her with aiding and abetting a FARA violation under 22 U.S.C. § 622 and 18

U.S.C. § 2, Dkt. 13, 15, and a corresponding plea and cooperation agreement. At

the time, Abbe Lowell and William McCorriston represented Davis. They

successfully negotiated an agreement in which Davis admitted that she "willfully

failed to register under FARA while" engaging in the back-channel influence

campaign, and agreed to waive the "right to appeal . . . her conviction and any

sentence within the statutory maximum as determined by the Court at the time of

sentencing . . . on any ground whatsoever." ECF No. 15, at 33. Davis further

agreed that "this waiver includes the right to assert any and all legally waivable

claims." *Id.* In exchange, the government agreed "to not prosecute the defendant

for additional violations of federal law." *Id.* at 3.

During the plea hearing, Davis confirmed her understanding of the plea

agreement, stating that the factual basis was "true in every respect," and

represented that she was "fully satisfied with the legal representation that [she]

ha[d] received from [her] attorneys in this case." Dkt. 21, at 9, 21. The court

informed Davis that the maximum penalties she could face included a five-year

term of imprisonment and a $10,000 fine. *Id.* at 14. Finding that Davis's plea was

3

"knowing and voluntary and contains admissions of fact containing each of the essential elements of the offense charged," the court then accepted her guilty plea and ordered the Probation Office to prepare a presentence investigation report.  *Id.* at 23-24.

Over two years later, Davis sought to unwind her plea by asserting that Lowell had a conflict of interest.  *See* Dkt. 117.  She claimed that at the time Lowell negotiated her plea agreement, he was under investigation for similar criminal conduct and failed to inform her about the investigation.  *Id.*  The government opposed Davis's motion to withdraw her plea.  Dkt. 124.  The government explained that Lowell had no conflict of interest during the relevant period because the government had "never initiated a criminal investigation of Lowell" and because "Lowell was unaware . . . during plea negotiations" that a government filter team was reviewing conduct in connection with a pardon he sought earlier on behalf of another client.  *Id.* at 1-2.  Because Lowell had no knowledge of the filter team's review of his conduct until more than a week after the negotiated Information was filed and after the parties had agreed to the terms of Davis's plea agreement, the government explained, "[t]here was no actual conflict and no adverse effect on the defendant's representation during plea negotiations or the plea hearing itself."  *Id.* at 12.

4

The court denied Davis's motion.  Dkt. 134.  The court explained that Davis was entitled to withdraw her guilty plea and recission of the plea agreement only if she could show that Lowell's performance was "deficient, and that this deficient performance prejudiced [her] defense."  *Id.* at 10 (quotation marks omitted).  The court "assumed (for purposes of this Motion only)" Lowell had a "conflict of interest," which Davis "did not waive."  *Id.* at 12-14.  The court nevertheless rejected Davis's contention that Lowell's "conduct fell below the standard of reasonableness because he failed to submit an internal appeal to the Office of the Deputy Attorney General" on Davis's "behalf to avoid an indictment and guilty plea."  *Id.* at 14.  The court stated that the "alleged failure to seek a novel and untested approach must be given healthy deference by this Court."  *Id.*

The court then turned to the question of prejudice under *Strickland v. Washington*, 466 U.S. 668 (1984).  The court acknowledged that prejudice is "presumed" if Davis could show that Lowell "'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected [her] lawyer's performance.'"  Dkt. 134, at 15 (quoting *Strickland*, 466 U.S. at 688, and *Cuyler v. Sullivan*, 446 U.S. 335, 350, 348 (1980)).  The court found that there was no adverse effect on her lawyer's performance:  Davis "fail[ed] to demonstrate a reasonable probability that, but for Attorney Lowell's alleged failure to warn her

that she faces a sentence of imprisonment, she would not have entered a guilty plea." *Id.* at 17.

The Probation Office prepared a Presentence Investigation Report (PSR) which largely tracked the recommended penalties outlined in Davis's plea agreement except that the Probation Office concluded that the maximum fine was $250,000, not $10,000. *Compare* Dkt. 15, at 4, *with* Dkt. 106, at 45. Davis objected to this determination, as well as other aspects of the PSR.

At sentencing, the court accepted Davis's plea agreement and adopted the PSR's factual findings. Sent. Tr. 7-8. The court explained that Davis's offense was not subject to the Sentencing Guidelines, but identified a number of aggravating factors that would bear on the court's sentence within the statutory range, including the fact that Davis's conduct "involved serious crimes for profit" and that she had "shown no remorse or taken responsibility" for her conduct but had instead "tried to blame [her] change of plea on [her] former counsel in a misguided attempt to rewrite history." *Id.* at 9. After hearing from both parties, the court imposed a sentence of 24 months' imprisonment, with a fine of $250,000, and three years' supervised release. *Id.* at 41-42. Davis timely appealed.

## ARGUMENT

Because the government is not contending that Davis is a flight risk or danger to the community, to obtain bail pending appeal, Davis must demonstrate

that "the appeal is not for the purpose of delay and raises a substantial question of law or fact" that is "likely to result in," among other things, "reversal" of her conviction or a lesser term of imprisonment.  18 U.S.C. § 3143(b)(1)(B).  She cannot make that showing.  The vast majority of the issues Davis has raised are subject to the broad appeal waiver contained in her plea agreement, but even if the court reaches her claims on the merits, Davis fails to show that the Ninth Circuit is likely to reverse or impose a lesser term of imprisonment.

## I.   Davis Cannot Raise A Substantial Question Of Law On Appeal Because Her Appeal Is Foreclosed By A Valid, Enforceable Appeal Waiver.

An appeal that raises issues encompassed by a valid, enforceable waiver of appeal must dismissed.  "A defendant's waiver of [her] appellate rights is enforceable if the language of the waiver encompasses [her] right to appeal on the grounds raised, and if the waiver was knowingly and voluntarily made."  *United States v. Odachyan*, 749 F.3d 798, 803 (9th Cir. 2014).  Both requirements are met.

### A.   The Waiver Expressly Forecloses Davis' Claims.

As relevant here, Davis's negotiated plea agreement expressly waives the "right to appeal . . . her conviction and any sentence within the statutory maximum as determined by the Court at the time of sentencing . . . *on any ground whatsoever*."  ECF No. 15, at 33 (emphasis added).  Davis agreed that "this waiver includes the right to assert *any and all* legally waivable claims."  *Id.* (emphasis added).  She further agreed that the only exceptions to this broad waiver of

7

appellate rights are:  (1) Davis retains the right to appeal her sentence "[i]f the Court determines an applicable guideline range despite the parties' agreement that the Guidelines do not apply to this offense," and (2) Davis may bring an ineffective assistance of counsel claim to challenge her conviction or sentence on collateral review.  *Id.* (emphasis added).  Davis confirmed as much during the plea colloquy. Dkt. 21, at 13-14.

By its plain terms, the waiver encompasses the various claims of error that her appeal raises.  Davis seeks to withdraw her guilty plea on the ground that counsel was ineffective, that this court failed to follow the requirements of Rule 11, that this court imposed too high a fine, and that her sentence is the product of an unconstitutional conviction.  The vast majority of these claims are "legally waivable," Dkt. 15, at 33; *see, e.g.*, *United States v. Lo*, 839 F.3d 777, 785 (9th Cir. 2016) (appeal waiver includes claim that "district court abused its discretion in denying the defendant's motion to withdraw [her] guilty plea").  The claims are foreclosed by Davis's agreement to waive "the right to appeal . . . her conviction and any sentence . . . on any ground whatsoever."  Dkt. 15, at 33; *see United States v. Baramdyka*, 95 F.3d 840, 843 (9th Cir. 1996) ("The scope of a knowing and voluntary waiver is demonstrated by the express language of the plea agreement."); *United States v. Wells*, 29 F.4th 580, 584 (9th Cir. 2022) (agreement to waive the

"right to appeal any aspect of [defendant's] sentence" was "unambiguous" and barred appeal absent an exception).

Nor do Davis's claims fall within an exception to the waiver:  this court did not apply the Guidelines to her offense, and because Davis is not seeking collateral review, she cannot invoke the exception to the waiver that would allow her to bring an ineffective-assistance-of-counsel claim at this stage.  Davis is incorrect in suggesting that this court created additional exceptions to the waiver during the plea colloquy, or that the government waived any objection to enforcing the appeal waiver by not objecting to those exceptions.  Mot. 18.  "A district court's comments overcome an otherwise valid appeal waiver only if they are 'unambiguous' and 'without qualification.'"  *United States v. Nishida*, 53 F.4th 1144, 1149 (9th Cir. 2022).  Although after accepting Davis's guilty plea the court stated in passing that Davis "was not waiving any claims of prosecutorial misconduct or judge-created error unknown to her at the time of the plea," Dkt. 21, at 23, the court did not make this statement in reference to Davis's right to appeal her conviction or sentence.  Rather, the court made this statement after announcing that it would decide whether to accept the proposed plea agreement at a later date.  *See id.*  Davis's reliance (Mot. 19) on *United States v. Felix*, 561 F.3d 1036, 1041 (9th Cir. 2009), is therefore mistaken, because unlike here, the court in *Felix* made stated clearly that the defendant had the "right to appeal" on a particular ground.

9

*United States v. Arias-Espinosa*, 704 F.3d 616, 619 (9th Cir. 2012) (discussing its holding in *Felix*). At most, therefore, this court's statement created ambiguity that neither limited the terms of the plea agreement nor required an immediate objection in order for the government to enforce the waiver against Davis's appeal.

Davis is mistaken in claiming that her First Amendment challenge is "jurisdictional and cannot be waived." Mot. 20. Courts frequently apply appeal waivers to constitutional claims, including constitutional challenges to a defendant's conviction. *E.g.*, *United States v. Palmer*, 854 F.3d 39, 51 (D.C. Cir. 2017) (explaining that "facial challenges to the constitutionality of presumptively valid statutes are not jurisdictional" and that "whether an indictment charged a proper offense goes to the merits, not subject matter jurisdiction"); *United States v. Cotton*, 535 U.S. 625, 630-31 (2002). *United States v. Haensgen*, 775 F. App'x 284 (9th Cir. 2019), is not to the contrary. There, the defendant merely waived "any right to appeal [his] conviction." Gov. Answering Br. 3. Under those circumstances, a Ninth Circuit panel concluded in an unpublished nonprecedential decision that the defendant's "general waiver[] . . . [did] not cover" his constitutional claim. Here, by contrast, Davis agreed to waive the "right to appeal . . . her conviction and any sentence . . . *on any ground whatsoever*," and gave up the right to assert "*any and all* legally waivable claims." ECF No. 15, at 33 (emphasis added).

Davis's reliance on *Class v. United States*, 138 S. Ct. 798 (2018), *United States v. Brown*, 875 F.3d 1235 (9th Cir. 2017), and *United States v. Naghani*, 361 F.3d 1255 (9th Cir. 2004), is similarly misplaced. *Naghani* did not involve a guilty plea or an appeal waiver. And *Class* and *Brown* only considered "whether a guilty plea *by itself* bars a federal criminal defendant from challenging the constitutionality of the statute of conviction on direct appeal" and held that it does not. *Class*, 138 S. Ct. at 803, 807 (emphasis added); *Brown*, 875 F.3d at 1238; *accord Oliver v. United States*, 951 F.3d 841, 845-46 (7th Cir. 2020) ("*Class* was about how to interpret only a plea of guilty, not the terms of a plea agreement for which the parties bargained"). Neither suggests that a more comprehensive waiver like Davis's would not bar an appeal raising a constitutional challenge that falls within the scope of the waiver. Because courts apply "[c]ontract principles" when reviewing the terms of a plea agreement, "broad and explicit" waivers are "enforceable even against a so-called 'jurisdictional' challenge." *Oliver*, 951 F.3d at 845.

## B.     The Waiver Is Enforceable.

The appeal waiver was also knowing and voluntary because "under the totality of the circumstances, [it] was the product of a free and deliberate choice rather than coercion or improper inducement." *United States v. Gonzalez-Melchor*, 648 F.3d 959, 962 (9th Cir. 2011). Davis acknowledged that she entered into the

plea agreement, including the waiver of appeal, "knowingly and voluntarily" and that the agreement was not the product of any "threats" or "pressure." Dkt. 15, at 33, 44; Dkt. 21, at 12-13.

Davis contends that the waiver is unenforceable because the plea agreement itself is invalid. She asserts that her "plea was not knowing and voluntary" because this court failed to correctly inform her of the maximum fine available during the plea colloquy and because her plea "was premised on an inadequate factual basis."[1] Mot. 11. Neither contention has merit.

Federal Rule of Criminal Procedure 11(b)(1)(H) requires a district court to inform a defendant of "any maximum possible penalty, including . . . [a] fine." During the plea colloquy, this court informed Davis that one of the "possible penalties that apply to [her] case" was "a fine from zero to $10,000." Dkt. 21, at 14. At sentencing, however, the court adopted the PSR's finding that the

---

[1] Insofar as Davis also claims that her plea was involuntary because her counsel was ineffective, she does not explain why this is so. *See* Mot. 18. In any event, as discussed *infra*, pp. 20-23, Davis cannot show that Lowell labored under an actual conflict of interest while Davis's plea was being negotiated, because (1) Lowell was not under investigation by the Public Integrity Section and was not informed that the filter team was reviewing his conduct until after Davis's plea was negotiated; and (2) the civil FARA inquiry was handled by a separate office and was unrelated to Davis's case. Nor can Davis demonstrate that any conflict of interest adversely affected her legal representation, because she had the benefit of conflict-free representation from Mr. McCorriston and negotiated an agreement that permitted Davis to plead to a single count of aiding and abetting a FARA violation with only limited forfeiture when she otherwise faced numerous potential felony charges in two jurisdictions.

maximum fine was $250,000 and imposed that amount.  Davis contends that the

court violated Rule 11 by failing to correctly inform her of the maximum fine.

And, relying on *United States v. Adams*, 432 F.3d 1092 (9th Cir. 2006), she asserts

that the "incorrect advice . . . undermined the voluntary and knowing nature of the

guilty plea."  Mot. 10.

Although Davis is correct that this court did not identify the $250,000

maximum during the plea colloquy, "Rule 11[] . . . instructs that not every

violation of its terms calls for reversal of conviction by entitling the defendant to

withdraw [her] guilty plea."  *United States v. Dominguez Benitez*, 542 U.S. 74, 83

(2004).  Instead, "[a] variance from the requirements of [Rule 11] is harmless" so

long as "it does not affect substantial rights."  Fed. R. Crim. P. 11(h).  "For an error

to affect substantial rights, in most cases it means that the error must have been

prejudicial:  It must have affected the outcome of the district court proceedings."

*United States v. Arqueta-Ramos*, 730 F.3d 1133, 1139 (9th Cir. 2013) (quotation

marks omitted).  Although Davis initially objected to the $250,000 statutory

maximum, the PSR addendum explained why $250,000, and not $10,000, was the

correct figure.  At sentencing, Davis's counsel indicated that she had no

"remaining objections" after the Probation Office issued the addendum.  Based on

this "position," the court concluded that Davis had "accept[ed] the explanation set

forth in the addendum," and Davis did not re-raise her objection at the time the

court imposed a $250,000 fine.  Sent. Tr. 8.  Accordingly, the Ninth Circuit will likely review Davis's argument for plain error, reversing only if she can "show a reasonable probability that, but for the error, [s]he would not have entered the plea." *Dominguez Benitez*, 542 U.S. at 83.[2]

Davis cannot make the required showing.  Unlike in *Adams*, Davis has never "insist[ed] [s]he would not have pleaded guilty had [s]he known that the court could not adopt [the government's maximum fine] recommendation."  432 F.3d at 1093.  Nor has she even attempted to assert that the "sole motivation for pleading guilty was the agreement . . . with the Government that it would ask the district court" to impose a fine of $10,000 or less.  *Id.*  Rather, "Davis decided to seek a plea agreement solely because of the serious exposure she faced" from the "multiple felony charges," including "conspiracy, money laundering, FARA violations, [and] bank fraud," that the government initially planned to file in "two different jurisdictions."  Dkt. 124-1, at 1, 3.  Davis was "concerned that facing two trials with multiple felony counts could result in her being convicted and sentenced to jail and being separated from her family."  *Id.* at 3.  Because the record

---

[2]  If the court concludes that Davis adequately preserved her objection to the statutory maximum, the government acknowledges that it would "bear the burden of persuasion with respect to prejudice" and must demonstrate that Davis "would have pleaded guilty even without the Rule 11 error."  *Arqueta-Ramos*, 730 F.3d at 1139 (quotation marks omitted).  The government has satisfied that burden for reasons articulated at pp. 14-15.

demonstrates that Davis voluntarily entered into the agreement notwithstanding any misunderstanding of the maximum fine, Davis cannot raise substantial doubts that any Rule 11 error affected the voluntary nature of her plea.[3]

She similarly cannot show that there is an inadequate factual basis for her plea.  Davis acknowledges that a conviction under 22 U.S.C. § 612 requires the defendant to "willfully" fail to file the requisite registration statement, *see id.* § 618(a), but asserts that her plea was "based on a 'conscious avoidance' theory," which she claims does not rise to the level of willfulness.  Mot. 11.  But the factual basis demonstrates that Davis acted willfully:  "The defendant . . . agreed that Person B would use his political connections to lobby the Administration," "as [an] agent[] of Foreign National A in exchange for millions of dollars," and Davis and her confederates "willfully failed to disclose to the Administration and DOJ officials that Person B was acting on behalf of Foreign National A."  Dkt. 15 at 4-5.  The only reference to "conscious avoid[ance]" is in the context of Davis's decision not to "revisit[] FARA," "after it became clear that their lobbying efforts . . . required registration."  *Id.* at 6.  Davis "consciously avoided revisiting FARA"

---

[3]  Davis suggests that the "government breached the plea agreement" by "fail[ing] to object to the Court's imposition of a $250,000."  Mot. 19.  But the government never agreed to object to the district court's imposition of a larger fine and never recommended a fine in excess of $10,000.

precisely because she knew that her and her confederates' conduct was illegal under FARA but wanted to continue the work and willfully did so.

Even assuming that the factual basis relied on deliberate ignorance, "deliberate ignorance is a subjective state of mind that may satisfy the element of willfulness," *United States v. Bissell*, 954 F. Supp. 903, 927 (D.N.J. 1997), and courts have accordingly upheld the use of deliberate-ignorance or willful-blindness jury instructions where the government has a "burden to prove willfulness." *United States v. Anthony*, 545 F.3d 60, 64-65 (1st Cir. 2008) (collecting cases); *see also, e.g.*, *United States v. Reichert*, 747 F.3d 445, 451-52 (6th Cir. 2014); *United States v. Guerra*, No. 21-10921, 2022 WL 244082, at *4 (11th Cir. Jan. 27, 2022) (approving on plain error review application of deliberate ignorance instruction with respect to defendant's knowledge of the "unlawful purpose of the conspiracy" where the government also had to prove willfulness).

Nor is Davis correct in asserting under *Borden v. United States*, 141 S. Ct. 1817 (2021), that "a deliberate avoidance theory is insufficient to establish an *aiding and abetting* FARA violation." Mot. 12. *Borden* addressed whether offenses with a mens rea of recklessness qualify as violent felonies under the Armed Career Criminal Act, 141 S. Ct. at 1822. The Court did not opine on the mens rea necessary to establish an aiding and abetting violation, let alone criminal liability under FARA. Insofar as dicta in *Borden* suggests that "accessory liability"

16

for some crimes may require "a purposeful mental state," 141 S. Ct. at 1823 n.3, the factual basis contained in Davis's plea agreement readily clears that bar, as discussed above. Even so, "[a]iding and abetting liability can . . . be based on deliberate ignorance." *United States v. Frisby*, 727 F. App'x 299, 302 (9th Cir. 2018).

In any event, Davis's suggestion that she did not admit willfulness is belied by Davis's own sworn statements. At no point during plea negotiations or the plea colloquy did she object that her conduct did not rise to the level of willfulness required by §§ 612 and 618(a). To the contrary, when asked to describe the factual basis for her plea, Davis explained that she "knew" that her "work would include . . . others contacting officials in the U.S. government," that "[FARA] required disclosure of such contact," and that she "deliberately avoided taking the steps necessary that might confirm . . . that registration was required." Dkt. 21, at 22. Davis herself then stated, in open court and under oath, that she "*willfully* failed to register." *Id.* (emphasis added). These statements "carry a strong presumption of veracity," *United States v. Ross*, 511 F.3d 1233, 1236 (9th Cir. 2008), and they are sufficient to demonstrate that there was an adequate factual basis for her plea.

//

//

17

**II.    Even If The Appeal Waiver Does Not Bar Her Appeal, Davis Presents No Substantial Question That Would Result In Reversal Or A Lesser Term Of Imprisonment.**

> **A.    Davis Raises No Substantial Question Regarding The Effectiveness Of Counsel.**

Davis first challenges this court's denial of her motion to withdraw her guilty plea on the ground that her former counsel was ineffective.  Under *Strickland v. Washington*, 466 U.S. 668, 688 (1984), courts evaluating ineffective-assistance-of-counsel claims consider whether counsel's "representation fell below an objective standard of reasonableness" and whether that deficiency prejudiced the defendant.  Where "counsel is burdened by an actual conflict of interest," however, the court presumes prejudice if the defendant can show that her attorney "actively represented conflicting interests" and "an actual conflict of interest *adversely affected* [the] lawyer's performance."  *Cuyler v. Sullivan*, 446 U.S. 335, 350, 348 (1980).

In evaluating Davis's claims, this court declined to determine whether Attorney Lowell had an actual conflict of interest and assumed for the sake of analysis that he did.  *Id.* at 11-15.  In light of the Court's subsequent factual findings that Lowell's FARA inquiry was "a civil matter handled by NSD FARA Unit attorneys," Dkt. 135 at 4, and that "Neither Mr. Keller nor anyone else at the Public Integrity Section initiated a bribery-for-pardon or Lobbying Disclosure Act investigation of Mr. Lowell," *id.* at 5, Davis cannot show that Lowell labored

under an actual conflict of interest. *See, e.g., United States v. Baker*, 256 F.3d 855, 861 (9th Cir. 2001) ("Other circuits that have found an actual conflict under analogous circumstances have emphasized the fact that the same office was prosecuting or investigating both the attorney and client.").

Even assuming an actual conflict, the Court identified the correct standard for determining prejudice under *Cuyler*, Dkt. 134, at 15, and then addressed Davis's argument that "she would not have agreed to enter a guilty plea but for Attorney Lowell's representation that she would receive a sentence of probation and not . . . imprisonment." *Id.* at 15-16. The court found that Davis was well aware that "by agreeing to the plea agreement" she could face a term of imprisonment. The court then stated that Davis "thus fails to demonstrate a reasonable probability that, but for Attorney Lowell's alleged failure to warn her that she faces a sentence of imprisonment, she would not have entered a guilty plea." *Id.* at 17.

Davis contends that she is entitled to bail pending appeal because this court "misapplied the test for ineffective assistance of counsel and withdrawal of a plea in the context of an actual conflict of interest" by analyzing whether Davis was "prejudice[d]" by the conflict. Mot. 4. Insofar as the court intended to apply the traditional standard of prejudice under *Strickland*, the government acknowledges that the proper framework is the one set forth in *Cuyler*. *See* Dkt. 124, at 7. But

Davis fails to show that correcting any error regarding the prejudice standard—and applying *Cuyler*'s adverse effect test—would lead a reviewing court to either reverse her conviction or reduce her term of imprisonment.

In considering whether an actual conflict of interest adversely affected counsel's performance, courts determine whether (1) there was "some plausible alternative defense strategy or tactic [that] might have been pursued but was not," and (2) "the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests." *United States v. Walter-Eze*, 869 F.3d 891, 901 (9th Cir. 2017) (quoting *United States v. Wells*¸ 394 F.3d 725, 733 (9th Cir. 2005)).  Davis has failed to make either showing.

First, Davis identifies a number of alternative options she claims Lowell should have pursued, but none was a plausible defense tactic.  For example, she asserts that Lowell should have advised her of the viability of submitting an appeal to the Office of the Deputy Attorney General (ODAG).  But this court has already found that such an approach would have been "novel and untested," and therefore cannot be considered ineffective under the circumstances.  Dkt. 134, at 14.  Davis also contends for the first time in her Motion that Lowell could have sought "a government recommendation for probation," sought "a government recommendation for an alternative sentence (such as home detention, community confinement, or a split sentence)," sought "to limit the government's sentencing

recommendation within the . . . 0-5 year range provided under the plea agreement," or requested that "the government recommend use of U.S.S.G. § 2C1.3, which . . . would have set a guideline range of 0-6 months." Mot. 7-8. Some of these strategies Lowell "tried hard" to pursue, albeit unsuccessfully. *See* Dkt. 124-1, at 5-6 (probation). As to others, Davis fails to demonstrate that any of these strategies would have been viable, because the government would never have agreed to any of these requests particularly given the other favorable terms of Davis's plea agreement, and because Davis demanded as a term of the plea agreement that no "sufficiently analogous guideline" would apply at sentencing. Dkt. 15 at 32; *id*. at 33-34 (reserving as her only right to appeal the ability to appeal her sentence if "the Court determine[d] an applicable guideline range despite the parties' agreement.").

Even if the alternatives Davis identifies could be considered plausible strategies, to prove adverse effect, Davis must show that Lowell chose not to pursue these alternative strategies *because of* his "other loyalties or interests." *Walter-Eze*, 869 F.3d at 901. Davis's allegations fail to satisfy this nexus requirement. Davis has provided no basis for concluding that Lowell failed to pursue an appeal with ODAG because of the presumed conflict of interest. Indeed, any such appeal would have had to be submitted long before Lowell ever became aware of the filter team's review of his activities, and thus long before Lowell

21

acquired the primary alleged conflict of interest that could have impaired his performance.  *See* Mot. Hr'g Tr. 18–19 (Dec. 9, 2022).[4]  The same is true for Davis's other proposed strategies:  she offers no argument that Lowell failed to pursue an even more lenient government sentencing recommendation because he labored under a conflict of interest as opposed to his reasoned judgment that such approach was entirely unviable.

Davis also contends that Lowell was ineffective because he inaccurately predicted her sentencing range.  But Lowell's prediction was not inaccurate when it was made—it assumed substantial cooperation credit contemplated in the plea agreement that Davis abandoned when she recanted her factual basis.  Further, the "inaccurate prediction of what sentence [a defendant] would receive upon pleading guilty . . . does not constitute ineffective assistance of counsel."  *Doganiere v. United States*, 914 F.2d 165, 168 (9th Cir. 1990).  And even if it did constitute ineffective assistance, Davis has not shown that any predictive error Lowell may have made was attributable to the divided loyalties she alleges he had.

Finally, Davis asserts that Lowell could have simply advised her to go to trial, rather than plead guilty, Mot. 9, but Lowell's sworn declaration indicates that he was willing to proceed to trial if that is what Davis had wanted, Dkt. 124-1, at

---

[4]  Although Lowell had been aware of the earlier civil FARA inquiry, that matter was civil in nature, unrelated to Davis's case, and was handled by a separate office and thus would not give rise to an actual conflict.

3-4.  Instead, Davis feared the consequences of defending multiple felony charges

in two jurisdictions and chose to cooperate with the government in exchange for

the likelihood of obtaining a substantially reduced sentence.  *See id.*

### B.   The Imposition Of A $250,000 Fine Does Not Entitle Davis To Bail Pending Appeal.

This court committed no error in concluding that the statutory maximum fine

for Davis's offense is $250,000.  Although the plea agreement listed a maximum

fine of $10,000 based on 22 U.S.C. § 618, the Probation Office determined that the

statutory maximum fine was $250,000 based on 18 U.S.C. § 3571(b).  Dkt. 106, at

45.  Under that provision, "an individual who has been found guilty of an offense

may be fined not more than the *greatest* of," among other things, "the amount

specified in the law setting forth the offense" or "for a felony, not more than

$250,000."  *Id.* (emphasis added).  Because $250,000 is greater than the $10,000

maximum prescribed by § 618, the maximum fine for Davis's offense is $250,000.

Section 3571(e) provides a "special rule for [a] lower fine specified" in the "law

setting forth an offense":  the lower fine governs only if the law of the offense "by

specific reference[] exempts the offense from the applicability of the fine otherwise

applicable under" § 3571.  As the Probation Office explained, § 618 does not

exempt FARA violations from § 3571's framework for determining the applicable

fine, so § 3571(e) does not apply to reduce Davis's fine to $10,000.  Instead,

§ 3571(b) applies and dictates that the maximum fine for Davis's offense is $250,000.[5]

Even if this court had committed an error in calculating the maximum fine, Davis still would not be entitled to bail pending appeal because correction of an error in the total fine amount would not result in Davis receiving "a sentence that does not include a term of imprisonment," or "a reduced sentence to a term of imprisonment" as required by 18 U.S.C. § 3143(b)(1)(B).  Accordingly, any challenge to the fine amount imposed by the court cannot form the basis for release pending appeal.

### C.    Davis's First Amendment Challenge Does Not Present A Substantial Question.

"[I]t is well settled that FARA is constitutional."  *Att'y Gen. of U.S. v. Irish People, Inc.*, 684 F.2d 928, 935 & n.23 (D.C. Cir. 1982) (collecting cases); *see also, Meese v. Keene*, 481 U.S. 465, 478 (1987) (reviewing an as-applied challenge to FARA and observing that the statute "itself neither prohibits nor censors the dissemination of advocacy materials by agents of foreign principals").  "Because, strictly speaking, FARA . . . do[es] not penalize *speech*, but rather the lack of registration, any facial challenge under the First Amendment fails."  *United States*

---

[5]  Davis suggests (Mot 10 n.1, 19 n.2) that the $250,000 fine exceeded the statutory maximum.  As explained, however, the statutory maximum fine for Davis's offense is $250,000, so the court's sentence did not exceed the statutory maximum.

*v. Michel*, No. 1:19-cr-00148, 2022 WL 4182342, at *5 (D.D.C. Sept. 13, 2022) (emphasis in original).

Davis's reliance on *Americans for Prosperity Foundation v. Bonta*, 141 S. Ct. 2373 (2021), to contend otherwise is misplaced. *Bonta* addressed whether the State of California's requirement that "charitable organizations . . . disclose . . . the identities of their major donors . . . violates the First Amendment right to free association." *Id.* at 2379. The Supreme Court concluded that the California law was "facially unconstitutional" because it was not narrowly tailored to the state's important interest in preventing fraud: "there are multiple alternative mechanisms through with the Attorney General can obtain" the same information, so the law primarily existed for "ease of administration"—an interest that could not "justify the disclosure requirement." *Id.* at 2387. The same cannot be said of FARA's registration requirements.

In any event, because Davis will be presenting her constitutional challenge for the first time on appeal,  she must show that the court committed plain error, *see* Fed. R. Crim. P. 52(b); *Greer v. United States*, 141 S. Ct. 2090, 2096 (2021), which requires, among other things, that any constitutional error is "clear or obvious, rather than subject to reasonable dispute," *Puckett v. United States*, 556 U.S. 129, 135 (2009). An error generally cannot be "clear or obvious" when it is not dictated by "controlling case law." *United States v. Shields*, 844 F.3d 819, 823

(9th Cir. 2016); *see United States v. Gonzalez-Aparicio*, 663 F.3d 419, 428 (9th Cir. 2011).  And here, Davis cannot show that FARA is clearly or obviously unconstitutional given the number of courts that have found FARA constitutional including after *Bonta*.

## CONCLUSION

The Motion for bail pending appeal should be denied.

DATED:  March 6, 2023, at Honolulu, Hawaii.

> Respectfully submitted,
>
> CLARE E. CONNORS
> United States Attorney
> District of Hawaii
>
> */s/ Kenneth M. Sorenson*
> By_____
>    KENNETH M. SORENSON
>    Chief, Criminal Division
>
>    JOHN D. KELLER
>    Principal Deputy Chief
>    Sean F. Mulryne
>    Deputy Director, Election Crimes
>    Nicole R. Lockhart
>    Trial Attorney
>    Public Integrity Section
>    AMANDA L. MUNDELL
>    Of Counsel
>    United States Department of Justice
>    Appellate Section, Criminal Division

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on the dates and by the methods of service noted below, a true and correct copy of the foregoing was served on the following at their last known addresses:

<u>Served Electronically through CM/ECF</u>:

William McCorriston, Esq.
James Bryant, Esq.

Attorneys for Interested Party
NICKIE MALI LUM DAVIS

DATED:  March 6, 2023, at Honolulu, Hawaii.

*/s/ Kenneth M. Sorenson*

_____